1   JOHN D. GIFFIN, CASB NO. 89608
2   john.giffin@kyl.com
    JOSEPH A. WALSH, II, CASB No. 143694
3   joe.walsh@kyl.com
    JOHN COX, CASB NO. 197687
4   john.cox@kyl.com
    DAVID TONG, CASB NO. 238971
5   david.tong@kyl.com
6   KEESAL, YOUNG & LOGAN
    A Professional Corporation
7   Four Embarcadero Center
    Suite 1500
8   San Francisco, California 94111
    Telephone:   (415) 398-6000
9   Facsimile:   (415) 981-0136

10
11  Attorneys for Defendants
    REGAL STONE, LTD. and FLEET MANAGEMENT, LTD.
12

13
            **UNITED STATES DISTRICT COURT**
14

15          **NORTHERN DISTRICT CALIFORNIA**

16

17

| | |
|---|---|
| 18  UNITED STATES OF AMERICA, | ) Case No. C 07 06045 (SC) |
| 19                     Plaintiff, | ) **DEFENDANTS REGAL STONE LTD.** |
|  | ) **AND FLEET MANAGEMENT, LTD.'S** |
| 20          vs. | ) **NOTICE OF MOTION AND MOTION** |
|  | ) **TO DISMISS, OR IN THE** |
| 21  M/V COSCO BUSAN, LR/IMO Ship. No. | ) **ALTERNATIVE, STAY** |
| 22  9231743 her engines, apparel, electronics, | ) **PROCEEDINGS** |
|  tackle, boats, appurtenances, etc., *in rem*, | ) **[FRCP 12(b)(1)]** |
| 23  THE SHIPOWNERS' INSURANCE & | ) |
|  GUARANTY COMPANY LTD., REGAL | ) **Date:       April 25, 2008** |
| 24  STONE, LIMITED, FLEET | ) **Time:      10:00 a.m.** |
|  MANAGEMENT LTD., and JOHN COTA, | ) **Dept.:     1** |
| 25  *in personam,* | ) |
|  | ) **(The Honorable Samuel** |
| 26                     Defendants. | ) **Conti)** |
| 27  _____ | ) |

28

KYL_SF459913v2

DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S NOTICE OF MOTION AND
MOTION TO DISMISS AND STAY PROCEEDINGS – Case No. C 07 06045 (SC)

1

# TABLE OF CONTENTS

2

I.      INTRODUCTION ................................................................................. 1

II.     APPLICABLE LAW GOVERNING MOTIONS TO DISMISS FOR LACK
        OF JURISDICTION. .......................................................................... 2

III.    RELEVANT FACTS ............................................................................ 3

IV.     OIL POLLUTION ACT OF 1990 ........................................................ 5

V.      THE UNITED STATES CLAIMS FOR REMOVAL COSTS AND
        DAMAGES MUST BE DISMISSED UNTIL THE UNITED STATES
        COMPLIES WITH OPA'S CLAIMS PRESENTATION REQUIREMENTS..... 9

        A.    The Presentation Requirement Of The Oil Pollution Act Of 1990
              Requires Dismissal Of All Claims For Removal Costs Or Damages ...... 9

        B.    The Presentation Requirement Applies To Claims For Removal Costs
              And Damages Under The NMSA And The PSRPA ............................... 10

        C.    In The Alternative, The Court Should Stay The Case With Respect
              To The Non-OPA Causes Of Action ..................................................... 12

VI.     THE UNITED STATES' FORFEITURE ACTION UNDER THE NMSA
        MUST BE DISMISSED BECAUSE THE COMPLAINT DOES NOT
        ALLEGE THE DEFENDANTS HAVE TAKEN OR RETAINED
        SANCTUARY RESOURCES .............................................................. 13

VII.    THERE IS NO ACTUAL CONTROVERSY UNDER THE DECLARATORY
        JUDGMENT ACT ............................................................................... 15

VIII.   THIS COURT LACKS JURISDICTION TO DECIDE  WHETHER THE
        DEFENDANTS ARE ENTITLED TO LIMIT THEIR OPA LIABILITY ........ 17

        A.    The United States Has Not Waived Sovereign Immunity Under
              OPA '90 ............................................................................................ 18

        B.    Defendants Have Not Exhausted Their Administrative Remedies
              Before The NPFC ............................................................................... 20

        C.    Alternatively, This Court Should Abstain From Addressing The
              Limitation Issue Under The Primary Jurisdiction Doctrine ................ 22

IX.     CONCLUSION ................................................................................... 24

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S NOTICE OF MOTION AND
MOTION TO DISMISS AND STAY PROCEEDINGS – Case No. C 07 06045 (SC)

1

# TABLE OF AUTHORITIES

2

3

## Cases

4

Aetna Life Ins. Co. v. Haworth,
  300 U.S. 227 (1937) .......................................................................................... 16

5

Apex Oil Co. v. United States,
  208 F. Supp. 2d 642 A.M.C. 493 (E.D. La 2002) ........................................... 19

6

Assoc. of Am. Med. Colleges v. United States,
  217 F.3d 770 (9th Cir. 2000) .............................................................................. 3

7

Blackburn v. United States,
  100 F.3d 1426 (9th Cir. 1996) ......................................................................... 18

8

9

Boca Ciega Hotel Inc. v. Bouchard Trans. Co., Inc.,
  51 F.3d 235 (11th Cir. 1995) ......................................................................... 7, 9

10

Duhn Oil Tool, Inc. v. Cooper Cameron Corp.,
  2007 WL 3335008, at *3 (E.D. Cal. Nov. 9, 2007).......................................... 16

11

Far East Conference v. United States
  342 U.S. 570 (1952) .......................................................................................... 22

12

13

Gatlin Oil Co. v. United States,
  169 F.3d 207 (4th Cir. 1999) ............................................................................ 19

14

Hercules, Inc. v. United States,
  516 U.S. 417 (1996) .......................................................................................... 18

15

16

Hess v. Gray,
  85 F.R.D. 15 (N.D. Ill 1979) ............................................................................. 12

17

In re Kuroshima Shipping Act of God and Limitation of Liability Analysis, 2003 AMC
  1681 (Nat'l Pollution Funds Center 2003) ....................................................... 21

18

19

Int'l Marine Carriers v. Oil Spill Liability Trust Fund,
  903 F. Supp. 1097 (S.D. Tex. 1994) ........................................................... 18, 19

20

Johnson v. Colonial Pipeline Co.,
  830 F. Supp. 309 (E.D. Va 1993) ....................................................................... 9

21

22

Kokkonen v. Guardian Life Ins. Co.,
  511 U.S. 375 (1994) ............................................................................................ 3

23

Landis v. North Am. Co.,
  299 U.S. 248 (1936) .......................................................................................... 12

24

25

Marathon Pipeline Co. v. LaRoche Industries,
  944 F. Supp 476 (E.D. La 1996) ...................................................................... 10

26

Maryland Casualty Co. v. Pacific Coal & Oil Co.,
  312 U.S. 270 (1941) .......................................................................................... 16

27

28

DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S NOTICE OF MOTION AND
MOTION TO DISMISS AND STAY PROCEEDINGS – Case No. C 07 06045 (SC)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Matter of Oswego Barge Corp.,
  664 F.2d 327 (2d Cir. 1981) .................................................................. 5

McBride Cotton and Cattle Corp. v. Veneman,
  290 F.3d 973 (9th Cir. 2002) .............................................................. 20

McKart v. United States,
  395 U.S. 185 (1969) ............................................................................ 20

Moncrief v. United States,
  43 Fed. Cl. 276 (1999) ....................................................................... 20

Principal Life Ins., Co. v. Robinson,
  394 F.3d 665 (9th Cir. 2005) .............................................................. 16

Rio Properties, Inc. v. Rio Int'l Interlink,
  284 F.3d 1007 (9th Cir. 2002) ............................................................. 2

Safe Air for Everyone v. Meyer,
  373 F.3d 1035 (9th Cir. 2004) .............................................................. 3

Smith v. McCullough,
  270 U.S. 456 (1926) ........................................................................ 3, 19

Smith Property Holdings, 4411 Connecticut L.L.C. v. United States,
  311 F. Supp. 2d 69 (D.D.C. 2004) ...................................................... 19

