1  JOHN D. GIFFIN, CASB NO. 89608
   john.giffin@kyl.com
2  JOSEPH A. WALSH, II, CASB No. 143694
   joe.walsh@kyl.com
3  JOHN COX, CASB NO. 197687
   john.cox@kyl.com
4  DAVID TONG, CASB NO. 238971
   david.tong@kyl.com
5  KEESAL, YOUNG & LOGAN
   A Professional Corporation
6  Four Embarcadero Center
   Suite 1500
7  San Francisco, California 94111
8  Telephone:    (415) 398-6000
   Facsimile:    (415) 981-0136
9

10

11 Attorneys for Defendants
   REGAL STONE, LTD. and FLEET MANAGEMENT, LTD.

12

13                **UNITED STATES DISTRICT COURT**

14

15                **NORTHERN DISTRICT CALIFORNIA**

16

17 UNITED STATES OF AMERICA,                )  Case No. C 07 06045 (SC)
                                            )
18                      Plaintiff,          )  **DEFENDANTS REGAL STONE LTD.**
                                            )  **AND FLEET MANAGEMENT, LTD.'S**
19              vs.                         )  **NOTICE OF MOTION AND MOTION**
                                            )  **TO DISMISS, OR IN THE**
20 M/V COSCO BUSAN, LR/IMO Ship. No.        )  **ALTERNATIVE, STAY**
   9231743 her engines, apparel, electronics,)  **PROCEEDINGS**
21 tackle, boats, appurtenances, etc., *in rem*,)  **[FRCP 12(b)(1)]**
   THE SHIPOWNERS' INSURANCE &              )
22 GUARANTY COMPANY LTD., REGAL             )  **Date:        May 9, 2008**
   STONE, LIMITED, FLEET                    )  **Time:        10:00 a.m.**
23 MANAGEMENT LTD., and JOHN COTA,          )  **Dept.:       1**
   *in personam*,                           )  **(The Honorable Samuel**
24                                          )  **Conti)**
                        Defendants.         )
25                                          )
                                            )
26 _____ )

27

28
                                                        KYL_SF461102

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................1

II.     APPLICABLE LAW GOVERNING MOTIONS TO DISMISS FOR LACK OF
        JURISDICTION. .......................................................................................................2

III.    RELEVANT FACTS..................................................................................................3

IV.     OIL POLLUTION ACT OF 1990 .............................................................................5

V.      THE UNITED STATES CLAIMS FOR REMOVAL COSTS AND DAMAGES
        MUST BE DISMISSED UNTIL THE UNITED STATES COMPLIES WITH OPA'S
        CLAIMS PRESENTATION REQUIREMENTS. ......................................................8

        A.    The Presentation Requirement Of The Oil Pollution Act Of 1990 Requires
              Dismissal Of All Claims For Removal Costs Or Damages.................................8

        B.    The Presentation Requirement Applies To Claims For Removal Costs And
              Damages Under The NMSA And The PSRPA ...................................................9

        C.    In The Alternative, The Court Should Stay The Case With Respect To The
              Non-OPA Causes Of Action ............................................................................11

VI.     THE UNITED STATES' FORFEITURE ACTION UNDER THE NMSA MUST BE
        DISMISSED BECAUSE THE COMPLAINT DOES NOT ALLEGE THE
        DEFENDANTS HAVE TAKEN OR RETAINED SANCTUARY RESOURCES. ........12

VII.    THERE IS NO ACTUAL CONTROVERSY UNDER THE DECLARATORY
        JUDGMENT ACT....................................................................................................14

VIII.   PLAINTIFF'S CLAIM FOR CIVIL PENALTIES IS INSUFFICIENTLY PLED AND
        IS NOT RIPE FOR ADJUDICATION ....................................................................15

        A.    The Government Failed To Properly Plead A Claim For Civil Penalties Under
              The CWA............................................................................................................15

        B.    The Government's Claim For Civil Penalties Under The CWA Is Not
              Justiciable ........................................................................................................17

        C.    In The Alternative The Government's CWA Cause Of Action Must Be Stayed..17

IX.     THIS COURT LACKS JURISDICTION TO DECIDE  WHETHER THE
        DEFENDANTS ARE ENTITLED TO LIMIT THEIR OPA LIABILITY ......................18

        A.    The United States Has Not Waived Sovereign Immunity Under OPA '90...........18

        B.    Defendants Have Not Exhausted Their Administrative Remedies Before The
              NPFC ................................................................................................................20

        C.    Alternatively, This Court Should Abstain From Addressing The Limitation
              Issue Under The Primary Jurisdiction Doctrine .................................................22

X.      CONCLUSION........................................................................................................24

KYL_SF461102

DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S NOTICE OF MOTION AND MOTION
TO DISMISS AND STAY PROCEEDINGS – Case No. C 07 06045 (SC)

1

## TABLE OF AUTHORITIES

2

3

### Cases

4   Aetna Life Ins. Co. v. Haworth,
        300 U.S. 227 (1937) ............................................................................................... 14

5

6   Apex Oil Co. v. United States,
        208 F.Supp.2d 642 A.M.C. 493 (E.D. La 2002) ............................................................ 20

7   Assoc. of Am. Med. Colleges v. United States,

8       217 F. 3d 770 (9th Cir. 2000) ..................................................................................... 3

9   Bautista v. Los Angeles County,
        216 F. 3d 837 (9th Cir. 2000) ..................................................................................... 16

10

11  Blackburn v. United States,
        100 F.3d 1426 (9th Cir. 1996) ..................................................................................... 18

12  Boca Ciega Hotel Inc. v. Bouchard Trans. Co., Inc.,

13      51 F.3d 235 (11th Cir. 1995) ..................................................................................... 6, 9

14  Connolly v. United States,
        149 F.2d 666 (9th Cir. 1945) ..................................................................................... 16

15

16  Duhn Oil Tool, Inc. v. Cooper Cameron Corp.,
        2007 WL 3335008, at *3 (E.D. Cal. Nov. 9, 2007) ...................................................... 15

17  Far East Conference v. United States ..................................................................................... 22

18  Gatlin Oil Co. v. United States,

19      169 F.3d 207 (4th Cir. 1999) ..................................................................................... 19

20  Hercules, Inc. v. United States, 516 U.S. 417 (1996) .......................................................... 18

21  Hess v. Gray,
        85 F.R.D. 15 (N.D. Ill 1979) ..................................................................................... 11

22

23  Int'l Marine Carriers,
        903 F. Supp. 1097 (S.D. Tex. 1994) ............................................................................ 19

24  Johnson v. Colonial Pipeline Co.,

25      830 F. Supp. 309 (E.D. Va 1993) .............................................................................. 8, 9

26  Kokkonen v. Guardian Life Ins. Co.,
        511 U.S. 375 (1994) ..................................................................................... 3

27

28  Landis v. North Am. Co.,
        299 U.S. 248 (1936) ..................................................................................... 11

KYL SF461102

DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S NOTICE OF MOTION AND MOTION
TO DISMISS AND STAY PROCEEDINGS – Case No. C 07 06045 (SC)

Marathon Pipeline Co. v. LaRoche Industries,
    944 F.Supp 476 (E.D. La 1996)................................................................... 9

Maryland Casualty Co. v. Pacific Coal & Oil Co.,
    312 U.S. 270 (1941) ................................................................................... 15

Matter of Oswego Barge Corp.,
    664 F.2d 327 (2d Cir. 1981) ......................................................................... 5

McBride Cotton and Cattle Corp. v. Veneman,
    290 F.3d 973 (9th Cir. 2002) ...................................................................... 21

McKart v. United States,
    395 U.S. 185 (1969) ............................................................................ 20, 21

Moncrief v. United States.,
    43 Fed. Cl. 276 (1999) ........................................................................ 20, 21

Principal Life Ins., Co. v. Robinson,
    394 F.3d 665 (9th Cir. 2005) ...................................................................... 15

Rio Properties, Inc. v. Rio Int'l Interlink,
    284 F.3d 1007 (9th Cir. 2002) ..................................................................... 2

Safe Air for Everyone v. Meyer,
    373 F. 3d 1035 (9th Cir. 2004) .................................................................... 3

Sherman Antitrust Act.  342 U.S. 570, 571 (1952) ........................................ 22

Smith v. McCullough,
    270 U.S. 456 (1926) .................................................................................... 3

Societe de Conditionnement en Aluminum v. Hunter Eng'g Co.,
    655 F.2d 938 (9th Cir. 1981) .................................................................... 14

Steuart Trans. Co. v. Allied Towing Corp.,
    596 F.2d 609 (4th Cir. 1979) ....................................................................... 5

Stock West, Inc. v. Confederated Tribes of the Colville Reservation,
    873 F.2d 1221 (9th Cir. 1989) ..................................................................... 3

Syntek Semiconductor Co. Ltd. v. Microchip Tech, Inc.,
    307 F.3d 775 (9th Cir. 2002) ...................................................................... 22

Tosco Corp. v. Communities for a Better Env't,
    236 F.3d 495 (9th Cir. 2001) ....................................................................... 3

United States v. $191,910.00 in U.S. Currency,
    16 F. 3d 1051 (9th Cir. 1994) .................................................................... 12

KYL SF461102

United States v. BCCI Holdings (Luxembourg), S.A.,
  833 F. Supp. 17 (D.D.C. 1993)........................................................................ 13

