1  JEFFREY S. BUCHOLTZ
   Acting Assistant Attorney General
2  R. MICHAEL UNDERHILL
   Attorney in Charge, West Coast Office
3  Torts Branch, Civil Division
   United States Department of Justice
   7-5395 Federal Bldg., Box 36028
4  450 Golden Gate Avenue
   San Francisco, California 94102-3463
5  Telephone: (415) 436-6648
   mike.underhill@usdoj.gov
6
   RONALD J. TENPAS
7  Assistant Attorney General
   Environment and Natural Resources Division
8  United States Department of Justice
   Washington, DC 20530
9  BRADLEY R. O'BRIEN
   Senior Attorney
10 Environmental Enforcement Section
   United States Department of Justice
11 301 Howard Street, Suite 1050
   San Francisco, California 94105
12 Telephone: (415) 744-6484;
   Facsimile: (415) 744-6476
13 brad.obrien@usdoj.gov

14 Attorneys for Plaintiff
   United States of America

15                    UNITED STATES DISTRICT COURT

16                  NORTHERN DISTRICT OF CALIFORNIA

17 UNITED STATES OF AMERICA,              )  Civil No. C07-6045 SC
                                          )
18              Plaintiff,                )  (AND RELATED CASES:
                                          )  C07-5800 SC; C07-5926 SC)
19              v.                        )
                                          )  IN ADMIRALTY
20 M/V COSCO BUSAN, LR/IMO Ship No. 9231743,)
   her engines, apparel, electronics, tackle, boats,)  MEMORANDUM OF UNITED STATES
21 appurtenances, etc., in rem, REGAL STONE)  IN OPPOSITION TO DEFENDANTS
   LIMITED, FLEET MANAGEMENT LTD., and)  REGAL STONE'S AND FLEET
22 JOHN COTA, in personam,               )  MANAGEMENT'S MOTION TO
                                          )  DISMISS OR IN THE ALTERNATIVE
23              Defendants.               )  STAY PROCEEDINGS
                                          )
24 ────────────────────────────────────── )  Date: May 9, 2008
                                          )  Time: 10:00 a.m.
25                                        )  Courtroom: Honorable Samuel Conti
                                          )
26

27

28

# TABLE OF AUTHORITIES

<u>FEDERAL CASES</u>

A-1 Ambulance Serv. v. California, 202 F.3d 1238 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . 19

Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Boca Ciega Hotel, Inc. v. Bouchard Transp. Co., Inc., 51 F.3d 235 (11th Cir. 1995) . . . . . . . . . 15

Brown v. MCI WorldCom Network Services, Inc. 277 F.3d 1166 (9th Cir. 2002) . . . . . . . . . . . 24

Burgess v. M/V Tamano, 564 F.2d 964 (1st Cir. 1977), *cert. denied*,
      435 U.S. 941 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Caterpillar Inc. v. Williams, 482 U.S. 386 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Cerit v. Cerit, 188 F.Supp.2d 1239 (D. Hawaii 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Connolly v. United States, 149 F.2d 666 (9th Cir. 1945) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Davel Communications, Inc. v. Qwest Corp., 460 F.3d 1075 (9th Cir. 2006) . . . . . . . . . . . . . . 24

Davis v. Mich. Dep't of Treasury, 489 U.S. 803 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Dias v. Bank of Hawaii, 764 F.2d 1292 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Environmental Defense Center, Inc. v. U.S. E.P.A., 344 F.3d 832 (9th Cir. 2003) . . . . . . . . . . . 16

Erickson v. Pardus, 127 S.Ct. 2197 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Gillespie v. United States Steel Corp., 379 U.S. 148 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . 21

1    Healy v. Sea Gull Specialty Co., 237 U.S. 479 (1915) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    13

2

3    In re Arizona Appetito's Stores, Inc. 893 F.2d 216 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . .    16

4

5    Jacobson v. Hughes Aircraft Co., 105 F.3d 1288 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . .    19

6

7    Jenkins v. McKeithen, 395 U.S. 411 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    19

8    Leboeuf v. Texaco, 9 F.Supp.2d 661 (E.D. La.1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    15

9

10   Marathon Pipe Line Co. v. LaRoche Industries, Inc. 944 F.Supp. 476 (E.D. La.1996) . . . . . . .    15

11

12   Patenaude v. Equitable Life Assur. Soc'y of the United States, 290 F.3d 1020 (9th Cir. 2002) .    18

13

14   Puerto Rico v. M/V Emily S. (In re Metlife Capital Corp.), 132 F.3d 818 (1st Cir. 1997) . .    10, 11

15   Syntek Semiconductor Co. Ltd. v. Microchip Tech, Inc., 307 F.3d 775 (9th Cir. 2002) . . . . . . .    24

16

17   Travelers Indemnity Co. v. Madonna, 914 F.2d 1364 (9th Cir.1990) . . . . . . . . . . . . . . . . . . . .    21

18

19   Tug Allie-B, Inc. v. United States, 273 F.3d 936 (11th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . .    7

20

21   Tull v. United States, 481 U.S. 412 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    10, 20

22   U.S. Indus., Inc. v. Blake Const. Co., Inc., 765 F.2d 195 (D.C. Cir. 1985) . . . . . . . . . . . . .    17, 21

23

24   U.S. v. M/V Jacqueline L., 100 F.3d 1520 (11th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . .    8

25

26   United States v. Barge Shamrock, 635 F.2d 1108 (4th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . .    20

27

28   United States v. English, 2001 A.M.C. 1756 (D. Hawaii, March 28, 2001) . . . . . . . . . . . . . . .    11

United States v. Fisher, 977 F.Supp 1193 (S.D. Fla. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

United States v. Great Lakes Dredge and Dock Co., 259 F.3d 1300 (11th Cir. 2001) . . . . . . . . . 8

United States v. Hyundai Merchant Marine Co., Ltd. 172 F.3d 1187 (9th Cir. 1999),
    cert. denied, 528 U.S. 963 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

United States v. Locke, 529 U.S. 89 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

United States v. M/V Miss Beholden, 856 F. Supp. 668 (S.D. Fla. 1994) . . . . . . . . . . . . . . . . . 8

Wilshire Westwood Assocs. v. Atlantic Richfield Corp., 881 F.2d 801 (9th Cir. 1989) . . . . 18, 19

FEDERAL STATUTES

16 U.S.C. § 703 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

16 U.S.C. § 707 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

16 U.S.C. § 1431 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

16 U.S.C. § 1431(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

16 U.S.C. § 1431(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

16 U.S.C. § 1432(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

16 U.S.C. § 1432(7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

16 U.S.C. § 1432(8) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

16 U.S.C. § 1436(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

16 U.S.C. § 1436(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

16 U.S.C. § 1437(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

16 U.S.C. § 1437(e)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 9, 10, 17, 18

16 U.S.C. § 1437(e)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

16 U.S.C. § 1437(e)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

16 U.S.C. § 1443(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 16

16 U.S.C. § 19jj . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

16 U.S.C. § 19jj(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10

16 U.S.C. § 19jj-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

16 U.S.C. § 19jj-1(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

16 U.S.C. § 19jj-1(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

16 U.S.C. § 19jj-1(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

16 U.S.C. § 19jj-1(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 7, 8

21 U.S.C. § 881 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

21 U.S.C. § 881(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

33 U.S.C. § 1319(c)(1)(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

33 U.S.C. § 1321(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 25

33 U.S.C. § 1321(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

33 U.S.C. § 1321(b)(7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 10, 19, 20

33 U.S.C. § 1321(b)(7)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

33 U.S.C. § 2701 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5

33 U.S.C. § 2701(11) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

33 U.S.C. § 2701(20) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

33 U.S.C. § 2701(27) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

33 U.S.C. § 2702(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

33 U.S.C. § 2702(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 10

33 U.S.C. § 2702(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

33 U.S.C. § 2703 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

33 U.S.C. § 2703(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

33 U.S.C. § 2703(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

33 U.S.C. § 2704 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 23

33 U.S.C. § 2704(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

33 U.S.C. § 2704(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

33 U.S.C. § 2704(c)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

33 U.S.C. § 2704(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

33 U.S.C. § 2704(c)(2)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

33 U.S.C. § 2706(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

33 U.S.C. § 2713 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12, 13, 15, 16

33 U.S.C. § 2713(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

33 U.S.C. § 2713(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

33 U.S.C. § 2713(b)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

33 U.S.C. § 2713(b)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

33 U.S.C. § 2713(b)(1)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

33 U.S.C. § 2713(b)(1)(D) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

33 U.S.C. § 2715(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

33 U.S.C. § 2717(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

33 U.S.C. § 2717(f)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 12, 22

33 U.S.C. § 2717(f)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 12, 13, 15, 23

33 U.S.C. § 2718 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3

33 U.S.C. § 2718(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

PUBLIC LAW

Pub.L. 101-337 (July 27, 1990, 104 Stat. 379). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Pub.L. 101-380 (August 18, 1990, 104 Stat. 489). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Pub.L. 106-513 (November 13, 2000, 114 Stat. 2389) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

LEGISLATIVE HISTORY

H.R. Rep. 106-224 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

S. Rep. No. 100 - 595 (1988) *as reprinted* in 1988 U.S.C.C.A.N. 4387, 4388 . . . . . . . . . . . . 9

S. Rep. No. 101 - 328 (1990) *as reprinted* in 1990 U.S.C.C.A.N 603 . . . . . . . . . . . . . . . . . . 6

S. Rep. No. 101 - 328 (1990) *as reprinted* in 1990 U.S.C.C.A.N. 603, 607 . . . . . . . . . . . . . 7

S. Rep. No. 101 - 328 (1990) *as reprinted* in 1990 U.S.C.C.A.N. 611 . . . . . . . . . . . . . . . . . 8

FEDERAL RULES

Fed.R.Civ.P. 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

1  Fed.R.Civ.P. 8(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

2

3  <u>FEDERAL REGULATIONS</u>

4

5  15 C.F.R. § 990.10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

6  15 C.F.R. § 990.64 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

7

8  33 C.F.R. § 136 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

9

10 40 C.F.R. § 110.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 19, 20

11

12 40 C.F.R. § 19.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

13 <u>OTHER AUTHORITIES</u>

14

15 Thomas J. Schoenbaum, 1 Admiralty & Maritime Law § 3-2 (2d ed.1994). . . . . . . . . . . . . . 24

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## PRELIMINARY STATEMENT AND SUMMARY OF ISSUES

2  On November 12, 1936, the San Francisco-Oakland Bay Bridge was first opened. For
3  seventy-one years, including the years prior to the use of radar for navigation and global positioning
4  satellites, the bridge safely co-existed with all manner of ships and all types of weather, not the least
5  of which is fog. On the morning of November 7, 2007, the nine hundred foot-plus COSCO BUSAN
6  set out from Oakland in thick fog for intended passage to the Far East. Despite the fact COSCO
   BUSAN was equipped with a suite of sophisticated electronic navigation gear that literally would
7  have been unimaginable to a World War II-era sea captain, the ship did what no others had managed
8  in over seven decades: it hit the Bay Bridge.

