1  JOHN D. GIFFIN, CASB NO. 89608
   john.giffin@kyl.com
2  JOSEPH A. WALSH, II, CASB No. 143694
   joe.walsh@kyl.com
3  JOHN COX, CASB NO. 197687
   john.cox@kyl.com
4  DAVID TONG, CASB NO. 238971
   david.tong@kyl.com
5  KEESAL, YOUNG & LOGAN
   A Professional Corporation
6  Four Embarcadero Center
   Suite 1500
7  San Francisco, California 94111
   Telephone:    (415) 398-6000
8  Facsimile:     (415) 981-0136
9

10

11 Attorneys for Defendants
   REGAL STONE, LTD. and FLEET MANAGEMENT, LTD.

12                    UNITED STATES DISTRICT COURT

13                    NORTHERN DISTRICT CALIFORNIA

14

15

16 UNITED STATES OF AMERICA,              )  Case No. C 07 06045 (SC)
                                          )
17                        Plaintiff,      )  **DEFENDANTS REGAL STONE, LTD. AND**
                                          )  **FLEET MANAGEMENT, LTD.'S REPLY**
18              vs.                       )  **MEMORANDUM IN SUPPORT OF**
                                          )  **MOTION TO DISMISS, OR IN THE**
19 M/V COSCO BUSAN, LR/IMO Ship. No.      )  **ALTERNATIVE, STAY PROCEEDINGS**
20 9231743 her engines, apparel, electronics, tackle, )
   boats, appurtenances, etc., *in rem*, THE )
21 SHIPOWNERS' INSURANCE & GUARANTY )
   COMPANY LTD., REGAL STONE, LIMITED, )  **[FRCP 12(b)(1)]**
22 FLEET MANAGEMENT LTD., and JOHN )
   COTA, *in personam*,                   )  **Date:  May 9, 2008**
23                                        )  **Time:  10:00 a.m.**
                                          )  **Dept.: 1**
24                        Defendants.     )
                                          )
25 _____ )  **(The Honorable Samuel Conti)**

26

27

28
   _____  KYL_SF461959
   DEFENDANTS REGAL STONE, LTD. AND FLEET MANAGEMENT, LTD.'S REPLY MEMORANDUM IN
   SUPPORT OF MOTION TO DISMISS, OR IN THE ALTERNATIVE, STAY PROCEEDINGS – Case No. C 07 06045
   (SC)

## TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................. 1

II.   OPA'S CLAIM PRESENTATION REQUIREMENT APPLIES TO "ALL" CLAIMS
      FOR REMOVAL COSTS AND DAMAGES................................................... 2

III.  THE UNITED STATES CANNOT FORCE THE RESPONSIBLE PARTY TO
      LITIGATE ITS OPA AFFIRMATIVE DEFENSES OR ITS LIMITATION RIGHTS..... 7

IV.   THE UNITED STATES' CLAIMS FOR REMOVAL COSTS AND DAMAGES
      UNDER THE NMSA AND THE PSRA ARE OPA REMOVAL COSTS, AND ARE
      SUBJECT TO OPA'S CLAIMS PRESENTATION REQUIREMENT. ......................... 10

V.    THE OPPOSITION FAILS TO SAVE THE UNITED STATES' FLAWED
      FORFEITURE ACTION........................................................................... 11

      A.    The United States Misconstrues Section 1437(e)(1). ............................. 12

      B.    The Defendants' Construction Of Section 1437(e)(1) Does Not Impair The
            NMSA's Protection Of Marine Sanctuaries. ........................................ 13

VI.   THE UNITED STATES HAS FAILED TO PROPERLY PLEAD A JUSTICIABLE
      CLAIM FOR CIVIL PENALTIES ................................................................ 13

VII.  CONCLUSION ........................................................................................ 15

KYL_SF461959
DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S REPLY MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS, OR IN THE ALTERNATIVE, STAY PROCEEDINGS
– Case No. C 07 06045 (SC)

# TABLE OF AUTHORITIES

## Cases

A-1 Ambulance Service, Inc. v. California,
    202 F.3d 1238 (9th Cir. 2000) .................................................................. 11

Bell Atlantic Corp. v. Twombly,
    127 S. Ct. 1955 (2007) ............................................................................ 14

Boca Ciega Hotel v. Bouchard Transp. Co., Inc.,
    844 F. Supp 1512 (M.D. Fla. 1994) (aff'd Boca Ciega Hotel v. Bouchard Transp. Co., Inc.,
    51 F.3d 235 (11th Cir. 1995) .............................................................. passim

BP America Production Co. v. Burton,
    549 U.S. 84, 127 S. Ct. 638 (2006) .......................................................... 2

Dodd v. U.S.,
    545 U.S. 353, 125 S. Ct. 2478 (2005) ...................................................... 2

Epstein v. Wash. Energy Co.,
    83 F.3d 1136 (9th Cir. 1996) .................................................................. 14

Hallstrom v. Tillamook County,
    493 U.S. 20, 110 S. Ct. 304 (1989) ...................................................... 4, 5

Johnson v. Colonial Pipeline Co.,
    830 F. Supp. 309 (1993) ........................................................................... 4

Leboeuf v. Texaco,
    9 F. Supp. 2d 661 (E.D. La. 1998) ........................................................... 4

Leocal v. Ashcroft,
    543 U.S. 1 (2004) ..................................................................................... 2

Marathon Pipeline Co. v. LaRoche Indus. Inc.,
    944 F. Supp. 476 (E.D. La. 1996) ............................................................ 4

Matter of Metlife Capital Corp.,
    132 F.3d 818 (1st Cir.1997)...................................................................... 7

Mohasco Corp. v. Silver,
    447 U.S. 807, 100 S. Ct. 2486, 65 L.Ed..2d 532 (1980) .......................... 6

Patenaude v. Equitable Life Assur. Soc'y of U.S.,
    290 F.3d 1020 (9th Cir. 2002) ................................................................ 11

U.S. v. Murphy Exploration and Development Corp.,
    939 F. Supp. 489 (E.D. La. 1996) ............................................................ 6

United States v. $191,910.00 in U.S. Currency,
    16 F.3d 1051 (9th Cir. 1994) .................................................................. 11

United States v. Barge Shamrock,
    635 F.2d 1108 (4th Cir. 1980) ................................................................ 14

