UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 07-6045 SC |
| Plaintiff, | |
| v. | ORDER DENYING DEFENDANTS' MOTION TO DISMISS OR IN THE ALTERNATIVE STAY PROCEEDINGS |
| M/V COSCO BUSAN, LR/IMO Ship. No. 9231743, her engines, apparel, electronics, tackle, boats, appurtenances, etc., in rem, REGAL STONE, LIMITED, FLEET MANAGEMENT LTD., and JOHN COTA, in personam, | |
| Defendants. | |

## I. INTRODUCTION

This matter comes before the Court on the Motion to Dismiss filed by the defendants Regal Stone, Ltd., and Fleet Management, Ltd. ("Defendants"). Docket No. 45. The United States Government ("Government" or "United States") filed an Opposition and Defendants submitted a Reply. Docket Nos. 56, 62. The defendant John Cota ("Cota") filed a Joinder In Motion to Dismiss and Stay Proceedings and the Government submitted an Opposition to this Joinder. Docket Nos. 55, 64. For the following reasons, Defendants' Motion to Dismiss or in the Alternative Stay the Proceedings is DENIED.

## II. BACKGROUND

On November 7, 2007, the nine hundred foot-plus cargo ship the COSCO BUSAN hit the Bay Bridge while attempting to sail out of the San Francisco Bay. As a result of this allision, the COSCO BUSAN discharged more than 50,000 gallons of heavy bunker fuel into the bay. The Government subsequently filed an action against the Hong Kong-flagged COSCO BUSAN, the ship's owner, Regal Stone, the ship's operator, Fleet Management, and the ship's pilot, John Cota. Various additional lawsuits were also filed in both state and federal court. The four federal actions, including the Government's, have been related and are before this Court. See Chelsea v. Regal Stone, Ltd. et al., Case No. 07-5800; Shogren Living Trust et al. v. Regal Stone, Ltd. et al., Case No. 07-5926; Continental Ins. Co. v. Cota et al., Case No. 08-2052.

The Government's Amended Complaint states four bases of statutory liability: the Oil Pollution Act ("OPA"), 33 U.S.C. § 2701 et seq.; the National Marine Sanctuaries Act ("NMSA"), 16 U.S.C. § 1431 et seq.,; the Park System Resource Protection Act ("PSRPA"), 16 U.S.C. § 19jj et seq.; and the Clean Water Act ("CWA"), 33 U.S.C. § 1321(b)(7), as amended by OPA. First Am. Compl., Docket No. 44. Defendants assert various theories for dismissal and/or stay. The Court addresses each in turn.[1]

///

---

[1] Neither parties' briefs comply with Civil Local Rule 3-4. The parties are encouraged to familiarize themselves with Rule 3-4(c)(2) and the requirement for footnote font size. In the future, the Court will strike any footnotes that fail to comply with this standard.

2

### III. **FAILURE TO EXHAUST OPA CLAIM PRESENTATION REQUIREMENT**

Defendants assert that this Court lacks jurisdiction over the Government's OPA causes of action because the Government has failed to fully comply with the OPA claims presentation requirements. The issue for the Court is whether the Government is bound by these requirements.[2]

OPA, enacted in 1990 in response to the EXXON VALDEZ oil spill, creates strict liability for clean up costs and damages resulting from oil spills. 33 U.S.C. § 2702(a). To facilitate recovery, OPA requires that "all claims for removal costs or damages . . . be presented first to the responsible party . . . ." Id. § 2713(a). The "responsible party" is, "[i]n the case of a vessel, any person owning, operating, or demise chartering the vessel." Id. § 2701(32). It is undisputed that Regal Stone was designated and accepted the designation of responsible party. Defs.' Mot. at 4; Perkins Decl., Docket No. 47, ¶ 5, Ex. B.

The animating principle of OPA is to permit injured parties to seek damages and cleanup costs directly from the responsible party. If injured parties are unable to recover any or all of their damages or recovery costs through this process, lawsuits remain viable options for further recovery. Thus, § 2713 provides that claimants "may elect to commence an action in court against the responsible party" if the responsible party denies liability or "the claim is not settled by any person by payment within 90

---

[2] It appears that the Government has presented five "small" claims to Defendants. Defs.' Mot. at 9. Three have been settled and two, as far as the Court can discern, remain pending. Id.

