JOHN D. GIFFIN, CASB NO. 89608
john.giffin@kyl.com
JOSEPH A. WALSH II, CASB NO 143694
joe.walsh@kyl.com
JOHN COX, CASB NO. 197687
john.cox@kyl.com
NICOLE S. BUSSI, CASB NO. 252763
nicole.bussi@kyl.com
KEESAL, YOUNG & LOGAN
A Professional Corporation
Four Embarcadero Center, Suite 1500
San Francisco, California 94111
Telephone:   (415) 398-6000
Facsimile:   (415) 981-0136

Attorneys for Defendants, Counterclaimants, and Cross-Claimants:
REGAL STONE, LTD. and FLEET MANAGEMENT, LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>M/V COSCO BUSAN, LR/IMO Ship. No. 9231743 her engines, apparel, electronics, tackle, boats, appurtenances, etc., *in rem*, THE SHIPOWNERS' INSURANCE & GUARANTY COMPANY LTD., REGAL STONE, LTD., FLEET MANAGEMENT, LTD., and JOHN COTA, *in personam*,<br><br>　　　　　Defendants. | Case No. C 07 06045 (SC)<br><br>IN ADMIRALTY<br><br>ANSWER TO COMPLAINT, AFFIRMATIVE DEFENSES, COUNTERCLAIM AND THIRD PARTY COMPLAINT OF DEFENDANTS REGAL STONE, LTD. AND FLEET MANAGEMENT LTD. |
| REGAL STONE, LTD., FLEET MANAGEMENT LTD.,<br><br>　　　　　Counter-Claimants,<br><br>vs. | |

KYL_SF462849

ANSWER, COUNTERCLAIM AND THIRD PARTY COMPLAINT – Case No. C 07 06045 (SC)

| | |
|---|---|
| 1 | UNITED STATES OF AMERICA, )
| 2 | )  Counter-Defendant. )
| 3 | REGAL STONE, LTD., FLEET )
| 4 | MANAGEMENT, LTD., )
| 5 | )  Cross- Claimants, )
| 6 | vs. )
| 7 | STATE OF CALIFORNIA, )
| 8 | )
| 9 | )  Cross-Defendant. )

Defendant and Claimant to the vessel M/V COSCO BUSAN, REGAL STONE, LTD. ("Regal Stone") and Defendant FLEET MANAGEMENT, LTD. ("Fleet") (collectively referred to as "Answering Defendants") hereby answer Plaintiff UNITED STATES OF AMERICA's ("Plaintiff") First Amended Verified Complaint in this matter, assert a counterclaim against the United States, and assert claims pursuant to Federal Rules of Civil Procedure Rule 14(c) by the United States of America against the State of California.

**ANSWER TO FIRST AMENDED VERIFIED COMPLAINT**

Answering Defendants respond to Plaintiff's First Amended Verified Complaint as follows:

1.  Answering Defendants deny in their entirety those allegations contained in Paragraphs 8-11, 13, 14, 16, 17, 40, and 44 of Plaintiff's First Amended Verified Complaint.

2.  Answering Defendants admit those allegations contained in Paragraphs 4, and 18-24 of Plaintiff's First Amended Verified Complaint.

3. Answering Defendants have insufficient information to respond to those allegations contained in Paragraphs 28, 36, 43, and 50 of Plaintiff's First Amended Verified Complaint, and therefore based upon their lack of information and belief, deny the allegations contained therein in their entirety.

4. To the extent that the Plaintiff incorporates by reference allegations contained in Paragraphs 29, 34, 41, 45, 47, and 51 of Plaintiff's First Amended Verified Complaint, Answering Defendants incorporate herein its responses thereto.

5. In response to Paragraphs 1-3, 30-33, 37-39, 42, 46, 48, 49, 52, and 53, of Plaintiff's First Amended Verified Complaint, Answering Defendants state that the allegations contained state issues of law which require no answer. To the extent an answer is required, Answering Defendants deny the allegations.

6. In response to Paragraph 5 of Plaintiff's First Amended Verified Complaint, Answering Defendants admit that Defendant M/V COSCO BUSAN, LR/IMO Ship No. 9231743, her engines, apparel, electronics, tackle, boats, appurtenances, *etc., in rem*, was flagged in Hong Kong. All other allegations contained therein are denied in their entirety.

