JOHN D. GIFFIN, CASB NO. 89608
john.giffin@kyl.com
JOSEPH A. WALSH II, CASB NO 143694
joe.walsh@kyl.com
JOHN COX, CASB NO. 197687
john.cox@kyl.com
NICOLE S. BUSSI, CASB NO. 252763
nicole.bussi@kyl.com
KEESAL, YOUNG & LOGAN
A Professional Corporation
Four Embarcadero Center, Suite 1500
San Francisco, California 94111
Telephone:   (415) 398-6000
Facsimile:   (415) 981-0136

Attorneys for Defendants, Counterclaimants, and Cross-Claimants:
REGAL STONE, LIMITED and FLEET MANAGEMENT LTD.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. C 07 06045 (SC) |
| Plaintiff, | IN ADMIRALTY |
| vs. | |
| M/V COSCO BUSAN, LR/IMO Ship. No. 9231743 her engines, apparel, electronics, tackle, boats, appurtenances, etc., *in rem*, THE SHIPOWNERS' INSURANCE & GUARANTY COMPANY LTD., REGAL STONE, LTD., FLEET MANAGEMENT, LTD., and JOHN COTA, *in personam*, | **STIPULATION BETWEEN UNITED STATES OF AMERICA AND DEFENDANTS REGAL STONE LIMITED AND FLEET MANAGEMENT LTD. TO ALLOW FILING OF AMENDED ANSWER TO FIRST AMENDED COMPLAINT, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS** |
| Defendants. | |
| REGAL STONE, LTD., FLEET MANAGEMENT LTD., | |
| Counter-Claimants, | |

KYL_SF495438

STIPULATION TO ALLOW FILING OF AMENDED ANSWER TO FIRST AMENDED COMPLAINT, COUNTERCLAIM AND THIRD PARTY COMPLAINT – Case No. C 07 06045 (SC)

KYL_AA\150570.1

| | |
|---|---|
| vs. | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Counter-Defendant. | ) |
| REGAL STONE, LTD., FLEET | ) |
| MANAGEMENT, LTD., | ) |
| | ) |
| Cross- Claimants, | ) |
| | ) |
| vs. | ) |
| STATE OF CALIFORNIA, | ) |
| | ) |
| Cross-Defendant. | ) |

On September 18, 2009, the parties to the above captioned matter filed a Joint Case Management Statement in Case Number 3:07-cv-05800-SC and the related cases which have been consolidated for pretrial purposes. On September 25, 2009, the parties attended the Case Management Conference before the Honorable Samuel Conti. Pursuant to section VI of the Joint Case Management Statement, page 23, the parties to the consolidated actions have agreed to allow the filing of amended pleadings without further stipulation or leave of court.

Defendants Regal Stone Limited and Fleet Management Ltd. now seek to file their Amended Answer To First Amended Complaint of the United States of America, Affirmative Defenses and Counterclaims. A copy of that document is attached hereto as "Exhibit 1." Subject to the reservations below, Plaintiff United States of America has no opposition to the filing of this document.

The foregoing stipulation of the United States is wholly without prejudice to its rights to answer, move, or otherwise respond to the

"Amended Answer to First Amended Complaint, Affirmative Defenses and Counterclaims."  The foregoing stipulation by the United States is expressly subject to, and conditioned upon, any and all claims, rights and defenses of the United States and all terms, provisions and limitations of any and all applicable waivers of sovereign immunity and conditions of subject matter jurisdiction, none of which terms, provisions and limitations are waived, either expressly or implicitly, including, but not limited to, any and all terms, provisions and limitations pertaining to administrative claims filing requirements and statutes of limitation.

Therefore, the parties hereby stipulate and request that the Court accept the filing of Attachment 1 and deem it filed on November 6, 2009.

IT IS SO STIPULATED.

GREGORY KATSAS
Acting Assistant Attorney General

DATED:  November 6, 2009

/s/ R. Michael Underhill
R. MICHAEL UNDERHILL
Attorney in Charge, West Coast Office
Torts Branch, Civil Division
United States Department of Justice

KYL_SF495438

STIPULATION TO ALLOW FILING OF AMENDED ANSWER, COUNTERCLAIM AND THIRD PARTY COMPLAINT – Case No. C 07 06045 (SC)

KYL_AA\150570.1

RONALD J. TENPAS
Assistant Attorney General
Environment and Natural Resources
Division

DATED: November 6, 2009

/s/ Bradley R. O'Brien
BRADLEY R. O'BRIEN
Senior Attorney
Environmental Enforcement Section
United States Department of Justice

DATED: November 6, 2009

/s/ John Cox
JOHN D. GIFFIN
JOSEPH A. WALSH II
JOHN COX
NICOLE S. BUSSI
Attorneys for REGAL STONE LIMITED
and FLEET MANAGEMENT LTD.