Societe de Conditionnement en Aluminum v. Hunter Eng'g Co., Inc.,
  655 F.2d 938 (9th Cir. 1981) .............................................................. 16

Steuart Transp. Co. v. Allied Towing Corp.,
  596 F.2d 609 (4th Cir. 1979) ............................................................... 5

Stock West, Inc. v. Confederated Tribes of the Colville Reservation,
  873 F.2d 1221 (9th Cir. 1989) .............................................................. 3

Syntek Semiconductor Co., Ltd. v. Microchip Tech., Inc.,
  307 F.3d 775 (9th Cir. 2002) .............................................................. 22

Tosco Corp. v. Communities for a Better Env't,
  236 F.3d 495 (9th Cir. 2001) ............................................................... 3

United States v. $191,910.00 in U.S. Currency,
  16 F.3d 1051 (9th Cir. 1994) .............................................................. 13

United States v. BCCI Holdings (Luxembourg), S.A.,
  833 F. Supp. 17 (D.D.C. 1993) .......................................................... 14

United States v. Dixie Carriers,
  736 F.2d 180 (5th Cir. 1980) ............................................................ 5, 6

United States v. M/V BIG SAM,
  681 F.2d 432 (5th Cir.1982) ................................................................ 5

United States v. Mitchell,
  445 U.S. 535 (1980) ........................................................................... 18

DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S NOTICE OF MOTION AND
MOTION TO DISMISS AND STAY PROCEEDINGS – Case No. C 07 06045 (SC)

United States v. One 1992 Ford Mustang,
    73 F. Supp. 2d 1131(C.D. Cal. 1999) .................................................. 13

United States v. One Parcel of Land In The Name of Mikell,
    33 F.3d 11 (5th Cir. 1994) ................................................................. 13

Unocal Corp. v. U.S.,
    222 F.3d 528 (9th Cir. 2000) ......................................................... 7, 18

Water Quality Insurance Syndicate v. United States,
    522 F. Supp. 2d 220 (D.D.C. 2007) ............................................ 19, 21

**Statutes**

15 C.F.R. § 990 ........................................................................................ 4

16 U.S.C.

    § 19jj(b) ........................................................................................... 11

    § 19jj(c) ........................................................................................... 11

    § 1437(d)(1) ................................................................................ 14, 15

    § 1437(d)(3) ..................................................................................... 14

    § 1437(d)(4) ..................................................................................... 14

    § 1437(i) ........................................................................................... 15

    § 1443 ........................................................................................ 11, 15

    §§ 1437(c)(1) & 1436(1) ................................................................... 15

28 U.S.C.

    § 2201 ............................................................................................... 16

    § 2201(a) .......................................................................................... 16

33 U.S.C.

    § 2404 ............................................................................................... 21

    §§ 2701–2762 ................................................................................... 23

    § 2701(3) .......................................................................................... 10

    § 2701(14) ........................................................................................ 10

    § 2701(30) & (31) ............................................................................. 10

    §2702 .................................................................................................. 6

    § 2702(a) & (b)(1) ............................................................................ 11

    § 2702(b)(2) ...................................................................................... 11

    §§ 2703(c) & 2704(c) ......................................................................... 7

    § 2704 .......................................................................................... 7, 17

    § 2704(c) ........................................................................................... 21

KYL_SF459913v2

DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S NOTICE OF MOTION AND
MOTION TO DISMISS AND STAY PROCEEDINGS – Case No. C 07 06045 (SC)

§§ 2705, 2714(b)(2) ........................................................................ 6

§ 2706(e)(2) ................................................................................. 5

§ 2708 ............................................................................... 8, 19, 21

§§ 2708 & 2713(b) .................................................................... 8, 19

§§ 2708(2) & 2713(b)(1)(B) ........................................................... 21

§§ 2712, 2713, or 2715 .................................................................. 18

§ 2712(a)(4) ................................................................................. 7

§§ 2712(f), 2715 ........................................................................... 7

§ 2712(f)(2) ................................................................................ 17

§ 2713 ................................................................................. passim

§ 2713(a) & (c) ............................................................................ 7

§2713(b)(1)(B) ............................................................................. 8

§ 2714 ........................................................................................ 6

§ 2717(b) ................................................................................... 18

§ 2717(f)(2) ................................................................................ 16

§ 2718(c) ................................................................................... 12

33 C.F.R.

§ 136(a)(1) ........................................................................... 21, 23

§ 136.115(d) ................................................................................ 8

§ 136.203 .................................................................................. 22

§§ 136.1 through 136.313 .............................................................. 21

§§ 136.1–136.313 ........................................................................ 23

5 U.S.C.

§§ 701, *et seq.* ...................................................................... 9, 17

Sherman Antitrust Act.  342 U.S. 570, 571 (1952) ........................... 22

# Other Authorities

135 Cong. Rec. H7954-H7978 (daily ed. Nov. 2, 1989) ...................... 6

14 Charles Alan Wright, et al., Federal Practice and Procedure § 3654 (3d ed. 1998) .... 18

E. Chemerinsky, Federal Jurisdiction, §9.2.1 (3d ed.1999) ................. 18

KYL_SF459913v2

DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S NOTICE OF MOTION AND
MOTION TO DISMISS AND STAY PROCEEDINGS – Case No. C 07 06045 (SC)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Oil Spill Liability and Compensation: Hearing Before the Subcomm. On Water
    Resources of the Comm. On Public Works and Transp., H. of Rep., 101st Cong. 78
    (1989) ...................................................................................................................... 5

KYL SF459913v2

DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S NOTICE OF MOTION AND
MOTION TO DISMISS AND STAY PROCEEDINGS – Case No. C 07 06045 (SC)

**TO ALL PARTIES TO THIS ACTION AND THEIR ATTORNEY(S) OF RECORD:**

NOTICE IS HEREBY GIVEN that on April 25, 2008 at 10:00 a.m. in Courtroom 1 of the above-entitled Court, the Honorable Samuel Conti presiding, Defendants REGAL STONE, LTD. and FLEET MANAGEMENT, LTD. ("Defendants") will move to dismiss, or in the alternative to stay, proceedings pursuant to the Federal Rules of Civil Procedure, Rule 12(b) 1, on all causes of action against Defendants contained in Plaintiff UNITED STATES OF AMERICA's ("Plaintiff") Complaint on file herein.

This Motion will be based upon this Notice of Motion and Motion to Dismiss and Stay Proceedings, the accompanying Memorandum of Points and Authorities, the Declarations of Cynthia Hudson, K. Tim Perkins and Joseph A. Walsh II and all Exhibits attached thereto, the complete files and records of this action, and such other oral and documentary evidence as may be introduced at the hearing of this matter.

## I.   INTRODUCTION

Defendants REGAL STONE, LTD. and FLEET MANAGEMENT, LTD. ("Defendants") move to dismiss the United States' claims for removal costs and damages, on the grounds that the Court lacks subject matter jurisdiction. The Court lacks subject matter jurisdiction because the United States has ignored the Oil Pollution Act's ("OPA") mandatory claims presentation requirement. OPA requires the United States to submit detailed invoices for its removal costs and damages, and to allow Defendants 90 days to pay those invoices, before filing suit. Until the United States complies with these provisions, the Court lacks jurisdiction to hear its claims for removal costs and damages.

Counts One and Five of the complaint seek recovery of the United States' removal costs and damages under the National Marine Sanctuaries Act ("NMSA") and the Park System Resource and Protection Act ("PSRPA"). However, the damages recoverable under those statutes are identical to those recoverable under OPA. Trustee agencies of the United States and the State of California have begun a multi-year, natural resource damage assessment ("NRDA") process that includes an assessment of injuries to resources within marine sanctuaries and parks resulting from the Cosco Busan incident.

1  They will be seeking compensation for any such injuries under OPA, once the NRDA

2  process is complete. Because the United States is seeking recovery for damages to

3  marine sanctuaries and national parks under the PSRPA, the NMSA, and OPA, OPA's

4  claims presentation requirement applies to these claims.

5        Defendants also move to dismiss the United States' claim seeking a declaration

6  that Defendants are liable for all removal costs and damages, because Defendants have

7  already acknowledged they are strictly liable to pay for removal costs and damages

8  resulting from the COSCO BUSAN incident. Given this situation, there is no case or

9  controversy for the court to address.