United States v. Dixie Carriers,
  736 F.2d 180 (5th Cir. 1980) ........................................................................... 5

United States v. M/V BIG SAM,
  681 F.2d 432 (5th Cir.1982) ............................................................................ 5

United States v. Mitchell,
  445 U.S. 535 (1980) ....................................................................................... 18

United States v. One 1992 Ford Mustang,
  73 F. Supp. 2d 1131(C.D. Cal. 1999) ............................................................ 12

United States v. One Parcel of Land In The Name of Mikell,
  33 F. 3d 11 (5th Cir. 1994) ............................................................................ 12

Unocal Corp. v. U.S.,
  222 F.3d 528 (9th Cir. 2000) ..................................................................... 7, 19

Water Quality Insurance Syndicate v. United States,
  522 F.Supp.2d 220 (D.D.C. 2007)........................................................... 19, 21

**Statutes**

15 C.F.R. § 990 ................................................................................................... 4

16 U.S.C. § 1437(d)(1) ........................................................................... 12, 13, 14

16 U.S.C. § 1437(d)(3) ....................................................................................... 13

16 U.S.C. § 1437(d)(4) ....................................................................................... 13

16 U.S.C. § 1437(i) ............................................................................................ 14

16 U.S.C. § 1443 ........................................................................................... 10, 14

16 U.S.C. § 19jj(b) ............................................................................................. 10

16 U.S.C. § 19jj(c) ............................................................................................. 10

16 U.S.C. §§ 1437(c)(1) & 1436(1) ................................................................... 14

25 U.S.C. 179 .................................................................................................... 16

28 U.S.C. § 2201 ............................................................................................... 14

28 U.S.C. § 2201(a) ........................................................................................... 14

33 § U.S.C. 2704(c) ........................................................................................... 22

KYL_SF461102

33 C.F.R. § 136(a)(1) ................................................................................................ 23

33 C.F.R. § 136.1(a)(1) ............................................................................................. 21

33 C.F.R. § 136.115(d) ............................................................................................... 8

33 C.F.R. § 136.203 .................................................................................................. 22

33 C.F.R. §§ 136.1 through 136.313 ......................................................................... 21

33 C.F.R. §§ 136.1–136.313 ..................................................................................... 23

33 C.F.R. §§ 2701–2762 ........................................................................................... 23

33 U.S.C.  § 2702(a) & (b)(1) ................................................................................... 10

33 U.S.C. § 2404 ...................................................................................................... 21

33 U.S.C. § 2701(14) .................................................................................................. 9

33 U.S.C. § 2701(3) .................................................................................................... 9

33 U.S.C. § 2701(30) & (31) .................................................................................... 10

33 U.S.C. § 2702(b)(2) ............................................................................................. 10

33 U.S.C. § 2704 .................................................................................................. 6, 18

33 U.S.C. § 2706(e)(2) ............................................................................................... 4

33 U.S.C. § 2708 ........................................................................................... 7, 19, 21

33 U.S.C. § 2712(a)(4) ............................................................................................... 6

33 U.S.C. § 2712(f)(2) ............................................................................................. 15

33 U.S.C. § 2713 ............................................................................................... passim

33 U.S.C. § 2713(a) & (c) ......................................................................................... 6

33 U.S.C. § 2714 ........................................................................................................ 6

33 U.S.C. § 2717(b) ................................................................................................. 19

33 U.S.C. § 2717(f)(2) ............................................................................................. 15

33 U.S.C. § 2718(c) ................................................................................................. 11

33 U.S.C. §§ 2703(c) & 2704(c) ............................................................................... 7

33 U.S.C. §§ 2705, 2714(b)(2) .................................................................................. 6

KYL_SF461102
DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S NOTICE OF MOTION AND MOTION
TO DISMISS AND STAY PROCEEDINGS – Case No. C 07 06045 (SC)

33 U.S.C. §§ 2708 & 2713(b) ................................................................................ 19

33 U.S.C. §§ 2708(2) & 2713(b)(1)(B) ................................................................. 21

33 U.S.C. §§ 2708, 2713(b)(1)(B) .......................................................................... 7

33 U.S.C. §§ 2712(f), 2715 ...................................................................................... 6

33 U.S.C. §§ 2712, 2713, or 2715 ........................................................................ 19

33 U.S.C. §2702 ........................................................................................................ 6

33 U.S.C. 1321 (b)(8) .............................................................................................. 17

5 U.S.C. §§ 701, *et seq.* ..................................................................................... 8, 18

In re Kuroshima Shipping Act of God and Limitation of Liability Analysis, 2003 AMC 1681 (Nat'l
    Pollution Funds Center 2003) ......................................................................... 21

section 1321(b)(7) .................................................................................................... 17

Section 1321(b)(7) .................................................................................................... 16

Smith Property Holdings, 4411 Connecticut L.L.C. v. United States,
    311 F.Supp.2d 69 (D.D.C 2004) ...................................................................... 20

the Clean Water Act ("CWA"), 33 U.S.C. 1321 (b)(7) .................................... 15

United States v. Barge Shamrock,
    635 F.2d 1108 (4th Cir. 1980) .......................................................................... 17

**Other Authorities**

135 Cong. Rec. H7954-H7978 (daily ed. Nov. 2, 1989) ....................................... 6

14 Charles Alan Wright, et al., Federal Practice and Procedure § 3654 (3d ed. 1998) ......................... 19

5 Wright & Miller § 1202, at 94, 95 .................................................................... 16

Bell Atlantic Corp. v. Twombly,
    127 S. Ct. 1955 (2007) ...................................................................................... 16

E. Chemerinsky, Federal Jurisdiction, §9.2.1 (3d ed.1999) ............................... 18

Oil Spill Liability and Compensation: Hearing Before the Subcomm. On Water Resources of the
    Comm. On Public Works and Transp., H. of Rep., 101st Cong. 78 (1989) ....................... 5

**Rules**

KYL SF461102

DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S NOTICE OF MOTION AND MOTION
TO DISMISS AND STAY PROCEEDINGS – Case No. C 07 06045 (SC)

1   FRCP 1321(b)(8) ................................................................................................ 17

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KYL_SF461102
DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S NOTICE OF MOTION AND MOTION
TO DISMISS AND STAY PROCEEDINGS – Case No. C 07 06045 (SC)

1  **TO ALL PARTIES TO THIS ACTION AND THEIR ATTORNEY(S) OF RECORD:**

2       NOTICE IS HEREBY GIVEN that on May 9, 2008 at 10:00 a.m. in Courtroom 1 of the

3  above-entitled Court, the Honorable Samuel Conti presiding, Defendants REGAL STONE, LTD. and

4  FLEET MANAGEMENT, LTD. ("Defendants") will move to dismiss, or in the alternative to stay,

5  proceedings pursuant to the Federal Rules of Civil Procedure, Rule 12(b) 1, on all causes of action

6  against Defendants contained in Plaintiff UNITED STATES OF AMERICA's ("Plaintiff") Complaint

7  on file herein.

8       This Motion will be based upon this Notice of Motion and Motion to Dismiss and Stay

9  Proceedings, the accompanying Memorandum of Points and Authorities, the Declarations of Cynthia

10  Hudson, K. Tim Perkins and Joseph A. Walsh II and all Exhibits attached thereto, the complete files

11  and records of this action, and such other oral and documentary evidence as may be introduced at the

12  hearing of this matter.

13  **I.    INTRODUCTION**

14       Defendants REGAL STONE, LTD. and FLEET MANAGEMENT, LTD. ("Defendants")

15  move to dismiss the United States' claims for removal costs and damages, on the grounds that the

16  Court lacks subject matter jurisdiction.  The Court lacks subject matter jurisdiction because the United

17  States has ignored the Oil Pollution Act's ("OPA") mandatory claims presentation requirement. OPA

18  requires the United States to submit detailed invoices for its removal costs and damages, and to allow

19  Defendants 90 days to pay those invoices, before filing suit.  Until the United States complies with

20  these provisions, the Court lacks jurisdiction to hear its claims for removal costs and damages.

21       Counts One and Five of the complaint seek recovery of the United States' removal costs and

22  damages under the National Marine Sanctuaries Act ("NMSA") and the Park System Resource and

23  Protection Act ("PSRPA").  However, the damages recoverable under those statutes are identical to

24  those recoverable under OPA.  Trustee agencies of the United States and the State of California have

25  begun a multi-year, natural resource damage assessment ("NRDA") process that includes an

26  assessment of injuries to resources within marine sanctuaries and parks resulting from the Cosco

27  Busan incident.  They will be seeking compensation for any such injuries under OPA, once the NRDA

28  process is complete.  Because the United States is seeking recovery for damages to marine sanctuaries

KYL_SF461102
DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S NOTICE OF MOTION AND MOTION
TO DISMISS AND STAY PROCEEDINGS – Case No. C 07 06045 (SC)

1  and national parks under the PSRPA, the NMSA, and OPA, OPA's claims presentation requirement
2  applies to these claims.

3      Count Six seeks civil penalties under the Clean Water Act. However, the government has
4  failed to properly plead this claim. Moreover, the claim is not ripe for adjudication at this time. Even
5  if the claim were properly pled and justiciable, which it is not, it should be stayed pending completion
6  of the ongoing natural resource damage assessment between the Responsible Party and the various
7  trustees including the United States.