9  By any measure, the ship's allision with the Bay Bridge and the resulting oil spill of well over
10  50,000 gallons of heavy, toxic bunker fuel was consequential, and especially so in its impact on
11  natural resources and what truly can be described as some of the crown jewels of our nation's
   environmental heritage. The names of the affected waters and natural resources speak for themselves
12  and include: the San Francisco Bay, the Pacific Ocean, the Gulf of the Farallones National Marine
13  Sanctuary, the Monterey Bay National Marine Sanctuary, the Golden Gate National Recreation Area,
14  the Point Reyes National Seashore, and the San Francisco Maritime National Historic Park.

15  The United States filed this action against the Hong-Kong flagged COSCO BUSAN, *in rem*,
16  and against the ship's pilot (John Cota), owner (Regal Stone Limited), and operator (Fleet
   Management), all of whom have appeared and are subject to the Court's jurisdiction. The Amended
17  Complaint states four separate and independent statutory bases of liability: the Oil Pollution Act
18  ("OPA"), 33 U.S.C. §§ 2701, *et seq.*; the National Marine Sanctuaries Act ("NMSA"), 16 U.S.C. §§
19  1431, *et seq.*; the Park System Resource Protection Act ("PSRPA"), 16 U.S.C. §§ 19jj, *et seq.*; and
20  the Clean Water Act ("CWA"), 33 U.S.C. § 1321(b)(7), as amended by OPA.

21  In response, Defendants Regal Stone and Fleet Management ("Defendants") filed a motion
22  to dismiss the Amended Complaint that ignores or fails to meaningfully discuss the *very* statutory
   language *and* legislative history that negate their argument. In simplest terms, Defendants' argument
23  is this: OPA somehow deprives this Court of jurisdiction and precludes the *entirely separate*
24  statutory bases of suit under NMSA, PSRPA, and the CWA. Why do we say the argument is rendered
25  void? Answer: OPA contains, front and center, an unambiguous savings clause that preserves the
26  authority of the United States to bring claims – in this case the Government's claims under NMSA,
27  PSRPA, and the CWA – in addition to OPA claims. Section 1018 of OPA, codified at 33 U.S.C. §
28  2718 and entitled "Relationship to other law", states:

**c) Additional requirements and liabilities; penalties**

> Nothing in this Act . . . shall in any way affect, or be construed to affect, the authority of the United States or any State or political subdivision thereof –
>
> (1) to impose additional liability or additional requirements; or
>
> (2) to impose, or to determine the amount of, any fine or penalty (whether criminal or civil in nature) for any violation of law;
>
> relating to the discharge, or substantial threat of a discharge, of oil.

Even if the OPA savings clause was the only thing to guide the Court, Defendants' argument could be laid to rest. But there is more – far more. As discussed in detail below, PSRPA dovetails precisely with OPA's savings clause and states that liability under PSRPA is "in addition to any other liability which may arise under Federal or State law." 16 U.S.C. § 19jj-1(d). Similarly, NMSA's forfeiture provision requires that proceeds from forfeiture constitutes a separate recovery from monies recovered as civil penalties or civil damages under the statute. 16 U.S.C. § 1437(e)(1).

Lest the statutes themselves be anything less than clear about their scope, the legislative history of both PSRPA and NMSA clearly state that they apply to *oil spills*. And in what can only be described as consummate irony, relevant provisions of NMSA were passed as a result of the sinking of the tanker PUERTO RICAN and the resulting oil spill offshore the Golden Gate in 1984 – a sinking and oil spill that led to litigation handled by this very Court and Your Honor.

Further compounding their errant ways, Defendants' "presentment" argument is not even based upon the statutory authority the United States relied upon in commencing this action - yet Defendants fail to cite to, much less address, this critical OPA provision. As described in a later section of this Memorandum, Section 1017(f)(2) of OPA, 33 U.S.C. § 2717(f)(2), explicitly provides that the United States can initiate an action "at any time" to recover removal costs incurred by the United States. This OPA provision clearly authorizes the United States to immediately file a judicial action without any presentment requirement that might have been argued by Defendants – if they had addressed this provision. This authorization, in and of itself, provides a basis for the Court to deny Defendants' motion to dismiss.

Finally, the underlying construct of the motion filed by Defendants, whose ship caused so much damage and spawned five civil lawsuits to date (three in federal court and two in state court), is premised upon their desire to be *repaid – indeed, repaid and reimbursed –* from the United States Coast Guard's Oil Spill Liability Trust Fund for their *own* liability, for their *own* expenditures, and for the damages *they* pay to the federal government, the state government, local governments, and private parties (such as fishermen) harmed by the spill. *See*, Underhill Dec., Exhibits "A" and "B".

1   To their credit, Defendants do not attempt to hide their view of the Court's role in the process since
2   they state it openly:  they claim the Court lacks both the jurisdiction and the ability to weigh
3   testimony, issue rulings, and decide the relevant issues.  We beg to differ.  More importantly, so did
4   Congress.

### DISCUSSION

## I.    THE INDEPENDENT STATUTORY BASES OF LIABILITY ARE STAND-ALONE CAUSES OF ACTION NOT SUBJECT TO DISMISSAL

7       The United States' claims were brought pursuant to OPA, NMSA, PSRPA, and the CWA,
8   each of which is a stand-alone and independent basis of jurisdiction and liability.  Defendants' motion
9   seeks dismissal or, in the alternative, a stay of all four statutory causes of action with what reasonably
10  can be called a "tail that wags the dog" rationale.  Essentially, Defendants argue (incorrectly) that the
11  United States' action under OPA is premature because of what Defendants call a "claims presentation
    requirement" that we address in a later section of this Memorandum.

12      In their view of the legal landscape, Defendants decry the prospect that a "premature" suit
13  by the United States and any rulings made by this Court could stymie Defendants' intention to seek
14  reimbursement of tens of millions of dollars *via* an administrative claim *they* seek to file with the
15  Coast Guard's National Pollution Funds Center, which administers the Oil Spill Liability Trust Fund
16  ("Fund").  So that the Court is clear on this stunning central tenet of Defendants' argument, we restate
17  it:  a liability action filed by the United States in this Court cannot proceed, according to the owner
18  and operator of the COSCO BUSAN, since this Court's jurisdiction and rulings might hamper those
19  same Defendants' ability to attempt to be reimbursed for their own liability *via* an administrative
20  claim they later want to file with a federal agency.  In essence, Defendants would have an Article III
21  court reduced to the status of a legal bystander – all in order to benefit the same Defendants whose
    ship caused the oil spill.  We respectfully suggest that Defendants' view both of OPA and this Court's
    jurisdiction is fundamentally wrong.

22      **A.    OPA's Savings Provision Authorizes Each of the United States' Claims**

23      As described above, OPA contains an unambiguous savings clause that preserves the
24  authority of the United States to bring claims – in this case the Government's claims under NMSA,
25  PSRPA, and the CWA – in addition to OPA claims.  33 U.S.C. § 2718.  Notwithstanding that OPA's
26  savings clause should result in the denial of Defendants' motion, Defendants fail to discuss this
27  motion defeating savings clause until late in its brief when discussing NMSA and the PSRPA –
    however, even then Defendants have no choice but to concede that the United States is not
28  constrained by OPA and that the United States can "impose *additional* liability or *additional*

1 requirements relating to a discharge of oil" and that "[t]his provision preserves the rights of States and
2 Congress to enact laws in addition to OPA that impose additional liabilities on polluters."(emphasis
3 in original). Dfs. Br. at 11.

4       Recognizing that this explicit statutory savings language is, by itself, grounds to deny
5 Defendants' motion, Defendants leap into the abyss without support and argue that **any federal or**
6 **state claim** is subject to OPA's claims presentation requirement – **regardless of whether such claim**
7 **is an OPA claim or may relate to Fund reimbursement** (i.e., the United States' CWA penalty
claim). Defendants' twisted interpretation would lead to an absurd result where any claim that has
8 any connection to the COSCO BUSAN oil spill – such as the ongoing criminal action; a private
9 citizen's health complaint; a trespass, theft, or other property claim against Defendants; a traffic ticket
10 issued to a contractor responding to the oil spill; or any other number of actions – would be placed
11 in limbo for up to eight years or more[1]/ until completion of the unrelated OPA claims presentation
and the natural resource damage assessment processes. This is not the intent of the savings clause.

12       The next step of Defendants' argument, which necessarily ignores OPA's savings clause, is
13 the *non-sequitur* that since the OPA cause of action is "premature"(a false premise), and since the
14 non-OPA causes of action under NMSA and PSRPA seek identical damages compensable under OPA
15 (a false premise), then the non-OPA counts must fall too. Defendants have not, of course, pointed
16 to *any* provision of NMSA or PSRPA that condition suit or recovery under those statutes on any
"claims presentation requirement" under OPA (there obviously are none). Nor have Defendants
17 explained how OPA would preclude the *in rem* maritime lien causes of action against COSCO
18 BUSAN that are provided by PSRPA and NMSA, as well as NMSA's *in rem* forfeiture remedy, given
19 the fact that OPA contains neither an express *in rem* lien provision nor an *in rem* forfeiture cause of
20 action. Likewise, they have not explained how a purported "claims presentation requirement" under
21 OPA would affect the NMSA and PSRPA claims against Defendant Cota, who is not an OPA
22 defendant.