United States v. BCCI Holdings (Luxembourg), S.A.,
    833 F. Supp. 17 (D.D.C. 1993).............................................................. 11

KYL SF461959

DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S REPLY MEMORANDUM IN
SUPPORT OF MOTION TO DISMISS, OR IN THE ALTERNATIVE, STAY PROCEEDINGS – Case No. C 07 06045
(SC)

United States v. Locke,
    529 U.S. 89 (2000) ........................................................................................ 10

United States v. One 1992 Ford Mustang,
    73 F. Supp. 2d 1131 (C.D. Cal. 1999) ........................................................ 11

Unocal Corp. v. U.S.,
    222 F.3d 528 (9th Cir. 2000) ......................................................................... 7

Wilshire Westwood Assoc. v. Atl. Richfield Corp.,
    881 F.2d 801 (9th Cir. 1989) ....................................................................... 11

**Statutes**

National Marine Sanctuaries Act ("NMSA") 16 U.S.C. §§ 1431, et seq. ..................... passim

    § 1436(1) .................................................................................................... 13

    § 1437(c)(1) ............................................................................................... 13

    § 1437(e)(1) ................................................................................... 11, 12, 13

    § 1437(i) ..................................................................................................... 13

    § 1443 ......................................................................................................... 13

    § 1443(2) .................................................................................................... 13

Park System Resource Protection Act ("PSRPA"), 16 U.S.C. §§ 19jj, et seq. ................. 7

31 U.S.C. § 3730(e)(4)(A) ..................................................................................... 11

33 U.S.C.

    § 407 ........................................................................................................... 13

    § 1319 ......................................................................................................... 13

    § 1321(b)(7) ................................................................................................ 14

    § 1321(b)(8) ................................................................................................ 15

    § 2701(4) ...................................................................................................... 3

    § 2702 .............................................................................................. 7, 10, 13

    § 2703 ........................................................................................................... 8

    § 2702(b)(2)(D) .......................................................................................... 10

    § 2703(c)(2)-(3) ........................................................................................... 8

    § 2704 ........................................................................................................... 8

    § 2704(c)(2)(B)-(C) ..................................................................................... 8

    § 2705 ........................................................................................................... 8

    § 2708 ................................................................................................. 2, 8, 9

    § 2709-2710 ................................................................................................. 9

    § 2713 ........................................................................................ 3, 4, 5, 6, 10

KYL_SF461959

DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S REPLY MEMORANDUM IN
SUPPORT OF MOTION TO DISMISS, OR IN THE ALTERNATIVE, STAY PROCEEDINGS – Case No. C 07 06045
(SC)

§ 2713(a) .................................................................................................. 3, 4, 6, 10

§ 2713(b) .................................................................................................. 3

§ 2713(b)(1)(B) ......................................................................................... 2, 8

§ 2713(c) .................................................................................................. 3, 4, 5

§ 2717 ...................................................................................................... 6

§ 2717(f) .................................................................................................. 6, 8

§ 2717(f)(1)(B)(2) ..................................................................................... 6

§ 2717(f)(2) .............................................................................................. 9

§ 2718 ...................................................................................................... 5

**Other Authorities**

135 Cong.Rec. at H 7962, 7965 ................................................................. 4

**Rules**

FRCP Rule 8 ............................................................................................. 14

KYL_SF461959

DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S REPLY MEMORANDUM IN
SUPPORT OF MOTION TO DISMISS, OR IN THE ALTERNATIVE, STAY PROCEEDINGS – Case No. C 07 06045
(SC)

1  I.    **INTRODUCTION**

2        Defendants REGAL STONE, LTD. ("Regal Stone" or "Responsible Party") and FLEET

3  MANAGEMENT, LTD. (collectively "Defendants") are the owner and manager, respectively, of the

4  M/V COSCO BUSAN ("Cosco Busan").  The vessel was required by law to take on a licensed pilot

5  for the transit through the San Francisco Bay.  In fact, it was required that a San Francisco Bar Pilot,

6  licensed by the United States and State of California be used for all transits.  As the United States

7  points out in its Opposition, the *pilot* managed to hit the Bay Bridge, which no other mariner has

8  apparently ever done.  What the United States does not say, is that the pilot hit the bridge because he

9  was medically impaired.  The United States also fails to mention that the pilot only had a license

10 because the United States Coast Guard failed to follow its own procedures and revoke it, despite

11 knowing up to two years earlier that he was medically impaired and therefore unqualified to be a Bar

12 Pilot.

13       Despite the fact that a pilot imposed on them by law and wrongfully licensed by the Coast

14 Guard was accountable for the oil spill, Regal Stone immediately took responsibility for the spill,

15 accepted the Coast Guard's designation as the "Responsible Party" under the Oil Pollution Act of

16 1990 ("OPA"), and began cleaning up the spill, paying for removal and clean up costs, and

17 compensating victims.  That is what the law plainly requires.  Apparently, these responsible actions

18 were not enough to satisfy the United States.  Three weeks into the clean up operation, without ever

19 having sent Regal Stone an invoice or demand, and despite the fact that it knew Regal Stone was fully

20 insured, responding and paying clean up costs and claims, the United States precipitously filed its

21 Complaint in this case.

22       The Complaint was unnecessary and clearly motivated by concerns other than the United

23 States recovering response costs and damages.  The motivation behind the Complaint is plainly laid

24 out in the Opposition to the Motion to Dismiss.  The United States Department of Justice seems to

25 think it is a bad thing for vessel owners to apply for and receive partial reimbursement from the

26 National Pollution Funds Center ("NPFC") for response costs and damages resulting from an oil spill.

27 Congress obviously disagrees, since it provided for the very right to recover such reimbursement in

28

KYL_SF461959
DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S REPLY MEMORANDUM IN
SUPPORT OF MOTION TO DISMISS, OR IN THE ALTERNATIVE, STAY PROCEEDINGS – Case No. C 07 06045
(SC)

1   OPA. 33 U.S.C. §§ 2708, 2713(b)(1)(B). Congress recognized that the cost of oil spills can be

2   catastrophically high, and in OPA Congress balanced the need to require the party discharging oil to

3   immediately pay, against concerns that unlimited liability would be uninsurable, and thus responsible

4   vessel owners would refuse to trade in the United States.   To balance these concerns, Congress made

5   the vessel owner strictly liable to pay response costs and damages without a finding of fault, but also

6   expressly provided that a vessel owner may seek reimbursement for some of its costs from the NPFC,

7   if it is otherwise entitled to do so. Id. It is evident that the NPFC also disagrees with the United

8   States, since it has in place a detailed regulatory scheme and adjudicates claims from vessel owners on

9   a regular basis, and where appropriate, reimburses them for some of their costs.  In fact, the NPFC

10  reimbursed the owners of the tanker JULIE N when it spilled oil after hitting a bridge in Portland

11  Maine, due to a pilot's error. The system works well.  It is therefore puzzling why the United States

12  Department of Justice, which is supposed to enforce laws passed by Congress, seems so troubled by

13  this law.