United States District Court
For the Northern District of California

days after the date upon which [] the claim was presented . . . ." 33 U.S.C. § 2713(c).

Based on these provisions, Defendants argue that the Court may not entertain the Government's OPA causes of action until the Government complies with the claims presentation process. This argument, although supported by the OPA provisions listed above, is foreclosed by § 2717. Section 2717, in addition to providing separate periods of limitations for damages and removal costs, also contains a provision which states: "Except as otherwise provided in this paragraph, an action may be commenced under this subchapter for recovery of removal costs <u>at any time</u> after such costs have been incurred." 33 U.S.C. § 2717(f) (emphasis added).

Defendants argue that the "general language of [§ 2717] cannot override the more specific claims presentation requirement in 33 U.S.C. § 2713(a)." Reply at 6. Defendants state: "Section 2717 provides that, for <u>any</u> claimant, an action for removal costs incurred by that claimant must be instituted within three years . . . ." <u>Id.</u> (emphasis in original). Thus, according to Defendants, if § 2717 actually meant what it said, "<u>any claimant</u> that incurred removal costs could ignore the claims presentation requirement and sue the Responsible Party directly. This would result in nullifying 33 U.S.C. § 2713(a)." <u>Id.</u> (emphasis in original).

Defendants' dire predictions of statutory nullification are, however, unfounded. Contrary to Defendants' assertion, § 2717(f)(2) does not apply to "<u>any</u> claimant." Reply at 6 (emphasis in original). Instead, § 2717(f)(2) only applies to "recovery of

4

removal costs referred to in section 2702(b)(1)."  33 U.S.C. § 2717(f)(2).  Section 2702(b)(1), in turn, only applies to removal costs incurred by the United States, a State, an Indian tribe, or a person acting pursuant to the National Contingency Plan.[3] See 33 U.S.C. § 2702(b)(1).  Thus, §§ 2702(b)(1) and 2717(f)(2) permit only the United States, a State, or an Indian tribe to bring an action at any time to recover removal costs.  All other claimants seeking damages or recovery costs must first present their claims to the responsible party, pursuant to § 2713.  The fact that OPA defines "claimant" as "any person or government who presents a claim for compensation under this subchapter" does not alter this conclusion.  Id. § 2701(4).  Contrary to Defendants' assertion, the specificity of § 2717 serves to modify the general claims presentation requirement of § 2713.

This resolution of the relationship between §§ 2713 and 2717 comports with the underlying purpose of OPA.  Congress likely recognized that the United States, a State, or a Tribe seeking to recover removal and cleanup costs should be allowed greater flexibility in its recovery efforts than individuals seeking damages.  Under the statutory framework, it is entirely conceivable that the United States, a State, or a Tribe would prefer to seek recovery of removal costs through the claims procedure, thus avoiding costly litigation.  One can imagine that

---

[3] The National Contingency Plan, codified at 33 U.S.C. § 1321(d), is a plan for removal of oil and hazardous substances prepared and published by the President.  Neither party mentions the National Contingency Plan and the Court concludes that, at this time, it is not relevant to Defendants' Motion.

5

this option would be attractive in situations where removal costs are relatively small and undisputed. On the other hand, one can imagine situations where, given the size of the spill, the scope of the cleanup process, the complexity of the legal issues, or the intransigence of the Responsible Party, it would be preferable to proceed directly to a court to seek recovery costs. Section 2717 plainly provides this option of initiating an action in court without first submitting removal cost claims to the Responsible Party. This understanding of OPA harmonizes with Congress' intent, which, as Defendants rightly note, was "'to eliminate, to the extent possible, the need for an injured person to seek recourse through the litigation process.'" Mot. at 6 (quoting 135 Cong. Rec. H7954-H7978 (daily ed. Nov. 2, 1989)).

Defendants, in support of their argument that the Government must first submit recovery costs to the claims process, rely heavily on an Eleventh Circuit opinion, <u>Boca Ciega Hotel, Inc. v. Bouchard Transportation Co.</u>, 51 F.3d 235 (11th Cir. 1995). Defendants' reliance on this case is puzzling for several reasons. First, <u>Boca Ciega</u> involved private party plaintiffs, not the United States. Second, the private parties were seeking to recover damages, not removal costs. Finally, the only issue before the court was whether the OPA claims presentation requirement applied only "to actions seeking to recover from the OPA-created cleanup fund . . ., [and] not to actions brought directly against the responsible parties." <u>Id.</u> at 237.