7. In response to Paragraph 6 of Plaintiff's First Amended Verified Complaint, Answering Defendants admit Regal Stone is a foreign corporation head-quartered in Hong Kong, that on November 7, 2007 Regal Stone owned the M/V COSCO BUSAN, and that the M/V COSCO BUSAN was within this judicial district on November 7, 2007. All other allegations contained therein are denied in their entirety.

8. In response to Paragraph 7 of Plaintiff's First Amended Verified Complaint, Answering Defendants admit that on November 7, 2007 Regal Stone owned the M/V COSCO BUSAN. All other allegations contained therein are denied in their entirety.

9. In response to Paragraph 12 of Plaintiff's First Amended Verified Complaint, Answering Defendants admit that Fleet is a foreign corporation head-quartered in Hong Kong, that on November 7, 2007 Fleet was the technical manager of

the M/V COSCO BUSAN, and that the M/V COSCO BUSAN was within this judicial district on November 7, 2007. All other allegations contained therein are denied in their entirety.

10. In response to Paragraph 15 of Plaintiff's First Amended Verified Complaint, Answering Defendants admit Fleet was the technical manager of the M/V COSCO BUSAN on November 7, 2007. All other allegations contained therein are denied in their entirety.

11. In response to Paragraph 25 of Plaintiff's First Amended Verified Complaint, Answering Defendants admit that the allision with the Bay Bridge resulted in the rupture of two of the M/V COSCO BUSAN's fuel tanks, thereby allowing a portion of the M/V COSCO BUSAN's bunkers from one of the ruptured tanks to be discharged into navigable waters of the United States and onto adjoining shorelines, including navigable waters and adjoining shoreline of San Francisco Bay. In response to the remaining allegations in Paragraph 25, Answering Defendants have insufficient information to admit or deny the remaining allegations, and therefore based on their lack of information and belief, Answering Defendants deny those allegations contained therein in their entirety.

12. In response to Paragraph 26 of Plaintiff's First Amended Verified Complaint, Answering Defendants admit the United States has expended and/or sustained response costs and damages within the meaning of the Oil Pollution Act of 1990. Answering Defendants have insufficient information to admit or deny the remaining allegations, and therefore based on their lack of information and belief, deny those allegations in their entirety.

13. In response to Paragraph 27 of Plaintiff's First Amended Verified Complaint, Answering Defendants admit that the COSCO BUSAN incident was proximately caused by the acts, omissions, fault, and/or negligence of the pilot John Cota. All other allegations contained therein are denied in their entirety.


14. In response to Paragraph 35 of Plaintiff's First Amended Verified Complaint, Defendant Regal Stone admits it is a responsible party within the meaning of the Oil Pollution Act of 1990. All other allegations contained therein are denied in their entirety.

## AFFIRMATIVE DEFENSES

In further answer to Plaintiff's First Amended Verified Complaint, and as separate and distinct affirmative defenses, Answering Defendants allege the following defenses:

15. AS A FIRST, SEPARATE, DISTINCT, AFFIRMATIVE DEFENSE to Plaintiff's First Amended Verified Complaint, Answering Defendants allege that Plaintiff's First Amended Verified Complaint and each and every allegation therein, fails to state a claim upon which relief can be granted.

16. AS A SECOND, SEPARATE, DISTINCT AFFIRMATIVE DEFENSE to Plaintiff's First Amended Verified Complaint, Answering Defendants are informed and believe and thereon allege that, by exercise of reasonable efforts, Plaintiff could have mitigated the amount of damages allegedly suffered, but Plaintiff failed and/or refused and continues to fail and/or refuse, to exercise efforts to mitigate its damages, and therefore Plaintiff's recovery, if any, must be barred or diminished accordingly.

17. AS A THIRD, SEPARATE, DISTINCT, AFFIRMATIVE DEFENSE to Plaintiff's First Amended Verified Complaint, Answering Defendants allege that the alleged damages for which Plaintiff seeks to hold the Answering Defendants liable, resulted in whole or in part from the negligent, deliberate, intentional, reckless, and/or unlawful acts or omissions of third parties, and Answering Defendants are not responsible for or liable to Plaintiff for any such acts or omissions on the part of third parties.

18. AS A FOURTH, SEPARATE, DISTINCT, AFFIRMATIVE DEFENSE to Plaintiff's First Amended Verified Complaint, Answering Defendants allege that

Plaintiff has failed to join all indispensable parties as the State of California is an indispensable party with respect to the United States' claims including claims for damages to natural resources and therefore these claims should be dismissed if the state is not joined as an indispensable party.