UNITED STATES DISTRICT COURT

IT IS SO ORDERED

Judge Samuel Conti

11/10/09

NORTHERN DISTRICT OF CALIFORNIA

KYL_SF495438

STIPULATION TO ALLOW FILING OF AMENDED ANSWER, COUNTERCLAIM AND THIRD PARTY
COMPLAINT – Case No. C 07 06045 (SC)

KYL_AA\150570.1

Exhibit "1"

JOHN D. GIFFIN, CASB NO. 89608
john.giffin@kyl.com
JOSEPH A. WALSH II, CASB NO 143694
joe.walsh@kyl.com
JOHN COX, CASB NO. 197687
john.cox@kyl.com
NICOLE S. BUSSI, CASB NO. 252763
nicole.bussi@kyl.com
KEESAL, YOUNG & LOGAN
A Professional Corporation
Four Embarcadero Center, Suite 1500
San Francisco, California 94111
Telephone: (415) 398-6000
Facsimile: (415) 981-0136

Attorneys for Defendants, Counterclaimants, and Cross-Claimants:
REGAL STONE LIMITED and FLEET MANAGEMENT LTD.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>M/V COSCO BUSAN, LR/IMO Ship. No. 9231743 her engines, apparel, electronics, tackle, boats, appurtenances, etc., *in rem*, THE SHIPOWNERS' INSURANCE & GUARANTY COMPANY LTD., REGAL STONE, LTD., FLEET MANAGEMENT, LTD., and JOHN COTA, *in personam,*<br><br>Defendants.<br><br>REGAL STONE, LTD., FLEET MANAGEMENT LTD.,<br><br>Counter-Claimants,<br><br>vs. | Case No. C 07 06045 (SC)<br><br>IN ADMIRALTY<br><br>**AMENDED ANSWER TO FIRST AMENDED COMPLAINT, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF DEFENDANTS REGAL STONE, LTD. AND FLEET MANAGEMENT LTD.** |

KYL_SF495457

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Counter-Defendant. | ) |
| | ) |
| REGAL STONE, LTD., FLEET | ) |
| MANAGEMENT, LTD., | ) |
| | ) |
| Cross- Claimants, | ) |
| | ) |
| vs. | ) |
| | ) |
| STATE OF CALIFORNIA, | ) |
| | ) |
| | ) |
| Cross-Defendant. | ) |

Defendant and Claimant to the vessel M/V COSCO BUSAN, REGAL STONE LIMITED ("Regal Stone") and Defendant FLEET MANAGEMENT, LTD. ("Fleet") (collectively referred to as "Answering Defendants") hereby answer Plaintiff UNITED STATES OF AMERICA's ("Plaintiff") First Amended Verified Complaint in this matter and assert counterclaims against the United States.

### ANSWER TO FIRST AMENDED VERIFIED COMPLAINT

Answering Defendants respond to Plaintiff's First Amended Verified Complaint as follows:

1. Answering Defendants deny in their entirety those allegations contained in Paragraphs 8-11, 13, 14, 16, 17, 40, and 44 of Plaintiff's First Amended Verified Complaint.

2. Answering Defendants admit those allegations contained in Paragraphs 4, and 18-24 of Plaintiff's First Amended Verified Complaint.

3. Answering Defendants have insufficient information to respond to those allegations contained in Paragraphs 28, 36, 43, and 50 of Plaintiff's First Amended Verified Complaint, and therefore based upon their lack of information and belief, deny the allegations contained therein in their entirety.

KYL_SF495457

1     4.    To the extent that the Plaintiff incorporates by reference allegations

2   contained in Paragraphs 29, 34, 41, 45, 47, and 51 of Plaintiff's First Amended Verified

3   Complaint, Answering Defendants incorporate herein its responses thereto.

4     5.    In response to Paragraphs 1-3, 30-33, 37-39, 42, 46, 48, 49, 52, and

5   53, of Plaintiff's First Amended Verified Complaint, Answering Defendants state that

6   the allegations contained state issues of law which require no answer.  To the extent an

7   answer is required, Answering Defendants deny the allegations.