10        The United States has advised that it will ask the Court to rule on whether

11  Defendants are entitled to partial reimbursement of some of their OPA liabilities from

12  the Oil Spill Liability Trust Fund (OSLTF). OPA allows a ship owner to seek such

13  reimbursement from the OSLTF in some cases. If the Court ruled in Defendants favor

14  on this issue, it would obligate the OSLTF to pay Defendants tens of millions of dollars.

15  However, the issue is not within the Court's subject matter jurisdiction. OPA does not

16  waive the sovereign immunity of the United States, or confer jurisdiction on this Court

17  to rule on whether Defendants are eligible for partial reimbursement from the OSLTF.

18  Instead, OPA provides that such claims for reimbursement should be submitted to the

19  National Pollution Funds Center ("NPFC"), a division of the Coast Guard that

20  administers the OSLTF. The doctrines of sovereign immunity, exhaustion of

21  administrative remedies, and primary jurisdiction all require the court to dismiss any

22  claims relating to this issue.

23

24  ## II.    APPLICABLE LAW GOVERNING MOTIONS TO DISMISS FOR LACK OF JURISDICTION.

25

26        On a motion to dismiss for lack of jurisdiction, the plaintiff bears the burden of

27  establishing that jurisdiction exists. Rio Properties, Inc. v. Rio Int'l Interlink, 284 F.3d

28  1007, 1019 (9th Cir. 2002). Unless a plaintiff can prove otherwise, a federal court must

KYL_SF459913v2

1   presume an action lies outside of its jurisdiction.  See, Kokkonen v. Guardian Life Ins.

2   Co., 511 U.S. 375, 377 (1994); see also, Stock West, Inc. v. Confederated Tribes of the

3   Colville Reservation, 873 F.2d 1221, 1225 (9th Cir. 1989).  "A plaintiff suing in federal

4   court must show in his pleading, affirmatively and distinctly, the existence of whatever

5   is essential to federal jurisdiction, and, if he does not do so, the court, on having the

6   defect called to its attention or on discovering the same, must dismiss the case, unless

7   the defect be corrected by amendment."  Smith v. McCullough, 270 U.S. 456, 459 (1926);

8   Tosco Corp. v. Communities for a Better Env't, 236 F.3d 495, 499 (9th Cir. 2001).

9        A party moving to dismiss for lack of subject matter jurisdiction may submit

10  "affidavits or any other evidence properly before the court. * * *  It then becomes

11  necessary for the party opposing the motion to present affidavits or any other evidence

12  necessary to satisfy its burden of establishing that the court, in fact, possesses subject

13  matter jurisdiction."  Assoc. of Am. Med. Colleges v. United States, 217 F. 3d 770, 778

14  (9th Cir. 2000); Safe Air for Everyone v. Meyer, 373 F. 3d 1035, 1038 (9th Cir. 2004).

15

16  **III.    RELEVANT FACTS**

17       On November 7, 2007, the COSCO BUSAN discharged approximately 53,000

18  gallons of bunker fuel into San Francisco Bay.  (Declaration of K. Tim Perkins ("Perkins

19  Decl.").)  Defendants immediately took responsibility for the oil spill cleanup and

20  accepted liability for settling claims for damages resulting from the oil spill.  (Id.)  They

21  have paid in excess of $40 million to date in clean up costs, and have cooperated and

22  participated within the Unified Command System to respond to the spill.  (Id.)  They

23  continue to pay the costs for the clean up of the oil and are now participating in a

24  cooperative assessment of damage to natural resources resulting from the spill.  (Perkins

25  Decl.; Declaration of Cynthia Hudson ("Hudson Decl."); Declaration of Gary Mauseth

26  ("Mauseth Decl.").)

27       On November 8, 2007, the California Department of Fish and Game Office of Spill

28  Prevention and Response designated Regal Stone Limited as the Responsible Party

- 3 -                                    KYL_SF459913v2

1  pursuant to California Government Code section 8670.51.1(a)(1). (Perkins Decl., Exhibit

2  A.) On November 9, 2007, the United States Coast Guard issued a similar designation

3  and notice pursuant to the OPA. (Id.) Both notices required the Responsible Party to

4  widely advertise the manner in which claims arising from the incident would be

5  accepted and paid. (Id.)

6      Defendants have not contested these notices of designation. (Perkins Decl., ¶ 5.)

7  On November 10, 2007, Hudson Marine Management Services ("HMMS") set up a claims

8  center and widely advertised the claims handling process with advertisements in local

9  media, the internet, and by posting fliers at relevant marinas and other locations.

10  (Hudson Decl., ¶ 4.) Thereafter, HMMS began processing and paying claims. (Id.) The

11  normal practice following a spill is for the United States to issue invoices to the

12  Responsible Party for its response costs. (Perkins Decl., ¶ 7; Hudson Decl., ¶ 6.) The

13  responsible party then reimburses the United States for its costs. (Id.) To date, only five

14  claims have been received from the United States. (Hudson Decl., ¶ 6.) Three have been

15  settled and two are pending. (Id.) The pending claims are less than 90 days old. (Id.)

16      On November 30, the United States filed this action. It filed the action because it

17  claimed it needed security for its claims against the COSCO BUSAN. However, it is not

18  necessary to institute a lawsuit to obtain such security, and it is standard practice for

19  insurers of vessels such as the COSCO BUSAN to issue security when it is requested,

20  without first requiring that a lawsuit be filed. (Federal Rules of Civil Procedure,

21  Supplemental Rule E; Declaration of Joseph A. Walsh ("Walsh Decl.") ¶ 2.) The insurer

22  for the Defendants in this case provided the United States security for its claims in the

23  amount of $79,500,000.00. (Walsh Decl., Exhibit A.)

24      Agencies of the United States and the State of California, with jurisdiction over

25  the natural resources impacted by the COSCO BUSAN oil spill ("Trustee Agencies"),

26  have commenced a cooperative natural resource damages assessment ("NRDA") process,

27  pursuant to the OPA NRDA regulations, set forth at 15 C.F.R. § 990, and State law.

28  (Walsh Decl., ¶ 5.) The NRDA regulations require the Trustee Agencies to follow a

- 4 -

1  detailed assessment process, and to seek public comment and input, before settling any

2  claims for natural resource damages. (Id.)  If the Trustee Agencies follow the NRDA

3  regulations, they are entitled to a rebuttable presumption under OPA that their

4  determinations of damages to natural resources are correct.  33 U.S.C. § 2706(e)(2).  The

5  NRDA process normally takes several years to complete.  (Mauseth Decl., ¶ 6.)  Among

6  the injuries that the trustees are assessing are injuries to resources under the

7  jurisdiction of national parks and national marine sanctuaries.  (Id.; Walsh Decl.)

8

9  **IV.    OIL POLLUTION ACT OF 1990**

10      In 1990 following the EXXON VALDEZ oil spill, Congress overhauled the nation's

11  oil pollution laws by enacting OPA.  Prior to the enactment of OPA, a vessel owner's

12  liability to the United States for oil pollution was governed by the Federal Water

13  Pollution Control Act ("FWPCA"), 33 U.S.C. 1321.  In hearings leading to the enactment

14  of OPA, Congress expressed dissatisfaction with the FWPCA.  Its criticisms included the

15  fact that the FWPCA only addressed a vessel owner's liability to the United States, and

16  that it limited that liability to $150 per gross ton of the vessel discharging the oil.  This

17  limit was viewed as too low.  See Oil Spill Liability and Compensation: Hearing Before

18  the Subcomm. On Water Resources of the Comm. On Public Works and Transp., H. of

19  Rep., 101st Cong. 78 (1989) ("[L]liability under the FWPCA is low ($150/ton) and the

20  scope of damages to which liability pertains is limited to the Federal Government's

21  cleanup costs and natural resource damages.").