8      Defendants also move to dismiss the United States' claim seeking a declaration that
9  Defendants are liable for all removal costs and damages, because Defendants have already
10  acknowledged they are strictly liable to pay for removal costs and damages resulting from the COSCO
11  BUSAN incident. Given this situation, there is no case or controversy for the court to address.

12      The United States has advised that it will ask the Court to rule on whether Defendants are
13  entitled to partial reimbursement of some of their OPA liabilities from the Oil Spill Liability Trust
14  Fund (OSLTF). OPA allows a ship owner to seek such reimbursement from the OSLTF in some
15  cases. If the Court ruled in Defendants favor on this issue, it would obligate the OSLTF to pay
16  Defendants tens of millions of dollars. However, the issue is not within the Court's subject matter
17  jurisdiction. OPA does not waive the sovereign immunity of the United States, or confer jurisdiction
18  on this Court to rule on whether Defendants are eligible for partial reimbursement from the OSLTF.
19  Instead, OPA provides that such claims for reimbursement should be submitted to the National
20  Pollution Funds Center ("NPFC"), a division of the Coast Guard that administers the OSLTF. The
21  doctrines of sovereign immunity, exhaustion of administrative remedies, and primary jurisdiction all
22  require the court to dismiss any claims relating to this issue.

23

24  **II.    APPLICABLE LAW GOVERNING MOTIONS TO DISMISS FOR LACK OF**
       **JURISDICTION.**
25

26      On a motion to dismiss for lack of jurisdiction, the plaintiff bears the burden of establishing
27  that jurisdiction exists. Rio Properties, Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1019 (9th Cir. 2002).
28  Unless a plaintiff can prove otherwise, a federal court must presume an action lies outside of its

DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S NOTICE OF MOTION AND MOTION
TO DISMISS AND STAY PROCEEDINGS – Case No. C 07 06045 (SC)

1 jurisdiction. <u>See</u>, <u>Kokkonen v. Guardian Life Ins. Co.</u>, 511 U.S. 375, 377 (1994); <u>see also</u>, <u>Stock</u>

2 <u>West, Inc. v. Confederated Tribes of the Colville Reservation</u>, 873 F.2d 1221, 1225 (9th Cir. 1989).

3 "A plaintiff suing in federal court must show in his pleading, affirmatively and distinctly, the

4 existence of whatever is essential to federal jurisdiction, and, if he does not do so, the court, on having

5 the defect called to its attention or on discovering the same, must dismiss the case, unless the defect be

6 corrected by amendment." <u>Smith v. McCullough</u>, 270 U.S. 456, 459 (1926); <u>Tosco Corp. v.</u>

7 <u>Communities for a Better Env't</u>, 236 F.3d 495, 499 (9th Cir. 2001).

8     A party moving to dismiss for lack of subject matter jurisdiction may submit "affidavits or any

9 other evidence properly before the court. * * * It then becomes necessary for the party opposing the

10 motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that

11 the court, in fact, possesses subject matter jurisdiction." <u>Assoc. of Am. Med. Colleges v. United</u>

12 <u>States</u>, 217 F. 3d 770, 778 (9th Cir. 2000); <u>Safe Air for Everyone v. Meyer</u>, 373 F. 3d 1035, 1038 (9th

13 Cir. 2004).

14 **III.    RELEVANT FACTS**

15     On November 7, 2007, the COSCO BUSAN discharged approximately 53,000 gallons of

16 bunker fuel into San Francisco Bay. (Declaration of K. Tim Perkins ("Perkins Decl.").) Defendants

17 immediately took responsibility for the oil spill cleanup and accepted liability for settling claims for

18 damages resulting from the oil spill. (<u>Id.</u>) They have paid in excess of $40 million to date in clean up

19 costs, and have cooperated and participated within the Unified Command System to respond to the

20 spill. (<u>Id.</u>) They continue to pay the costs for the clean up of the oil and are now participating in a

21 cooperative assessment of damage to natural resources resulting from the spill. (Perkins Decl.;

22 Declaration of Cynthia Hudson ("Hudson Decl."); Declaration of Gary Mauseth ("Mauseth Decl.").)

23     On November 8, 2007, the California Department of Fish and Game Office of Spill Prevention

24 and Response designated Regal Stone Limited as the Responsible Party pursuant to California

25 Government Code section 8670.51.1(a)(1). (Perkins Decl., Exhibit A.) On November 9, 2007, the

26 United States Coast Guard issued a similar designation and notice pursuant to the OPA. (<u>Id.</u>) Both

27 notices required the Responsible Party to widely advertise the manner in which claims arising from

28 the incident would be accepted and paid. (<u>Id.</u>)

DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S NOTICE OF MOTION AND MOTION
TO DISMISS AND STAY PROCEEDINGS – Case No. C 07 06045 (SC)

1    Defendants have not contested these notices of designation. (Perkins Decl., ¶ 5.)  On

2  November 10, 2007, Hudson Marine Management Services ("HMMS") set up a claims center and

3  widely advertised the claims handling process with advertisements in local media, the internet, and by

4  posting fliers at relevant marinas and other locations.  (Hudson Decl., ¶ 4.)  Thereafter, HMMS began

5  processing and paying claims. (Id.)  The normal practice following a spill is for the United States to

6  issue invoices to the Responsible Party for its response costs. (Perkins Decl., ¶ 7; Hudson Decl., ¶ 6.)

7  The responsible party then reimburses the United States for its costs.  (Id.)  To date, only five claims

8  have been received from the United States.  (Hudson Decl., ¶ 6.)  Three have been settled and two are

9  pending.  (Id.)  The pending claims are less than 90 days old.  (Id.)

10    On November 30, the United States filed this action.  It filed the action because it claimed it

11  needed security for its claims against the COSCO BUSAN.  However, it is not necessary to institute a

12  lawsuit to obtain such security, and it is standard practice for insurers of vessels such as the COSCO

13  BUSAN to issue security when it is requested, without first requiring that a lawsuit be filed.  (Federal

14  Rules of Civil Procedure, Supplemental Rule E; Declaration of Joseph A. Walsh ("Walsh Decl.") ¶ 2.)

15  The insurer for the Defendants in this case provided the United States security for its claims in the

16  amount of $79,500,000.00.  (Walsh Decl., Exhibit A.)

17    Agencies of the United States and the State of California, with jurisdiction over the natural

18  resources impacted by the COSCO BUSAN oil spill ("Trustee Agencies"), have commenced a

19  cooperative natural resource damages assessment ("NRDA") process, pursuant to the OPA NRDA

20  regulations, set forth at 15 C.F.R. § 990, and State law.  (Walsh Decl., ¶ 5.)  The NRDA regulations

21  require the Trustee Agencies to follow a detailed assessment process, and to seek public comment and

22  input, before settling any claims for natural resource damages. (Id.)  If the Trustee Agencies follow the

23  NRDA regulations, they are entitled to a rebuttable presumption under OPA that their determinations

24  of damages to natural resources are correct.  33 U.S.C. § 2706(e)(2).  The NRDA process normally

25  takes several years to complete. (Mauseth Decl., ¶ 6.)  Among the injuries that the trustees are

26  assessing are injuries to resources under the jurisdiction of national parks and national marine

27  sanctuaries.  (Id.; Walsh Decl.)

28

KYL_SF461102
DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S NOTICE OF MOTION AND MOTION
TO DISMISS AND STAY PROCEEDINGS – Case No. C 07 06045 (SC)

1   **IV.    OIL POLLUTION ACT OF 1990**

2          In 1990 following the EXXON VALDEZ oil spill, Congress overhauled the nation's oil

3   pollution laws by enacting OPA.  Prior to the enactment of OPA, a vessel owner's liability to the

4   United States for oil pollution was governed by the Federal Water Pollution Control Act ("FWPCA"),

5   33 U.S.C. 1321.  In hearings leading to the enactment of OPA, Congress expressed dissatisfaction

6   with the FWPCA.  Its criticisms included the fact that the FWPCA only addressed a vessel owner's

7   liability to the United States, and that it limited that liability to $150 per gross ton of the vessel

8   discharging the oil.  This limit was viewed as too low.  See Oil Spill Liability and Compensation:

9   Hearing Before the Subcomm. On Water Resources of the Comm. On Public Works and Transp., H.

10  of Rep., 101st Cong. 78 (1989) ("[L]liability under the FWPCA is low ($150/ton) and the scope of

11  damages to which liability pertains is limited to the Federal Government's cleanup costs and natural

12  resource damages.").

13         Complicating matters, a vessel owner could not assert a credit against the $150/ton limitation

14  amount for funds it expended in cleaning up the spill.  United States v. Dixie Carriers, 736 F.2d 180,

15  183 (5th Cir. 1980); Steuart Trans. Co. v. Allied Towing Corp., 596 F.2d 609, 619 (4th Cir. 1979).

16  Courts also held that the FWPCA pre-empted other causes of action by the United States against a

17  vessel owner to recover removal costs incurred to clean up an oil spill.  Matter of Oswego Barge

18  Corp., 664 F.2d 327, 344 (2d Cir. 1981); United States v. M/V BIG SAM, 681 F.2d 432 (5th

19  Cir.1982).  Thus, the United States could only recover its response costs from a discharging vessel up

20  to the FWPCA limits on its liability, and the owner was not entitled to a credit against its FWPCA

21  liability for any costs it expended to clean up a spill.  The FWPCA thus created a financial

22  disincentive for vessel owners to spend money to clean up oil spills.  See Dixie Carriers, 736 F.2d

23  at183-185.