23       Since Defendants fail to meaningfully discuss the OPA's savings clause despite the obvious
24 impact on their motion, we shall do so in their stead. The savings clause was passed as part of Title
I of OPA. As summarized by the Supreme Court in *United States v. Locke*, 529 U.S. 89, 101-02, 120

25

26 [1]/      Defendants proffer that the COSCO BUSAN natural resource damage assessment process might take
27 five years to complete. Dfs. Br. Pg. 4; Mauseth Decl. ¶6. In addition to this five year time period, the filing
of the lawsuit would be delayed under Defendants' scenario to allow the "presentment" process to be
28 completed; and there might be an additional three year period as OPA allows the natural resource damage
claim to be brought within three years after the assessment is completed. *See*, 33 U.S.C. § 2717(f)(1)(B).

1   S.Ct. 1135, 1144, 146 L.Ed.2d 69 (2000), also not cited by Defendants:

2       The OPA contains nine titles, two having the most significance for these cases. Title
        I is captioned 'Oil Pollution Liability, and Compensation' and adds extensive new
3       provisions to the United States Code. See 104 Stat. 2375, 33 U.S.C. § 2701 *et seq.*
        ... Title I imposes liability (for both removal costs and damages) on parties
4       responsible for an oil spill. § 2702. Other provisions provide defenses to, and
        limitations on, this liability. 33 U.S.C. §§ 2703, 2704. Of considerable importance
        to these cases are OPA's saving clauses, found in Title I of the Act, § 2718, and to
5       be discussed below.

6       *Locke* involved regulations passed by the State of Washington that attempted to govern

7   tanker operations and their interrelation with federal statutes and international treaties. Stated another

8   way, the Washington regulations at issue in *Locke* did not involve liability issues and damages

    remedies, but, instead, the manner in which vessels were to be operated safely so as to avoid spills
9
    in the first place. In response to the argument that the vessel operating regulations were pre-empted,
10
    the State urged that the savings clause in Title I of OPA, *i.e.*, the same savings clause at issue here,
11  rescued the regulations. The Court disagreed, stating, *id.*, 529 U.S. at 105-06, 120 S.Ct. at 1146

12  (emphasis added):

13      The saving clauses are found in Title I of OPA, captioned Oil Pollution Liability and
        Compensation and creating a *liability* scheme for oil pollution. In contrast to the
14      Washington rules at issue here, Title I does not regulate vessel operation, design, or
        manning. Placement of the saving clauses in Title I of OPA suggests that Congress
15      intended to preserve state laws of a scope similar to the matters contained in Title
        I of OPA, not all state laws similar to the matters covered by the whole of OPA or
        to the whole subject of maritime oil transport. *The evident purpose of the saving*
16      *clauses is to preserve state laws which, rather than imposing substantive regulation*
        *of a vessel's primary conduct, establish liability rules and financial requirements*
17      *relating to oil spills.* [Citation omitted.]

        Our conclusion is fortified by Congress' decision to limit the saving clauses by the
18      same key words it used in declaring the scope of Title I of OPA. Title I of OPA
        permits recovery of damages involving vessels 'from which oil is discharged, or
19      which pos[e] the substantial threat of a discharge of oil.' 33 U.S.C. § 2702(a). The
        saving clauses, in parallel manner, permit States to impose liability or requirements
20      'relating to the discharge, or substantial threat of a discharge, of oil.' § 2718(c)....

21      The COSCO BUSAN suit is not about vessel operating regulations, manning requirements

    and the like, *etc.*, but instead asserts statutory causes of action under NMSA, PSRPA, and the CWA
22
    that, as quoted in *Locke*, "impose liability ... 'relating to the discharge, or substantial threat of a
23  discharge, of oil.'" *Id.* at 105. Therefore, the United States' independent causes of action are properly

24  brought and are preserved under the OPA savings clause that reads in relevant part (emphasis added):

25      Nothing in this Act . . . shall in any way affect, or be construed to affect, the
        *authority of the United States* or any State or political subdivision thereof –
26
            (1) to impose additional liability or additional requirements; or
27
            (2) to impose, or to determine the amount of, any fine or penalty (whether
28          criminal or civil in nature) for any violation of law -

1   33 U.S.C. § 2718(c).

2   Notably, this Court's recent ruling in the related Chelsea LLC case, in response to plaintiffs'

3   motion for a protective order, is wholly consistent with *Locke* and held, "[t]he OPA Procedure is

4   separate and independent from plaintiff's state law claims." This ruling is important as Defendants

    contend that all the United States' claims should be dismissed if the Court rules in Defendants' favor

5   on the OPA "presentment" issue. However, as in the Chelsea LLC matter, the United States' OPA

6   claim is just one claim of several and is wholly separate and apart from its causes of action under

7   NMSA, PSRPA, and the CWA. *See*, Court's Amended Civil Minute, dated February 22, 2008,

8   Docket No. 80 in *Chelsea LLC v. Regal Stone, Ltd., et al.*, N.D. of Cal. Case No. C07-5800-SC.

9   **B.    The Park System Resource Protection Act**

    **1.    Strict Liability, *In Personam* and *In Rem***

10  Against the backdrop of OPA's savings clause, we now address the non-OPA statutory causes of

11  action. The first thing we find is that PSRPA was enacted in 1990 by the *same* Congress that passed

12  OPA.[2]/ PSRPA was put into law to protect and preserve the resources of the National Parks. As

13  stated by Congress, the purpose of PSRPA was to authorize the United States:

14          to initiate legal action against individuals who destroy or injure living or non-living
            marine or Great Lakes aquatic resources within units of the National Park System,
            and to allow the Secretary to use funds recovered as a result of damage to living or
15          non-living resources . . . for restoration of such resources.

16  Senate Comm. on Energy & Nat. Res., S. Rep. No. 328, 101st Cong., 2d Sess. 1, *as reprinted*

17  *in* 1990 U.S. Code Cong. & Admin. News 603 (1990).[3]/

18  PSRPA provides that "any person who destroys, causes the loss of, or injures any park system

19  resource is liable to the United States for response costs and damages resulting from such destruction,

    loss or injury." 16 U.S.C. § 19jj-1(a). Park system resources are defined as "living or non-living

20  resource[s] ... located within the boundaries of a unit of the National Park System." 16 U.S.C. §

21  19jj(d). Significantly for this case and the United States' action against Defendant COSCO BUSAN,

22  PSRPA also enacted an *in rem* liability provision at 16 U.S.C. § 19jj-1(b):

23  **(b) Liability in rem**

24          Any instrumentality, including but not limited to a vessel ... that destroys, causes the
            loss of, or injures any park system resource or any marine or aquatic park resource

25

26  [2]/     The PSRPA was signed into law on July 27, 1990, Pub.L. 101-337, 104 Stat. 379. OPA was enacted

27  on August 18, 1990, Pub.L. 101-380, 104 Stat. 489.

28  [3]/     The PSRPA was amended in 1996 to extend its scope to all resources within any unit of the National
    Park System.

1   shall be liable in rem to the United States for response costs and damages resulting from such destruction, loss, or injury to the same extent as a person is liable under

2   subsection (a) of this section.

3       The standard of liability under the statute is strict liability. *Tug Allie-B, Inc. v. United States*,

4   273 F.3d 936, 942 (11th Cir. 2001). PSRPA provides limited statutory defenses, *i.e.*, the injury being

5   caused solely by an act of God or war; or by a third party other than an employee or agent. 16 U.S.C.

6   § 19jj-1(c). These limited defenses are inapplicable to the present action as Defendants concede that

    they are strictly liable for the United States' claims. Dfs. Br. at 2, 14.

7           **2.   PSRPA's Savings Clause, Legislative History, and Its Applicability to Oil Spills**

8       PSRPA perfectly dovetails OPA's savings clause with one of its own, but once again is not

9   cited or discussed by Defendants. Indeed, PSRPA cannot be clearer, stating unambiguously that

10  liability under the statute is "in addition to any other liability which may arise under Federal or State

11  law." 16 U.S.C. § 19jj-1(d). The legislative history of the statute leaves no doubt that PSRPA's

12  savings clause means exactly what it says and that the United States has the immediate right to bring

13  its PSRPA claim as an independent cause of action:

14          The Committee wishes to emphasize that the provisions of this Act are in addition to and not in lieu of other remedies available under Federal, State or local law, and is not intended to suggest that the Federal government does not already have

15          authority to prevent actions which threaten Federal property or recover damages when injury actually occurs.

16          Section 3 authorizes the Attorney General of the United States to commence civil actions against persons who damage park system resources.

17          Subsection (a) provides that upon the request of the Secretary, and upon a finding by the Secretary of damage to a park system resource (or absent the undertaking of

18          response costs, damage to the park system resource would have occurred), the Attorney General is authorized to commence a civil action against the person in the

19          appropriate United States district court.

20      S. REP. NO. 101-328, at 7 (1990), *as reprinted in* 1990 U.S.C.C.A.N. 603, 607; *see, e.g., Tug*

21  *Allie-B, Inc.*, 273 F.3d 936. (As should be obvious, the United States, through the Attorney General,

22  exercised its discretionary right to bring a PSRPA action in this Court.) And consistent with

23  PSRPA's savings clause, the statute contains absolutely *no requirement whatsoever*, either explicitly

24  or implicitly, that filing suit under PSRPA is preluded unless the United States first "presents" an

    OPA claim to a defendant.

25      The statute's application to oil spills is also established since the legislative history indicates

26  that a suggestion was made to exclude oil spills from the statutes coverage:

27          Also, Mr. Chairman S.1360 and H.R.2844 would appear to include oil spills which cause resource damage. As a technical matter, this legislation should be amended

28          to assure that it does not cover claims or liabilities arising under section 311 of the Clean Water Act and the Comprehensive Environmental Response, Compensation,

1  and Liability Act.

2        1990 U.S.C.C.A.N., *supra* at 611.  The suggestion was rejected and the bill was *not* amended,

3  however, and instead Congress adopted 16 U.S.C. § 19jj-1(d), PSRPA's broad savings clause, which

4  was further buttressed by the emphatic language quoted above regarding the final bill that was passed

5  ("The Committee wishes to emphasize that the provisions of this Act are in addition to and not in lieu

   of other remedies available under Federal, State or local law ...").