14        The primary basis for Defendants' motion was to address their valid concerns that the Court

15  does not have subject matter jurisdiction over some of the United States' claims.  Since a lack of

16  subject matter jurisdiction would render void any orders or decisions by the Court, it is imperative that

17  the subject matter jurisdiction issues be addressed and resolved.  Contrary to the hyperbolic assertions

18  of the United States, the jurisdictional defects in the United States Complaint, and its Amended

19  Complaint, are real, and require the Court to dismiss the Complaint without prejudice subject to it

20  being re-filed once the United States complies with OPA's claim presentation requirement.

21  **II.    OPA'S CLAIM PRESENTATION REQUIREMENT APPLIES TO "ALL" CLAIMS**
22          **FOR REMOVAL COSTS AND DAMAGES.**

23        When interpreting a statute, words must be given their ordinary or natural meaning. BP

24  America Production Co. v. Burton, 549 U.S. 84, 127 S. Ct. 638, 643 (2006); Leocal v. Ashcroft, 543

25  U.S. 1, 9 (2004). When the statute's language is plain, the sole function of the courts, at least where

26  the disposition required by the text is not absurd, is to enforce it according to its terms. Dodd v. U.S.,

27  545 U.S. 353, 125 S. Ct. 2478, 2482 (2005) (We "must presume that [the] legislature says in a statute

28  what it means and means in a statute what it says there.")

KYL  SF461959
DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S REPLY MEMORANDUM IN
SUPPORT OF MOTION TO DISMISS, OR IN THE ALTERNATIVE, STAY PROCEEDINGS – Case No. C 07 06045
(SC)

1    The statutory language could not be clearer. "All" claims must be presented to the

2    Responsible Party before suit is filed. 33 U.S.C. § 2713(a). A claimant *may not sue* unless they

3    comply with the claims presentation requirement. 33 U.S.C. §§ 2713(a), 2701(4). "Claimant" is

4    defined as "*any* person or *government* who presents a claim for compensation." 33 U.S.C. § 2701(4)

5    (emphasis added). As set out in Defendants' opening brief, the purpose behind OPA's claims

6    presentation requirement is to avoid needless litigation, *such as this very lawsuit.*

7        In OPA, Congress explicitly states that "all claims for removal costs or damages shall first be

8    presented to the Responsible Party." 33 U.S.C. § 2713(a). The only exception allowed by the statutes

9    is for claimants who are authorized by 33 U.S.C. § 2713(b) to present claims to the NPFC.

10   Significantly, the United States is not one of those claimants.[1] OPA further specifies that if a claim is

11   presented to the Responsible Party, and the Responsible Party does not settle or resolve the claim

12   within 90 days, the "claimant" may then commence an action in court against the Responsible Party.

13   33 U.S.C. § 2713(c). The term "claimant" is specifically defined to include "*any* person or

14   government who presents a claim for compensation under [OPA]." 33 U.S.C. § 2701(4). Although

15   the United States argues that 33 U.S.C. § 2713 does not apply because it did not bring its action under

16   this section of OPA, it admits that the purpose of its action is to recover removal costs. (Opp. 12:10).

17   Congress specifically states in the same exact provision the United States is now attempting to evade

18   that "all claims for *removal costs* or damages *shall first* be presented to the Responsible Party." 33

19   U.S.C. § 2713(a) (emphasis added). Congress obviously intended OPA to be read as a whole and not

20   as independent statutes.

21       In Boca Ciega Hotel v. Bouchard Transp. Co., Inc., 844 F. Supp 1512, 1515 (M.D. Fla. 1994)

22   (aff'd Boca Ciega Hotel v. Bouchard Transp. Co., Inc., 51 F.3d 235 (11th Cir. 1995)) the District

23   Court explained the purpose behind OPA's claims presentation requirement:

24

25   [1] 33 U.S.C. § 2713(b) states: Claims for removal costs or damages may be presented first to the Fund, (A) if the President
     has advertised or otherwise notified claimants in accordance with section 2714(c) of this title; (B) by a Responsible Party
26   who may assert a claim under section 2708 of this title; (C) by the Governor of a State for removal costs incurred by that
     State; or (D) by a United States claimant in a case where a foreign offshore unit has discharged oil causing damage for
27   which the Fund is liable under section 2712(a) of this title.

28

DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S REPLY MEMORANDUM IN
SUPPORT OF MOTION TO DISMISS, OR IN THE ALTERNATIVE, STAY PROCEEDINGS – Case No. C 07 06045
(SC)

1   The purpose of the claim presentation procedure is to promote settlement and avoid litigation.
    Therefore, in drafting the OPA, Congress mandated a 90-day period in which the parties would
2   attempt to resolve monetary disputes arising from oil spills prior to commencing litigation.
    Johnson v. Colonial Pipeline Co., 830 F. Supp. 309 (1993). The hope was to avoid costly and
3   cumbersome litigation. See 135 Cong.Rec. at H 7962, 7965 (statements of Rep.
    Hammerschmidt and Rep. Lent). However, it is only after the presentation requirement in 33
4   U.S.C. § 2713(a) is met that a claimant may proceed to 33 U.S.C. § 2713(c) which involves
5   this 90-day period. If a claim has been presented to the Responsible Party or guarantor and the
    Responsible Party or guarantor denies all liability or the claim is not settled within 90 days
6   after    the presentation was made, or the advertising was begun, then the claimant may proceed to
    court or present the claim to the Fund.
7

8       As several courts have held, this requirement is jurisdictional.  Boca Ciega, 51 F.3d 235 (11th

9   Cir. 1995); Marathon Pipeline Co. v. LaRoche Indus. Inc., 944 F. Supp. 476 (E.D. La. 1996); Johnson

10  v. Colonial Pipeline, 830 F. Supp. 309 (E.D. Va. 1993).  A similar claims presentation requirement in

11  the Resource Conservation and Recovery Act ("RCRA") has also been held to be jurisdictional.