Aside from the fact that no government was part of the original group of plaintiffs--a fact which, by itself, readily

6

distinguishes Boca Ciega from the case at hand--the central issue in that case is irrelevant to the issues raised by Defendants. The Government does not assert that there is some distinction between seeking recovery from the fund rather than the responsible party. The issue instead is whether a government is required to present removal costs to the responsible party before filing a lawsuit. Section 2717 states unambiguously that it does not. Finally, and tellingly, nowhere in its opinion does the court in Boca Ciega even mention § 2717.

Defendants also rely on a district court case from Louisiana, United States v. Murphy Exploration & Production Co., 939 F. Supp. 489 (E.D. La 1996). Although the court in Murphy did indicate that the government was required to satisfy the claim presentation requirement of § 2713 before filing a lawsuit, id. at 492, this language was dicta as it was undisputed that the government had complied with the presentation requirement. See id. (stating "the stipulated facts indicate that the Coast Guard presented its claims to [the responsible party] and that [the responsible party] denied liability and refused payment for more than 90 days after receiving the request for payment"); see also 33 U.S.C. § 2713(c) (stating that lawsuits may be commenced if the responsible party denies liability or fails to make the payment within 90 days). In addition, Murphy, like Boca Ciega, did not discuss § 2717.

It is clear, based on the preceding analysis, that the Court has jurisdiction over the OPA causes of action, as the Government may initiate an action for recovery of removal costs at any time. 33 U.S.C. § 2717(f)(2). What is less clear is whether the

7

Government's damages claims under the same OPA causes of action may proceed without first being presented to the Responsible Party.

Given that the removal costs and damages are both sought under the same OPA causes of action, it would be anomalous to permit the same claim to proceed for removal costs but not for damages. Requiring such a course of conduct would seemingly have no impact on the final result and would instead create extra, unnecessary steps in the recovery process. For example, if the damages aspect of the OPA causes of action were to be dismissed or stayed, the parties would still litigate the removal costs and the Court would issue a judgment. This judgment would then be binding on Defendants for the subsequent damages. See 33 U.S.C. § 2717(f)(2) (stating that in an action for recovery of removal costs, "the court shall enter a declaratory judgment on liability for removal costs or damages that will be binding on any subsequent action or actions to recover further removal costs or damages"). With this judgment, the Government would then seek the damages, either directly from the responsible party or through a return trip to the Court.

In the interest of judicial economy, the Court will permit the damages claims to proceed with the removal costs claims. Defendants have offered no reason why this should not be the case and a contrary decision would frustrate, rather than further, the primary purpose of OPA, which is to streamline the recovery process for oil spill damages and cleanup costs.

For the reasons stated above, the Court finds that it has

8

jurisdiction to hear the Government's OPA causes of action. Defendants' Motion to Dismiss or Stay the OPA claims is DENIED.

### IV. DISMISSAL OF NON-OPA CLAIMS

Defendants argue that because "all of the claims asserted by the United States are for damages or response costs resulting from the COSCO BUSAN incident, they are subject to OPA's claims presentation requirement." Mot. at 10. This argument fails for two reasons. First, as detailed in the previous section, the Government may proceed with its OPA claims. Thus, Defendants' argument that all of the Government's claims must be stayed until the OPA claims may proceed is moot.

Second, even if the OPA claims were stayed, OPA contains an unambiguous savings clause that expressly preserves the authority of the United States to impose liability pursuant to statutes other than OPA. Section 2718 states: "Nothing in this Act . . . shall in any way affect, or be construed to affect, the authority of the United States . . . to impose additional liability or . . . to impose, or to determine the amount, of any fine or penalty . . . for any violation of law[] relating to the discharge . . . of oil." 33 U.S.C. § 2718(c).

Finally, any concern Defendants might have with double recovery through other statutes is clearly foreclosed by § 2706, which states: "There shall be no double recovery under this Act for natural resource damages . . . ." 33 U.S.C. § 2706(d)(3).

For these reasons, Defendants' motion to dismiss or stay the Government's non-OPA causes of action is DENIED.