19. AS A FIFTH, SEPARATE, DISTINCT, AFFIRMATIVE DEFENSE to Plaintiff's First Amended Verified Complaint, Answering Defendants allege that the M/V COSCO BUSAN incident was caused, in whole or in part, by the negligence of the United States, and its recovery must be reduced in proportion to its fault pursuant to the doctrines of recoupment and/or setoff.

20. AS A SIXTH, SEPARATE, DISTINCT, AFFIRMATIVE DEFENSE to Plaintiff's First Amended Verified Complaint, Answering Defendants allege that the M/V COSCO BUSAN incident was caused, in whole or in part, by the negligence of the United States, and Answering Defendants are entitled to indemnity and/or contribution against any recovery that may be awarded in favor of Plaintiff.

21. AS A SEVENTH, SEPARATE, DISTINCT, AFFIRMATIVE DEFENSE to Plaintiff's First Amended Verified Complaint, Answering Defendants allege that this Court lacks subject matter jurisdiction over the United States' claims brought under the Oil Pollution Act of 1990, because Plaintiff has failed to comply and continues to fail to comply with the claims presentation requirement set forth in 33 U.S.C. § 2713(a)-(c).

22. AS AN EIGHTH, SEPARATE, DISTINCT, AFFIRMATIVE DEFENSE to Plaintiff's First Amended Verified Complaint, Answering Defendants allege this Court lacks subject matter jurisdiction with respect to the issue of whether Answering Defendants have defenses to liability, or can limit their liability, under the Oil Pollution Act of 1990 (33 U.S.C. §§ 2703, 2704), and whether Answering Defendants can seek reimbursement of response costs and damages they have paid pursuant to 33 U.S.C. §§ 2708, 2713.

23. AS A NINTH, SEPARATE, DISTINCT, AFFIRMATIVE DEFENSE to Plaintiff's First Amended Verified Complaint, Answering Defendants allege the United States' forfeiture claim under the Marine Sanctuary Act must be dismissed since no vessel was involved in the taking of marine sanctuary resources.

24. AS AN TENTH, SEPARATE, DISTINCT, AFFIRMATIVE DEFENSE to Plaintiff's First Amended Verified Complaint, Answering Defendants allege the United States' injuries, if any, were caused, in whole or in part, by its gross negligence or willful misconduct, such that recovery by the United States against Defendants is barred or limited by 33 U.S.C. § 2703(b).

25. AS A ELEVENTH, SEPARATE, DISTINCT, AFFIRMATIVE DEFENSE to Plaintiff's First Amended Verified Complaint, Answering Defendants allege the United States claims are barred by the doctrines of waiver and estoppel.

26. AS A TWELFTH, SEPARATE, DISTINCT, AFFIRMATIVE DEFENSE to Plaintiff's First Amended Verified Complaint, Answering Defendants reserve the right to assert additional affirmative defenses.

## COUNTER-CLAIM

Defendants and Counter-Claimants Regal Stone, Ltd. ("Regal Stone") and Fleet Management, Ltd. ("Fleet") (collectively "Counter-Claimants") allege:

27. The Court has jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 1331, 1333, 1345, 1346, 33 USC §§ 2709 & 2717(b), and 46 U.S.C. § 30903.

28. Venue in this Court is proper pursuant to 33 U.S.C § 2717(b) and 46 U.S.C. § 30903.

29. Regal Stone, a Hong Kong based company, was, on or about November 7, 2007 and at all times relevant hereto, the owner of the vessel M/V COSCO BUSAN ("COSCO BUSAN"). The COSCO BUSAN is a vessel in excess of 300 gross tons.

30. Fleet, a Hong Kong based company, was, on or about November 7, 2007 and at all times relevant hereto, the technical manager of the COSCO BUSAN.

31.     John J. Cota ("Pilot Cota") boarded the COSCO BUSAN as a compulsory pilot on November 7, 2007 as required by California law, and navigated the vessel west from the Port of Oakland towards the San Francisco-Oakland Bay Bridge.

32.     Under Pilot Cota's compulsory pilotage, the COSCO BUSAN discharged approximately 53,000 gallons of fuel oil in the San Francisco Bay (the "Incident"). Regal Stone, as the owner of the vessel, was designated the Responsible Party by the United States under the Oil Pollution Act of 1990 ("OPA '90") and by the State of California, Office of Spill Prevention and Response.