8     6.    In response to Paragraph 5 of Plaintiff's First Amended Verified

9   Complaint, Answering Defendants admit that Defendant M/V COSCO BUSAN,

10  LR/IMO Ship No. 9231743, her engines, apparel, electronics, tackle, boats,

11  appurtenances, *etc., in rem,* was flagged in Hong Kong.  All other allegations contained

12  therein are denied in their entirety.

13    7.    In response to Paragraph 6 of Plaintiff's First Amended Verified

14  Complaint, Answering Defendants admit Regal Stone is a foreign corporation head-

15  quartered in Hong Kong, that on November 7, 2007 Regal Stone owned the M/V COSCO

16  BUSAN, and that the M/V COSCO BUSAN was within this judicial district on

17  November 7, 2007.  All other allegations contained therein are denied in their entirety.

18    8.    In response to Paragraph 7 of Plaintiff's First Amended Verified

19  Complaint, Answering Defendants admit that on November 7, 2007 Regal Stone owned

20  the M/V COSCO BUSAN.  All other allegations contained therein are denied in their

21  entirety.

22    9.    In response to Paragraph 12 of Plaintiff's First Amended Verified

23  Complaint, Answering Defendants admit that Fleet is a foreign corporation head-

24  quartered in Hong Kong, that on November 7, 2007 Fleet was the technical manager of

25  the M/V COSCO BUSAN, and that the M/V COSCO BUSAN was within this judicial

26  district on November 7, 2007.  All other allegations contained therein are denied in

27  their entirety.

28

KYL_SF495457

AMENDED ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIM
Case No. C 07 06045 (SC)

1    10.   In response to Paragraph 15 of Plaintiff's First Amended Verified

2    Complaint, Answering Defendants admit Fleet was the technical manager of the M/V

3    COSCO BUSAN on November 7, 2007.  All other allegations contained therein are

4    denied in their entirety.

5    11.   In response to Paragraph 25 of Plaintiff's First Amended Verified

6    Complaint, Answering Defendants admit that the allision with the Bay Bridge resulted

7    in the rupture of two of the M/V COSCO BUSAN's fuel tanks, thereby allowing a

8    portion of the M/V COSCO BUSAN's bunkers from one of the ruptured tanks to be

9    discharged into navigable waters of the United States and onto adjoining shorelines,

10   including navigable waters and adjoining shoreline of San Francisco Bay.  In response

11   to the remaining allegations in Paragraph 25, Answering Defendants have insufficient

12   information to admit or deny the remaining allegations, and therefore based on their

13   lack of information and belief, Answering Defendants deny those allegations contained

14   therein in their entirety.

15   12.   In response to Paragraph 26 of Plaintiff's First Amended Verified

16   Complaint, Answering Defendants admit the United States has expended and/or

17   sustained response costs and damages within the meaning of the Oil Pollution Act of

18   1990.  Answering Defendants have insufficient information to admit or deny the

19   remaining allegations, and therefore based on their lack of information and belief, deny

20   those allegations in their entirety.

21   13.   In response to Paragraph 27 of Plaintiff's First Amended Verified

22   Complaint, Answering Defendants admit that the COSCO BUSAN incident was

23   proximately caused by the acts, omissions, fault, and/or negligence of the pilot John

24   Cota.  All other allegations contained therein are denied in their entirety.

25   14.   In response to Paragraph 35 of Plaintiff's First Amended Verified

26   Complaint, Defendant Regal Stone admits it is a responsible party within the meaning

27   of the Oil Pollution Act of 1990.  All other allegations contained therein are denied in

28   their entirety.

KYL_SF495457

1

2                          **AFFIRMATIVE DEFENSES**

3              In further answer to Plaintiff's First Amended Verified Complaint, and as

4      separate and distinct affirmative defenses, Answering Defendants allege the following

5      defenses:

6              15.   AS A FIRST, SEPARATE, DISTINCT, AFFIRMATIVE DEFENSE to

7      Plaintiff's First Amended Verified Complaint, Answering Defendants allege that

8      Plaintiff's First Amended Verified Complaint and each and every allegation therein,

9      fails to state a claim upon which relief can be granted.

10             16.   AS A SECOND, SEPARATE, DISTINCT AFFIRMATIVE DEFENSE

11     to Plaintiff's First Amended Verified Complaint, Answering Defendants are informed

12     and believe and thereon allege that, by exercise of reasonable efforts, Plaintiff could

13     have mitigated the amount of damages allegedly suffered, but Plaintiff failed and/or

14     refused and continues to fail and/or refuse, to exercise efforts to mitigate its damages,

15     and therefore Plaintiff's recovery, if any, must be barred or diminished accordingly.