22      Complicating matters, a vessel owner could not assert a credit against the

23  $150/ton limitation amount for funds it expended in cleaning up the spill.  United States

24  v. Dixie Carriers, 736 F.2d 180, 183 (5th Cir. 1980); Steuart Trans. Co. v. Allied Towing

25  Corp., 596 F.2d 609, 619 (4th Cir. 1979).  Courts also held that the FWPCA pre-empted

26  other causes of action by the United States against a vessel owner to recover removal

27  costs incurred to clean up an oil spill.  Matter of Oswego Barge Corp., 664 F.2d 327, 344

28  (2d Cir. 1981); United States v. M/V BIG SAM, 681 F.2d 432 (5th Cir.1982).  Thus, the

1   United States could only recover its response costs from a discharging vessel up to the

2   FWPCA limits on its liability, and the owner was not entitled to a credit against its

3   FWPCA liability for any costs it expended to clean up a spill.  The FWPCA thus created

4   a financial disincentive for vessel owners to spend money to clean up oil spills.  See

5   Dixie Carriers, 736 F.2d at183-185.

6        Congress was also dissatisfied with the settlement of private party claims

7   following oil spills.  It heard testimony that individuals were often forced to litigate their

8   claims in court for years in order to recover their losses. Congress insisted that those

9   injured by spills should be swiftly compensated for their losses: "We do not want

10  claimants to have to wait years upon years to recover their losses while lawsuits drag on

11  in the courts.  Instead, if they are unable to reach a settlement with the spiller within 90

12  days, they can be compensated from the oil industry financed by the fund, and the fund

13  will go after the spiller for reimbursement." 135 Cong. Rec. H7954-H7978 (daily ed.

14  Nov. 2, 1989); "The thrust of this legislation is to eliminate, to the extent possible, the

15  need for an injured person to seek recourse through the litigation process, which—as we

16  all know—can take years." 135 Cong. Rec. H7954-H7978 (daily ed. Nov. 2, 1989).

17       In OPA, Congress remedied these deficiencies.  It made clear that a vessel owner

18  is strictly liable for all clean up costs and damages resulting from a discharge of oil from

19  its vessel.  33 U.S.C. §2702.  It required the President to designate the owner of a

20  discharging vessel as the "Responsible Party" and required the Responsible Party to

21  publish a notice advising claimants of this designation, and procedures by which they

22  may submit claims for reimbursement.  33 U.S.C. § 2714.   To avoid delays in the

23  payment of claims, it made the Responsible Party liable to pay interest after 30 days

24  from the date on which a claim is received, and to establish procedures for interim,

25  partial payments to claimants.  33 U.S.C. §§ 2705, 2714(b)(2).

26       To discourage litigation over claims in court, Congress provided that a claimant

27  must first present a claim for removal costs or damages to the Responsible Party,

28  following the procedures identified in the notice published pursuant to 33 U.S.C. § 2714.

KYL SF459913v2

DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S NOTICE OF MOTION AND
MOTION TO DISMISS AND STAY PROCEEDINGS – Case No. C 07 06045 (SC)

1    See 33 U.S.C. § 2713(a) & (c).  If, after 90 days, the Responsible Party does not settle

2    with a claimant, the claimant may sue the Responsible Party, or may submit its claim to

3    the National Pollution Funds Center (NPFC), established under OPA to administer the

4    Oil Spill Liability Trust Fund ("Fund").  Id.  OPA provides that the Fund may be used to

5    settle such claims.  33 U.S.C. § 2712(a)(4).  If the Fund does so, it becomes subrogated to

6    the rights of the claimant, and may seek recovery of amounts paid from the Responsible

7    Party.  33 U.S.C. §§ 2712(f), 2715.

8         As with most comprehensive statutes, OPA is the "result of innumerable

9    compromises between competing interests, reflecting many competing purposes and

10   goals."  Boca Ciega Hotel Inc. v. Bouchard Trans. Co., Inc., 51 F.3d 235, 238 (11th Cir.

11   1995).  Thus, while OPA substantially increased the liability of vessel owners, it also

12   preserved the right of a vessel owner to limit its liability in some cases.   33 U.S.C.

13   § 2704.  To eliminate the financial disincentive for a vessel owner to respond to an oil

14   spill that had existed under the FWPCA, Congress provided that the right to limit

15   liability, or to assert a complete defense to liability, is lost if the Responsible Party fails

16   to provide all reasonable cooperation and assistance requested by a responsible official,

17   or to comply with a Coast Guard cleanup order.  33 U.S.C. §§ 2703(c) & 2704(c).  Even a

18   party that is entitled to a complete defense under OPA remains responsible for

19   responding to a spill and cleaning it up.  Unocal Corp. v. U.S., 222 F.3d 528, 534-36 (9th

20   Cir. 2000).

21        Thus, even though a Responsible Party may have a complete defense to liability,

22   or the right to limit its liability, OPA provides that the Responsible Party must respond

23   to the spill and clean it up, if the federal or state governments request it to do so – even

24   if the cost of doing so exceeds the limits on the Responsible Party's liability under OPA.

25   Because it is rarely clear in the days after a spill whether the Responsible Party has a

26   defense to OPA liability, or the right to limit that liability, the Coast Guard, as a matter

27   of practice, always designates the vessel owner and/or operator from which a discharge

28   occurs as the Responsible Party, and directs the Responsible Party to respond and clean

KYL SF459913v2

DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S NOTICE OF MOTION AND
MOTION TO DISMISS AND STAY PROCEEDINGS – Case No. C 07 06045 (SC)

1   up the spill.   If a Responsible Party believes it is entitled to a complete defense to

2   liability, or that it has the right to limit its liability under OPA, OPA allows the

3   Responsible Party to submit a claim to the NPFC for reimbursement of amounts it has

4   paid that exceed its liability.  33 U.S.C. §§ 2708, 2713(b)(1)(B).

5        These provisions create a powerful incentive for vessel owners and their insurers

6   to respond to spills and to clean them up to the satisfaction of state and federal officials.

7   Unlike the FWPCA, under OPA a vessel owner who refuses a request that it clean up oil

8   spilled from its vessel runs the risk that the NPFC will deny its claim for reimbursement

9   on the grounds that it failed to provide cooperation and assistance requested by the

10  Coast Guard or the State.

11       While OPA allows a vessel owner to seek reimbursement of removal costs and

12  damages it pays in excess of the limits on its liability from the Fund by presenting an

13  administrative claim to the NPFC, it does not allow the vessel owner to sue the United

14  States for reimbursement of those costs in court.  33 U.S.C. section 2708 is the only

15  provision of OPA that permits a Responsible Party to obtain reimbursement of such

16  costs, and it only allows the Responsible Party to do so by filing an administrative claim

17  with the NPFC under 33 U.S.C. § 2713.

18       The NPFC is an administrative agency within the United States Coast Guard. See

19  http://www.USCG.mil/npfc.   Located in Arlington Virginia, the NPFC maintains a

20  claims division which processes claims brought pursuant to 33 U.S.C. § 2713 by federal

21  and state agencies, private individuals, and responsible parties.  NPFC regulations

22  governing OPA claims are published at 33 C.F.R. part 136.  The NPFC also publishes

23  claims guidelines for claimants, including a "Responsible Party Claim Submission

24  Guidance" for ship owners seeking reimbursement from the OSLTF.

25   See  http://www.USCG.mil/npfc/docs/PDFs/urg/URG_7_05.pdf.  A claimant may seek

26  reconsideration from a denial of a claim by the NPFC.  33 C.F.R. § 136.115(d).  If the

27  agency denies such a request, the denial will be deemed a final agency action, of which a

28

                                                                    KYL SF459913v2
DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S NOTICE OF MOTION AND
MOTION TO DISMISS AND STAY PROCEEDINGS – Case No. C 07 06045 (SC)

1  claimant may seek review under the Administrative Procedures Act ("APA"), 5 U.S.C.

2  §§ 701, *et seq.* .

3

4  V.   **THE UNITED STATES CLAIMS FOR REMOVAL COSTS AND DAMAGES**
     **MUST BE DISMISSED UNTIL THE UNITED STATES COMPLIES WITH**

5     **OPA'S CLAIMS PRESENTATION REQUIREMENTS.**

6     A.    **The Presentation Requirement of the Oil Pollution Act of 1990**
           **Requires Dismissal of All Claims For Removal Costs or Damages**

7

8          OPA  requires that "all claims for removal costs or damages shall be presented

9  *first* to the Responsible Party." 33 U.S.C. § 2713(a)(emphasis added).  A claim must be

10 specific.  It must "inform the responsible party with some precision of the nature and

11 extent of the damages alleged and the amount of monetary damages claimed.