24         Congress was also dissatisfied with the settlement of private party claims following oil spills.

25  It heard testimony that individuals were often forced to litigate their claims in court for years in order

26  to recover their losses. Congress insisted that those injured by spills should be swiftly compensated for

27  their losses: "We do not want claimants to have to wait years upon years to recover their losses while

28  lawsuits drag on in the courts.  Instead, if they are unable to reach a settlement with the spiller within

KYL_SF461102
DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S NOTICE OF MOTION AND MOTION
TO DISMISS AND STAY PROCEEDINGS – Case No. C 07 06045 (SC)

1  90 days, they can be compensated from the oil industry financed by the fund, and the fund will go

2  after the spiller for reimbursement." 135 Cong. Rec. H7954-H7978 (daily ed. Nov. 2, 1989); "The

3  thrust of this legislation is to eliminate, to the extent possible, the need for an injured person to seek

4  recourse through the litigation process, which—as we all know—can take years." 135 Cong. Rec.

5  H7954-H7978 (daily ed. Nov. 2, 1989).

6       In OPA, Congress remedied these deficiencies. It made clear that a vessel owner is strictly

7  liable for all clean up costs and damages resulting from a discharge of oil from its vessel. 33 U.S.C.

8  §2702. It required the President to designate the owner of a discharging vessel as the "Responsible

9  Party" and required the Responsible Party to publish a notice advising claimants of this designation,

10  and procedures by which they may submit claims for reimbursement. 33 U.S.C. § 2714. To avoid

11  delays in the payment of claims, it made the Responsible Party liable to pay interest after 30 days from

12  the date on which a claim is received, and to establish procedures for interim, partial payments to

13  claimants. 33 U.S.C. §§ 2705, 2714(b)(2).

14       To discourage litigation over claims in court, Congress provided that a claimant must first

15  present a claim for removal costs or damages to the Responsible Party, following the procedures

16  identified in the notice published pursuant to 33 U.S.C. § 2714. See 33 U.S.C. § 2713(a) & (c). If,

17  after 90 days, the Responsible Party does not settle with a claimant, the claimant may sue the

18  Responsible Party, or may submit its claim to the National Pollution Funds Center (NPFC),

19  established under OPA to administer the Oil Spill Liability Trust Fund ("Fund"). Id. OPA provides

20  that the Fund may be used to settle such claims. 33 U.S.C. § 2712(a)(4). If the Fund does so, it

21  becomes subrogated to the rights of the claimant, and may seek recovery of amounts paid from the

22  Responsible Party. 33 U.S.C. §§ 2712(f), 2715.

23       As with most comprehensive statutes, OPA is the "result of innumerable compromises between

24  competing interests, reflecting many competing purposes and goals." Boca Ciega Hotel Inc. v.

25  Bouchard Trans. Co., Inc., 51 F.3d 235, 238 (11th Cir. 1995). Thus, while OPA substantially

26  increased the liability of vessel owners, it also preserved the right of a vessel owner to limit its liability

27  in some cases. 33 U.S.C. § 2704. To eliminate the financial disincentive for a vessel owner to

28  respond to an oil spill that had existed under the FWPCA, Congress provided that the right to limit

DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S NOTICE OF MOTION AND MOTION
TO DISMISS AND STAY PROCEEDINGS – Case No. C 07 06045 (SC)

1  liability, or to assert a complete defense to liability, is lost if the Responsible Party fails to provide all

2  reasonable cooperation and assistance requested by a responsible official, or to comply with a Coast

3  Guard cleanup order.  33 U.S.C. §§ 2703(c) & 2704(c).   Even a party that is entitled to a complete

4  defense under OPA remains responsible for responding to a spill and cleaning it up.  Unocal Corp. v.

5  U.S., 222 F.3d 528, 534-36 (9th Cir. 2000).

6         Thus, even though a Responsible Party may have a complete defense to liability, or the right to

7  limit its liability, OPA provides that the Responsible Party must respond to the spill and clean it up, if

8  the federal or state governments request it to do so – even if the cost of doing so exceeds the limits on

9  the Responsible Party's liability under OPA.  Because it is rarely clear in the days after a spill whether

10 the Responsible Party has a defense to OPA liability, or the right to limit that liability, the Coast

11 Guard, as a matter of practice, always designates the vessel owner and/or operator from which a

12 discharge occurs as the Responsible Party, and directs the Responsible Party to respond and clean up

13 the spill.   If a Responsible Party believes it is entitled to a complete defense to liability, or that it has

14 the right to limit its liability under OPA, OPA allows the Responsible Party to submit a claim to the

15 NPFC for reimbursement of amounts it has paid that exceed its liability.  33 U.S.C. §§ 2708,

16 2713(b)(1)(B).

17        These provisions create a powerful incentive for vessel owners and their insurers to respond to

18 spills and to clean them up to the satisfaction of state and federal officials.  Unlike the FWPCA, under

19 OPA a vessel owner who refuses a request that it clean up oil spilled from its vessel runs the risk that

20 the NPFC will deny its claim for reimbursement on the grounds that it failed to provide cooperation

21 and assistance requested by the Coast Guard or the State.

22        While OPA allows a vessel owner to seek reimbursement of removal costs and damages it pays

23 in excess of the limits on its liability from the Fund by presenting an administrative claim to the

24 NPFC, it does not allow the vessel owner to sue the United States for reimbursement of those costs in

25 court. 33 U.S.C. section 2708 is the only provision of OPA that permits a Responsible Party to obtain

26 reimbursement of such costs, and it only allows the Responsible Party to do so by filing an

27 administrative claim with the NPFC under 33 U.S.C. § 2713.

28

DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S NOTICE OF MOTION AND MOTION
TO DISMISS AND STAY PROCEEDINGS – Case No. C 07 06045 (SC)

1   The NPFC is an administrative agency within the United States Coast Guard. See

2   http://www.USCG.mil/npfc.   Located in Arlington Virginia, the NPFC maintains a claims division

3   which processes claims brought pursuant to 33 U.S.C. § 2713 by federal and state agencies, private

4   individuals, and responsible parties.  NPFC regulations governing OPA claims are published at 33

5   C.F.R. part 136.  The NPFC also publishes claims guidelines for claimants, including a "Responsible

6   Party Claim Submission Guidance" for ship owners seeking reimbursement from the OSLTF.

7   See  http://www.USCG.mil/npfc/docs/PDFs/urg/URG_7_05.pdf.  A claimant may seek

8   reconsideration from a denial of a claim by the NPFC.  33 C.F.R. § 136.115(d).  If the agency denies

9   such a request, the denial will be deemed a final agency action, of which a claimant may seek review

10  under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701, *et seq.* .

11  **V.    THE UNITED STATES CLAIMS FOR REMOVAL COSTS AND DAMAGES MUST
        BE DISMISSED UNTIL THE UNITED STATES COMPLIES WITH OPA'S CLAIMS**
12  **    PRESENTATION REQUIREMENTS.**

13  **    A.    The Presentation Requirement of the Oil Pollution Act of 1990 Requires Dismissal
            of All Claims For Removal Costs or Damages**
14

15      OPA  requires that "all claims for removal costs or damages shall be presented *first* to the

16  Responsible Party." 33 U.S.C. § 2713(a)(emphasis added).  A claim must be specific.  It must

17  "inform the responsible party with some precision of the nature and extent of the damages alleged and

18  the amount of monetary damages claimed.  Otherwise, the responsible party will be unable to make an

19  informed offer of its own, unable to engage in meaningful settlement negotiations, and thus unable to

20  settle the matter by agreeing to a final amount."  Johnson v. Colonial Pipeline Co., 830 F. Supp. 309,

21  311 (E.D. Va 1993).  The NPFC regulations set forth the specificity requirements for a claim for

22  response costs and damages.  Id.  A party may not sue the responsible party in court, unless the

23  responsible party denies the claim or fails to respond within 90 days.  33 U.S.C. § 2713(c).  As

24  explained in Johnson, Congress hoped that this claims process would avoid the need for litigation:

25          The purpose of the claim presentation procedure is to promote settlement and avoid
            litigation.  Congress believed that lawsuits against parties are appropriate only
26          'where attempts to reach a settlement with the Responsible Party . . . were
            unsuccessful.' H.R. Rep. No. 242, 101st Cong., 1st Sess., pt. 2, at 66 (1989).  The
27          hope was to avoid costly and cumbersome litigation.

28

- 8 -                                       KYL  SF461102
DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S NOTICE OF MOTION AND MOTION
TO DISMISS AND STAY PROCEEDINGS – Case No. C 07 06045 (SC)

1    Johnson, 830 F.Supp at 311; see also, Boca Ciega, 51 F.3d at 238-234 ("OPA reflects Congress'

2    desire to encourage settlement and avoid litigation.")  The presentation requirement is jurisdictional

3    and mandates dismissal when it is not complied with.  Boca Ciega, 51 F.3d 235, 238-240 (11th Cir.

4    1995); Johnson v. Colonial Pipeline Co., 830 F.Supp. at 309-10; Marathon Pipeline Co. v. LaRoche

5    Industries, 944 F.Supp 476, 477 (E.D. La 1996).

6        In this case, the United States has presented five small claims to Defendants.  (Hudson Decl.,

7    ¶ 6.)  Three have been settled and two are pending.  (Id.)  None are older than 90 days.  (Id.)  The

8    United States filed this action 23 days after the Cosco Busan incident in blatant disregard of OPA's

9    mandatory claims presentation requirements.  Thus its claims for removal costs and damages resulting

10   from the COSCO BUSAN incident must be dismissed.