6        C.    **The National Marine Sanctuaries Act**

7              1.    **Strict Liability, *In Personam* and *In Rem***

8        NMSA governs the designation and management of federally protected marine areas of

9  specific interest.  Congress enacted NMSA in response to the increasing degradation of marine

   habitats and in recognition of the need to protect marine ecosystems.  *United States v. Great Lakes*

10 *Dredge and Dock Co.*, 259 F.3d 1300, 1304 (11th Cir. 2001).  A purpose of NMSA is to preserve

11 sensitive areas for their conservation, recreational, ecological, or aesthetic value.  *United States v.*

12 *Fisher*, 977 F.Supp 1193, 1999 (S.D. Fla. 1997).

13       Under NMSA, any person that injures any sanctuary resource is strictly liable for an amount

14 equal to response costs and damages resulting from this injury.  *Great Lakes Dredge & Dock Co.*, 259

   F.3d at. 1304-05; *U.S. v. M/V Jacqueline L.*, 100 F.3d 1520, 1521 (11th Cir. 1996); *United States v.*

15 *M/V Miss Beholden*, 856 F. Supp. 668 (S.D. Fla. 1994) (owners and operators of a grounded freighter

16 strictly liable for damage to coral reef within the Florida Keys Sanctuary).  The defenses to liability

17 are extremely limited, and in this case inapplicable as the Defendants concede that they are strictly

18 liable for the COSCO BUSAN oil spill.  Dfs. Br. at 2, 14.

19       "Response costs" are "the costs of actions taken . . . to minimize destruction or loss of, or

20 injury to, sanctuary resources, or to minimize the imminent risks of such destruction, loss, or injury."

   16 U.S.C. § 1432(7).  "Damages" are defined as: "(A) compensation for- - (i)(I) the cost of replacing,

21 restoring, or acquiring the equivalent of a sanctuary resource; and (II) the value of the lost use of a

22 sanctuary resource pending its restoration or replacement or the acquisition of an equivalent sanctuary

23 resource; or (ii) the value of a sanctuary resource if the sanctuary resource cannot be restored or

24 replaced or if the equivalent of such resource cannot be acquired; and B) the cost of damage

   assessments." *Id.* at § 1432(6).

25       Like PSRPA, NMSA's list of covered resources exceeds those addressed by OPA.  Under

26 16 U.S.C. § 1432(8), a "sanctuary resource" is defined as "any living or non-living resource of a

27 natural marine sanctuary that contributes to the conservation, recreational, ecological, historical,

28 educational, cultural, archeological, scientific, or aesthetic value of the sanctuary."  NMSA also

1  provides an explicit *in rem* remedy that allows the arrest and assertion of a maritime lien against
2  vessels used in injury of marine sanctuary resources. 16 U.S.C. § 1443(a)(2). The United States has
3  availed itself of that remedy *via* its action against COSCO BUSAN. NMSA further provides a
4  separate *in rem* forfeiture provision at 16 U.S.C. § 1437(e)(1) that we address in a subsequent section
   of this Memorandum.

5              **2.    NMSA, Its Legislative History, and Its Applicability to Oil Spills**

6          First, and as with PSRPA, absolutely *nowhere* in NMSA is there any provision, express or
7  implied, that filing suit under the statute is dependent upon the "presentation" of an OPA claim to
8  Defendants. Conversely, NMSA applies to oil spills. As stated in the House Report accompanying
   the 2000 amendments to NMSA (emphasis added):

9          The NMSA protects areas designated as National Marine Sanctuaries in several
10         ways. ... *Sanctuaries are covered by strict vessel liability provisions, which apply
           to oil spills, groundings, or other actions that damage marine sanctuary resources.*[4/]

11         In yet further irony, NMSA was amended in 1988 partly in response to an oil spill that arose
12  in this District and in one of the sanctuaries harmed in this case, the Gulf of the Farallones National
13  Marine Sanctuary, a spill which led to suit before *this* Court. *See*, S. Rep. 100-595 (1988), *as
    reprinted in* 1988 U.S.C.C.A.N. 4387, 4388 ("In recent years, two accidents have caused significant
14  damage to marine sanctuary resources. [One of] these events involved the ... grounding and rupture
15  of an oil tanker, the M/V Puerto Rican, near the Farallones National Marine Sanctuary. In both
16  incidents, NOAA sued and collected large cash settlements for the damage done to the sanctuaries.")

17         **D.    PSRPA, NMSA, OPA, and the CWA Address Separate and Independent
18                 Damage and Penalty Claims**

19         Defendants incorrectly assert that "damages recoverable under those statutes [NMSA and
20  PSRPA] are identical to those recoverable under OPA" and then argue that the United States' NMSA
21  and PSRPA claims should also be dismissed. Dfs. Br. at 1, 2. This is wrong. Though OPA, NMSA,
22  and PSRPA can address certain similar injuries, these statutes address unique natural resources that
23  are not addressed coextensively. Furthermore, the United States' CWA civil penalty case is in no
    manner addressed by these other statutes that comprise the United States' claim.

24         As an example, while certain injuries that can be pursued under OPA can also be pursued
25  under PSRPA, the latter statute includes a larger category of resources within a unit of the National
26  Park System. OPA authorizes recovery of damages for injuries to natural resources and the services
    they provide. *See*, 33 U.S.C. § 2706(b)(1). PSRPA, on the other hand, also covers a "park system

27  _____

28  [4/]      H.R. REP. 106-224, accompanying H.R. 1243, 106TH Cong., 1st Sess. 1999, 1999 WL 493119 * 1
    (Leg.Hist.). *See*, Pub.L. 106-513, November 13, 2000, 114 Stat. 2389.

1 resource", which includes any resources, natural or manmade, located within the boundaries of a

2 national park (other than those owned by a non-Federal entity). Such resources that would be

3 included within PSRPA, but not OPA, include cultural, architectural, and historic structures and items. *See,* 16 U.S.C. §19jj(d). By way of example, in this incident 15 historic vessels berthed at the

4 San Francisco Maritime National Historic Park were oiled by the COSCO BUSAN spill. Similarly,

5 the broader definition of sanctuary resources under NMSA at 16 U.S.C. § 1432(8) could include

6 resources not covered under OPA.

7   Further, the United States' CWA penalty claim seeks civil penalties that are completely

8 distinct from OPA, NMSA, and the PSRPA claims. *See,* 33 U.S.C. § 1321(b)(7). 40 C.F.R. § 110.3.

9 The CWA claim, without any "presentment" requirement, provides for assessment of a judicially assessed penalty in an amount that shall be determined by the Court. *See, e.g., Tull v. United States,*

10 481 U.S. 412, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987). Likewise, the United States' action for *in rem*

11 forfeiture under NMSA, 16 U.S.C. § 1437(e)(1), obviously has no connection to OPA.

12 **II. OPA AUTHORIZES THE UNITED STATES TO BRING AN IMMEDIATE CLAIM**

13   **A. OPA in General**

14   OPA authorizes the United States to recover removal costs incurred responding to oil spills.

15 33 U.S.C. § 2702(b). OPA states that "each responsible party for a vessel or a facility from which

16 oil is discharged . . . is liable for the removal costs and damages." 33 U.S.C. § 2702(a). OPA is a

17 strict liability statute subject to limited defenses, discussed below. *Puerto Rico v. M/V Emily S. (In re Metlife Capital Corp.),* 132 F.3d 818 (1st Cir. 1997).

18   Moreover, the natural resource trustees ("Trustees")[5] can recover "damages" for "injury to,

19 destruction of, loss of, or loss of use of natural resources" arising from an oil spill to waters of the

20 United States. 33 U.S.C. § 2702(2)(A). "Natural resources" include land, fish wildlife, biota and

21 other resources belonging to, managed by, or held in trust by the federal government and any state.

22 33 U.S.C. § 2701(20). OPA also authorizes private parties to seek reimbursement from the Fund.

23 33 U.S.C. § 2713. OPA provides that the United States, through the National Pollution Funds Center, which manages the Fund, shall be subrogated to all rights, claims and causes of action of claimants

24 to whom it has paid compensation. The United States is authorized to commence an action on behalf

25 of the Fund to recover such compensation paid by the Fund to private parties. 33 U.S.C. § 2715(c).

26

27

28 [5] In this case, the federal Trustees are the Department of the Interior and the National Oceanic and Atmospheric Administration.

1

**B.    OPA's Limited Statutory Defenses and the Declaratory Relief Cause of Action**

Defenses to OPA's strict liability are extremely limited. *See, Puerto Rico,* 132 F.3d 818; *United States v. English,* 2001 A.M.C. 1756 (D. Hawaii, March 28, 2001). To establish a defense, the responsible party must prove that the discharge or substantial threat of a discharge was caused: (1) *solely* by act of God, (2) *solely* by act of war, (3) *solely* by the act or omission of a third party, or *solely* by a combination of one or more of the foregoing three defenses. OPA, 33 U.S.C. § 2703(a). The act of God and act of war defenses are obviously inapplicable. The "sole fault third party" defense under 33 U.S.C. § 2703(a)(3) is extremely narrow. It applies to:

> ... an act or omission of a third party, other than an employee or agent of the responsible party or a third party whose act or omission occurs in connection with any contractual relationship with the responsible party (except where the sole contractual arrangement arises in connection with carriage by a common carrier by rail), if the responsible party establishes, by a preponderance of the evidence, that the responsible party–

> (A) exercised due care with respect to the oil concerned, taking into consideration the characteristics of the oil and in light of all relevant facts and circumstances; and

> (B) took precautions against foreseeable acts or omissions of any such third party and the foreseeable consequences of those acts or omissions; ...

We note the well-settled rule that the "third party" defense is narrowly construed to encompass only actions entirely outside the ship and that compulsory pilots, like Defendant Cota, are not deemed "third parties" within the statutory meaning of the exception. *See, e.g., Burgess v. M/V TAMANO,* 564 F.2d 964 (1st Cir. 1977), *cert. denied,* 435 U.S. 941 (1978) (decided under the CWA).