12  Hallstrom v. Tillamook County, 493 U.S. 20, 26, 110 S. Ct. 304 (1989).  In Hallstrom, construing the

13  RCRA presentation requirement, the Court noted:

14          The language of this provision could not be clearer. A citizen may not commence an action
            under RCRA until 60 days after the citizen has notified the EPA [Environmental Protection
15          Agency], the State in which the alleged violation occurred, and the alleged violator. Actions
            commenced prior to 60 days after notice are "prohibited." Because this language is expressly
16          incorporated by reference into § 6972(a), it acts as a specific limitation on a citizen's right to
            bring suit. Under a literal reading of the statute, compliance with the 60-day notice provision is
17          a mandatory, not optional, condition precedent for suit.
18

19  493 U.S. at 26.  The statutory language and case law demonstrate that OPA claims can only be filed

20  after they have been presented to the Responsible Party.   The United States Department of Justice,

21  believing it is above the law, ignored this provision when it precipitously started this litigation.

22      The United States attempts to distinguish Boca Ciega on grounds that this suit did not involve

23  a claim by the United States.[2]  While that is true, Boca Ciega did involve the construction of 33 U.S.C.

24  § 2713(a).  51 F.3d at 237-38.  The Court found the claims presentation requirement to be clear and

25  unambiguous.  Id. at 238. ("Appellants do not claim that the language of § 2713 is ambiguous.  Nor

26  ────────────────────────────

27  [2] The United States misleads the Court by stating that Boca Ciega, and Leboeuf v. Texaco, 9 F. Supp. 2d 661 (E.D. La.
    1998) are "limited to private claimants".  In fact, neither case states or infers that the presentation requirement is limited to
    private claimants.
28

                                          - 4 -                                KYL SF461959
    ────────────────────────────────────────────────────────────
    DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S REPLY MEMORANDUM IN
    SUPPORT OF MOTION TO DISMISS, OR IN THE ALTERNATIVE, STAY PROCEEDINGS – Case No. C 07 06045
    (SC)

1    could they.  Section 2713 is very clear that '*all claims . . . shall* be presented first to the Responsible

2    Party.")  It rejected arguments that the claims presentation requirement was not jurisdictional, and that

3    it was inconsistent with OPA's savings provision (33 U.S.C. § 2718).  Id. at 240.  The Court also

4    rejected arguments, similar to those advanced by the United States, that the claims presentation

5    requirement would "frustrate" other supposed goals of Congress in enacting OPA:

> Appellants' reliance on the "overall purpose" of OPA-which they claim is "to expand the
> liability of responsible parties"-is misplaced. Courts have long recognized that statutes,
> especially large, complex statutes like OPA, are the result of innumerable compromises
> between competing interests reflecting many competing purposes and goals. Therefore, "vague
> notions" about a statute's overall purpose cannot be allowed "to overcome the words of its text
> regarding the *specific* issue under consideration.

10   Id. at 239.  Thus, the Eleventh Circuit held that the plain, direct meaning of the statute was that "all

11   claims" "shall" be presented first to the Responsible Party, before suit against the Responsible Party

12   can be filed.  Id. at 240.  It found this language to be clear, and mandatory.  Id. at 238.  Nothing in the

13   Eleventh Circuit's opinion suggests that there is an exception to this requirement for the United States.

14       In its Opposition, the United States seeks to create ambiguity where none exists.  Requiring the

15   United States to present claims for removal costs or damages to the Responsible Party before filing

16   suit will not lead to absurd results.  The United States can, and in the past always has, complied with

17   the presentation requirement.  If, after 90 days, the Responsible Party has not paid the United States, it

18   can bring a lawsuit to recover its response costs and damages.  33 U.S.C. §§ 2713(c).  There is nothing

19   absurd or illogical about requiring the United States to present its OPA claims and allowing the

20   Responsible Party to pay them, before filing a lawsuit against the Responsible Party to recover those

21   costs.  In fact, the goal of judicial efficiency would be furthered.

22       Even if the claims presentation requirement results in inconveniences for the United States,

23   those inconveniences are the result of a balance struck by Congress.  Addressing a similar argument,

24   the Boca Ciega Court noted:

> Finally, Appellants' policy objections to the claims presentation requirement are directed at the
> wrong forum. As the Supreme Court noted when construing the notice provision of the
> Resource Conservation and Recovery Act of 1976 (RCRA), 42 U.S.C.A. § 6972 (West 1989 &
> Supp.1994),-a provision similar to the one now before us-"we are not at liberty to create an
> exception where Congress has declined to do so." Hallstrom, 493 U.S. at 26, 110 S. Ct. at 309.
> "In the long run, experience teaches that strict adherence to the procedural requirements

- 5 -

KYL SF461959

DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S REPLY MEMORANDUM IN
SUPPORT OF MOTION TO DISMISS, OR IN THE ALTERNATIVE, STAY PROCEEDINGS – Case No. C 07 06045
(SC)

1
2
3
4

specified by the legislature is the best guarantee of evenhanded administration of the law." Id. at 31, 110 S.Ct. at 311 (quoting Mohasco Corp. v. Silver, 447 U.S. 807, 825-27, 100 S. Ct. 2486, 2497, 65 L.Ed.2d 532 (1980)). If Appellants perceive a policy shortcoming caused by OPA's claims presentation requirement, that shortcoming "arises as a result of the balance struck by Congress," Hallstrom, 493 U.S. at 30, 110 S.Ct. at 311, and is properly remedied by congressional action.

5

Boca Ciega, 51 F. 3d at 239.

6

Finally, U.S. v. Murphy Exploration and Development Corp., 939 F. Supp. 489 (E.D. La.

7

1996) did involve a claim by the NPFC against a Responsible Party. In that case, the Court held that

8

the claims presentation requirement under 33 U.S.C. § 2713 had been satisfied *because the United*

9

*States had presented its claims for response costs to the Responsible Party more than 90 days before it*

10

*filed suit.* Id. at 492. Murphy demonstrates that the United States is able to comply with the claims

11

presentation requirement, should it choose to do so. The Court's opinion evidences no doubt that this

12

requirement applied to the United States.