9

**V.      DISMISSAL OF GOVERNMENT'S FORFEITURE ACTION UNDER THE NMSA**

The NMSA, as noted above, is the National Marine Sanctuaries Act ("NMSA"), 16 U.S.C. § 1431 et seq. The NMSA provides for civil forfeiture in the event of a NMSA violation. This forfeiture provision states, inter alia:

> Any vessel (including the vessel's equipment, stores, and cargo) and other item used, and any sanctuary resource taken or retained, in any manner, in connection with or as a result of any violation of this chapter or of any regulation or permit issued under this chapter shall be subject to forfeiture to the United States pursuant to a civil proceeding under this subsection.

16 U.S.C. § 1437(e)(1). Defendants, implausibly and without support, argue that the above language "demonstrates Congress' intent to permit vessel forfeiture under the NMSA only when a vessel is used to take or retain a sanctuary resource." Mot. at 13.

The Court must begin with the plain language of the statute, and if that language is clear, that is the end of the inquiry. Patenaude v. Equitable Life Assur. Soc'y, 290 F.3d 1020, 1025 (9th Cir. 2002). The plain meaning of the statute is that forfeiture is permitted if a vessel, equipment, stores, or cargo is used in violation of the NMSA, and, in the alternative, forfeiture is permitted if any sanctuary resource is taken or retained in violation of the NMSA. Thus, forfeiture is permitted when either condition has been satisfied. The statute plainly does not require that a vessel take or retain a sanctuary resource in violation of the NMSA before forfeiture is permissible. Such an

10

interpretation is not supported by the plain meaning of the language and is one the Court cannot endorse. For these reasons, Defendants' Motion to Dismiss the United States' NMSA forfeiture action is DENIED.

## VI. ACTUAL CONTROVERSY UNDER THE DECLARATORY JUDGMENT ACT

The Government's fourth cause of action seeks a declaratory judgment against Defendants pursuant to OPA. Section 2717 states, in part: "In any such action [for recovery of removal costs], the court shall enter a declaratory judgment on liability for removal costs or damages that will be binding on any subsequent action or actions to recover further removal costs or damages." 33 U.S.C. § 2717(f)(2). Defendants argue that because they "admit they are strictly liable to pay OPA response costs and damages, there is no case or controversy for the Court to address." Mot. at 14.

As noted in section III., supra, the Government has filed valid OPA causes of action. There is, therefore, a valid case or controversy. As OPA requires a court to enter a declaratory judgment, Defendants' Motion to Dismiss the Government's fourth cause of action is DENIED.

## VII. DISMISSAL OF GOVERNMENT'S SIXTH CAUSE OF ACTION

The Government's sixth cause of action is brought under the Clean Water Act ("CWA"), 33 U.S.C. § 1321(b)(7). The CWA prohibits discharge of oil into navigable waters of the United States or adjoining shorelines that causes a film or sheen upon or discoloration of the water surface or adjoining shorelines, or

11

1  which causes a sludge or emulsion to be deposited beneath the
2  water surface or on adjoining shorelines.  33 U.S.C. § 1321(b)(3);
3  40 C.F.R. § 110.3.  Civil penalties are available under this
4  provision.
5     Defendants argue that the Government failed to properly plead
6  this claim and that the claim addresses harm which is not yet ripe
7  for adjudication.  The Court addresses each in turn.

### A. **Failure to Plead**

Defendants argue that the "sixth cause of action lacks reasonable specificity and should be dismissed outright."  Mot. at 16.  Plaintiff's sixth cause of action states:

> Plaintiff, United States of America, refers to and incorporates by reference as though fully set forth herein each and every foregoing paragraph of this Complaint.
> Pursuant to 33 U.S.C. § 1321(b)(7), Regal Stone and Fleet Management are subject to a judicially assessed civil penalty.
> Pursuant to 33 U.S.C. § 1321(b)(7), Regal Stone and Fleet Management are liable to the United States for a judicially assessed civil penalty in an amount to be determined at trial.

First Am. Compl. ¶¶ 51-53.

According to Defendants, § 1321(b)(7) provides various theories of liability for civil penalties, including: "(1) failure to carry out a removal order of the President; (2) failure to comply with an administrative order effecting public health; (3) failure to comply with a regulation under the National Contingency Plan; (4) causing an oil spill by gross negligence; and (5) strict liability."  Mot. at 16.  Defendants argue that the United States "has provided no notice to Regal Stone or Fleet as to which of

United States District Court
For the Northern District of California

these theories it advances, let alone requisite factual allegations for each." Id.