33.     As a result of being designated the Responsible Party, Regal Stone has been required to, among other things, pay for removal costs for the November 7, 2007 oil spill as well as other damages, disbursements and costs relating to that incident including, but not limited to: the cost to repair the COSCO BUSAN, loss of hire, port fees and expenses, crew wages and expenses, loss of use, response costs and cleanup expenses, consultants' and specialist fees, natural resource damages, assessment costs, third party claims, claims by municipalities and government agencies and/or class action lawsuits, litigation costs, attorneys fees and civil penalties. The complete costs and damages are undetermined at this time, but will be ascertainable once the cleanup, response, natural resource damage assessment and litigation are completed, but are expected to be in excess of $60,000,000.

34.     The counterclaims arise from the discharge of bunker fuel from the COSCO BUSAN into the waters of the San Francisco Bay on November 7, 2007 and subsequent removal efforts.

35.     The counterclaims arise from injuries to natural resources within the waters of the San Francisco Bay and the Pacific Ocean resulting from the Incident and damages arising there from.

36.     The United States of America alleges that it has incurred response costs, damages and other disbursements resulting from the discharge of bunkers from the COSCO BUSAN. It seeks recovery of these amounts from Regal Stone and Fleet.

37. The United States has waived sovereign immunity with respect to the claims asserted in these counterclaims, pursuant to 28 U.S.C. §§ 2674, 2675, and 46 U.S.C. § 30903.

38. At the time of the Incident, Pilot Cota held a merchant mariner's license issued by the United States Coast Guard. Possession of such a license by Pilot Cota was a prerequisite to qualifying to pilot vessels on the waters of San Francisco Bay.

39. Pilot Cota was medically unfit and incompetent to perform the duties required by his United States Coast Guard license. Pilot Cota suffers from numerous medical conditions including sleep apnea and depression. For several years prior to the Incident and within the knowledge of the United States, Pilot Cota had been taking a long list of disqualifying prescription medications including valium for sleep and Provigil to keep him awake. Pilot Cota's medical condition and his use of prescription medications resulted in the impairment of his cognitive abilities and contributed to his lack of situational awareness.

40. In 2006 and 2007, Pilot Cota disclosed to the United States Coast Guard his medical conditions and use of medications that rendered him unfit for duty, medically disqualified and prone to periods of confusion (lack of situational awareness).

41. Prior to November 7, 2007, the United States knew or should have known of Pilot Cota's disclosures, medical history and/or medical condition prior to the incident.

42. The United States was negligent in licensing Pilot Cota, insofar as it failed to determine that Pilot Cota was not medically fit for duty pursuant to the applicable regulations. Specifically, despite Pilot Cota's medical history and medical condition prior to the accident, all known to the United States Coast Guard, the United States Coast Guard failed to revoke his license and instead granted him annual renewals. In essence, the United States Coast Guard failed to "guard to the coast" by failing to disqualify Pilot Cota and instead renewing his license.

43. Pilot Cota's personal history prior to the Incident includes convictions for driving under the influence (DUI) offenses in 1971 and again in 1998, and completion of a 30-day Alcohol and Chemical Recovery Program in March 1999.

44. On November 30, 1999, the United States Coast Guard's National Maritime Center "Medical Waivers" staff issued a license waiver because of Pilot Cota's condition and ongoing treatment. The document from the National Maritime Center required that a waiver statement be physically placed on his license when it was issued. On January 4, 2000, the United States Coast Guard negligently issued a license to Pilot Cota and failed to note any indication of medical conditions or waiver on that license.

45. Following the Incident, and even before completing a comprehensive investigation of the Incident, the United States Coast Guard suspended Pilot Cota's license based solely on the medical disclosures made by him in January 2007, some ten months prior to the incident. Had the United States Coast Guard properly evaluated Pilot Cota's written disclosures about his medical conditions and use of certain prescription medicines, he would never have been allowed to pilot COSCO BUSAN on the day of the Incident.

46. The United States Coast Guard negligently allowed Pilot Cota to maintain and renew his Coast Guard license, and failed to annotate the waiver on Pilot Cota's license. The United States negligence included, but is not limited to, its failure to revoke Pilot Cota's license and its decision to renew his license.