16             17.   AS A THIRD, SEPARATE, DISTINCT, AFFIRMATIVE DEFENSE

17     to Plaintiff's First Amended Verified Complaint, Answering Defendants allege that the

18     alleged damages for which Plaintiff seeks to hold the Answering Defendants liable,

19     resulted in whole or in part from the negligent, deliberate, intentional, reckless, and/or

20     unlawful acts or omissions of third parties, and Answering Defendants are not

21     responsible for or liable to Plaintiff for any such acts or omissions on the part of third

22     parties.

23             18.   AS A FOURTH, SEPARATE, DISTINCT, AFFIRMATIVE DEFENSE

24     to Plaintiff's First Amended Verified Complaint, Answering Defendants allege that

25     Plaintiff has failed to join all indispensable parties as the State of California is an

26     indispensable party with respect to the United States' claims including claims for

27     damages to natural resources and therefore these claims should be dismissed if the

28     state is not joined as an indispensable party.

KYL_SF495457

1      19.   AS A FIFTH, SEPARATE, DISTINCT, AFFIRMATIVE DEFENSE to

2  Plaintiff's First Amended Verified Complaint, Answering Defendants allege that the

3  M/V COSCO BUSAN incident was caused, in whole or in part, by the negligence of the

4  United States, and its recovery must be reduced in proportion to its fault pursuant to

5  the doctrines of recoupment and/or setoff.

6      20.   AS A SIXTH, SEPARATE, DISTINCT, AFFIRMATIVE DEFENSE to

7  Plaintiff's First Amended Verified Complaint, Answering Defendants allege that the

8  M/V COSCO BUSAN incident was caused, in whole or in part, by the negligence of the

9  United States, and Answering Defendants are entitled to indemnity and/or contribution

10  against any recovery that may be awarded in favor of Plaintiff.

11      21.   AS A SEVENTH, SEPARATE, DISTINCT, AFFIRMATIVE

12  DEFENSE to Plaintiff's First Amended Verified Complaint, Answering Defendants

13  allege that this Court lacks subject matter jurisdiction over the United States' claims

14  brought under the Oil Pollution Act of 1990, because Plaintiff has failed to comply and

15  continues to fail to comply with the claims presentation requirement set forth in

16  33 U.S.C. § 2713(a)-(c).

17      22.   AS AN EIGHTH, SEPARATE, DISTINCT, AFFIRMATIVE

18  DEFENSE to Plaintiff's First Amended Verified Complaint, Answering Defendants

19  allege this Court lacks subject matter jurisdiction with respect to the issue of whether

20  Answering Defendants have defenses to liability, or can limit their liability, under the

21  Oil Pollution Act of 1990 (33 U.S.C. §§ 2703, 2704), and whether Answering Defendants

22  can seek reimbursement of response costs and damages they have paid pursuant to

23  33 U.S.C. §§ 2708, 2713.

24      23.   AS A NINTH, SEPARATE, DISTINCT, AFFIRMATIVE DEFENSE

25  to Plaintiff's First Amended Verified Complaint, Answering Defendants allege the

26  United States' forfeiture claim under the Marine Sanctuary Act must be dismissed

27  since no vessel was involved in the taking of marine sanctuary resources.

28

1      24.   AS AN TENTH, SEPARATE, DISTINCT, AFFIRMATIVE

2 DEFENSE to Plaintiff's First Amended Verified Complaint, Answering Defendants

3 allege the United States' injuries, if any, were caused, in whole or in part, by its gross

4 negligence or willful misconduct, such that recovery by the United States against

5 Defendants is barred or limited by 33 U.S.C. § 2703(b).

6      25.   AS A ELEVENTH, SEPARATE, DISTINCT, AFFIRMATIVE

7 DEFENSE to Plaintiff's First Amended Verified Complaint, Answering Defendants

8 allege the United States claims are barred by the doctrines of waiver and estoppel.