12 Otherwise, the responsible party will be unable to make an informed offer of its own,

13 unable to engage in meaningful settlement negotiations, and thus unable to settle the

14 matter by agreeing to a final amount."  Johnson v. Colonial Pipeline Co., 830 F. Supp.

15 309, 311 (E.D. Va 1993).  The NPFC regulations set forth the specificity requirements for

16 a claim for response costs and damages.  Id.  A party may not sue the responsible party

17 in court, unless the responsible party denies the claim or fails to respond within 90 days.

18 33 U.S.C. § 2713(c).  As explained in Johnson, Congress hoped that this claims process

19 would avoid the need for litigation:

20               The purpose of the claim presentation procedure is to promote
21               settlement and avoid litigation.  Congress believed that
                lawsuits against parties are appropriate only 'where attempts
22               to reach a settlement with the Responsible Party . . . were
                unsuccessful.' H.R. Rep. No. 242, 101st Cong., 1st Sess., pt. 2, at
23               66 (1989).  The hope was to avoid costly and cumbersome
24               litigation.

25 Johnson, 830 F.Supp at 311; see also, Boca Ciega, 51 F.3d at 238-234 ("OPA reflects

26 Congress' desire to encourage settlement and avoid litigation.")  The presentation

27 requirement is jurisdictional and mandates dismissal when it is not complied with.  Boca

28 Ciega, 51 F.3d 235, 238-240 (11th Cir. 1995); Johnson v. Colonial Pipeline Co., 830

1   F.Supp. at 309-10; <u>Marathon Pipeline Co. v. LaRoche Industries</u>, 944 F.Supp 476, 477

2   (E.D. La 1996).

3       In this case, the United States has presented five small claims to Defendants.

4   (Hudson Decl., ¶ 6.)  Three have been settled and two are pending.  (<u>Id.</u>)  None are older

5   than 90 days.  (<u>Id.</u>)The United States filed this action 23 days after the Cosco Busan

6   incident in blatant disregard of OPA's mandatory claims presentation requirements.

7   Thus its claims for removal costs and damages resulting from the COSCO BUSAN

8   incident must be dismissed.

**B.     The Presentation Requirement Applies to Claims for Removal Costs and Damages Under the NMSA and the PSRPA**

11       OPA expressly requires that "<u>all</u> <u>claims</u> for <u>removal costs</u> and <u>damages</u> shall first

12   be presented to the responsible party." 33 U.S.C. § 2713(a) (emphasis added).  A

13   claimant may only sue the responsible party if the responsible party denies the claim or

14   fails to respond to it within 90 days.  33 U.S.C. § 2713(c).

15       OPA defines a "claim" as "a request, made in writing for a sum certain, for

16   compensation for damages or removal costs resulting from an <u>incident</u>." 33 U.S.C. §

17   2701(3). "Incident" means "any occurrence . . . resulting in the discharge …of oil." 33

18   U.S.C. § 2701(14).  The United States has determined that the COSCO BUSAN spill was

19   an incident under OPA, as reflected in its Notice of Designation.  (Perkins Decl., Exhibit

20   "A.")  Thus OPA's claims presentation requirement clearly applies to "all claims" for

21   "removal costs" and "damages" that result from the COSCO BUSAN incident.

22       "Removal costs" are broadly defined in OPA to include the cost of:

> containment and removal of oil …from water and shorelines,
> or the taking of other actions as may be necessary to minimize
> or mitigate damage to public health or welfare, including, but
> not limited to, fish, shellfish, wildlife, and public and private
> property, shorelines, and beaches.

27   33 U.S.C. § 2701(30) & (31).  OPA makes Defendants strictly liable for "all" of the United

28   States removal costs resulting from the Cosco Busan incident.  33 U.S.C.  § 2702(a) &

DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S NOTICE OF MOTION AND
MOTION TO DISMISS AND STAY PROCEEDINGS – Case No. C 07 06045 (SC)

1    (b)(1). "Damages" under OPA include damages for injury to, destruction of, loss of, or

2    loss of use of, natural resources, including the reasonable costs of assessing the damage,

3    and damages for injury to real or personal property, economic losses resulting from

4    destruction of, real or personal property, lost revenues such as taxes, and increased costs

5    of providing public services during or after removal activities.  33 U.S.C. § 2702(b)(2).

6         With these terms defined, there are no conceivable claims for removal costs or

7    damages resulting from the Cosco Busan incident that the United States can recover

8    under the NMSA or the PSRPA, that are not also recoverable under OPA.  The PSRPA

9    defines "damages" to include the cost of replacing or restoring damaged resources, the

10   loss of use of those resources, and the costs of assessing such damages.  16 U.S.C.

11   § 19jj(b).  It defines Response Costs to include the costs of actions taken by the United

12   States to prevent, minimize, or abate the destruction or loss of a park resource.  16

13   U.S.C. § 19jj(c).  The NMSA also allows the United States to recover civil damages for

14   the destruction of, or loss of use of, marine sanctuary resources.  16 U.S.C. § 1443. These

15   definitions do not allow the United States to recover, under the NMSA or the PSRPA,

16   any response costs or damages, as a result of the oiling of park or marine sanctuary

17   resources, which are not otherwise recoverable under OPA.

18        Since all of the claims asserted by the United States are for damages or response

19   costs resulting from the Cosco Busan incident, they are subject to OPA's claims

20   presentation requirement.  As set out above, Congress intended that OPA would

21   minimize litigation following an oil spill by creating a mandatory non-judicial claims

22   presentation requirement.  Congress' use of the words "all claims" in 33 U.S.C. § 2713 (a)

23   and its broad definitions of "claim", "removal costs," and "damages" reflect its clear

24   intent to require that claims such as those pursued by the United States in this lawsuit

25   be presented to the responsible party for settlement before a lawsuit is filed.   Nothing in

26   OPA suggests that Congress intended to permit claimants, including the government, to

27   avoid the mandatory claims process by suing for OPA removal costs or damages under

28   non-OPA causes of action.

KYL SF459913v2

DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S NOTICE OF MOTION AND
MOTION TO DISMISS AND STAY PROCEEDINGS – Case No. C 07 06045 (SC)

1    OPA's savings provision does not affect or modify the claims presentation

2 requirement. The provision simply states that OPA should not be construed to affect the

3 authority of the United States or a State to impose *additional* liability or *additional*

4 requirements relating to a discharge of oil. 33 U.S.C. § 2718(c). This provision preserves

5 the rights of States and Congress to enact laws in addition to OPA that impose

6 additional liabilities on polluters. After complying with OPA's claims presentation

7 requirements, nothing prevents the United States from suing Defendants under non-

8 OPA causes of action. Thus, OPA's savings provision does not allow a claimant to

9 disregard the mandatory claims presentation requirement under OPA for removal costs

10 or damages that result from an incident. Boca Ciega, 51 F.3d at 239.

11    **C.    In the Alternative, the Court Should Stay the Case with Respect to**
12    **the Non-OPA Causes of Action**

13    If the Court determines that OPA's presentation requirements do not apply to the

14 non-OPA causes of action, then Defendants request that the Court stay any proceedings

15 with respect to these claims. The Court has the inherent power to stay proceedings

16 before it in the interest of judicial economy. Landis v. North Am. Co., 299 U.S. 248, 254

17 (1936) (Power to stay is "incidental to the power inherent in every court to control the

18 disposition if the causes of action on its docket.") Staying proceedings is appropriate

19 when the interests of justice require it, the adjudication of a claim would be a waste of

20 judicial resources, and the plaintiff will not be substantially harmed by the stay. See

21 Hess v. Gray, 85 F.R.D. 15, 27 (N.D. Ill 1979).

22    These principles favor granting a stay of the United States' causes of action

23 brought against Defendants under the NMSA and the PSRPA. The damages being

24 sought by the United States under the NMSA and the PSRPA are the same damages

25 that the United States will seek to recover under OPA. Only a very small part of the

26 United States response costs will be for response activities in marine sanctuaries or

27 national parks. The damages for injury to natural resource within sanctuaries and

28 parks are being pursued by the NRDA trustees, under the OPA NRDA regulations.

DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S NOTICE OF MOTION AND
MOTION TO DISMISS AND STAY PROCEEDINGS – Case No. C 07 06045 (SC)

1 Defendants have advanced the U.S. Dept. of the Interior $500,000 to date to conduct this

2 assessment. (Walsh Decl., ¶¶ 5-6.)