11       **B.    The Presentation Requirement Applies to Claims for Removal Costs and Damages
             Under the NMSA and the PSRPA**

12

13       OPA expressly requires that "all claims for removal costs and damages shall first be presented

14   to the responsible party." 33 U.S.C. § 2713(a) (emphasis added).  A claimant may only sue the

15   responsible party if the responsible party denies the claim or fails to respond to it within 90 days.  33

16   U.S.C. § 2713(c).

17       OPA defines a "claim" as "a request, made in writing for a sum certain, for compensation for

18   damages or removal costs resulting from an incident." 33 U.S.C. § 2701(3).  "Incident" means "any

19   occurrence . . . resulting in the discharge ...of oil." 33 U.S.C. § 2701(14).  The United States has

20   determined that the COSCO BUSAN spill was an incident under OPA, as reflected in its Notice of

21   Designation.  (Perkins Decl., Exhibit "A.")  Thus OPA's claims presentation requirement clearly

22   applies to "all claims" for "removal costs" and "damages" that result from the COSCO BUSAN

23   incident.

24       "Removal costs" are broadly defined in OPA to include the cost of:

25           containment and removal of oil ...from water and shorelines, or the taking of other
             actions as may be necessary to minimize or mitigate damage to public health or
26           welfare, including, but not limited to, fish, shellfish, wildlife, and public and private
             property, shorelines, and beaches.
27

28

KYL_SF461102

DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S NOTICE OF MOTION AND MOTION
TO DISMISS AND STAY PROCEEDINGS – Case No. C 07 06045 (SC)

1   33 U.S.C. § 2701(30) & (31).  OPA makes Defendants strictly liable for "all" of the United States

2   removal costs resulting from the Cosco Busan incident.  33 U.S.C.  § 2702(a) & (b)(1).  "Damages"

3   under OPA include damages for injury to, destruction of, loss of, or loss of use of, natural resources,

4   including the reasonable costs of assessing the damage, and damages for injury to real or personal

5   property, economic losses resulting from destruction of, real or personal property, lost revenues such

6   as taxes, and increased costs of providing public services during or after removal activities.  33 U.S.C.

7   § 2702(b)(2).

8         With these terms defined, there are no conceivable claims for removal costs or damages

9   resulting from the Cosco Busan incident that the United States can recover under the NMSA or the

10  PSRPA, that are not also recoverable under OPA.  The PSRPA defines "damages" to include the cost

11  of replacing or restoring damaged resources, the loss of use of those resources, and the costs of

12  assessing such damages.  16 U.S.C. § 19jj(b).  It defines Response Costs to include the costs of actions

13  taken by the United States to prevent, minimize, or abate the destruction or loss of a park resource.  16

14  U.S.C. § 19jj(c).  The NMSA also allows the United States to recover civil damages for the

15  destruction of, or loss of use of, marine sanctuary resources.  16 U.S.C. § 1443. These definitions do

16  not allow the United States to recover, under the NMSA or the PSRPA, any response costs or

17  damages, as a result of the oiling of park or marine sanctuary resources, which are not otherwise

18  recoverable under OPA.

19        Since all of the claims asserted by the United States are for damages or response costs resulting

20  from the Cosco Busan incident, they are subject to OPA's claims presentation requirement.  As set out

21  above, Congress intended that OPA would minimize litigation following an oil spill by creating a

22  mandatory non-judicial claims presentation requirement.  Congress' use of the words "all claims" in

23  33 U.S.C. § 2713 (a) and its broad definitions of "claim", "removal costs," and "damages" reflect its

24  clear intent to require that claims such as those pursued by the United States in this lawsuit be

25  presented to the responsible party for settlement before a lawsuit is filed.   Nothing in OPA suggests

26  that Congress intended to permit claimants, including the government, to avoid the mandatory claims

27  process by suing for OPA removal costs or damages under non-OPA causes of action.

28

1    OPA's savings provision does not affect or modify the claims presentation requirement. The

2    provision simply states that OPA should not be construed to affect the authority of the United States or

3    a State to impose *additional* liability or *additional* requirements relating to a discharge of oil. 33

4    U.S.C. § 2718(c). This provision preserves the rights of States and Congress to enact laws in addition

5    to OPA that impose additional liabilities on polluters. After complying with OPA's claims

6    presentation requirements, nothing prevents the United States from suing Defendants under non-OPA

7    causes of action. Thus, OPA's savings provision does not allow a claimant to disregard the mandatory

8    claims presentation requirement under OPA for removal costs or damages that result from an incident.

9    Boca Ciega, 51 F.3d at 239.

10   **C.    In the Alternative, the Court Should Stay the Case with Respect to the Non-OPA Causes of Action**

11

12   If the Court determines that OPA's presentation requirements do not apply to the non-OPA

13   causes of action, then Defendants request that the Court stay any proceedings with respect to these

14   claims. The Court has the inherent power to stay proceedings before it in the interest of judicial

15   economy. Landis v. North Am. Co., 299 U.S. 248, 254 (1936) (Power to stay is "incidental to the

16   power inherent in every court to control the disposition if the causes of action on its docket.") Staying

17   proceedings is appropriate when the interests of justice require it, the adjudication of a claim would be

18   a waste of judicial resources, and the plaintiff will not be substantially harmed by the stay. See Hess

19   v. Gray, 85 F.R.D. 15, 27 (N.D. Ill 1979).

20   These principles favor granting a stay of the United States' causes of action brought against

21   Defendants under the NMSA and the PSRPA. The damages being sought by the United States under

22   the NMSA and the PSRPA are the same damages that the United States will seek to recover under

23   OPA. Only a very small part of the United States response costs will be for response activities in

24   marine sanctuaries or national parks. The damages for injury to natural resource within sanctuaries

25   and parks are being pursued by the NRDA trustees, under the OPA NRDA regulations. Defendants

26   have advanced the U.S. Dept. of the Interior $500,000 to date to conduct this assessment. (Walsh

27   Decl., ¶¶ 5-6.)

28

DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S NOTICE OF MOTION AND MOTION
TO DISMISS AND STAY PROCEEDINGS – Case No. C 07 06045 (SC)

Because OPA prohibits a double recovery for injuries to natural resources, 33 U.S.C.

2706(d)(3), the United States cannot pursue a claim for injury for these resources under both OPA and

non-OPA causes of action. Conversely, permitting the United States to pursue its claims under the

NMSA and the PSRPA will prejudice the Defendants. Such a result will force the Defendants to

expend time and resources litigating their liability under three statutes when the pertinent issues can be

resolved under a single statute- OPA '90. Finally, a stay will save judicial resources. There is no

reason for the Court to judicially oversee claims that would otherwise resolve through the OPA claims

adjudication process.

## VI.    THE UNITED STATES' FORFEITURE ACTION UNDER THE NMSA MUST BE DISMISSED BECAUSE THE COMPLAINT DOES NOT ALLEGE THE DEFENDANTS HAVE TAKEN OR RETAINED SANCTUARY RESOURCES.

Courts must strictly construe forfeiture statutes against the government. United States v. One

1992 Ford Mustang, 73 F. Supp. 2d 1131, 1131 (C.D. Cal. 1999)("Forfeiture is a harsh and oppressive

procedure which is not favored by the courts."); see also United States v. $191,910.00 in U.S.

Currency, 16 F. 3d 1051, 1069 (9th Cir. 1994) (overruled on other grounds). Therefore, this Court

must strictly construe the NMSA's forfeiture section. In construing the NMSA's forfeiture section,

the starting point is the statute's language. United States v. One Parcel of Land In The Name of

Mikell, 33 F. 3d 11, 13 (5th Cir. 1994). If a statute's language makes Congress' intent clear, "that is

the end of the matter." Id.

The NMSA provides:

> Any vessel (including the vessel's equipment, stores, and cargo) and other item used, *and any sanctuary resource taken or retained*, in any manner, in connection with or as a result of any violation of this chapter or of any regulation or permit issued under this chapter shall be subject to forfeiture to the United States pursuant to a civil proceeding under this subsection...

16 U.S.C. § 1437(d)(1)(emphasis added). The foregoing emphasized language demonstrates

Congress' intent to permit vessel forfeiture under the NMSA only when a vessel is used to take or

DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S NOTICE OF MOTION AND MOTION
TO DISMISS AND STAY PROCEEDINGS – Case No. C 07 06045 (SC)

1    retain a sanctuary resource.[1]  This Court must strictly construe the statue to this effect.  If Congress

2    intended the NMSA to permit vessel forfeiture for a violation of the NMSA that did *not* involve the

3    taking or retention of a sanctuary resource, it would have used "or" instead of the above-emphasized

4    "and."  However, Congress did not do so.  This Court must presume that "Congress chose its words

5    with as much care as [the Court] brings to bear on the task of statutory interpretation."  United States

6    v. BCCI Holdings (Luxembourg), S.A., 833 F. Supp. 17, 21 (D.D.C. 1993)(citation omitted).