In any event, all of the statutory defenses are inapplicable since Defendants have *conceded* before the Court that they are strictly liable to pay for removal costs and damages resulting from the COSCO BUSAN incident. Dfs. Br. at 2, 14. We bring to the Court's attention – and that of the Defendants – the fact that this critical judicial admission, including the waiver of a "third party" defense, is greatly significant in the context of this motion, the overall scope of the case, in any further claims or actions relating to the oil spill, as well as in the context of the other federal and state actions that have been filed and whose courts and plaintiffs therein will rely upon the judicial admission .[6] We would find it hard to believe that these separate statements, which constitute an irrevocable admission and waiver of their OPA defenses, were made accidentally or without conscious

---

[6]    *City and County of San Francisco et al. v. Regal Stone, Ltd. et al.,* California Superior Court, Case No. CGC-07-469876; *John Tarantino; Steven F. Fitz, dba Fitz-Buskirk, Inc.; and others similarly situated v. Hanjin Shipping Co., Ltd.; Regal Stone, Ltd.; Synergy Maritime; John J. Cota; and Does 1-100,* California Superior Court, Case No. CGC-07-469379; *Shogren Living Trust v Regal Stone, Ltd. et al.,* U.S. District Court, Northern District of California, Case No. 07-05926- SC; and *Chelsea LLC v. Regal Stone, Ltd., et al.,* U.S. District Court, Northern District of California, Case No. 07-5800-SC.

1  forethought and full consultation between counsel and client(s).

2      Defendants assert, however, that their admission of liability deprives the Court "of a case or

3  controversy" such that the Fourth Cause of Action should be dismissed. It is a most peculiar position

to take and, in any event, a most fundamentally wrong one. When a defendant admits liability and

4  responsibility in response to a complaint, the normal course of action for any court to take is to enter

5  judgment on the cause of action – *not* to dismiss the case.

6

7  **C.    The United States Has Authority to File an Action under OPA That Is
       Independent of the OPA Fund Claim Provisions**

8      Defendants assert that the United States' OPA claim should be dismissed because the United

9  States did not first present its full claim to the responsible parties. Before addressing this assertion,

it is important to point out that the OPA presentment provision contained in 33 U.S.C. § 2713

10  addresses claims to the Fund, and is not the statutory authority the United States relied upon in

11  commencing this action. Rather, a separate OPA provision *specifically* authorizes the United States

12  to immediately file this judicial action.

13      Critically, Defendants fail to acknowledge, let alone discuss, Section 1017(f)(2) of OPA, 33

14  U.S.C. § 2717(f)(2), which provides that the United States can initiate an action "at any time" to

recover removal costs incurred by the United States:

15

16          An action for recovery of removal costs referred to in section 2702(b)(1) [of OPA]
           must be commenced within 3 years after completion of the removal action. In any
           such action described in this subsection, the court shall enter a declaratory judgment

17          on liability for removal costs or damages that will be binding on any subsequent
           action or actions to recover further removal costs or damages. Except as otherwise
           provided in the paragraph, **an action may be commenced under this subchapter**

18          **for recovery of removal costs at any time after such costs have been incurred.**

19  *Id.* (emphasis added).

20      In addition to authorizing the United States to bring an action "at any time" to recover

21  removal costs, OPA allows the United States great latitude in unilaterally determining when to file

its OPA claims. For example, rather than filing its natural resource damage claim in conjunction with

22  its removal costs claim as in the instant case, the United States is entitled to bring the natural resource

23  damage component at a later date so long as its suit is filed within three years after the completion

24  of the natural resource damage assessment. *See*, 33 U.S.C. § 2717(f)(1)(B). In the event the United

States chooses to subsequently bring a separate natural resource damage case, the declaratory

25  judgment on liability reached in the earlier "removal cost action" will be binding upon the defendants.

26  *See*, 33 U.S.C. § 2717(f)(2)("the court shall enter a declaratory judgment on liability for removal costs

27  or damages that will be binding on any subsequent action or actions to recover further removal costs

or damages"). Although these options are available to the United States, in the COSCO BUSAN

28

1  case, the United States chose to exercise its prosecutorial discretion to bring its removal costs and

2  damages claim at one time. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 n. 7 (1987)(The party

3  who brings a suit is master to decide what law he will rely upon.); *Healy v. Sea Gull Specialty Co.*,
   237 U.S. 479, 480 (1915)(The plaintiff is the master of the complaint).

4      As stated above, Defendants concede, and there is simply no question that the United States

5  incurred removal costs and other damages resulting from the COSCO BUSAN oil spill within the

6  meaning of this provision. Dfs Br. at 3.  Consequently, OPA authorizes the United States to

7  immediately file this action without any presentment requirement that might have been argued by

8  Defendants – if they had addressed this provision.  This authorization, in and of itself, provides a

9  basis for the Court to deny Defendants' motion to dismiss.  Although it does not impact the
   application of 33 U.S.C. § 2717(f)(2) as costs have been incurred, the Court should note that

10 Defendants have not agreed to reimburse the United States for in excess of $1.1 million in clean-up

11 and other removal costs paid by the Fund.[2/]

12      **D.    OPA's Presentation Requirements Do Not Restrict the United States' Ability to
           Take Immediate Judicial Enforcement Action**

13      Rather than addressing OPA's explicit language authorizing the United States to commence

14 this enforcement action "at any time," Defendants focus upon other inapplicable provisions of OPA

15 and argue that the United States cannot bring its OPA claim at this time.  According to Defendants,

16 this is because the United States must first submit the claims to Defendants before filing suit.  When

17 analyzed in their entirety, it is evident that the OPA presentment requirements do not provide a basis
   to dismiss the United States' action.

18      The relevant sections of 33 U.S.C. § 2713 state (emphasis added):

19          (a) Presentation

20          **Except as otherwise provided in subsection (b) of this section,** all
            claims for removal costs or damages shall be presented first to the
21          responsible party or guarantor of the source designated under section
            2714(a) of this title.

22          (b)(2) Limitation on presenting claim

23          No claim of a **person** against the Fund may be approved or certified

24  _____

25  [2/]     The United States has submitted a demand to Defendants for interim partial payment of over $1.1
    million in removal costs paid out by the U.S. Coast Guard, National Pollution Funds Center, Oil Spill
26  Liability Trust Fund. The demand has not yet been paid. *See*, Declaration of R. Michael Underhill, filed
    herewith, and Exhibits "A" and "B" thereto. The exhibits are the demand letters for the monies and set forth
27  the terms of the demand. The letters were sent before Defendants filed their motion to dismiss and before
    their foregoing concession and waiver that they are strictly liable to pay for removal costs and damages
28  resulting from the COSCO BUSAN incident.

1  during the pendency of an action by the person in court to recover costs which are the subject of the claim.

2  Initially, Defendants fail to examine the critical relationship between these complementary

3  provisions, and fail to note that Section 2713(b)(2) of OPA applies to a "person", which is defined

4  as "an individual, corporation, partnership, association, State, municipality, commission, or political

5  subdivision of a State, or any interstate body." 33 U.S.C. § 2701(27). Notably, the United States is

*excluded* from this definition.

6  Furthermore, reading the OPA "presentment requirement" as providing a basis for dismissing

7  the United States' action would lead to a patently absurd and illogical result. We shall explain. *The*

8  *United States is suing in this case, in part, on behalf of the Fund.* (Amended Complaint, Third Cause

9  of Action.) Indeed, the Ninth Circuit has held that "The Coast Guard and the Fund are both part of

10  the federal government." *United States v. Hyundai Merchant Marine Co., Ltd.* 172 F.3d 1187, 1192

11  (9th Cir. 1999), *cert. denied*, 528 U.S. 963 (1999). Thus, if a responsible party could assert a

12  "presentment requirement" as a defense to the United States (including the Fund), it would mean that

13  the Fund would have to "present" its claim to the responsible party and, if the responsible parties

14  denies the claim or simply fails to pay it within 90 days, then the Fund could file suit under OPA –

15  or – present its claim to the Fund ... that is, to itself! Similarly, the Fund (on whose behalf the Third

16  Cause of Action is asserted) is not defined in OPA as either a "person" or a "claimant", but instead

17  is a separately defined entity. 33 U.S.C. § 2701(11). Once again, were the Fund to be considered a

18  "claimant", Section 2713 quite illogically and improbably would provide the Fund with the right to

19  file a claim against itself. Thus, this Court should reject Defendants' argument and find that Section

2713 is not available to Defendants as a defense to claims *of the Government* – thereby harmonizing

the statute by avoiding what otherwise would be an absurd result.

20  Other provisions of OPA are consistent with this logical reading that the OPA "presentment

21  requirement" does not provide a basis for dismissing the United States' action. For example, the

22  United States is visibly absent from the exceptions contained in 33 U.S.C. § 2713(b)(1), which

23  specify when claims may be submitted by private or state entities directly to the Fund. Notably,

24  although Section 2713(b)(1) enumerates several exemptions to the general prohibition on submitting

25  claims to the Fund prior to submitting claims directly to the responsible party or the responsible

26  party's guarantor, none of these exceptions mentions the United States. Section 2713(b)(1)'s

exemptions include provisions for private claimants (33 U.S.C. § 2713(b)(1)(A, D), the Responsible

27  Party (33 U.S.C. § 2713(b)(1)(B), and the Governor of a State (33 U.S.C. § 2713(b)(1)(C). However,

there are no similar provisions that apply to the United States. It would be inconsistent with OPA to

28  specify that other parties are not bound by OPA's presentation requirements, fail to provide any

1  exception for the United States, and then limit the United States' ability to take enforcement action
2  as argued by Defendants. *Davis v. Mich. Dep't of Treasury,* 489 U.S. 803, 809, (1989) ("statutory
3  language cannot be construed in a vacuum.  It is a fundamental canon of statutory construction that
   the words of a statute must be read in their context and with a view to their place in the overall
4  statutory scheme.")

5        It would, however, be consistent with OPA to preclude a defendant from seeking to utilize
6  Section 2713 as a defense to claims of the United States due to the Government's relationship to the
7  Fund.  That is, the Fund is part of the United States, and the Coast Guard is responsible for overseeing
   the claims procedure outlined in 33 U.S.C. § 2713 and its associated regulations found in 33 C.F.R.
8  § 136.  The United States is treated differently under OPA in light of its responsibility for ensuring
9  that the public and the environment are protected, and the United States serves a unique role in
10  overseeing and administering these statutory provisions.  *See, Hyundai Merchant Marine Co., Ltd.,*
11  172 F.3d at 1192 (Coast Guard and the Fund are both part of the federal government).