13

The United States argues that it is allowed to bring a claim against a Responsible Party at any

14

time despite 33 U.S.C. §§ 2713 and 2717 which expressly set out the claims presentation requirement

15

and the three year statute of limitations for bringing claims for removal costs. Contrary to the United

16

States' argument, these provisions do not say that the United States has a special right to ignore the

17

claims presentation requirements. Section 2717 provides that, for any claimant, an action for removal

18

costs incurred by that claimant must be instituted within three years, and that the action can be

19

commenced once the costs have been incurred. 33 U.S.C. § 2717(f)(1)(B)(2). This general language

20

in the statute of limitations cannot override the more specific claims presentation requirement in 33

21

U.S.C. § 2713(a). Were the United States correct, any claimant that incurred removal costs could

22

ignore the claims presentation requirement and sue the Responsible Party directly. This would result

23

in nullifying 33 U.S.C. § 2713(a).

24

The argument advanced by the United States that it can file suit at "any time" is further

25

undermined by the fact that any action it initiates must be guided by traditional notions of

26

justiciability. That is to say, there must be a case in controversy that is sufficiently ripe for a Court to

27

pass judgment. Not only does the Court lack subject matter jurisdiction until the Responsible Party

28

KYL SF461959

1    has been given the statutorily required time to review and make payment, there is presently no case in

2    controversy.

3         Every court that has interpreted OPA to date has found the claims presentation requirement to

4    be mandatory.  Thus, the claims presentation requirement is a jurisdictional requirement.  Because the

5    United States, a claimant as defined by OPA, ignored the requirement when it filed its lawsuit, the

6    Court lacks jurisdiction over "any" claims for OPA response costs or damages and should dismiss the

7    United States' Complaint, without prejudice.

8    **III.    THE UNITED STATES CANNOT FORCE THE RESPONSIBLE PARTY TO**
9    **LITIGATE ITS OPA AFFIRMATIVE DEFENSES OR ITS LIMITATION RIGHTS.**

10         In its motion to dismiss, Regal Stone noted that it is strictly liable under OPA for paying

11    response costs and damages, and therefore, there is no need for the Court to entertain a declaratory

12    judgment action to decide that issue.  The United States misconstrues this statement as an admission

13    that Defendants are not entitled to assert a defense to liability under OPA, the Park System Resource

14    Protection Act ("PSRPA"), 16 U.S.C. §§ 19jj, *et seq*., or the National Marine Sanctuaries Act

15    ("NMSA") 16 U.S.C. §§ 1431, *et seq*..  It also suggests that this constitutes a judicial admission that

16    will be binding in any other action.  Stating that the Responsible Party is strictly liable under OPA is

17    *not* an admission.  It is merely a statement of the law.  (Plaintiff admits this: "OPA is a strict liability

18    statute subject to limited defenses." (Opp. 10:17.))  OPA makes the Responsible Party strictly liable

19    to pay response costs and damages.  33 U.S.C. § 2702.

20         The Responsible Party is not required to raise defenses to liability, or to assert its right to limit

21    its liability.  To the contrary, OPA encourages the Responsible Party to take responsibility for cleaning

22    up a discharge.  Unocal Corp. v. U.S., 222 F.3d 528, 535 (9th Cir. 2000) ["The purpose of OPA, as

23    well as other remedial legislation passed by Congress and the states to address environmental disasters

24    such as oil spills, was to encourage rapid private party responses." citing Matter of Metlife Capital

25    Corp., 132 F.3d 818, 822 (1st Cir.1997)].  The fact that a Responsible Party may have a defense to

26    liability under OPA, does not mean that the Responsible Party can stop cleaning up or paying response

27    costs.  Id.  A Responsible Party loses its defenses or its right to limit its liability if it fails to cooperate

28    in cleaning up the spill, or violates a clean up order issued by the United States.  See 33 U.S.C. §§

KYL_SF461959
DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S REPLY MEMORANDUM IN
SUPPORT OF MOTION TO DISMISS, OR IN THE ALTERNATIVE, STAY PROCEEDINGS – Case No. C 07 06045
(SC)

1    2703(c)(2)-(3); 2704(c)(2)(B)-(C).  OPA also strongly encourages the Responsible Party to settle with

2    injured claimants, as evidenced by provisions mandating the interim short term damage payments to

3    claimants.  33 U.S.C. § 2705.

4         OPA allows the Responsible Party to seek reimbursement from the NPFC, if it can prove to the

5    NPFC that it is entitled to a defense to liability, or that it is entitled to limit its liability.  33 U.S.C. §

6    2708, 2713(b)(1)(B).  As the United States concedes in its Opposition, *only* the NPFC can decide

7    whether the Responsible Party is entitled to reimbursement from the Oil Spill Liability Trust Fund

8    ("OSLTF").  (Opp. 23.)  Despite this fact, the United States apparently believes that if it files an action

9    for declaratory relief under 33 U.S.C. § 2717(f), it can force the Responsible Party to raise defenses to

10   liability and its right to limit its liability under 33 U.S.C. § 2703 or 2704.  The United States is wrong,

11   and simply misconstrues the nature of these defenses under OPA.

12        For reasons that are unclear to Regal Stone, the United States seems unable to grasp a simple

13   truth about OPA:  OPA *encourages* the Responsible Party to respond to, and pay for, the clean up of

14   oil spills, and to quickly settle claims, rather than to litigate its liability to do so.  OPA does not require

15   the Responsible Party to litigate its defenses to liability or its right to limit liability with any claimant,

16   including the United States.  It allows the Responsible Party to settle and resolve such claims, and then

17   raise any defenses to liability or right to limit liability with the NPFC - an agency established and

18   authorized by Congress to do that very thing.  As set out in 33 U.S.C. § 2708, the Responsible Party

19   may present a claim to the NPFC for removal costs and damages if the Responsible Party

20   demonstrates that it is entitled to a defense to liability, or to a limitation of liability.  If the NPFC

21   agrees, then the Responsible Party may recover from the Fund any response costs or damages it has

22   paid that exceed its liability.  Id.