Federal Rule of Civil Procedure 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." The first sentence of the sixth cause of action incorporates by reference all prior allegations of the First Amended Complaint. These allegations include the following: that Regal Stone and Fleet Management are the owner and operator of the COSCO BUSAN, that the COSCO BUSAN hit the Bay Bridge, that this allision resulted in an oil spill, and that this incident was caused by the "acts, omissions, strict liability, fault, [and] negligence . . . by the . . . Defendants." First Am. Compl. ¶¶ 20-28. These allegations satisfy the pleading standard of Rule 8(2)(a) and Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007) (holding that dismissal pursuant to Rule 12(b)(6) is appropriate if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face").

Defendants also allege that "the United States fails to give notice as to a 'sum certain' or even an amount 'up to' as civil penalties." Mot. at 17. As § 1321(b)(7) provides for judicially assessed, rather than administrative, penalties, it is unclear to the Court how the Government could be expected to give notice of a fixed amount when these penalties will be determined by the Court. Defendants apparently recognize this fact in their Reply, where they acknowledge that the Court will need to "properly evaluate any potential civil penalty as required by law." Reply at 15.

Finally, Defendants' reliance on Connolly v. United States,

13

149 F.2d 666 (9th Cir. 1945), is misplaced.  In Connolly, the court set aside the imposition of a statutory penalty because nowhere in the complaint, record, or trial was mention made of the penalty statute.  Id. at 668.  In the present action, the First Amended Complaint contains repeated reference to the penalty statute, 33 U.S.C. § 1321(b)(7).  See First Am. Compl. ¶¶ 51-53.  The Court therefore finds that the sixth cause of action is sufficiently pleaded.

### B. **Justiciability**

Defendants further assert that the sixth cause of action should be dismissed because it "has not yet accrued" and therefore is not justiciable.  Mot. at 15.  Defendants argue that a CWA cause of action for civil penalties arising out of an oil spill may not be brought until after the oil removal is completed.  In support of this argument, Defendants rely on a Fourth Circuit case, United States v. Barge Shamrock, 635 F.2d 1108 (4th Cir. 1980).  Barge Shamrock, however, dealt with the issue of when a statute of limitations period for a CWA claim is triggered.  Specifically, the court ruled that the limitation period was not triggered--i.e., the cause of action did not fully accrue--"until the government [had] completely exercised its option and completed the cleanup operation."  Id. at 1110.  Contrary to Defendants' assertion, this does not mean that a claim may not be brought until the cleanup of the oil spill is completed.  The sixth cause of action is, accordingly, justiciable.

Finally, Defendants argue, in the alternative, that the sixth cause of action must be stayed pending the results of the natural

14

1  resource damage assessments ("NRDA").[4]  Regarding the statutory
2  penalties, the CWA states:

> In determining the amount of a civil penalty . . ., the court, as the case may be, shall consider the seriousness of the violation or violations, the economic benefit to the violator, if any, resulting from the violation, the degree of culpability involved, any other penalty for the same incident, any history of prior violations, the nature, extent, and degree of success of any efforts of the violator to minimize or mitigate the effects of the discharge, the economic impact of the penalty on the violator, and any other matters as justice may require.

33 U.S.C. § 1321(b)(8).  Many, if not most, of these factors would not require the Court to wait until completion of the NRDA. Moreover, the Court is wary of Defendants' request to stay this cause of action in light of the fact that one of Defendants' own declarants states that "it would not be unusual for the NRDA process to take up to 5 years."  Mauseth Decl., Docket No. 39, ¶ 6.

At this stage of the proceedings, without further information, a stay of the sixth cause of action is premature and unnecessary.  Principles of judicial economy favor addressing all of the claims arising out of the oil spill at the same time.  If, at a later date, the Court determines that completion of the NRDA is necessary to assess damages, the Court is capable of staying that portion of the proceedings at that time.  For these reasons, Defendants' motion to dismiss or stay the Government's sixth cause

---

[4] The NRDA is provided for in regulations promulgated under OPA.  See 15 C.F.R. § 990.10 et seq.

of action is DENIED.

### VIII. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss or in the Alternative Stay the Proceedings is DENIED.

IT IS SO ORDERED.

Dated: May 9, 2008

_____
UNITED STATES DISTRICT JUDGE

16