47. If the United States Coast Guard had properly reviewed Pilot Cota's license application and disclosures in accordance with its own procedures and prior recommendations of the National Transportation Safety Board following the STAR PRINCESS grounding and the tragic Staten Island Ferry incident, it would not have renewed Pilot Cota's licenses in 2006 and again in 2007 and the November 7, 2007 Incident would not have occurred.

48. As the COSCO BUSAN was approaching the Bay Bridge, the United States Coast Guard Vessel Traffic Service ("VTS") for the San Francisco Bay knew that

the vessel was off track and standing into danger. VTS owed and/or assumed a duty to timely monitor vessel traffic within the VTS system, and to competently intervene by issuing advisements, warnings and/or directions in the event a vessel in the VTS system is off course, in peril and/or otherwise standing into danger.

49. VTS breached its duties: by failing to properly monitor the vessel's movement, by failing to make timely contact with Pilot Cota, by providing Pilot Cota with inaccurate information, by failing to warn Pilot Cota of the impending danger, and by failing to direct, order and/or use its authority to command that the pilot change his intended track, steer away from the danger, change course, reverse engines, or otherwise maneuver so as to avoid the bridge tower.

50. Moreover, instead of taking action to properly and timely monitor, advise, warn and/or direct the Pilot Cota away from the peril so that the vessel would not allide with the bridge, VTS operators placed bets and/or wagers among themselves as to whether the vessel would pass safely or strike the bridge.

51. VTS further breached the duties it owed and/or assumed to Regal Stone, Fleet, the public, and the environment by abandoning its role and mission to properly monitor, advise, warn and direct vessel traffic.

## FIRST COUNTER-CLAIM

52. Counter-Claimants reallege and incorporate by reference the allegations contained in paragraphs 27 through 51 of their counterclaims.

53. The discharge of bunker fuel from the COSCO BUSAN into the navigable waters of San Francisco Bay, the Pacific Ocean and adjoining shorelines resulted from the negligence of the United States.

54. The discharge of bunker fuel from the COSCO BUSAN into the navigable waters of San Francisco Bay, the Pacific Ocean and adjoining shorelines resulted from the gross negligence and/or willful misconduct of the United States.

55. As a consequence of the United States' negligence, gross negligence, or willful misconduct, Counter-Claimants have sustained costs, damages, and losses and

1 continue to sustain costs, damages and losses. They are entitled to the remedy of setoff
2 or recoupment, up to the full value of the United States' claims asserted against them.

## SECOND COUNTER-CLAIM

56. Counter-Claimants re-allege and incorporate by reference the allegations contained in paragraphs 27 through 55 of their counterclaims.

57. The negligence, gross negligence, or willful misconduct of the United States resulted in the discharge of bunker fuel onto navigable waters and adjoining shorelines, and caused injury to natural resources. It also resulted in damage to the vessel and the San Francisco-Oakland Bay Bridge, damages to third parties, damages to natural resources, and caused Fleet and Regal to incur fines, penalties and other losses.

58. Counter-Claimants have incurred, and will continue to incur costs, damages, losses and penalties caused directly and proximately by the United States' tortious acts and omissions.

59. The United States is liable to Counter-Claimants for all such costs, damages, losses and penalties.

## THIRD COUNTER-CLAIM

60. Counter-Claimants reallege and incorporate by reference the allegations contained in paragraphs 27 through 59 of their counterclaims.

61. The negligence, gross negligence, or willful misconduct of the United States resulted in the discharge of bunker fuel onto navigable waters, damages to third parties, and injuries to natural resources.

62. Counter-Claimants have incurred, and will continue to incur, response costs, damages and other losses as a result of the discharge of bunker fuel onto navigable waters, and the resulting injury to the natural resources within those waters.

63. The United States is liable in contribution to Counter-Claimants for an amount in proportion to its culpability in causing the incident which represents the response costs, damages, disbursements and other losses that Counter-Claimants have

incurred and/or will incur as a result of the discharge of bunkers into and onto the navigable waters of the United States.

## FOURTH COUNTER-CLAIM

64. Counter-Claimants re allege and incorporate by reference the allegations contained in paragraphs 27 through 63 of their counterclaims.

65. The negligence, gross negligence, or willful misconduct of the United States resulted in the discharge of bunker fuel onto navigable waters, and caused injury to the natural resources within those waters.

66. Counter-Claimants have incurred, and will continue to incur, response costs and damages as a result of the discharge of bunker fuel onto navigable waters, and the resulting injury to the natural resources within those waters.