9      26.   AS A TWELFTH, SEPARATE, DISTINCT, AFFIRMATIVE

10 DEFENSE to Plaintiff's First Amended Verified Complaint, Answering Defendant and

11 Claimant Regal Stone alleges that the forfeiture or partial forfeiture of the COSCO

12 BUSAN for the alleged violation of the National Marine Sanctuaries Act would be

13 grossly disproportionate or otherwise inappropriate to the gravity of the alleged

14 violations of the National Marine Sanctuary Act. The Court should therefore reduce or

15 eliminate the forfeiture as necessary to avoid a violation of the Excessive Fines and

16 Penalties Clause of the Eighth Amendment of the United States Constitution.

17      27.   As a THIRTEENTH SEPARATE, DISTINCT, AFFIRMATIVE

18 DEFENSE to Plaintiff's First Amended Verified Complaint, Answering Defendant and

19 Claimant Regal Stone alleges that the Court has discretion whether to forfeit the

20 COSCO BUSAN, if it finds that the statute authorizes such forfeiture, and that under

21 the circumstances of this case, the forfeiture of the vessel is not warranted.

22      28.   .As a FOURTEENTH SEPARATE, DISTINCT, AFFIRMATIVE

23 DEFENSE to Plaintiff's First Amended Verified Complaint, Answering Defendant

24 Regal Stone alleges that under the circumstances of this case, the full forfeiture of the

25 vessel is not warranted.

26      29.   AS A FIFTHTEENTH, SEPARATE, DISTINCT, AFFIRMATIVE

27 DEFENSE to Plaintiff's First Amended Verified Complaint, Answering Defendant

28 Regal Stone alleges that COSCO BUSAN oil spill resulted from an accidental allision

1 that occurred on state waters located more than 10 miles from the boundaries of a
2 marine sanctuary. Oil from the vessel subsequently drifted into national marine
3 sanctuaries. Forfeiture of the vessel under these circumstances is not authorized under
4 the National Marine Sanctuaries Act, and would exceed the powers delegated to the
5 United States under the United States Constitution, including the Commerce and
6 Property Clauses, and would thus be unconstitutional.

7       30.   AS A SIXTEENTH, SEPARATE, DISTINCT, AFFIRMATIVE
8 DEFENSE to Plaintiff's First Amended Verified Complaint, Answering Defendant
9 Regal Stone alleges that, with respect to the United States' forfeiture claim, it is an
10 innocent owner whose interest in the vessel cannot be forfeited.

11       31.   AS A SEVENTEENTH, SEPARATE, DISTINCT, AFFIRMATIVE
12 DEFENSE to Plaintiff's First Amended Verified Complaint, Answering Defendants
13 reserve the right to assert additional affirmative defenses.

## COUNTER-CLAIMS

15       Defendants and Counter-Claimants Regal Stone, Ltd. ("Regal Stone") and
16 Fleet Management, Ltd. ("Fleet") (collectively "Counter-Claimants") allege:

17       32.   The Court has jurisdiction over these counterclaims pursuant to
18 28 U.S.C. §§ 1331, 1333, 1345, 1346, & 2674, 33 U.S.C. § 2717, and 46 U.S.C. §§ 30101
19 & 30903.

20       33.   Venue in this Court is proper because pursuant to 33 U.S.C § 2717(b)
21 and 46 U.S.C. § 30903. Moreover, these counterclaims are mandatory counterclaims to
22 the claims by the United States asserted in this Court.

23       34.   Regal Stone, a Hong Kong based company, was, on or about
24 November 7, 2007 and at all times relevant hereto, the owner of the vessel M/V COSCO
25 BUSAN ("COSCO BUSAN"). The COSCO BUSAN is a vessel in excess of 300 gross
26 tons.

27       35.   Fleet, a Hong Kong based company, was, on or about November 7,
28 2007 and at all times relevant hereto, the technical manager of the COSCO BUSAN.

AMENDED ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIM
Case No. C 07 06045 (SC)

36. John J. Cota ("Pilot Cota") boarded the COSCO BUSAN as a compulsory pilot on November 7, 2007 as required by California law, and navigated the vessel west from the Port of Oakland towards the San Francisco-Oakland Bay Bridge.

37. Under Pilot Cota's compulsory pilotage, the COSCO BUSAN discharged approximately 53,000 gallons of fuel oil in the San Francisco Bay (the "Incident"). Regal Stone, as the owner of the vessel, was designated the Responsible Party by the United States under the Oil Pollution Act of 1990 ("OPA '90") and by the State of California, Office of Spill Prevention and Response.

38. As a result of being designated the Responsible Party, Regal Stone has been required to, among other things, pay for removal costs for the November 7, 2007 oil spill as well as other damages, disbursements and costs relating to that incident including, but not limited to: the cost to repair the COSCO BUSAN, loss of hire, port fees and expenses, crew wages and expenses, loss of use, response costs and cleanup expenses, consultants' and specialist fees, natural resource damages, assessment costs, third party claims, claims by municipalities and government agencies and/or class action lawsuits, litigation costs, attorneys fees and civil penalties. The complete costs and damages are undetermined at this time, but will be ascertainable once the cleanup, response, natural resource damage assessment and litigation are completed, but are expected to be in excess of $60,000,000.