3       Because OPA prohibits a double recovery for injuries to natural resources, 33

4 U.S.C. 2706(d)(3), the United States cannot pursue a claim for injury for these resources

5 under both OPA and non-OPA causes of action. Conversely, permitting the United

6 States to pursue its claims under the NMSA and the PSRPA will prejudice the

7 Defendants. Such a result will force the Defendants to expend time and resources

8 litigating their liability under three statutes when the pertinent issues can be resolved

9 under a single statute- OPA '90. Finally, a stay will save judicial resources. There is no

10 reason for the Court to judicially oversee claims that would otherwise resolve through

11 the OPA claims adjudication process.

12

13 **VI.  THE UNITED STATES' FORFEITURE ACTION UNDER THE NMSA**

14 **MUST BE DISMISSED BECAUSE THE COMPLAINT DOES NOT ALLEGE THE DEFENDANTS HAVE TAKEN OR RETAINED SANCTUARY RESOURCES.**

15       Courts must strictly construe forfeiture statutes against the government.

16 United States v. One 1992 Ford Mustang, 73 F. Supp. 2d 1131, 1131 (C.D. Cal.

17 1999)("Forfeiture is a harsh and oppressive procedure which is not favored by the

18 courts."); see also United States v. $191,910.00 in U.S. Currency, 16 F. 3d 1051, 1069

19 (9th Cir. 1994) (overruled on other grounds). Therefore, this Court must strictly

20 construe the NMSA's forfeiture section. In construing the NMSA's forfeiture section, the

21 starting point is the statute's language. United States v. One Parcel of Land In The

22 Name of Mikell, 33 F. 3d 11, 13 (5th Cir. 1994). If a statute's language makes Congress'

23 intent clear, "that is the end of the matter." Id.

24       The NMSA provides:

25

26     Any vessel (including the vessel's equipment, stores, and cargo) and other item used, *and any sanctuary resource taken*

27 *or retained,* in any manner, in connection with or as a result of any violation of this chapter or of any regulation or permit

28 issued under this chapter shall be subject to forfeiture to the

United States pursuant to a civil proceeding under this subsection…

16 U.S.C. § 1437(d)(1)(emphasis added).  The foregoing emphasized language demonstrates Congress' intent to permit vessel forfeiture under the NMSA only when a vessel is used to take or retain a sanctuary resource. [1]  This Court must strictly construe the statue to this effect.  If Congress intended the NMSA to permit vessel forfeiture for a violation of the NMSA that did *not* involve the taking or retention of a sanctuary resource, it would have used "or" instead of the above-emphasized "and."  However, Congress did not do so.  This Court must presume that "Congress chose its words with as much care as [the Court] brings to bear on the task of statutory interpretation."  United States v. BCCI Holdings (Luxembourg), S.A., 833 F. Supp. 17, 21 (D.D.C. 1993)(citation omitted).  Consequently, the United States must allege sanctuary resources were taken or retained in connection with or as a result of the COSCO BUSAN incident.  The United States fails to allege this essential element.  Therefore, the Defendants respectfully request that this Court dismiss the United States' NMSA forfeiture action.

Additional provisions of the NMSA's forfeiture section demonstrate that Congress contemplated vessel forfeiture only upon the taking or retention of a sanctuary resource.  Critically, the NMSA provides that for vessel forfeiture purposes, "there is a rebuttable presumption that *all sanctuary resources found on board* a vessel that is used…in connection with a violation of this chapter…were taken or retained in violation of this chapter…"  16 U.S.C. § 1437(d)(4)(emphasis added); see also 16 U.S.C. § 1437(d)(3)(disposal of sanctuary resources seized in connection with a vessel forfeiture).  Taken together with 16 U.S.C. § 1437(d)(1), these additional provisions establish an enforcement regime for addressing instances where sanctuary resources are taken or

---

[1] "Sanctuary resource" means any living or nonliving resource of a national marine sanctuary that contributes to the conservation, recreational, ecological, historical, research, educational, or aesthetic value of the sanctuary."  16 U.S.C. § 1432(8).

DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S NOTICE OF MOTION AND MOTION TO DISMISS AND STAY PROCEEDINGS – Case No. C 07 06045 (SC)

1   retained from designated marine sanctuaries.  The United States complaint does not

2   implicate this regime because it does not allege such conduct resulted from the COSCO

3   BUSAN incident or that the COSCO BUSAN was used to perpetrate such conduct.

4   Therefore, this Court should dismiss the Unites States' forfeiture action.

5        Finally, although the NMSA does not define what conduct results in the taking or

6   retention of a sanctuary resource, the NMSA's language demonstrates that Congress

7   intended such conduct to be something more than conduct resulting only in the

8   destruction, loss, or injury to sanctuary resources.  While such conduct alone supports

9   other forms of relief, e.g., civil penalties (see 16 U.S.C. §§ 1437(c)(1) & 1436(1)), *in rem*

10  liability (16 U.S.C. § 1443(2)) and injunctive relief (16 U.S.C. § 1437(i), the NMSA's

11  forfeiture section requires such conduct to occur *in connection* with or *result* in a

12  sanctuary resource being taken or retained.  See 16 U.S.C. §§ 1437(d)(1) & 1436(1).  In

13  other words, Congress intended conduct causing damage to, the loss of, or injury to a

14  sanctuary resource to permit vessel forfeiture only if such conduct occurred in connection

15  with or resulted in a *separate and distinct* event constituting the taking or retention of a

16  sanctuary resource.  Accordingly, the United States' allegation that "vessels used to

17  destroy and/or cause the loss and/or injure National Marine Sanctuaries...are subject to

18  forfeiture..." is insufficient to support its forfeiture action.  See Complaint ¶ 34.  The

19  Defendants respectfully request that this Court dismiss the United States' NMSA

20  forfeiture action.

21  **VII.   THERE IS NO ACTUAL CONTROVERSY UNDER THE DECLARATORY**
22  **         JUDGMENT ACT**

23       Plaintiff's fourth cause of action requests a declaratory judgment that Defendants

24  are liable for removal costs and damages resulting from the oil spill.  However, since

25  Defendants admit they are strictly liable to pay OPA response costs and damages, there

26  is no case or controversy for the Court to address.  Once again, Defendants reiterate that

27  they accepted the notice of designation months ago as the Responsible Party and have

28

DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S NOTICE OF MOTION AND
MOTION TO DISMISS AND STAY PROCEEDINGS – Case No. C 07 06045 (SC)

1  been funding the response and paying legitimate claims for damages resulting from the

2  oil spill.

3       The Declaratory Judgment Act authorizes federal courts to declare the rights and

4  other legal relations of parties when an actual controversy exists. 28 U.S.C. § 2201. The

5  Act provides that "in a case of actual controversy within its jurisdiction . . . any court of

6  the United States . . . may declare the rights and other legal relations of any interested

7  party seeking such declaration, whether or not further relief is or could be sought."

8  28 U.S.C. § 2201(a).  The "actual controversy" required by the Declaratory Judgment

9  Act is the same as the "case or controversy" requirement of Article III. <u>Societe de</u>

10 <u>Conditionnement en Aluminum v. Hunter Eng'g Co.</u>, 655 F.2d 938, 942 (9th Cir. 1981)

11 (citing <u>Aetna Life Ins. Co. v. Haworth</u>, 300 U.S. 227, 239-240 (1937)). "Issuing a

12 judgment in a case without an actual controversy is an advisory opinion, which is

13 prohibited by Article III of the United States Constitution." <u>Duhn Oil Tool, Inc. v.</u>

14 <u>Cooper Cameron Corp.</u>, 2007 WL 3335008, at *3 (E.D. Cal. Nov. 9, 2007). "[T]he facts

15 alleged, under all the circumstances, [must] show that there is a substantial controversy,

16 between parties having adverse legal interests, of sufficient immediacy and reality to

17 warrant the issuance of a declaratory judgment." <u>Maryland Casualty Co. v. Pacific Coal</u>

18 <u>& Oil Co.</u>, 312 U.S. 270, 273 (1941). "If a case is not ripe for review, then there is no case

19 or controversy." <u>Principal Life Ins., Co. v. Robinson</u>, 394 F.3d 665, 669 (9th Cir. 2005).