7    Consequently, the United States must allege sanctuary resources were taken or retained in connection

8    with or as a result of the COSCO BUSAN incident.  The United States fails to allege this essential

9    element.  Therefore, the Defendants respectfully request that this Court dismiss the United States'

10   NMSA forfeiture action.

11          Additional provisions of the NMSA's forfeiture section demonstrate that Congress

12   contemplated vessel forfeiture only upon the taking or retention of a sanctuary resource.  Critically,

13   the NMSA provides that for vessel forfeiture purposes, "there is a rebuttable presumption that *all*

14   *sanctuary resources found on board* a vessel that is used…in connection with a violation of this

15   chapter…were taken or retained in violation of this chapter…"  16 U.S.C. § 1437(d)(4)(emphasis

16   added); see also 16 U.S.C. § 1437(d)(3)(disposal of sanctuary resources seized in connection with a

17   vessel forfeiture).  Taken together with 16 U.S.C. § 1437(d)(1), these additional provisions establish

18   an enforcement regime for addressing instances where sanctuary resources are taken or retained from

19   designated marine sanctuaries.  The United States complaint does not implicate this regime because it

20   does not allege such conduct resulted from the COSCO BUSAN incident or that the COSCO BUSAN

21   was used to perpetrate such conduct.  Therefore, this Court should dismiss the Unites States' forfeiture

22   action.

23          Finally, although the NMSA does not define what conduct results in the taking or retention of

24   a sanctuary resource, the NMSA's language demonstrates that Congress intended such conduct to be

25   something more than conduct resulting only in the destruction, loss, or injury to sanctuary resources.

26   _____

27   [1] "Sanctuary resource" means any living or nonliving resource of a national marine sanctuary that
     contributes to the conservation, recreational, ecological, historical, research, educational, or aesthetic

28   value of the sanctuary."  16 U.S.C. §  1432(8).

KYL_SF461102
DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S NOTICE OF MOTION AND MOTION
TO DISMISS AND STAY PROCEEDINGS – Case No. C 07 06045 (SC)

1   While such conduct alone supports other forms of relief, e.g., civil penalties (see 16 U.S.C. §§

2   1437(c)(1) & 1436(1)), in rem liability (16 U.S.C. § 1443(2)) and injunctive relief (16 U.S.C. §

3   1437(i), the NMSA's forfeiture section requires such conduct to occur in connection with or result in a

4   sanctuary resource being taken or retained. See 16 U.S.C. §§ 1437(d)(1) & 1436(1). In other words,

5   Congress intended conduct causing damage to, the loss of, or injury to a sanctuary resource to permit

6   vessel forfeiture only if such conduct occurred in connection with or resulted in a separate and distinct

7   event constituting the taking or retention of a sanctuary resource. Accordingly, the United States'

8   allegation that "vessels used to destroy and/or cause the loss and/or injure National Marine

9   Sanctuaries…are subject to forfeiture…" is insufficient to support its forfeiture action. See

10  Complaint ¶ 34. The Defendants respectfully request that this Court dismiss the United States'

11  NMSA forfeiture action.

12  **VII.    THERE IS NO ACTUAL CONTROVERSY UNDER THE DECLARATORY**
13  **JUDGMENT ACT**

14          Plaintiff's fourth cause of action requests a declaratory judgment that Defendants are liable for

15  removal costs and damages resulting from the oil spill. However, since Defendants admit they are

16  strictly liable to pay OPA response costs and damages, there is no case or controversy for the Court to

17  address. Once again, Defendants reiterate that they accepted the notice of designation months ago as

18  the Responsible Party and have been funding the response and paying legitimate claims for damages

19  resulting from the oil spill.

20          The Declaratory Judgment Act authorizes federal courts to declare the rights and other legal

21  relations of parties when an actual controversy exists. 28 U.S.C. § 2201. The Act provides that "in a

22  case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare

23  the rights and other legal relations of any interested party seeking such declaration, whether or not

24  further relief is or could be sought." 28 U.S.C. § 2201(a). The "actual controversy" required by the

25  Declaratory Judgment Act is the same as the "case or controversy" requirement of Article III. Societe

26  de Conditionnement en Aluminum v. Hunter Eng'g Co., 655 F.2d 938, 942 (9th Cir. 1981) (citing

27  Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 239-240 (1937)). "Issuing a judgment in a case without

28  an actual controversy is an advisory opinion, which is prohibited by Article III of the United States

DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S NOTICE OF MOTION AND MOTION
TO DISMISS AND STAY PROCEEDINGS – Case No. C 07 06045 (SC)

1   Constitution." <u>Duhn Oil Tool, Inc. v. Cooper Cameron Corp.</u>, 2007 WL 3335008, at *3 (E.D. Cal.

2   Nov. 9, 2007).  "[T]he facts alleged, under all the circumstances, [must] show that there is a

3   substantial controversy, between parties having adverse legal interests, of sufficient immediacy and

4   reality to warrant the issuance of a declaratory judgment." <u>Maryland Casualty Co. v. Pacific Coal &</u>

5   <u>Oil Co.</u>, 312 U.S. 270, 273 (1941).  "If a case is not ripe for review, then there is no case or

6   controversy." <u>Principal Life Ins., Co. v. Robinson</u>, 394 F.3d 665, 669 (9th Cir. 2005).  In this case,

7   there is no actual case or controversy between the parties.  Consequently, the Court cannot enter a

8   declaratory judgment.

9        OPA provides that in an action to recover removal costs under OPA, "the Court shall enter a

10   declaratory judgment on liability for removal costs or damages that will be binding on any subsequent

11   action or actions to recover further removal costs or damages." 33 U.S.C. § 2717(f)(2).  However, this

12   provision is predicated upon an action being filed to recover OPA removal costs, which cannot occur

13   until the claims presentation requirements of 33 U.S.C. § 2713 have been followed.  As set out above,

14   the United States has not complied with these requirements.  Therefore, it cannot seek a declaratory

15   judgment under 33 U.S.C. § 2712(f)(2).

16   **VIII.  PLAINTIFF'S CLAIM FOR CIVIL PENALTIES IS INSUFFICIENTLY PLED AND IS
         NOT RIPE FOR ADJUDICATION**

17

18        The Government's action now also alleges as its Sixth Cause of Action, an entitlement to

19   judicially assessed civil penalties under the Clean Water Act ("CWA"), 33 U.S.C. 1321 (b)(7).[2]  This

20   new cause must be dismissed for two reasons.  First, the U.S. fails to properly plead a claim for which

21   relief under the CWA is allowed.  Second, a claim for civil penalties under the CWA has not yet

22   accrued and thus is not yet ripe for adjudication.

23        **A.    The Government Failed To Properly Plead A Claim For Civil Penalties Under
              The CWA**

24

25        The U.S. fails to properly plead a claim for civil penalties under the CWA.  While Federal

26   Rule of Civil Procedure 8 permits liberal notice pleading, it does not sanction pleadings that are void

27   ─────────────────────
     [2] Within days of Defendants filing their original motion to dismiss, the U.S. filed a First Amended
28   Complaint ("FAC") in an effort to plead around the Motion and salvage this lawsuit.

                                                        KYL_SF461102
DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S NOTICE OF MOTION AND MOTION
TO DISMISS AND STAY PROCEEDINGS – Case No. C 07 06045 (SC)

1    of a short and plain statement of operative facts and the elements of a prima facie case. Bautista v.

2    Los Angeles County, 216 F. 3d 837, 840 (9th Cir. 2000). "[Without some factual allegation in the

3    complaint, it is hard to see how a claimant could satisfy the requirement of providing not only "fair

4    notice" of the nature of the claim, but also "grounds" on which the claim rests. See 5 Wright & Miller

5    § 1202, at 94, 95 (Rule 8(a) "contemplate[s] the statement of circumstances, occurrences, and events

6    in support of the claim presented" and does not authorize a pleader's "bare averment that he wants

7    relief and is entitled to it"). Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007).

8
       The Sixth Cause of Action lacks reasonable specificity and should be dismissed out right.
9
     "[S]tatutes imposing penalties are strictly construed and pleadings to recover statutory penalties are
10
     likewise strictly construed." Connolly v. United States, 149 F.2d 666, 669 (9th Cir. 1945). In
11
     Connolly, the United States sought, amongst other forms of relief, penalties for two individuals'
12
     herding cattle and horses on an Indian reservation without a grazing permit. Id. at 667. The United
13
     States' complaint made no reference to the specific penalty statute- 25 U.S.C. 179. Id. at 668.
14
     Nevertheless, the trial court concluded that based on a review of the complaint's factual allegations,
15
     the United States could recover penalties. Id. In setting aside the trial court's assessment of penalties,
16
     the Ninth Circuit noted that there was no reference to the statutory penalty in the complaint. Id. at
17
     668.
18
       The FAC is similarly flawed. It merely states that Defendants Regal Stone and Fleet are liable
19
     to the United States for a civil penalty pursuant to 33 U.S.C. 1321(b)(7). (FAC paragraphs 52-53).
20
     There are no further factual allegations in support of this claim. Critically, Section 1321(b)(7) lists at
21
     least five different theories that allow for a civil penalty: (1) failure to carry out a removal order of the
22
     President; (2) failure to comply with an administrative order effecting public health; (3) failure to
23
     comply with a regulation under the National Contingency Plan; (4) causing an oil spill by gross
24
     negligence; and (5) strict liability. FRCP 1321(b)(7). The U.S. has provided no notice to Regal Stone
25
     or Fleet as to which of these theories it advances, let alone requisite factual allegations for each.[3]
26

27   [3] The United States does not, because in good faith it cannot, allege the factual basis to support the
     imposition of penalties. The referring agency, in this case presumably the United States Coast Guard,
28   has not yet as of the date of filing the FAC completed its investigation into the cause of incident.