12        While certain courts have interpreted the presentation requirement of 33 U.S.C. § 2713(a)
13  as establishing a necessary precursor to seeking judicial enforcement of *private claims*, these cases
   do not apply to the United States.  For example, Defendants rely upon *Boca Ciega Hotel, Inc. v.*
14  *Bouchard Transp. Co., Inc.,* 51 F.3d 235 (11th Cir. 1995), in which the court held that 33 U.S.C. §
15  2713(a) established a mandatory condition precedent to filing of private lawsuits under OPA.  This
16  simply does not apply to the United States as *Boca Ciega's* holding is limited to claims involving
   private litigants.  Furthermore, this limited application of *Boca Ciega* to private claimants is
17  supported by subsequent district court decisions.  *See, Marathon Pipe Line Co. v. LaRoche Industries*
18  *Inc.,* 944 F.Supp. 476, 479 (E.D. La.1996)(OPA's presentation requirement does not apply to a
19  responsible party seeking declaratory judgment of third party liability noting that, to adopt the
20  Defendant's interpretation of Section 2713 "would graft onto the OPA a requirement that would
21  render some provisions of the OPA meaningless."); *Leboeuf v. Texaco,* 9 F.Supp.2d 661 (E.D.
   La.1998)(limited to private claimants; Section 2713 is not jurisdictional but akin to exhaustion of
22  administrative process.)

23        Other than these inapplicable cases, Defendants fail to cite a single case in which a court has
24  held that the United States must comply with the OPA presentment provisions prior to filing a lawsuit
25  against a responsible party.  Moreover, the Court must not lose sight that Defendants' interpretation
26  would directly conflict with Congress' clear mandate of 33 U.S.C. § 2717(f)(2), described above, that
   the United States is authorized to bring a judicial action for removal costs "at any time" after such
27  costs have been incurred, and that the court "shall" enter a declaratory judgment on liability for
28  removal costs or damages that will be binding on any subsequent action or actions to recover further

UNITED STATES' RESPONSE TO DEFENDANTS' MOTION TO DISMISS - C07-6045 SC        15

1  removal costs or damages. *Environmental Defense Center, Inc. v. U.S. E.P.A.*, 344 F.3d 832, 844 (9th
2  Cir. 2003) (an interpretation cannot violate the bedrock principle that statutes not be interpreted to
3  render any provision superfluous).

**E.    This Court Should Reject Defendants' OPA Presentment Argument Because It Would Undermine OPA's Purpose**

5     If this Court finds that OPA is ambiguous with respect to whether Defendants can attempt
6  to assert the OPA presentation clauses as a defense to an action by the United States, it should afford
7  deference to the United States' reasonable interpretation. The interpretation offered by the United
   States is a logical reading of the text of the statute as a whole and effectuates congressional intent
8  behind the passage OPA. In contrast, this Court should reject Defendants' interpretation of OPA's
9  presentation requirements as it would directly undercut the clear purpose of the Act. *In re Arizona
10 Appetito's Stores, Inc.* 893 F.2d 216, 219 (9th Cir. 1990)("We interpret a federal statute by ascertaining
11 the intent of Congress and by giving effect to its legislative will).

12    Strict adherence to the OPA presentation provisions as argued by Defendants would severely
13 limit the United States' ability to fulfill the mandates of OPA "to make the environment and public
   whole for the injuries to natural resources and services resulting from . . . a discharge . . . of oil" and
14 to "promote expeditious and cost-effective restoration of natural resources and services injured as a
15 result of [the spill]." 15 C.F.R. § 990.10. This goal is achieved through restoration of natural
16 resources and services harmed as a result of the incident and provision of compensation for interim
   losses. *Id.* Fulfilling OPA's purpose requires that the United States be able to expeditiously file suit
17 in order to protect the opportunity for recovery. Following the presentation process set out in 33
18 U.S.C. § 2713 would cause delays that could enable Defendants to escape liability and frustrate the
19 foundational purpose of OPA. *See*, 15 C.F.R. §§ 990.10 and 990.64.

20    Defendants' approach of delaying judicial action until the United States provides Defendants
21 with notice of damages under OPA attempts a neat "hat trick" that would eliminate the potential for
   relief by the United States. However, NMSA and PSRPA claims are also based on *in rem*
22 jurisdiction. 16 U.S.C. § 1437(e); 16 U.S.C. § 19jj-1. The COSCO BUSAN was flagged in Hong
23 Kong and was en route to a foreign port of call, believed to be South Korea. U.S. Amended Comp.
24 at ¶¶ 5 and 20. In order to guarantee viability of NMSA and PSRPA claims against the COSCO
25 BUSAN, it was imperative for the United States to establish *in rem* jurisdiction over COSCO BUSAN
26 and obtain a lien before the vessel could leave our waters. 16 U.S.C. § 1443(a)(2), 16 U.S.C. § 19jj-1.

27    Delay in filing all claims until a sum certain for natural resources damages could be
   ascertained would have allowed the COSCO BUSAN to depart United States' waters, escape *in rem*
28 jurisdiction, and ultimately deprive the United States recovery under NMSA and PSRPA. Because

1   of the need to file this action, the United States included its remaining OPA, NMSA, and PSRPA
2   claims in order to avoid a potential argument that the United States is barred from bringing claims
3   at a later date. *U.S. Indus., Inc. v. Blake Const. Co., Inc.*, 765 F.2d 195, 205 (D.C. Cir. 1985)
    (generally, a plaintiff is expected to present in one suit all claims arising out of the same occurrence).
4
5       Defendants' argument that the United States need not have filed its *in rem* action since "it is
    not necessary to institute a lawsuit to obtain such security, and it is standard practice for insurers of
6   vessels such as the COSCO BUSAN to issue security when it is requested, without first requiring that
7   a lawsuit be filed" and that Defendants "provided the United States security for its claims in the
8   amount of $79,500,000" is misleading to the Court and disingenuous. Dfs. Br. at 4. Why? Because
    the Government attempted to secure a voluntary security (a "letter of undertaking") over a week
9   before suit was filed. *See*, Docket No. 5, page 2. In return, the United States was met with silence,
10  thus requiring suit in order to secure *in rem* jurisdiction. The $79.5 million letter of undertaking was
11  not provided until after the suit was filed.

12  **III.    THE FORFEITURE ACTION UNDER NMSA IS PROPERLY PLED**

13      Defendants contend that taking or retaining a sanctuary resource triggers forfeiture of the
14  offender's vessel, but that injuring or destroying the same resource does not. Defendants' flawed
    reasoning disregards the plain meaning of NMSA's statutory language and would create absurd
15  results that contradict the environmentally protective purpose of NMSA. NMSA's general forfeiture
16  provision, 16 U.S.C. § 1437(e)(1), reads as follows:

17          Any vessel (including the vessel's equipment, stores, and cargo) and other item
            used, and any sanctuary resource taken or retained, in any manner, in connection
18          with or as a result of any violation of this chapter or of any regulation or permit
            issued under this chapter shall be subject to forfeiture to the United States pursuant
19          to a civil proceeding under this subsection . . .

20      The plain language of this section indicates that Congress was simply listing in the first
21  sentence of Section 1437(e)(1) those items for which the United States could seek forfeiture in the
    event of a NMSA violation: the offending vessel, associated "other" items, any taken resource(s),
22  or all of the aforementioned. In focusing on the use of "and" rather than "or," the Defendants
23  misconstrue the quoted language as a series of prerequisites for a claim rather than a list of forfeitable
24  items. More importantly, however, Defendants' interpretation would lead to the completely illogical
    result of making both a vessel *and* a taken or retained sanctuary resource necessary to maintain a
25  forfeiture claim.
26
        Thus, the Defendants' argument inexplicably would mean that the United States would be
27  unable to seek forfeiture of taken sanctuary resources unless the taking was accomplished by vessel.
28  Application of Defendants' interpretation to other federal forfeiture statutes creates equally

1  nonsensical results. Under 21 U.S.C. § 881(a)(2), the United States may seek forfeiture of "[a]ll raw
2  materials, products, and equipment of any kind which are used, or intended for use, in manufacturing,
3  compounding, processing, delivering, importing, or exporting any controlled substance . . . ." It
   seems unlikely that Congress intended the forfeiture of "raw materials" to be conditioned on the
4  associated use of "products" and "equipment."[8]/ *Wilshire Westwood Assocs. v. Atlantic Richfield*
5  *Corp.*, 881 F.2d 801, 804 (9th Cir. 1989)(the plain meaning incorporates not only the words in
6  isolation but also in the context of the relevant statutory provisions as a whole; the court is aided in
7  this inquiry when one interpretation would thwart the purpose of the over-all statutory scheme or lead
8  to an absurd result.)
9      Defendants' interpretation of Section 1437(e)(1) as limiting the types of NMSA violations
   that trigger forfeiture contradicts that section's plain language. Despite Defendants' contention,
10 forfeiture is not conditioned upon conduct occurring in connection with or resulting in a sanctuary
11 resource being taken or retained. Rather, forfeiture is expressly triggered by "any violation of this
12 chapter or of any regulation or permit issued under this chapter . . . ." 16 U.S.C. § 1437(e)(1). "Any
13 violation" would include a violation of 16 U.S.C. § 1436(1), which prohibits destroying, causing the
14 loss of, or injuring sanctuary resources. The plain meaning of the language selected by Congress
   indicates that it did not intend to limit forfeiture to only certain types of violations. *Patenaude v.*
15 *Equitable Life Assur. Soc'y of the United States*, 290 F.3d 1020, 1025 (9th Cir. 2002)(the court must
16 begin with the plain language of the statute and if that language is clear, that is the end of the inquiry).
17     This inclusive interpretation is also consistent with the stated purpose of NMSA: "to provide
18 authority for comprehensive and coordinated conservation and management of [marine sanctuaries],
   and activities affecting them . . ., to maintain the natural biological communities in the national
19 marine sanctuaries, and to protect . . . natural habitats, populations, and ecological processes." 16
20 U.S.C. § 1431(b)(2, 3). Pursuant to this purpose, NMSA's prohibitions logically include not only acts
21 such as possession, sale, delivery, and transport of sanctuary resources (which would presumably
22 implicate the taking or retention of a resource) but also causing destruction of or injury to such
23 resources. *See,* 16 U.S.C. § 1436(1, 2). Defendants' interpretation of Section 1437(e)(1) would
24 permit a defendant to avoid forfeiture by simply destroying a sanctuary resource rather than taking
   or retaining it – clearly a less environmentally protective alternative. Given Congress' intent stated
25
26
27  [8]/     A reading of 21 U.S.C. § 881 indicates that Congress is not always as selective in its choice of
   language when listing forfeitable items as Defendants imply. In that section, "and" and "or" are used nearly
   interchangeably, apparently without effect: "raw materials, products, *and* equipment"; "aircraft, vehicles,
28 *or* vessels"; "books, records, *and* research"; "moneys, negotiable instruments, securities, *or* other things."
   *Id.* (emphasis added).