23        The United States, now for the first time, apparently takes the position that 33 U.S.C. § 2717(f)

24   allows it to bring a declaratory judgment action to force the Responsible Party to raise its defenses to

25   liability and its right to limit its liability, and that this will be binding in future proceedings with the

26   NPFC (and other litigants).  The provision does no such thing.  It says that in an action for recovery of

27   removal costs, "the court shall enter a declaratory judgment on liability for removal costs or damages

28   that will be binding *on any subsequent action or actions to recover further removal costs and*

-8-                                                          KYL SF461959

DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S REPLY MEMORANDUM IN
SUPPORT OF MOTION TO DISMISS, OR IN THE ALTERNATIVE, STAY PROCEEDINGS – Case No. C 07 06045
(SC)

1   damages." 33 U.S.C. § 2717(f)(2) (emphasis added). Obviously, the provision is meant to address

2   the situation where a vessel owner *denies* that its vessel was the source of an oil spill and the federal

3   government incurs removal costs because the vessel owner will not fund the clean up and removal

4   costs. This is not the case here. If a vessel owner denied being the Responsible Party and the court

5   finds that the vessel was the source of the spill, the Court can issue a declaratory judgment to that

6   effect. Regal Stone has not only accepted the designation as the Responsible Party but has

7   continuously funded the clean up and removal of oil.

8        Alternatively, if a vessel owner insists it is entitled to an affirmative defense to liability, and

9   refuses to pay claims on this basis, the Court, if it found against the Responsible Party, can issue an

10  order to that effect. But the section does not allow the United States to seek a judgment from the court

11  that a Responsible Party who is *not* contesting its liability under OPA to pay for removal costs and

12  damages is not entitled to later assert a claim to the NPFC. So long as the Responsible Party does not

13  assert its defenses or right to limit its liability in response to a specific claim, there is no controversy

14  for the court to address. Here, Regal Stone is not asserting its defense or right to limit its liability but

15  rather accepted the designation as the Responsible Party and is paying clean up and removal costs.

16  Therefore, there is no controversy for the Court to address.

17       To force a Responsible Party to raise affirmative defenses to liability would be inconsistent

18  with 33 U.S.C. § 2708, which expressly provides for the Responsible Party to raise those defenses

19  with the NPFC, instead of in litigation. It also is inconsistent with Congress' express goal in enacting

20  OPA of avoiding litigation and settling claims quickly. No public policy is advanced by forcing the

21  Responsible Party to raise and litigate defenses to liability against a particular claimant.

22       The Responsible Party can settle with claimants on the basis that it is strictly liable, and then

23  raise whatever defenses or limitation it may have with the NPFC. 33 U.S.C. § 2708. OPA is designed

24  to ensure that a designated Responsible Party will immediately respond to, and fund, the clean up of

25  an oil spill. That immediate strict liability designation is balanced by the other statutory provisions of

26  OPA, providing for contribution and/or indemnity from others, which acknowledge that the

27  Responsible Party may not truly be at fault for an oil spill. 33 U.S.C. §§ 2709-2710. Thus, admitting

28

                                                                        KYL SF461959
DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S REPLY MEMORANDUM IN
SUPPORT OF MOTION TO DISMISS, OR IN THE ALTERNATIVE, STAY PROCEEDINGS – Case No. C 07 06045
(SC)

1  that a Responsible Party is strictly liable under OPA is not, as the United States claims, a judicial

2  admission that it has no defenses to liability under OPA, the NMSA, or the PSRA.

4  IV.  **THE UNITED STATES' CLAIMS FOR REMOVAL COSTS AND DAMAGES UNDER THE NMSA AND THE PSRA ARE OPA REMOVAL COSTS, AND ARE SUBJECT TO OPA'S CLAIMS PRESENTATION REQUIREMENT.**

6  The United States incorrectly argues that the Responsible Party contends that OPA preempts

7  its claims for response costs and damages under the PSRA and the NMSA. The Responsible Party

8  made no such argument. The Responsible Party agrees that OPA's savings clause allows the United

9  States to impose additional liabilities under these statutes. However, to the extent the damages sought

10  under the statutes are the same as those sought under OPA, OPA's claims presentation requirement

11  applies.[3] As stated in <u>Boca Ciega</u>, "A general statutory provision like OPA's savings clause does not

12  trump the more specific command of § 2713(a) [the claims presentation requirement]." 51 F.3d at

13  239.

14  The United States concedes that under the NMSA and the PSRA, it is entitled to recover

15  "response costs" and "damages" resulting from an oil spill. However, it can give no example of how

16  response costs or damages under the NMSA differ from those that are also recoverable under OPA. It

17  argues that under the PSRA it can recover for the damage resulting from the oiling of historic ships.

18  However, it is clear that since these ships are property of the United States, it can recover for damages

19  to these ships under OPA. 33 U.S.C. § 2702(b)(2). It can also recover for lost revenues resulting from

20  closing the ships to the public under OPA. 33 U.S.C. § 2702(b)(2)(D). The United States fails,

21  therefore, to explain how the damages it seeks under the NMSA or PSRA differ from those

22  recoverable under OPA.

23  If a claim constitutes a response cost or a damage under OPA, the mandatory claims

24  presentation requirement *requires* the United States to present the claim to the Responsible Party first.

25  33 U.S.C. § 2713(a). This process, set out by Congress, provides that a claimant submit their claim to

26  ---
[3] The United States' reliance on <u>United States v. Locke</u>, 529 U.S. 89 (2000) only provides this Court with dicta from a case relating to *preemption*, not presentment. Regardless of whether the savings clause preserves claims for additional liability, Congress requires that *all* claims be first presented to the Responsible Party for payment prior to litigation. 33 U.S.C. § 2713.

DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS, OR IN THE ALTERNATIVE, STAY PROCEEDINGS – Case No. C 07 06045 (SC)

1  the Responsible Party for payment. <u>Id.</u>  The Responsible Party has 90 days to review the claim and

2  thereafter settle or deny the claim. <u>Id.</u> at § 2713(c).  If after 90 days the claim is denied, "the claimant

3  may elect to commence an action in court against the Responsible Party." <u>Id.</u>  It is impossible to

4  understand how the United States interprets this as meaning that any claim "would be placed in limbo

5  for up to eight years or more". (Opp. 4:10).