67. The United States is liable to Counter-Claimants for the response costs and damages they have incurred, or will incur, as a result of the discharge of bunkers into and onto the navigable waters of the United States.

## RULE 14(C) CLAIM BY UNITED STATES
## AGAINST STATE OF CALIFORNIA

Pursuant to Federal Rule of Civil Procedure 14(c), Regal Stone, Ltd. ("Regal Stone") and Fleet Management, Ltd. ("Fleet") (collectively "Cross-Claimants") and Claimant demand judgment against the State of California (the "State") in favor of the United States of America, as if the United States had commenced an action directly against the State of California.

68. Cross-Claimants incorporate and re-allege the allegations contained in paragraphs 27 to 67 of their Counterclaims against the United States by reference.

69. The United States is the Plaintiff in this action. It filed its First Amended Verified Complaint on March 26, 2008.

ANSWER, COUNTERCLAIM AND THIRD PARTY COMPLAINT – Case No. C 07 06045 (SC)
KYL_SF462849

70. The United States' First Amended Verified Complaint alleges that this is a case of admiralty and maritime jurisdiction within Rule 9(h) of the Federal Rules of Civil Procedure.

71. The United States alleges it is authorized to bring suit, and that the Court has jurisdiction over its claims.

72. In this action, the United States seeks response costs and damages from Cross-Claimants resulting from an oil spill from the COSCO BUSAN.

73. The United States alleges that the COSCO BUSAN, while piloted by Defendant John Cota, struck the San Francisco-Oakland Bay Bridge on November 7, 2007.

74. The United States alleges that as a result of this allision, oil spilled from the COSCO BUSAN, and the United States has incurred response costs and damages as a result of the oil spill.

75. In its First Amended Verified Complaint, the United States blames Defendant John Cota, as well as Cross-Claimants for the allision.

76. The true facts and circumstances regarding the allision are that it was caused by the State's negligent decision to issue a pilots license to Defendant John Cota, who was not medically fit or competent to pilot a vessel such as the COSCO BUSAN at the time of the allision. The State of California issued Pilot Cota's state license to pilot vessels such as the COSCO BUSAN, and renewed that license.

77. The State employed physicians to examine Pilot Cota in order to determine whether he was medically fit to perform his duties as a marine pilot. These physicians acted as agents of the State.

78. The State's decision to renew Pilot Cota's license was negligent, or grossly negligent, given Pilot Cota's medical condition, history of prior accidents, and his history of addiction to alcohol and/or substances. The State's negligence, and/or the negligence of agents of the State for whom the State is vicariously liable, proximately

- 14 -
KYL_SF462849
ANSWER, COUNTERCLAIM AND THIRD PARTY COMPLAINT – Case No. C 07 06045 (SC)

caused the allision, and it is therefore directly liable to the United States for its damages.

79. The physicians who examined Pilot Cota acted with negligence, gross negligence, or willfully, in that they certified he was fit to perform his duties as a pilot when they knew, or reasonable should have known, that Pilot Cota was not medically fit to do so.

80. The State is liable to the United States for negligently renewing Pilot Cota's license.

81. The State is liable to the United States for the negligence of its physicians in certifying that Pilot Cota was fit to perform his duties.

82. The State is liable to the United States for the gross negligence, willful misconduct, and willful actions of its employees and agents in connection with the renewal of Pilot Cota's license.

83. The State is liable to the United States for the negligent and intentional misrepresentations made by State employees and agents in connection with the renewal of Pilot Cota's license.

## FIRST CROSS-CLAIM

84. Cross-Claimants incorporate and re-allege the allegations contained in paragraphs 27 to 83 by reference.

85. Cross-Claimants have incurred, and will continue to incur costs, damages, losses and penalties caused directly and proximately by the State's acts and omissions.

86. The Incident was proximately caused by the State's failure to use due care in its licensing, supervision and training of Pilot Cota.

87. Cross-Claimants are entitled to indemnification from the State for any costs, damages, losses and penalties it paid or will pay as a result of the Incident.

## SECOND CROSS-CLAIM

88. Cross-Claimants incorporate and re-allege the allegations contained in paragraphs 27 to 87 by reference.

89. Cross-Claimants have incurred, and will continue to incur costs, damages, losses and penalties caused directly and proximately by the State's acts and omissions.