39. The counterclaims arise from the allision of the COSCO BUSAN and the San Francisco to Oakland Bay Bridge on November 7, 2007, and the subsequent discharge of bunker fuel from the COSCO BUSAN into the waters of the San Francisco Bay.

40. The counterclaims arise from injuries to natural resources within the waters of the San Francisco Bay and the Pacific Ocean resulting from the Incident and damages arising there from.

KYL_SF495457

AMENDED ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIM
Case No. C 07 06045 (SC)

1    41.    The United States of America alleges that it has incurred response

2    costs, damages and other disbursements resulting from the discharge of bunkers from

3    the COSCO BUSAN.  It seeks recovery of these amounts from Regal Stone and Fleet.

4    42.    The United States has waived sovereign immunity with respect to

5    the claims asserted in these counterclaims, pursuant to 28 U.S.C. §§ 2674, 2675, and 46

6    U.S.C. §§ 30101 and 30903.

7    43.    At the time of the Incident, Pilot Cota held a merchant mariner's

8    license issued by the United States Coast Guard.  Possession of such a license by Pilot

9    Cota was a prerequisite to qualifying to pilot vessels on the waters of San Francisco

10   Bay.

11   44.    Pilot Cota was medically unfit and incompetent to perform the duties

12   required by his United States Coast Guard license.  Pilot Cota suffers from numerous

13   medical conditions including sleep apnea and depression.  For several years prior to the

14   Incident and within the knowledge of the United States, Pilot Cota had been taking a

15   long list of disqualifying prescription medications including valium for sleep and

16   Provigil to keep him awake.  Pilot Cota's medical condition and his use of prescription

17   medications resulted in the impairment of his cognitive abilities and contributed to his

18   lack of situational awareness.

19   45.    In 2006 and 2007, Pilot Cota disclosed to the United States Coast

20   Guard his medical conditions and use of medications that rendered him unfit for duty,

21   medically disqualified and prone to periods of confusion (lack of situational awareness).

22   46.    Prior to November 7, 2007, the United States knew or should have

23   known of Pilot Cota's disclosures, medical history and/or medical condition prior to the

24   incident.

25   47.    The United States was negligent in licensing Pilot Cota, insofar as it

26   failed to determine that Pilot Cota was not medically fit for duty pursuant to the

27   applicable regulations. Specifically, despite Pilot Cota's medical history and medical

28   condition prior to the accident, all known to the United States Coast Guard, the United

AMENDED ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIM
Case No. C 07 06045 (SC)

States Coast Guard failed to suspend or revoke his license. In essence, the United States Coast Guard failed to "guard the coast" by failing to suspend or revoke Pilot Cota's license.

48. Pilot Cota's personal history prior to the Incident includes convictions for driving under the influence (DUI) offenses in 1971 and again in 1998, and completion of a 30-day Alcohol and Chemical Recovery Program in March 1999.

49. On November 30, 1999, the United States Coast Guard's National Maritime Center "Medical Waivers" staff issued a license waiver because of Pilot Cota's condition and ongoing treatment. The document from the National Maritime Center required that a waiver statement be physically placed on his license when it was issued. On January 4, 2000, the United States Coast Guard negligently issued a license to Pilot Cota and failed to note any indication of medical conditions or waiver on that license.

50. Following the Incident, and even before completing a comprehensive investigation of the Incident, the United States Coast Guard suspended Pilot Cota's license based solely on the medical disclosures made by him in January 2007, some ten months prior to the incident. Had the United States Coast Guard properly evaluated Pilot Cota's written disclosures about his medical conditions and use of certain prescription medicines, he would never have been allowed to pilot COSCO BUSAN on the day of the Incident.

51. The United States Coast Guard negligently allowed Pilot Cota to maintain and renew his Coast Guard license, and failed to annotate the waiver on Pilot Cota's license. The United States negligence included, but is not limited to, its failure to revoke Pilot Cota's license and its decision to renew his license.