20 In this case, there is no actual case or controversy between the parties.  Consequently,

21 the Court cannot enter a declaratory judgment.

22      OPA provides that in an action to recover removal costs under OPA, "the Court

23 shall enter a declaratory judgment on liability for removal costs or damages that will be

24 binding on any subsequent action or actions to recover further removal costs or

25 damages." 33 U.S.C. § 2717(f)(2).  However, this provision is predicated upon an action

26 being filed to recover OPA removal costs, which cannot occur until the claims

27 presentation requirements of 33 U.S.C. § 2713 have been followed. As set out above, the

28

KYL_SF459913v2

DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S NOTICE OF MOTION AND
MOTION TO DISMISS AND STAY PROCEEDINGS – Case No. C 07 06045 (SC)

1    United States has not complied with these requirements.  Therefore, it cannot seek a

2    declaratory judgment under 33 U.S.C. § 2712(f)(2).

3    **VIII.  THIS COURT LACKS JURISDICTION TO DECIDE  WHETHER THE**
     **DEFENDANTS ARE ENTITLED TO LIMIT THEIR OPA LIABILITY**
4

5        Although not expressly set out in its Complaint, the Department of Justice has

6    advised that it wants to litigate Defendants' entitlement to limit their OPA liability

7    under 33 U.S.C. § 2704.    If the Court has subject matter jurisdiction over this issue,

8    then a decree by the Court that the Defendants are entitled to limit their OPA liability

9    would bind the United States, and require the NPFC to reimburse Defendants any funds

10   expended in response to the Cosco Busan incident above the limitation amount. This

11   could result in a liability against the Oil Spill Liability Trust Fund in the amount of tens

12   of millions of dollars.

13       This Court has no jurisdiction over the limitation issue.  The United States has

14   not waived its sovereign immunity with respect to such claims.   Moreover, the doctrine

15   of exhaustion of administrative remedies requires that the limitation issue first be

16   presented for determination by the NPFC. If a shipowner is aggrieved by a decision of

17   the NPFC, it may seek review of that decision under the Administrative Procedures Act.

18   5 U.S.C. §§ 701, *et seq.*  Finally, the doctrine of primary jurisdiction weighs in favor of

19   the Court deferring to the expertise of the NPFC with respect to the limitation issue.

20

21

22

23

24

25

26

27

28

KYL_SF459913v2

DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S NOTICE OF MOTION AND
MOTION TO DISMISS AND STAY PROCEEDINGS – Case No. C 07 06045 (SC)

**A.    The United States Has Not Waived Sovereign Immunity Under OPA '90**

The United States may not be sued unless federal legislation specifically authorizes the suit. <u>Hercules, Inc. v. United States</u>, 516 U.S. 417, 422 (1996); <u>Blackburn v. United States</u>, 100 F.3d 1426, 1429 (9th Cir. 1996). Only Congress can consent to suits against the United States, the Executive is powerless to waive the federal government's sovereign immunity. E. CHEMERINSKY, FEDERAL JURISDICTION, §9.2.1 (3d ed.1999). "A waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.'" <u>United States v. Mitchell</u>, 445 U.S. 535, 537–38 (1980) (citations omitted). "Any waiver of sovereign immunity is to be construed narrowly, with ambiguities resolved in favor of the government.   The natural consequence of the sovereign immunity principle is that the absence of consent by the United States is a fundamental defect that deprives the district court of subject matter jurisdiction." 14 CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 3654 (3d ed. 1998) (citing cases).

OPA '90 does not include a waiver of the United States' sovereign immunity. <u>See</u> <u>Int'l Marine Carriers v. Oil Spill Liability Trust Fund</u>, 903 F. Supp. 1097, at 1102 (S.D. Tex. 1994) (finding even if Responsible Party could assert jurisdiction under 33 U.S.C. § 2717(b), sovereign immunity precluded the court's review of Responsible Party's claims for limitation of liability). "Nothing in OPA [33 U.S.C. §§ 2712, 2713, or 2715] can be construed as a waiver of sovereign immunity . . . . These sections do not create, nor can this court imply, a right to sue the [OSLTF] directly." <u>Id.</u> at 1102.

Consistent with the <u>Int'l Marine Carriers</u> decision, the Department of Justice has maintained in other cases that a district court lacks jurisdiction to decide whether a shipowner is entitled to limit its liability under OPA. For example, in <u>Unocal v. United States</u>, a buried Unocal crude oil pipeline was breached during construction of a rail line, resulting in an oil discharge. After paying to clean up the costs of the pipeline, Unocal sought reimbursement of its costs from the NPFC. When the NPFC denied the claim,

DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S NOTICE OF MOTION AND MOTION TO DISMISS AND STAY PROCEEDINGS – Case No. C 07 06045 (SC)

1    Unocal sued the United States in the United States District Court for the District of

2    Central California.  The United States moved to dismiss Unocal's claims, on the grounds

3    that the Court lacked subject matter jurisdiction to order the NPFC to reimburse

4    Unocal.  The Court ruled for the United States.  Copies of the United States motion

5    papers and the Court's order in the Unocal case are attached as Exhibits C-D to the

6    Walsh Declaration filed concurrently with the Motion.

7        OPA does not say that a responsible party can sue in federal court to obtain a

8    decree establishing its right to seek reimbursement from the OSLTF.   Instead, it says

9    that if a responsible party pays more than its OPA limitation amount, it can present a

10   claim for reimbursement to the NPFC.  33 U.S.C. §§ 2708 & 2713(b).  If the NPFC denies

11   the claim, the responsible party can seek review under the APA. See International

12   Marine Carriers, 903 F.Supp. at 1102; Gatlin Oil Co. v. United States, 169 F.3d 207 (4th

13   Cir. 1999); Water Quality Insurance Syndicate v. United States, 522 F.Supp.2d 220

14   (D.D.C. 2007); Apex Oil Co. v. United States, 208 F.Supp.2d 642, 2002 A.M.C. 493 (E.D.

15   La 2002); Smith Property Holdings, 4411 Connecticut L.L.C. v. United States, 311

16   F.Supp.2d 69 (D.D.C 2004).

17       The attempt by the United States to raise the limitation issue in this suit is

18   inconsistent with the plain language of OPA, with the position taken by the United

19   States in previous cases, and with the process followed by responsible parties and the

20   NPFC in the cases cited in the preceding paragraph.  Defendants are aware of no legal

21   authority that suggests the Court has jurisdiction over the limitation issue.  An order

22   declaring that the Defendants are entitled to limit their liability would be tantamount to

23   an order directing the NPFC to reimburse the Defendants for amounts expended above

24   the limitation amount.  Congress, in OPA, directed that such reimbursement claims be

25   presented to the NPFC, which administers the OSLTF.  Consequently, this Court lacks

26   subject matter jurisdiction over the OPA limitation issues, and should dismiss the

27   Complaint to the extent it raises the limitation issue.

28

KYL_SF459913v2
DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S NOTICE OF MOTION AND
MOTION TO DISMISS AND STAY PROCEEDINGS – Case No. C 07 06045 (SC)

**B.    Defendants Have Not Exhausted Their Administrative Remedies Before The NPFC**

This Court should not address the limitation issue because the Defendants have not yet exhausted their administrative remedies.  OPA '90 and the NPFC's regulations require Defendants to first present their claims for limitation of liability under OPA '90 to the NPFC.

The doctrine of exhaustion of administrative remedies provides "that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." Moncrief v. United States., 43 Fed. Cl. 276, 284 (1999) (granting defendant's motion to dismiss because plaintiff failed to exhaust administrative remedy)(citations omitted).  "Exhaustion is required to serve the purposes of protecting administrative agency authority and promoting judicial efficiency." Id. (citations omitted).    The Supreme Court of the United States has stated:

> [t]he agency, like a trial court, is created for the purpose of applying a statute in the first instance. Accordingly, it is normally desirable to let the agency develop the necessary factual background upon which decisions should be based. And since agency decisions are frequently of a discretionary nature or frequently require expertise, the agency should be given the first chance to exercise that discretion or to apply that expertise.