                                                                          KYL SF461102
DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S NOTICE OF MOTION AND MOTION
TO DISMISS AND STAY PROCEEDINGS – Case No. C 07 06045 (SC)

1   Moreover, the United States fails to give notice as to a "sum certain" or even an amount "up to" as

2   civil penalties.  Finally, the United States further fails to include factual allegations (and amounts)

3   distinguishable as between the Defendants.  Therefore, the CWA claim is insufficiently pled and must

4   be dismissed.

5

6   **B.      The Government's Claim For Civil Penalties Under The CWA Is Not Justiciable**

7           The government's Sixth Cause of Action is not justiciable and should be dismissed.   In past

8   cases, the United States has argued to the District Court and the Court of Appeals that a cause of

9   action for civil penalties arising out of an oil spill does not accrue under the CWA until after the oil

10  removal is completed.  United States v. Barge Shamrock, 635 F.2d 1108, 1110 (4th Cir. 1980).  In the

11  Barge Shamrock, the United States successfully argued that a cause of action for civil penalties under

12  the CWA does not accrue until the completion of oil removal.  In this case, the oil spill clean up

13  response, third party claims handling and natural resource damage assessment is ongoing.  (See Joint

14  Case Management Conference Statement, 20:14-17; Mauseth Decl; Perkins Decl.)  Accordingly, until

15  completion of the oil spill clean up, no cause of action for civil penalties exists under the CWA.[4] This

16  cause of action is simply not ripe for judicial determination.

17  **C.      In The Alternative The Government's CWA Cause Of Action Must Be Stayed**

18          Even if the U.S. has properly pled the CWA claim, and if the claim was currently justiciable,

19  this claim must be stayed pending the completion of the NRD.  In order to determine the amount of

20  any civil penalty under section 1321(b)(7) the court must consider a multitude of factors including the

21  nature, extent, and degree of success of any efforts of the violator to minimize or mitigate the effects

22  of the discharge.  FRCP 1321(b)(8).  As stated above, the Responsible Party is currently engaged in

23  both clean up efforts and a cooperative natural resource damage assessment.  The success of the clean

24

25  This fact calls into question whether the United States even has a good faith basis for seeking penalties
    in the first instance.

26  [4] The amount of a civil fine is to be determined after a consideration of certain specific factors
    including "the nature, extent, and degree of success of any efforts of the violator to minimize or
27  mitigate the effects of the discharge." 33 U.S.C. 1321 (b)(8).  These factors cannot be reasonably
    considered unless and until the clean-up operations are finalized.

28

                                                                                        KYL_SF461102
DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S NOTICE OF MOTION AND MOTION
TO DISMISS AND STAY PROCEEDINGS – Case No. C 07 06045 (SC)

1    up is yet to be determined as it is still ongoing.  In addition, the efforts to minimize or mitigate the

2    impacts of the discharge will not be known until the completion of the NRD when the court can

3    consider the full range of environmental impacts and remediation.  Therefore, if the court determines

4    that the CWA claim is proper this case should be stayed pending the completion of the NRD.

5    **IX.    THIS COURT LACKS JURISDICTION TO DECIDE  WHETHER THE**

6    **DEFENDANTS ARE ENTITLED TO LIMIT THEIR OPA LIABILITY**

7    Although not expressly set out in its Complaint, the Department of Justice has advised that it

8    wants to litigate Defendants' entitlement to limit their OPA liability under 33 U.S.C. § 2704.    If the

9    Court has subject matter jurisdiction over this issue, then a decree by the Court that the Defendants are

10   entitled to limit their OPA liability would bind the United States, and require the NPFC to reimburse

11   Defendants any funds expended in response to the Cosco Busan incident above the limitation amount.

12   This could result in a liability against the Oil Spill Liability Trust Fund in the amount of tens of

13   millions of dollars.

14   This Court has no jurisdiction over the limitation issue.  The United States has not waived its

15   sovereign immunity with respect to such claims.    Moreover, the doctrine of exhaustion of

16   administrative remedies requires that the limitation issue first be presented for determination by the

17   NPFC. If a shipowner is aggrieved by a decision of the NPFC, it may seek review of that decision

18   under the Administrative Procedures Act. 5 U.S.C. §§ 701, *et seq*.  Finally, the doctrine of primary

19   jurisdiction weighs in favor of the Court deferring to the expertise of the NPFC with respect to the

20   limitation issue.

21   **A.    The United States Has Not Waived Sovereign Immunity Under OPA '90**

22   The United States may not be sued unless federal legislation specifically authorizes the suit.

23   Hercules, Inc. v. United States, 516 U.S. 417, 422 (1996); Blackburn v. United States, 100 F.3d 1426,

24   1429 (9th Cir. 1996).  Only Congress can consent to suits against the United States, the Executive is

25   powerless to waive the federal government's sovereign immunity. E. CHEMERINSKY, FEDERAL

26   JURISDICTION, §9.2.1 (3d ed.1999).  "A waiver of sovereign immunity 'cannot be implied but must be

27   unequivocally expressed.'"  United States v. Mitchell, 445 U.S. 535, 537–38 (1980) (citations

28   omitted).  "Any waiver of sovereign immunity is to be construed narrowly, with ambiguities resolved

1  in favor of the government.    The natural consequence of the sovereign immunity principle is that the

2  absence of consent by the United States is a fundamental defect that deprives the district court of

3  subject matter jurisdiction." 14 CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE

4  § 3654 (3d ed. 1998) (citing cases).

5        OPA '90 does not include a waiver of the United States' sovereign immunity.  See Int'l Marine

6  Carriers v. Oil Spill Liability Trust Fund, 903 F. Supp. 1097, at 1102 (S.D. Tex. 1994) (finding even if

7  Responsible Party could assert jurisdiction under 33 U.S.C. § 2717(b), sovereign immunity precluded

8  the court's review of Responsible Party's claims for limitation of liability).  "Nothing in OPA [33

9  U.S.C. §§ 2712, 2713, or 2715] can be construed as a waiver of sovereign immunity . . . .  These

10  sections do not create, nor can this court imply, a right to sue the [OSLTF] directly."  Id. at 1102.

11        Consistent with the Int'l Marine Carriers decision, the Department of Justice has maintained in

12  other cases that a district court lacks jurisdiction to decide whether a shipowner is entitled to limit its

13  liability under OPA.  For example, in Unocal v. United States, a buried Unocal crude oil pipeline was

14  breached during construction of a rail line, resulting in an oil discharge.  After paying to clean up the

15  costs of the pipeline, Unocal sought reimbursement of its costs from the NPFC.  When the NPFC

16  denied the claim, Unocal sued the United States in the United States District Court for the District of

17  Central California.  The United States moved to dismiss Unocal's claims, on the grounds that the

18  Court lacked subject matter jurisdiction to order the NPFC to reimburse Unocal.  The Court ruled for

19  the United States.  Copies of the United States motion papers and the Court's order in the Unocal case

20  are attached as Exhibits C-D to the Walsh Declaration filed concurrently with the Motion.

21        OPA does not say that a responsible party can sue in federal court to obtain a decree

22  establishing its right to seek reimbursement from the OSLTF.   Instead, it says that if a responsible

23  party pays more than its OPA limitation amount, it can present a claim for reimbursement to the

24  NPFC.  33 U.S.C. §§ 2708 & 2713(b).  If the NPFC denies the claim, the responsible party can seek

25  review under the APA.  See International Marine Carriers, 903 F.Supp. at 1102; Gatlin Oil Co. v.

26  United States, 169 F.3d 207 (4th Cir. 1999); Water Quality Insurance Syndicate v. United States, 522

27  F.Supp.2d 220 (D.D.C. 2007); Apex Oil Co. v. United States, 208 F.Supp.2d 642, 2002 A.M.C. 493

28

KYL  SF461102
DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S NOTICE OF MOTION AND MOTION
TO DISMISS AND STAY PROCEEDINGS – Case No. C 07 06045 (SC)

1 (E.D. La 2002); Smith Property Holdings, 4411 Connecticut L.L.C. v. United States, 311 F.Supp.2d

2 69 (D.D.C 2004).

3      The attempt by the United States to raise the limitation issue in this suit is inconsistent with the

4 plain language of OPA, with the position taken by the United States in previous cases, and with the

5 process followed by responsible parties and the NPFC in the cases cited in the preceding paragraph.

6 Defendants are aware of no legal authority that suggests the Court has jurisdiction over the limitation

7 issue. An order declaring that the Defendants are entitled to limit their liability would be tantamount

8 to an order directing the NPFC to reimburse the Defendants for amounts expended above the

9 limitation amount. Congress, in OPA, directed that such reimbursement claims be presented to the

10 NPFC, which administers the OSLTF. Consequently, this Court lacks subject matter jurisdiction over

11 the OPA limitation issues, and should dismiss the Complaint to the extent it raises the limitation issue.

12      **B.      Defendants Have Not Exhausted Their Administrative Remedies Before The
              NPFC**

13

14      This Court should not address the limitation issue because the Defendants have not yet

15 exhausted their administrative remedies. OPA '90 and the NPFC's regulations require Defendants to

16 first present their claims for limitation of liability under OPA '90 to the NPFC.