1  above, this Court should construe NMSA's provisions "liberally to avoid frustration of the beneficial

2  legislative purposes." *Wilshire Westwood Assocs.*, 881 F.2d at 804.

3      Also, simply because Section 1437(e) contains provisions specifically addressing the

4  disposition of seized sanctuary resources does not imply that the general forfeiture provision applies

5  only when there are seized resources. *See*, 16 U.S.C. § 1437(e)(3, 4). Rather, these are the only

6  situations in which such provisions would have any meaning. In situations without seized resources,

   there would, of course, be no resources in custody of which to dispose. Accordingly, this Court

7  should not insert a limitation provision into NMSA that was unintended by Congress. *See, generally,*

8  *A-1 Ambulance Serv., Inc. v. California*, 202 F.3d 1238, 1244 (9ᵗʰ Cir. 2000)("We will not add a term

   to the statute that Congress elected not to include.")

9  **IV.    THE CLEAN WATER ACT CIVIL PENALTY ACTION IS PROPERLY PLED**

10     Defendants claim that the United States' cause of action for judicially assessed civil penalties

11 under the CWA, 33 U.S.C. § 1321(b)(7), must be dismissed pursuant to Rule 8(a)(2) of the

12 Fed.R.Civ.P.[10]/ The argument fails on its face.

13     The standard established in Rule 8(a)(2) requires only "a short and plain statement of the

14 claim showing that the pleader is entitled to relief..." Specific facts are not necessary; the statement

15 need only " 'give the Defendant fair notice of what the ... claim is and the grounds upon which it

   rests.' " *Erickson v. Pardus*, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (citation omitted). A

16 complaint does not need detailed factual allegations and such allegations need only be enough to raise

17 a right to relief above the speculative level. *See, e.g., Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955,

18 1964-65, 167, L.Ed.2d 929 (2007). For the purposes of a motion to dismiss, the material allegations

   of the complaint are taken as true and the complaint is to be liberally construed in a light most

19 favorable to plaintiff. *See, e.g., Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d

20 404 (1969). Finally, all reasonable inferences are to be drawn in favor of the plaintiff. *Jacobson v.*

21 *Hughes Aircraft Co.*, 105 F.3d 1288, 1296 (9ᵗʰ Cir. 1997). Taking the material allegations of the

22 Amended Complaint as admitted and drawing all reasonable inferences in favor of the United States,

23 more than a sufficient pleading under Fed.R.Civ.P. 8 has been made.

24     Paragraph 51 of the penalty cause of action expressly incorporates by reference all prior

25 _____

26 [10]/    The CWA prohibits the discharge of oil into navigable waters of the United States or adjoining
   shorelines that cause a film or sheen upon or discoloration of the water surface or adjoining shorelines, or
27 which cause a sludge or emulsion to be deposited beneath the water surface or on adjoining shorelines. 33
   U.S.C. § 1321(b)(3); 40 C.F.R. § 110.3. Penalties under this provision of the CWA are partially volume
28 based and allow penalties of up to $32,500 per day of violation or up to $1,100 per barrel of oil or unit of
   reportable quantity of hazardous substances discharged. 33 U.S.C. § 1321(b)(7)(A), 40 C.F.R. § 19.4.

1  paragraphs of the Amended Complaint, which include the *prima facie* elements of the penalty: (a)
2  the allegations identifying Regal Stone and Fleet Management as, *inter alia*, the owner and operator
3  of the COSCO BUSAN, and (b) the "General Allegations" of Paragraphs 20 through 28. The latter
   allege, *inter alia*, that the vessel allided with the Bay Bridge, thereby discharging oil[11]/ into navigable
4  waters of the United States, and that "The COSCO BUSAN Incident was proximately caused, *inter*
5  *alia*, by the acts, omissions, strict liability ... by the *in rem* and *in personam* Defendants and, as
6  applicable, their agents, servants, employees, crew, and others for whom Defendants were responsible
7  ..." *Id.* at Paragraph 27. Those allegations clearly satisfy the liberal standards of Rule 8(a)(2) of the
   Fed.R.Civ.P.
8          Defendants next argue that the count fails since the United States did not assert a monetary
9  figure. Again, the argument falls flat. The reason the Government did not set out a figure is because
10 the cause of action asserts a *judicially assessed* penalty action, as opposed to an administrative
11 penalty. *Cf.,* 33 U.S.C. § 1321(b)(6), CWA's administrative penalty provision, with 33 U.S.C. §
   1321(b)(7), the judicially assessed penalty asserted in this case. In short, the amount of the penalty
12 is for the Court to determine, not the United States. *See, e.g., Tull*, 481 U.S. 412 (CWA non-
13 administrative civil penalty to be set by the court).
14         Defendants also cite two cases in support of their argument, both of which they have
15 fundamentally misread. Defendants cite *Connolly v. United States*, 149 F.2d 666 (9th Cir. 1945),
16 which dismissed a penalty action since the penalty statute was not cited either directly or indirectly
   in the complaint. We frankly do not understand why the case was cited since the penalty statute here,
17 33 U.S.C. § 1321(b)(7), is cited three separate times in the Sixth Cause of Action. Similarly,
18 Defendants cite to *United States v. Barge Shamrock*, 635 F.2d 1108 (4th Cir. 1980), for the argument
19 that a penalty action does not accrue until clean-up is completed. In fact, Defendants cite to the
20 Mauseth Declaration and argue to the Court that the penalty action cannot be filed for approximately
21 five years. In any event, Defendants apparently fail to understand the word "accrue" and its context
   in the cited case. In *Shamrock,* the district court dismissed the penalty count, holding that it was
22 barred by a purported three year statute of limitation. The Fourth Circuit reversed, holding that the
23 cause of action accrued for purposes of the *expiration of any applicable statute of limitation* upon
24 completion of cleanup, and thus that the complaint timely was filed under the facts of the case.

25 **V.    JUDICIAL ECONOMY REQUIRES THAT DEFENDANTS' MOTION BE DENIED**
26         Judicial economy will be served if the Court denies Defendants' motion to dismiss.
27 Permitting each of the United States' claims to proceed will allow this case to be efficiently litigated,
28

11/    *See,* 40 C.F.R. § 110.3, which establishes the "sheen test" as the base limit of violation of the CWA.

1  and will create efficiencies in the other state court and federal court cases that have been filed. As
2  described above, the United States' OPA, NMSA, PSRPA, and CWA claims are individual claims
3  that have been brought in this case. The United States has demonstrated that these claims are timely
   brought and that the Court has subject matter jurisdiction. Nevertheless, even if the Court were to
4  determine that a particular/single claim is premature, that claim should not be dismissed but should
5  be litigated in one action. *See*, *U.S. Indus., Inc.*, 765 F.2d 195, 205 (D.C. Cir. 1985)(generally a
6  plaintiff is expected to present in one suit all claims arising out of the same occurrence).

7        There is no dispute that these federal statutes involve common issues of law and fact – the
   oil spill – and that it would not be judicially efficient or economic for this Court to review these
8  claims at different times. If the Court were to follow the Defendants' logic (and desire), a lawsuit
9  could only be filed in, say, five to eight years, at which time the parties and the Court would begin
10 anew. Defendants actually have the audacity to suggest at least five years as a minimum litigation
11 starting point, *see,* Defendants' Mauseth Declaration at ¶ 6, at which time witnesses and evidence
12 likely would be lost or unavailable, especially in a case in which the ship's crew are foreign
   nationals). *Cf., Dias v. Bank of Hawaii*, 764 F.2d 1292, 1296 (9th Cir. 1985), citing *Gillespie v.*
13 *United States Steel Corp.*, 379 U.S. 148, 152-53 (1964)(the most important competing considerations
14 are the inconvenience and costs of piecemeal review on the one hand and the danger of denying
15 justice by delay on the other.)

16       Furthermore, there are the two other related actions pending in this Court and two others in
17 state court. Judicial economy and efficient case management would dictate that aspects of these cases
18 be consolidated for the federal court action. For example, the deposition of Defendant Cota could
   take place once with each of the parties participating in that deposition. Other aspects of the litigation
19 could also be consolidated, as occurred when the Court set a single scheduling conference on
20 February 22, 2008, that was attended jointly by all parties participating in the three federal court
21 actions. Similarly, as the United States proposed in its portion of the proposed Case Management
22 Order, the federal court and state court litigation can be consolidated for certain purposes. Again, the
23 deposition of certain witnesses such as Defendant Cota could be scheduled so that representatives of
   all parties to the COSCO BUSAN oil spill litigation are accorded an efficient opportunity to develop
24 the facts of this case. *Cerit v. Cerit*, 188 F.Supp.2d 1239, 1249 (D. Hawaii 2002)(quoting *Travelers*
25 *Indemnity Co. v. Madonna*, 914 F.2d 1364, 1368 (9th Cir.1990)(Piecemeal litigation occurs when
26 different tribunals duplicate efforts and possibly reach different results).