6  **V.    THE OPPOSITION FAILS TO SAVE THE UNITED STATES' FLAWED**
   **FORFEITURE ACTION.**

7

8      The United States invites this Court to liberally interpret 16 U.S.C. § 1437(e)(1) to save the

9  United States' flawed vessel forfeiture action under the NMSA.  The United States suggests Congress

10 is not "selective" in its use of "and" and "or" in forfeiture statutes.  (Opp. 18:26-28.)  This Court

11 cannot entertain this suggestion.  Nothing in the opposition relieves this Court of its obligation to

12 presume "Congress chose its words with as much care as [the Court] brings to bear on the task of

13 statutory interpretation." <u>United States v. BCCI Holdings (Luxembourg), S.A.</u>, 833 F. Supp. 17, 21

14 (D.D.C. 1993)(citations omitted).

15     Moreover, Section 1437(e)(1) is a forfeiture provision.  Forfeiture provisions are strictly

16 construed against the government. <u>United States v. One 1992 Ford Mustang</u>, 73 F. Supp. 2d 1131,

17 1131 (C.D. Cal. 1999)("Forfeiture is a harsh and oppressive procedure which is not favored by the

18 courts."); <u>see also</u> <u>United States v. $191,910.00 in U.S. Currency</u>, 16 F. 3d 1051, 1069 (9th Cir. 1994).

19 The opposition provides no reason why Section 1437(e)(1) is exempt from strict construction.  Indeed,

20 none of the authorities cited by the United States concern  the construction of forfeiture provisions.[4]

21     Accordingly, this Court must presume Congress intended to use "and" in the first sentence of

22 Section 1437(e)(1) to set forth prerequisites for a vessel forfeiture.  Congress intended to permit vessel

23 forfeiture under the NMSA only when a vessel is used to take or retain a sanctuary resource.  The

24 United States fails to allege this essential element in its Complaint or Amended Complaint.  Therefore,

25

---

26

[4] <u>See</u> <u>Patenaude v. Equitable Life Assur. Soc'y of U.S.</u>, 290 F. 3d 1020, 1025 (9th Cir. 2002)(construing whether a tax-deferred variable annuity was a "covered security" under the Securities Litigation Uniform Standards Act); <u>see also</u> <u>A-1 Ambulance Service, Inc. v. California</u>, 202 F. 3d 1238, 1244 (9th Cir. 2000)(construing application of "public disclosure bar" rule in 31 U.S.C. § 3730(e)(4)(A); <u>see also</u> <u>Wilshire Westwood Assoc. v. Atl. Richfield Corp.</u>, 881 F.2d 801, 804 (9th Cir. 1989)(construing "petroleum exclusion" from CERCLA's definition of "hazardous substances.").

27

28

- 11 -                                    KYL SF461959

1  this Court should dismiss the United States' forfeiture action. The United States' additional

2  arguments in support of its loose interpretation of Section 1437(e)(1) do not compel a different result.

3  ### A.    The United States Misconstrues Section 1437(e)(1).

4  The United States warns the Defendants "inexplicable" construction of Section 1437(e)(1) bars

5  the forfeiture of a sanctuary resource unless the resource's taking was accomplished by a  vessel.

6  (Opp. 18:17-26.) This warning is baseless because the Defendants do not seek such a construction of

7  Section 1437(e)(1). Section 1437(e)(1)'s plain language obviously permits the forfeiture of sanctuary

8  resources subject to takings accomplished by "other items"- not just vessels. The Defendants'

9  argument focuses on *vessel* forfeiture requiring the taking of a sanctuary resource because the Cosco

10  Busan is the subject of the United States' forfeiture action- not some "other item." Therefore, this

11  Court's adoption of the Defendants' construction of Section 1437(e)(1) will not lead to an absurd or

12  nonsensical result. Indeed, the Defendant's construction is required by the statute's plain language.

13  Next, the United States contends vessel forfeiture is triggered by any violation of the NMSA.

14  (Opp. 18:11-12.) Again, this contention ignores the plain language of Section 1437(e)(1). Forfeiture

15  is triggered when a sanctuary resource is taken "*in connection with*" or "*as a result*" of a NMSA

16  violation. The United States' opposition simply ignores these terms' significance. The terms

17  demonstrate a NMSA violation alone does not support forfeiture; the violation must be coupled with

18  (in connection) or lead to (result in) a taking. Moreover, the Defendants do not argue vessel forfeiture

19  under the NMSA is limited to certain violations, as the United States appears to suggest. (Opp. 18:13-

20  14.) Rather, the Defendants argue Section 1437(e)(1)'s plain language states all violations of the

21  NMSA support vessel forfeiture *only when* a separate and distinct taking occurs. The United States

22  has failed to plead this central element. Nor can it since no taking of sanctuary resources occurred in

23  connection with the Cosco Busan incident. Thus, this Court should dismiss the forfeiture action.

24

25

26

27

28

KYL_SF461959
DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S REPLY MEMORANDUM IN
SUPPORT OF MOTION TO DISMISS, OR IN THE ALTERNATIVE, STAY PROCEEDINGS – Case No. C 07 06045
(SC)

**B.     The Defendants' Construction of Section 1437(e)(1) Does Not Impair the NMSA's Protection of Marine Sanctuaries.**

Finally, the United States argues that the Court should ignore the plain language of the forfeiture provision and interpret it broadly to further the NMSA's environment-protection goals. It warns that if the Court does not do so, it will weaken the United States' ability to defend sanctuary resources since it will not be able to seek vessel forfeiture every time a vessel inadvertently causes damage to a sanctuary. (Opp. 18:23-24.) This argument is without merit. The NMSA and other federal statutes provide the United States with a legal arsenal with which to recover damages, costs, and civil and criminal penalties from persons who damage sanctuary resources. See e.g., 16 U.S.C. §§ 1437(c)(1) & 1436(1)(civil penalties); 16 U.S.C. § 1443(2) (*in rem* liability); see also 16 U.S.C. § 1437(i)(injunctive relief), 16 U.S.C. § 1443 (damages), 33 U.S.C. § 2702 (damages resulting from oil spills; CERCLA; 33 U.S.C. § 1319 (Clean Water Act criminal penalties); 33 U.S.C. § 407 (criminal penalties). Thus, a straight-forward interpretation of the forfeiture provision will not leave the United States without legal remedies against those who cause damages to sanctuaries.

The United States' Opposition provides this Court with no reason to salvage the flawed vessel forfeiture action. The Opposition flaunts established rules of statutory construction pertaining to forfeiture provisions, disregards Section 1437(e)(1)'s plain language, and props up unsupported warnings that the Defendants' construction of the statute will impair the NMSA's purpose. Accordingly, this Court should dismiss the forfeiture action.