90. The Incident was proximately caused by the State's failure to use due care in its licensing, supervision and training of Pilot Cota.

91. Cross-Claimants are entitled to contribution from the State for any costs, damages, losses and penalties it paid or will pay as a result of the Incident.

## THIRD CROSS-CLAIM

92. Cross-Claimants incorporate and re-allege the allegations contained in paragraphs 27 to 91 by reference.

93. The State has a duty to ensure that any San Francisco Bar Pilot appointed to navigate a vessel is properly licensed, trained, and supervised.

94. The State breached its duty to ensure that Pilot Cota was properly licensed, trained, and supervised.

95. The State's breach of this duty proximately caused the Incident.

96. The State was negligent under California Government Code §§ 815.2 and 815.4.

97. Cross-Claimants have incurred, and will continue to incur costs, damages, losses and penalties caused directly and proximately by the State's negligence.

## FOURTH CROSS-CLAIM

98. Cross-Claimants incorporate and re-allege the allegations contained in paragraphs 27 to 97 by reference.

KYL_SF462849
ANSWER, COUNTERCLAIM AND THIRD PARTY COMPLAINT – Case No. C 07 06045 (SC)

99. The Board of Pilot Commissioners, as an agency of the State of California, is under a mandatory duty imposed by the California Harbors and Navigation Code §§ 1154 *et. seq.* to properly license, train, and supervise all San Francisco Bar Pilots.

100. The Board of Pilot Commissioners failed to discharge its duties as under California Government Code § 815.6 and improperly licensed, trained, and supervised Pilot Cota.

101. Cross-Claimants have incurred, and will continue to incur costs, damages, losses and penalties caused directly and proximately by the State's failure to properly discharge its mandatory duties.

## FIFTH CROSS-CLAIM

102. Cross-Claimants incorporate and re-allege the allegations contained in paragraphs 27 to 101 by reference.

103. The Board of Pilot Commissioners is required by California Harbors and Navigation Code §§ 1154 *et. seq* to properly train, license, and supervise San Francisco Bar Pilots to ensure the safety of public.

104. This requirement creates a public trust in the State of California to exercise its duties with due care and to avoid violating any duty or guaranty the State of California has made to the public.

105. The Board of Pilot Commissioners, by negligently training, supervising, and licensing Pilot Cota, failed in its obligation to exercise its duties with due care and breached its duty of guaranty and duty of warranty and as a result caused harm to the public's trust.

106. Cross-Claimants have incurred, and will continue to incur costs, damages, losses and penalties caused directly and proximately by the State's breach of trust.

## SIXTH CROSS-CLAIM

107. Cross-Claimants incorporate and re-allege the allegations contained in paragraphs 27 to 106 by reference.

108. The State of California knowingly and unreasonably created a dangerous condition under California Government Code § 835 by its acts and omissions related to the improper licensing, training, and supervision of Pilot Cota.

109. The San Francisco Bay is a public property.

110. Pilot Cota was medically unfit to navigate the COSCO BUSAN and the State of California created an unsafe condition in the San Francisco Bay when it directed Pilot Cota to navigate Regal Stone's vessel.

111. Pilot Cota's history of prior pilot incidents rendered him unfit for pilotage and the State of California created an unsafe condition in the San Francisco Bay when it directed Pilot Cota to navigate Regal Stone's vessel.

112. Cross-Claimants have incurred, and will continue to incur costs, damages, losses and penalties caused directly and proximately by the State's creation of a dangerous condition.

WHEREFORE, Regal and Fleet pray for the following relief:

1. The United States' claims be dismissed against them with prejudice;

2. The *in rem* claims against the M/V COSCO BUSAN be dismissed with prejudice;

3. That the Court enter judgment in their favor on the United States' claims against them;

4. With respect to Rule 14(c) third-party complaint, judgment be entered in favor of the United States on its claims and against the State of California;

5. That the Court rule in their favor on their counter-claims against the United States;

1    6.   That the Court rule in their favor on their cross-claims against the
2 State of California;

3    7.   For an award of costs and attorney's fees incurred by them in this
4 matter; and

5    8.   For all other relief to which they may be entitled at law or in equity.

DATED: June 4, 2008

/s/ John Giffin
JOHN D. GIFFIN
JOSEPH A. WALSH II
JOHN COX
NICOLE S. BUSSI
Attorneys for REGAL STONE, LTD. and
FLEET MANAGEMENT, LTD.