52. If the United States Coast Guard had properly reviewed Pilot Cota's license application and disclosures in accordance with its own procedures and prior recommendations of the National Transportation Safety Board following the STAR PRINCESS grounding and the tragic Staten Island Ferry incident, it would not have

AMENDED ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIM
Case No. C 07 06045 (SC)

1  renewed Pilot Cota's licenses in 2006 and again in 2007 and the November 7, 2007

2  Incident would not have occurred.

3       53.  The United States Coast Guard was a member of the Harbor Safety

4  Committee for the San Francisco Bay Region ("HSC").  The HSC was formed to develop

5  recommendations for the safe navigation and operation of vessels within San Francisco

6  Bay.  The HSC developed a Harbor Safety Plan for San Francisco Bay.  In 2007, the

7  Harbor Safety Plan stated that "Vessels within the Bay at a dock or at a safe anchorage

8  should not commence movement if visibility is less than .5 nautical mile thoughout the

9  intended route, unless the operator's assessment of all variables is that the vessel can

10  proceed safely.

11       54.  The United States Coast Guard operates a Vessel Traffic Service

12  ("VTS") for San Francisco Bay.  United States employees working at the VTS were

13  aware that the fog on the morning of November 7, 2007 was very dense, and that

14  visibility was less than ¼ mile along the route between the Port of Oakland and the

15  seaward entrance of the Bay.

16       55.  VTS employees were aware that pilot Cota intended to navigate the

17  COSCO BUSAN from its berth in Oakland, through San Francisco Bay, to the pilot

18  station in the Pacific Ocean, through areas blanketed by dense fog with visibility far

19  below the recommended .5 nautical mile minimum specified in the Harbor Safety Plan.

20       56.  The purpose of the VTS program is to promote safe navigation,

21  prevent maritime accidents, and protect lives, property and the environment from harm

22  that can result from maritime accidents.  VTS operators have the responsibility to

23  communicate with vessels such as the COSCO BUSAN when those vessels are

24  preparing to transit through waters that are covered by the San Francisco VTS

25  program, to notify and advise such vessels of hazards or risks they may encounter, to

26  recommend action when such recommendations may help to avert a casualty, and in

27  some cases, to direct the vessel to take evasive action.

28

KYL_SF495457

AMENDED ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIM
Case No. C 07 06045 (SC)

57. Although the VTS employees knew, or should have known, of the Harbor Safety Plan recommendations regarding departing a berth when visibility was less than 0.5 nautical miles, and knew that visibility along the intended route of the COSCO BUSAN was substantially less than 0.5 nautical miles, the VTS employees who communicated with the COSCO BUSAN on the morning of November 7, 2007, did not advise the master or pilot of the Harbor Safety Plan recommendations, or recommend that the vessel remain at its berth. Moreover, knowing that Capt. Cota intended to depart the berth in heavy fog, the VTS did not closely monitor the movement of the vessel, and only discovered it had deviated from its intended course until shortly before the allision.

58. As the COSCO BUSAN was approaching the Bay Bridge, the United States Coast Guard Vessel Traffic Service ("VTS") for the San Francisco Bay knew that the vessel was off track and standing into danger. VTS owed and/or assumed a duty to timely monitor vessel traffic within the VTS system, and to competently intervene by issuing advisements, warnings and/or directions in the event a vessel in the VTS system is off course, in peril and/or otherwise standing into danger.

59. VTS breached its duties: by failing to advise the master of the Harbor Safety Plan recommendation regarding departing the berth when visibility was less than 0.5 nautical miles, failing to recommend that the vessel remain at its berth, failing to properly monitor the vessel's movement, failing to make timely contact with Pilot Cota, providing Pilot Cota with inaccurate information, failing to warn Pilot Cota of the impending danger, and failing to direct, order and/or use its authority to command that the pilot change his intended track, steer away from the danger, change course, reverse engines, or otherwise maneuver so as to avoid the bridge tower.

60. Moreover, instead of taking action to properly and timely monitor, advise, warn and/or direct the Pilot Cota away from the peril so that the vessel would not allide with the bridge, VTS operators placed bets and/or wagers among themselves as to whether the vessel would pass safely or strike the bridge.

AMENDED ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIM
Case No. C 07 06045 (SC)

1    61.    VTS further breached the duties it owed and/or assumed to Regal

2    Stone, Fleet, the public, and the environment by abandoning its role and mission to

3    properly monitor, advise, warn and direct vessel traffic.

4        62.    Counter-Claimants presented a written claim to the United States

5    Coast Guard more than 6 months before the date of this amended counterclaim, seeking

6    recovery of their damages.  To date, the United States has not responded to this claim.

7    **FIRST COUNTER-CLAIM**

8    **Recoupment And Setoff**

9        63.    Counter-Claimants reallege and incorporate by reference the

10   allegations contained in paragraphs 27 through 62 of their counterclaims.