Moncrief, 43 Fed. Cl. at 284 (citing McKart v. United States, 395 U.S. 185, 193 (1969). "An agency's effectiveness may also be weakened if people are encouraged to ignore its procedures by the allowance of 'frequent and deliberate flouting of the administrative process.'" Moncrief, 43 Fed. Cl. at 284 (citing McKart, 395 U.S. at 195). While failure to exhaust administrative remedies does not deprive a federal court of jurisdiction when an exhaustion statute is "merely a codification of the exhaustion requirement . . . ," federal courts should still require compliance with an exhaustion statute unless the suit alleges a constitutional claim.  McBride Cotton and Cattle Corp. v. Veneman, 290 F.3d 973, 978-980 (9th Cir. 2002).

KYL SF459913v2

1    The only avenue available to a Responsible Party seeking reimbursement from the

2    OSLTF for costs in excess of its liability limitation under OPA '90 is to present a claim to

3    the NPFC. 33 U.S.C. § 2708. OPA conveys no right for either the Responsible Party or

4    the United States to raise the limitation issue in federal court in the first instance.

5    Instead, OPA '90 provides that a Responsible Party who is entitled to a limitation of

6    liability under 33 U.S.C. § 2404, "may assert a claim for removal costs and damages

7    under [33 U.S.C. § 2713]." See 33 U.S.C. §§ 2708(2) & 2713(b)(1)(B). At 33 C.F.R.

8    §§ 136.1 through 136.313, the NPFC has promulgated regulations governing the

9    "[p]resentation, filing, processing, settlement, *and adjudication* of claims authorized to

10   be presented to the [OSLTF]." 33 C.F.R. § 136.1(a)(1) (emphasis added). The NPFC

11   routinely determines claims by responsible parties for reimbursement of amounts

12   expended in excess of their OPA limits on liability. See e.g. In re Kuroshima Shipping

13   Act of God and Limitation of Liability Analysis, 2003 AMC 1681 (Nat'l Pollution Funds

14   Center 2003). If a Responsible Party's claim for reimbursement is denied by the NPFC,

15   the Responsible Party can seek judicial review of the NPFC's decision under the

16   Administrative Procedure Act. See e.g., Water Quality Insurance Syndicate v. United

17   States, 522 F.Supp.2d 220 (D.D.C. 2007).

18        Under this statutory and regulatory scheme, it is clear that Defendants must first

19   present their claims for reimbursement to the NPFC, and exhaust their remedies with

20   that agency, before seeking judicial review. The NPFC, as a branch of the United

21   States Coast Guard, has the necessary expertise to adjudicate responsible parties' claims

22   for reimbursement from the OSLTF for costs in excess of their liability limitation under

23   OPA. With regard to such claims, there are several issues that the NPFC is better

24   suited to resolve than a district court. For example, in order for a Responsible Party to

25   establish a right to limit its liability under OPA, the NPFC must determine whether the

26   incident causing the discharge was the result of the violation of Coast Guard

27   regulations, gross negligence, or willful misconduct. See 33 § U.S.C. 2704(c). It must

28   also determine whether the actions taken by the Responsible Party were necessary to

1    prevent, minimize, or mitigate the effects of an oil spill, that removal costs were incurred

2    as a result of these actions, that the Responsible Party provided reasonable cooperation

3    and assistance in a removal, and that the actions taken were consistent with the

4    National Contingency Plan or directed by the Federal On-Scene Coordinator. See 33

5    C.F.R. § 136.203.

6        Consequently, the NPFC should be given the first opportunity to hear any and all

7    of Defendants claims for reimbursement from the OSLTF for costs in excess of their

8    liability limitation under OPA '90.

9    **C.    Alternatively, This Court Should Abstain From Addressing The**
         **Limitation Issue Under The Primary Jurisdiction Doctrine**
10

11       Under the doctrine of primary jurisdiction, "courts may, under appropriate

12   circumstances, determine that the initial decision making responsibility should be

13   performed by the relevant agency rather than the courts." Syntek Semiconductor Co.

14   Ltd. v. Microchip Tech. Inc., 307 F.3d 775, 780–81 (9th Cir. 2002). Although primary

15   jurisdiction does not implicate the federal courts' subject matter jurisdiction, it "is

16   properly invoked when a claim, even though cognizable in federal court, requires

17   resolution of an issue of first impression or of a complicated issue committed to a

18   regulatory agency by Congress." Id. at 780–81 (citations omitted). Primary jurisdiction

19   "is committed to sound discretion of the court when 'protection of the integrity of a

20   regulatory scheme dictates preliminary resort to the agency which administers the

21   scheme.'" Id. at 781 (citations omitted). A court's invocation of the primary jurisdiction

22   doctrine does not deprive it of jurisdiction- rather it imposes a stay on the litigation or

23   dismisses the litigation without prejudice. See Id. at 782.

24       A court may properly invoke primary jurisdiction in suits initiated by the United

25   States. In Far East Conference v. United States, the United States filed suit in a district

26   court to enjoin what it alleged to be defendant's violations of the SHERMAN ANTITRUST

27   ACT. 342 U.S. 570, 571 (1952). The defendant moved to dismiss the United States' suit

28   on the ground that the "nature of the issues require that resort must first be had to the

DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S NOTICE OF MOTION AND
MOTION TO DISMISS AND STAY PROCEEDINGS – Case No. C 07 06045 (SC)

1  Federal Maritime Board before a District Court could adjudicate the Government's

2  complaint." Id. at 572.  In concluding the Federal Maritime Board should hear the

3  issues before the District Court, the Court observed:

4           . . . [I]n cases raising issues of fact not within the conventional
            experience of judges or cases requiring the exercise of

5           administrative discretion, agencies created by Congress for
            regulating the subject matter should not be passed over. . . .

6           Uniformity and consistency in the regulation of business
            entrusted to a particular agency are secured, and the limited

7           functions of review by the judiciary are more rationally
            exercised, by preliminary resort for ascertaining and

8           interpreting the circumstances underlying legal issues to
            agencies that are better equipped than courts by

9           specialization, by insight gained through experience, and by
            more flexible procedure.

10

11

12  Id. at 574-75.

13        Factors traditionally considered by courts in determining whether to invoke

14  primary jurisdiction include: "(1) the need to resolve an issue that (2) has been placed by

15  Congress within the jurisdiction of an administrative body having regulatory authority

16  (3) pursuant to a statute that subjects an industry or activity to a comprehensive

17  regulatory authority that (4) requires expertise or uniformity in administration."

18  Syntek, 307 F.3d at 781 (citations omitted).

19        Pursuant to the doctrine of primary jurisdiction, this Court should dismiss

20  without prejudice or stay the United States' action against Defendants.  First, resolving

21  limitations of liability under OPA and administering claims for reimbursement from the

22  OSLTF are complicated issues which have been placed within the NPFC's jurisdiction by

23  Congress.  Second, the NPFC has jurisdiction over these issues pursuant to OPA and its

24  own regulations- a statutory and regulatory scheme that subjects the activity of oil spill

25  response to comprehensive regulation.  See 33 C.F.R. §§ 2701–2762; see also 33 C.F.R.

26  §§ 136.1–136.313.  Finally, as noted above, these issues require the NPFC's expertise

27  and uniformity in administration.  See 33 C.F.R. § 136(a)(1).  Therefore, even if the

28  Court determines that the United States' action against Defendants is within its

KYL_SF459913v2

DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S NOTICE OF MOTION AND
MOTION TO DISMISS AND STAY PROCEEDINGS – Case No. C 07 06045 (SC)

1   jurisdiction, it should still dismiss without prejudice or stay the action since all of the

2   factors supporting this Court's invoking the primary jurisdiction of the NPFC are

3   present.

4

5   **IX.     CONCLUSION**

6          For the foregoing reasons, Defendants respectfully request that the Court dismiss

7   the United States OPA and non-OPA claims, or stay them until an actual controversy

8   within the Court's jurisdiction arises.

9

10  DATED:  March 21, 2008                    /s/ John Giffin
                                              JOHN D. GIFFIN
11                                            JOSEPH A. WALSH
                                              JOHN COX
12                                            DAVID A. TONG
                                              Attorneys for Defendants REGAL STONE,
13                                            LTD. and FLEET MANAGEMENT, LTD.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                                    KYL_SF459913v2
DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S NOTICE OF MOTION AND
MOTION TO DISMISS AND STAY PROCEEDINGS – Case No. C 07 06045 (SC)