17      The doctrine of exhaustion of administrative remedies provides "that no one is entitled to

18 judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been

19 exhausted." Moncrief v. United States., 43 Fed. Cl. 276, 284 (1999) (granting defendant's motion to

20 dismiss because plaintiff failed to exhaust administrative remedy)(citations omitted). "Exhaustion is

21 required to serve the purposes of protecting administrative agency authority and promoting judicial

22 efficiency." Id. (citations omitted).    The Supreme Court of the United States has stated:

23          [t]he agency, like a trial court, is created for the purpose of applying a statute in the
            first instance. Accordingly, it is normally desirable to let the agency develop the
24          necessary factual background upon which decisions should be based. And since
            agency decisions are frequently of a discretionary nature or frequently require
25          expertise, the agency should be given the first chance to exercise that discretion or to
            apply that expertise.
26

27 Moncrief, 43 Fed. Cl. at 284 (citing McKart v. United States, 395 U.S. 185, 193 (1969). "An agency's

28 effectiveness may also be weakened if people are encouraged to ignore its procedures by the

DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S NOTICE OF MOTION AND MOTION
TO DISMISS AND STAY PROCEEDINGS – Case No. C 07 06045 (SC)

1  allowance of 'frequent and deliberate flouting of the administrative process.'" <u>Moncrief</u>, 43 Fed. Cl.

2  at 284 (citing <u>McKart</u>, 395 U.S. at 195). While failure to exhaust administrative remedies does not

3  deprive a federal court of jurisdiction when an exhaustion statute is "merely a codification of the

4  exhaustion requirement . . . ," federal courts should still require compliance with an exhaustion statute

5  unless the suit alleges a constitutional claim. <u>McBride Cotton and Cattle Corp. v. Veneman</u>, 290 F.3d

6  973, 978-980 (9th Cir. 2002).

7       The only avenue available to a Responsible Party seeking reimbursement from the OSLTF for

8  costs in excess of its liability limitation under OPA '90 is to present a claim to the NPFC. 33 U.S.C.

9  § 2708.  OPA conveys no right for either the Responsible Party or the United States to raise the

10  limitation issue in federal court in the first instance.   Instead, OPA '90 provides that a Responsible

11  Party who is entitled to a limitation of liability under 33 U.S.C. § 2404, "may assert a claim for

12  removal costs and damages under [33 U.S.C. § 2713]." <u>See</u> 33 U.S.C. §§ 2708(2) & 2713(b)(1)(B).

13  At 33 C.F.R. §§ 136.1 through 136.313, the NPFC has promulgated regulations governing the

14  "[p]resentation, filing, processing, settlement, *and adjudication* of claims authorized to be presented to

15  the [OSLTF]." 33 C.F.R. § 136.1(a)(1) (emphasis added).  The NPFC routinely determines claims by

16  responsible parties for reimbursement of amounts expended in excess of their OPA limits on liability.

17  <u>See e.g.</u> <u>In re Kuroshima Shipping Act of God and Limitation of Liability Analysis</u>, 2003 AMC 1681

18  (Nat'l Pollution Funds Center 2003).   If a Responsible Party's claim for reimbursement is denied by

19  the NPFC, the Responsible Party can seek judicial review of the NPFC's decision under the

20  Administrative Procedure Act. <u>See e.g.</u>, <u>Water Quality Insurance Syndicate v. United States</u>, 522

21  F.Supp.2d 220 (D.D.C. 2007).

22       Under this statutory and regulatory scheme, it is clear that Defendants must first

23  present their claims for reimbursement to the NPFC, and exhaust their remedies with that agency,

24  before seeking judicial review.   The NPFC, as a branch of the United States Coast Guard,

25  has the necessary expertise to adjudicate responsible parties' claims for reimbursement

26  from the OSLTF for costs in excess of their liability limitation under OPA.  With regard to such

27  claims, there are several issues that the NPFC is better suited to resolve than a district

28  court.  For example, in order for a Responsible Party to establish a right to limit its

DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S NOTICE OF MOTION AND MOTION
TO DISMISS AND STAY PROCEEDINGS – Case No. C 07 06045 (SC)

1    liability under OPA, the NPFC must determine whether the incident causing the

2    discharge was the result of the violation of Coast Guard regulations, gross negligence, or

3    willful misconduct. See 33 U.S.C. § 2704(c). It must also determine whether the actions

4    taken by the Responsible Party were necessary to prevent, minimize, or mitigate the

5    effects of an oil spill, that removal costs were incurred as a result of these actions, that

6    the Responsible Party provided reasonable cooperation and assistance in a removal, and

7    that the actions taken were consistent with the National Contingency Plan or directed

8    by the Federal On-Scene Coordinator. See 33 C.F.R. § 136.203.

9        Consequently, the NPFC should be given the first opportunity to hear any and all

10   of Defendants claims for reimbursement from the OSLTF for costs in excess of their liability

11   limitation under OPA '90.

12       **C.    Alternatively, This Court Should Abstain From Addressing The Limitation Issue
              Under The Primary Jurisdiction Doctrine**
13

14       Under the doctrine of primary jurisdiction, "courts may, under appropriate circumstances,

15   determine that the initial decision making responsibility should be performed by the relevant agency

16   rather than the courts." Syntek Semiconductor Co. Ltd. v. Microchip Tech. Inc., 307 F.3d 775, 780–

17   81 (9th Cir. 2002). Although primary jurisdiction does not implicate the federal courts' subject matter

18   jurisdiction, it "is properly invoked when a claim, even though cognizable in federal court, requires

19   resolution of an issue of first impression or of a complicated issue committed to a regulatory agency

20   by Congress." Id. at 780–81 (citations omitted). Primary jurisdiction "is committed to sound

21   discretion of the court when 'protection of the integrity of a regulatory scheme dictates preliminary

22   resort to the agency which administers the scheme.'" Id. at 781 (citations omitted). A court's

23   invocation of the primary jurisdiction doctrine does not deprive it of jurisdiction- rather it imposes a

24   stay on the litigation or dismisses the litigation without prejudice. See Id. at 782.

25       A court may properly invoke primary jurisdiction in suits initiated by the United States. In Far

26   East Conference v. United States, the United States filed suit in a district court to enjoin what it

27   alleged to be defendant's violations of the SHERMAN ANTITRUST ACT. 342 U.S. 570, 571 (1952). The

28   defendant moved to dismiss the United States' suit on the ground that the "nature of the issues require

DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S NOTICE OF MOTION AND MOTION
TO DISMISS AND STAY PROCEEDINGS – Case No. C 07 06045 (SC)

1    that resort must first be had to the Federal Maritime Board before a District Court could adjudicate the

2    Government's complaint." Id. at 572.  In concluding the Federal Maritime Board should hear the

3    issues before the District Court, the Court observed:

4       . . . [I]n cases raising issues of fact not within the conventional experience of judges or
        cases requiring the exercise of administrative discretion, agencies created by Congress
5       for regulating the subject matter should not be passed over. . . .  Uniformity and
        consistency in the regulation of business entrusted to a particular agency are secured,
6       and the limited functions of review by the judiciary are more rationally exercised, by
        preliminary resort for ascertaining and interpreting the circumstances underlying legal
7       issues to agencies that are better equipped than courts by specialization, by insight
        gained through experience, and by more flexible procedure.
8

9    Id. at 574-75.

10       Factors traditionally considered by courts in determining whether to invoke primary

11   jurisdiction include: "(1) the need to resolve an issue that (2) has been placed by Congress within the

12   jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects

13   an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity

14   in administration." Syntek, 307 F.3d at 781 (citations omitted).

15       Pursuant to the doctrine of primary jurisdiction, this Court should dismiss without prejudice or

16   stay the United States' action against Defendants.  First, resolving limitations of liability under OPA

17   and administering claims for reimbursement from the OSLTF are complicated issues which have been

18   placed within the NPFC's jurisdiction by Congress.  Second, the NPFC has jurisdiction over these

19   issues pursuant to OPA and its own regulations- a statutory and regulatory scheme that subjects the

20   activity of oil spill response to comprehensive regulation.  See 33 C.F.R. §§ 2701–2762; see also 33

21   C.F.R. §§ 136.1–136.313.  Finally, as noted above, these issues require the NPFC's expertise and

22   uniformity in administration.  See 33 C.F.R. § 136(a)(1).  Therefore, even if the Court determines that

23   the United States' action against Defendants is within its jurisdiction, it should still dismiss without

24   prejudice or stay the action since all of the factors supporting this Court's invoking the primary

25   jurisdiction of the NPFC are present.

26

27

28

DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S NOTICE OF MOTION AND MOTION
TO DISMISS AND STAY PROCEEDINGS – Case No. C 07 06045 (SC)

1

## X.     CONCLUSION

2      For the foregoing reasons, Defendants respectfully request that the Court dismiss

3   the United States OPA and non-OPA claims, or stay them until an actual controversy

4   within the Court's jurisdiction arises.

5

6

7   DATED: April _4_, 2008                    /s/ John Giffin
                                              JOHN D. GIFFIN
8                                             JOSEPH A. WALSH
                                              JOHN COX
9                                             DAVID A. TONG
                                              Attorneys for Defendants REGAL STONE,
10                                            LTD. and FLEET MANAGEMENT, LTD.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KYL_SF461102
DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S NOTICE OF MOTION AND MOTION
TO DISMISS AND STAY PROCEEDINGS – Case No. C 07 06045 (SC)