27       Finally, the United States' proposed Case Management Order resolves Defendants' alleged
28 concerns with proceeding with this case at this time. A common cry in Defendants' motion is that
   the natural resource damage case should be deferred as a result of ongoing discussions between the

1    Trustees and Defendants and the scientific complexities and studies associated with a natural resource
2    damage assessment. Defendants' solution to this expressed concern – the dismissal of each of the
3    United States' independent claims, regardless of whether these claims relate to natural resource
     damages - is not only harsh, but would thwart Congress' mandate that allows the United States to
4    bring these claims at any time. The far better approach, and an approach that is consistent with the
5    statutory language and recognizes the valuable role that this Court will contribute to this case, is
6    described in the United States' proposed Case Management Order. Specifically, the United States
7    proposes an efficient three phased approach that allows the litigation relating to liability to proceed
     immediately; allows the parties a reasonable time to complete the natural resource damage process;
8    and if the parties cannot reach agreement on the natural resource damage issues, litigation would then
9    proceed to determine the extent of these damages. *See,* Case Management Order at 7 - 8. The United
10   States three phased approach is also consistent with the spirit of OPA, which provides the United
11   States with an option of litigating its natural resource damage claim in a subsequent lawsuit so long
     as it is filed within three years after the completion of the natural resource damage assessment. *See,*
12   33 U.S.C. § 2717(f)(1)(B). This approach also benefits the public and the environment as it would
13   allow the United States to bring Defendants before this Court to avoid foot dragging and delay and
14   Defendants' apparent desire to create an unwanted and unneeded five year or more natural resource
15   damage assessment process.

16   **VI.    ISSUES OF SOVEREIGN IMMUNITY ARE NOT APPLICABLE AS THE
             FUND'S DETERMINATIONS REGARDING REIMBURSEMENT WOULD BE
17           UNHAMPERED BY THIS COURT'S DETERMINATIONS**

18           Without basis, as it is not alleged in the United States' Amended Complaint, Defendants
19   assert that the United States "has advised" that it will ask the Court to rule on whether Defendants
     are entitled to partial reimbursement of their OPA liabilities from the Fund. Defendants also state that
20   "although not expressly set out in its Complaint", the United States is seeking findings by this Court
21   that would bind the United States (the Fund) as it relates to OPA limitations and reimbursement from
22   the Fund. Dfs. Br. at 2, 18. Defendants misstate the United States' case.

23           Contrary to Defendants' expressed fears, the United States is not asking this Court to manage
     the Fund. This litigation is not overly complex – the United States will pursue its statutory
24   enforcement rights under OPA, NMSA, PSRPA, and the CWA and will demonstrate that it has
25   incurred substantial damages, and that Defendants are liable for costs, natural resource and other
26   damages, and penalties. As part of this case, the United States, as in any other enforcement action,
     will pursue discovery intended to bring forth evidence relating to the facts surrounding the COSCO
27   BUSAN oil spill. Discovery is yet to commence; however, it is reasonable to assume that this
28   discovery will seek all relevant information relating to the oil spill.

1    A determination by this Court that the COSCO BUSAN oil spill was proximately caused,
2  for example, by Defendants' breach of federal safety and operating regulations, 33 U.S.C. §
3  2704(c)(1)(B), or that Defendants failed to report or comply with a relevant order as described under
   33 U.S.C. § 2704(c)(2)(C), does not implicate sovereign immunity concerns (concerns, we note, that
4  belong solely to the United States as sovereign, not private parties). Reimbursement through the Fund
5  is a separate administrative process divorced from this proceeding.[12]/

6        Specifically, in order to eliminate Defendants' entitlement to OPA's liability limits described
7  under 33 U.S.C. § 2704, the United States has sought declaratory judgment, as required by 33 U.S.C.
   § 2717(f)(2), that Defendants are liable to the United States without limit because the oil spill was
8  proximately caused, for example, by Defendants' gross negligence, willful misconduct, or violation
9  of federal safety, construction, or operating regulation under 33 U.S.C. § 2704(c)(1), or Defendants'
10 failure to report the incident or comply with orders described in 33 U.S.C. § 2704(c)(2). This Court
11 is granted jurisdiction under 33 U.S.C. § 2717(b) (among other statutes) to consider such culpable
   conduct by Defendants. This Court also has jurisdiction to assess Defendants' culpability under 33
12 U.S.C. § 2704(c). However, contrary to assertions by Defendants, such a determination under 33
13 U.S.C. § 2704(c) would not preclude Defendants' ability to file a claim with the Fund. To the extent
14 information is developed or findings are made by this Court, the parties are free to present that
15 evidence or those findings to the Fund as part of the normal Fund process. The Fund would review
16 claims for reimbursement in its normal course of business, and the parties would retain all traditional
17 rights to respond to a Fund decision, including the right to appeal to an Article III court, which then
   would review the Fund's determination under the applicable standards and rules of law governing
18 review of administrative determinations. This process is wholly consistent with Fund practice, and
19 is consistent with the approach maintained by the United States Department of Justice in previous
20 cases. There is no intent to undermine the administrative process. The United States is merely
21 exercising its statutory rights to file an enforcement action under the environmental statutes – as
   enacted by Congress.
22
   **VII.    DEFENDANTS' ATTEMPT TO INVOKE THE PRIMARY JURISDICTION**
23 **DOCTRINE IS MISPLACED**

24      The primary jurisdiction doctrine is inapplicable to this Court action as the issues that this
25 Court would consider under are not novel or particularly complex, and will have no impact on
   maintaining national uniformity in the administration of OPA. At the outset, the argument suffers
26

27 [12]/    The United States agrees that Defendants must exhaust their administrative remedies prior to
   challenging a denial by the United States of their claim for reimbursement through the Fund. Defendants
28 correctly note that as Responsible Parties, they are required to submit claims to the Fund prior to challenging
   any denial of such claims in court.

1  a fatal flaw since Defendants' "square peg in a round hole" rationale would in fact *violate* primary
2  jurisdiction concepts.
3        There are *several separate federal agencies* that have jurisdiction under their own statutory
   grants. Thus, according to Defendants, the Department of Homeland Security and the United States
4  Coast Guard would have jurisdiction over OPA issues.  But, Defendants completely ignore the
5  Department of Commerce, which statutorily is entrusted jurisdiction over NMSA, and the Department
6  of the Interior, which has jurisdiction over PSRPA.  Defendants' argument therefore would *establish*
7  conflict between these separate agencies' respective jurisdictional spheres, while, meanwhile, this
   Court has all the statutory causes of action before it and obviously is entrusted by the Constitution
8  with adjudicating all the causes put before it in the United States' Amended Complaint.  Finally, we
9  assume (and hope) that Defendants would not urge, contrary to constitutional law, that *any* one of
10  these several agencies has jurisdiction to adjudicate *in rem* maritime lien claims under NMSA and
11  PSRPA given the ineluctable fact that the Constitution vests such actions *solely* in an Article III court.
   *See, e.g.*, Schoenbaum, *1 Admiralty & Maritime Law* § 3-2, at 60-61 (2d ed.1994).
12        The focus in the 33 U.S.C. § 2704(c) inquiry is with the character of Defendants' actions in
13  this case, *e.g.,* breach of federal safety operating regulations or other types of conduct.  This analysis
14  requires no special expertise on the part of an administrative agency and this Court is well-equipped
15  to engage in such an inquiry.  *Davel Communications, Inc. v. Qwest Corp.*, 460 F.3d 1075, 1086 (9th
16  Cir. 2006)(The primary jurisdiction doctrine is not intended to secure expert advice from regulatory
   agencies every time a court is presented with an issue conceivably within the agency's ambit).  The
17  issues before this Court are far different than those in the case cited by Defendants,
18  *Syntek Semiconductor Co., Ltd. v. Microchip Tech, Inc.*, 307 F.3d 775 (9th Cir. 2002), a complicated
19  technical computer code case in which that court found that "decompiled object code qualifies for
20  registration as source code under the Copyright Act and regulations is an issue of first impression"
21  that "involves a complicated issue that Congress has committed to the Register of Copyrights." *Id.*
22  at 782.  This is in sharp contrast to the findings sought by the United States such as, for example, the
   Court's consideration of Defendants' actions under 33 U.S.C. § 2704(c).  These are not inquiries that
23  Congress has committed to an administrative agency's discretion.  *Brown v. MCI WorldCom Network*
24  *Services, Inc.* 277 F.3d 1166 (9th Cir. 2002)(primary jurisdiction does not require that all claims
25  within an agency's purview be decided by the agency).

26  **VIII.   THIS CASE SHOULD BE STAYED TEMPORARILY DUE TO THE CRIMINAL CHARGE, BUT SHOULD NOT BE STAYED FOR ANY OTHER REASON**
27        On March 17, 2008, the United States brought a criminal proceeding against Defendant Cota.
28  The criminal charge alleges, *inter alia*, that Cota violated provisions of the CWA, 33 U.S.C. §§

1319(c)(1)(a) and 1321(b)(3), as amended by OPA, and the Migratory Bird Treaty Act, 16 U.S.C. §§ 703 and 707. In light of the pending criminal proceeding, the United States agrees, subject to one reservation described in the immediately following paragraph, that this civil action should be stayed pending the outcome of the criminal proceeding.

On February 26, 2008, the United States filed an Amended Notice of Examinations Before Trial in which the United States seeks to examine witnesses/crew of the COSCO BUSAN that may later be outside the jurisdiction of the United States and beyond the subpoena power of the Court. The Court's February 22, 2008, Amended Order specified that the time and place of the specified witnesses/crew will be determined. The United States requests that if this case is stayed as a result of the criminal proceeding that these depositions proceed so that the evidence can be preserved. The United States agrees that these depositions should be scheduled so that there is not a conflict with the criminal action.

As described in this Memorandum, this action is properly before this Court as the United States' timely claims are based upon independent statutory bases authorizing the United States to immediately seek costs, damages, and penalties. Even if the Court finds that one or more of these claims need not be brought at this time, judicial economy requires that these claims proceed together as they involve common issues of fact and law, and because these claims are related to ongoing litigation in both the federal and state courts. Therefore, with the exception of a stay relating to the criminal action, the United States opposes any stay of this case.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss the United States' Amended Complaint should be denied.

Dated: April 18, 2008.

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

/s/ R. Michael Underhill
R. MICHAEL UNDERHILL
Attorney In Charge, West Coast Office
Torts Branch, Civil Division
U.S. Department of Justice

RONALD J. TENPAS
Assistant Attorney General
Environment and Natural Resources Division

/s/ Bradley R. O'Brien
BRADLEY R. O'BRIEN
Environmental Enforcement Section

Attorneys for Plaintiff United States of America