**VI.    THE UNITED STATES HAS FAILED TO PROPERLY PLEAD A JUSTICIABLE CLAIM FOR CIVIL PENALTIES**

The United States incorrectly contends that by merely alleging the *prima facie* elements of a claim for civil penalties under the Clean Water Act ("CWA") it has properly pled a cause of action. (Opp. 19:24-20:3) It goes on to misconstrue Defendants' arguments and distance itself from precedent by arguing that this claim has either accrued or become justiciable. Despite the United States' cursory argument in favor of its CWA cause of action, it has failed to properly plead a cause of action for civil penalties or establish that such a claim is proper at this time.[5]

---

[5] Indeed, civil penalties claimed by the United States in February should be withdrawn given the United States' recent indictment of the Pilot, and facts disclosed at the NTSB hearing. It is clear that the cause of the spill was the

DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS, OR IN THE ALTERNATIVE, STAY PROCEEDINGS – Case No. C 07 06045 (SC)

1    Even under the liberal notice pleading standards of FRCP Rule 8 the United States has not

2    fulfilled its obligations to place Defendants on notice of this claim. "A plaintiff's obligation to provide

3    the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic

4    recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a

5    right to relief above the speculative level on the assumption that all of the complaint's allegations are

6    true." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1959 (2007). "Conclusory allegations of law

7    and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."

8    Epstein v. Wash. Energy Co., 83 F.3d 1136, 1140 (9th Cir. 1996).

9    The United States admits that it has merely stated a prima facie case and asserts that its

10    conclusory allegations of law are sufficient to state a claim. The United States' Sixth Cause of action

11    alleges a violation of section 1321(b)(7). That section includes no less than six different potential

12    theories of liability all requiring drastically different elements. The United States has failed to set

13    forth in any manner which of the multitude of sections they believe were violated. The United States

14    has failed to properly state a claim for civil penalties and this cause of action must be dismissed.

15    Aside from failing to properly plead the Sixth Cause of Action, the United States ignores the

16    fact that a claim for civil penalties under the CWA has neither accrued nor become ripe for

17    adjudication. As Defendants stated in their opening brief, a cause of action for civil penalties under

18    the CWA accrues upon the completion of the oil spill removal. United States v. Barge Shamrock, 635

19    F.2d 1108, 1110 (4th Cir. 1980). In that case, the United States argued that exact theory and

20    prevailed. However, in this case the United States seeks to forget its previous position in favor of a

21    theory that better suits its current interests. The United States can not avoid precedent simply because

22    today's means justify today's ends.

23    Finally, a claim for civil penalties is not yet justiciable. The United States incorrectly contends

24    that Defendants claim that a CWA violation can not be filed for five years. (Opp. 20:19-21) We

25    made no such argument. The United States is attempting to conflate Defendants' argument that a

26

27    cognitive impairment of the pilot due to medications which would have caused (and indeed after the incident caused)
the Coast Guard to revoke the Pilot's license if it had done its review properly.

28

KYL_SF461959
DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S REPLY MEMORANDUM IN
SUPPORT OF MOTION TO DISMISS, OR IN THE ALTERNATIVE, STAY PROCEEDINGS – Case No. C 07 06045
(SC)

1  claim has not accrued with its argument that the claim is not justiciable, and therefore, should be

2  stayed pending the resolution of the Natural Resource Damage Assessment ("NRDA"). While it is

3  true that a claim for civil penalties has not yet accrued, Defendants do not argue that such a claim can

4  not be pled for five years. Defendants argued in their opening brief that a claim for civil penalties

5  requires the court to evaluate all of the factors set forth in § 1321(b)(8). One of these factors requires

6  the court to consider the nature, extent, and degree of success of any efforts of the violator to minimize

7  or mitigate the effects of the discharge. Id. Until the completion of the NRDA, the Court will have no

8  way to assess this factor. Even if this Court determines that a CWA cause of action has accrued and

9  the United States has properly pled such a cause of action, this claim should be stayed until such time

10  as the Court may properly evaluate any potential civil penalty as required by law.

11  **VII.    CONCLUSION**

12        For the foregoing reasons, Defendants respectfully request that the Court dismiss the United

13  States OPA and non-OPA claims, or stay them until an actual controversy within the Court's

14  jurisdiction arises.

15

16

17  DATED:  April 25, 2008

      /s/ John Giffin
      JOHN D. GIFFIN

18        JOSEPH A. WALSH

19        JOHN COX
      DAVID A. TONG

20        Attorneys for Defendants REGAL STONE, LTD.
      and FLEET MANAGEMENT, LTD.

21

22

23

24

25

26

27

28

KYL_SF461959

DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS, OR IN THE ALTERNATIVE, STAY PROCEEDINGS – Case No. C 07 06045 (SC)

1

## PROOF OF SERVICE

2

    I, the undersigned, hereby declare that I am over the age of eighteen years, and I am not a
party to the within action. My business address is Four Embarcadero Center, Suite 1500, San
Francisco, CA 94111, and my telephone number is (415) 398-6000.

3

4

    On the date indicated below, I served a true copy of the following document(s):

5

**DEFENDANTS REGAL STONE, LTD. AND FLEET MANAGEMENT, LTD.'S REPLY
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS, OR IN THE ALTERNATIVE,
STAY PROCEEDINGS**

6

7

☒    **BY E-MAIL:** I caused such document(s) to be served electronically on all parties via the
United States District Court's Northern District ECF e-filing system.

8

9

☒    Pursuant to California Rules of Court, Rule 201, and the Local Rules of the United States
District Court, I certify that all originals and service copies (including exhibits) of the papers
referred to herein were produced and reproduced on paper purchased as recycled, as defined by
section 42202 of the Public Resources Code.

10

11

12

    Executed on April 25, 2008 at San Francisco, California.

13

14

                    K'Ann M. Klein

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KYL SF461959
DEFENDANTS REGAL STONE LTD. AND FLEET MANAGEMENT, LTD.'S REPLY MEMORANDUM IN
SUPPORT OF MOTION TO DISMISS, OR IN THE ALTERNATIVE, STAY PROCEEDINGS – Case No. C 07 06045
(SC)