11       64.    The allision and discharge of bunker fuel from the COSCO BUSAN

12   into the navigable waters of San Francisco Bay, the Pacific Ocean and adjoining

13   shorelines resulted from the negligence of the United States.

14       65.    The discharge of bunker fuel from the COSCO BUSAN into the

15   navigable waters of San Francisco Bay, the Pacific Ocean and adjoining shorelines

16   resulted from the gross negligence and/or willful misconduct of the United States.

17       66.    As a consequence of the United States' negligence, gross negligence,

18   or willful misconduct, Counter-Claimants have sustained costs, damages, and losses

19   and continue to sustain costs, damages and losses.  They are entitled to the remedy of

20   setoff or recoupment, up to the full value of the United States' claims asserted against

21   them.

22

23   **SECOND COUNTER-CLAIM**

24   **General Maritime Law**

25       67.    Counter-Claimants re-allege and incorporate by reference the

26   allegations contained in paragraphs 27 through 66of their counterclaims.

27       68.    The tortuous conduct of the United States was a direct, proximate,

28   and substantial cause of the allision and discharge of bunker fuel onto navigable waters

AMENDED ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIM
Case No. C 07 06045 (SC)

1  and adjoining shorelines, and caused injury to natural resources.  It also resulted in

2  damage to the vessel and the San Francisco-Oakland Bay Bridge  and caused Fleet and

3  Regal to incur other damages including, without limitation, loss of charter hire, the

4  costs to respond to the oil spill, and the costs of experts, consultants, and attorneys.

5  The amount of Fleet and Regal Stones damages exceeds $75,000,000.

6       69.   The United States has waived its sovereign immunity to

7  Counterclaims claims under the Federal Tort Claims Act, the Suits in Admiralty Act,

8  and/or the Extension of Admiralty Jurisdiction Act.

9       70.   Counter-Claimants have incurred, and will continue to incur costs,

10  damages, and losses caused directly and proximately by the United States' tortious acts

11  and omissions.

12       71.   The United States is liable to Counter-Claimants for their damages,

13  to the extent they were caused by the United State's negligence, gross negligence, or

14  willful misconduct, under the general maritime law.

15  ### THIRD COUNTER-CLAIM

16  ### Contribution

17       72.   Counter-Claimants reallege and incorporate by reference the

18  allegations contained in paragraphs 27 through 71 of their Counterclaims.

19       73.   The negligence, gross negligence, or willful misconduct of the United

20  States was a direct, substantial and proximate cause of the allision and discharge of

21  bunker fuel onto navigable waters, damages to third parties, and injuries to natural

22  resources.

23       74.   Counter-Claimants have been sued by Third Parties, including the

24  State of California, commercial fishermen, and the City of San Francisco for losses and

25  damages alleged to have been caused by the allision and oil spill.  These parties have

26  asserted claims under California law, the general maritime law, and the Oil Pollution

27  Act of 1990.

28

75.     Counter-Claimants have or will fully compensate these Third Parties for their losses, thereby releasing and discharging the United States from its liability to these claimants for its proportionate share of their losses.

76.     The United States is liable in contribution under the general martime law, California law, or the Oil Pollution Act of 1990 to Counter-Claimants for its proportionate share of the damages of these Third Party claimants.

WHEREFORE, Regal and Fleet pray for the following relief:

1.     The United States' claims be dismissed against them with prejudice;

2.     The *in rem* claims against the M/V COSCO BUSAN be dismissed with prejudice;

3.     The forfeiture claim be dismissed on the grounds that Defendant and Claimant Regal Stone was and is an innocent owner;

4.     The Court eliminate or reduce any forfeiture on the grounds that forfeiture of the vessel would be grossly disproportionate to the alleged violations of the National Marine Sanctuary Act, and a violation of the Excessive Fines and Penalties Clause of the Eight Amendment to the United States' Constitution;

3.     That the Court enter judgment in their favor on the United States' claims against them;

4.     That the Court rule in their favor on their counter-claims against the United States;

6.     For an award of costs and attorney's fees incurred by them in this matter; and

8.     For all other relief to which they may be entitled at law or in equity.

KYL_SF495457

DATED:  November 6, 2009

/s/ John Cox
JOHN D. GIFFIN
JOSEPH A. WALSH II
JOHN COX
NICOLE S. BUSSI
Attorneys for REGAL STONE LIMITED
and FLEET MANAGEMENT LTD.