1  IGNACIA S. MORENO
   Assistant Attorney General
2  Environment and Natural Resources Division
   United States Department of Justice
3  Washington D.C. 20530
   BRADLEY R. O'BRIEN, STATE BAR NO. 189425
4  Senior Attorney
   Environmental Enforcement Section
5  United States Department of Justice
   301 Howard Street, Suite 1050
6  San Francisco, California 94105
   Telephone: (415) 744-6484
7  Facsimile: (415) 744-6476
   Email: brad.obrien@usdoj.gov
8
9  TONY WEST
   Assistant Attorney General
10 R. MICHAEL UNDERHILL
   Attorney in Charge, West Coast Office
11 Torts Branch, Civil Division
   United States Department of Justice
12 7-5395 Federal Bldg. Box 36028
   450 Golden Gate Avenue
13 San Francisco, California 94102-3463
   Telephone: (415) 436-6648
14 Email: mike.underhill@usdoj.gov
15
   Attorneys for Plaintiff, United States of America
16 Additional counsel listed on next page

17              UNITED STATES DISTRICT COURT
18              NORTHERN DISTRICT OF CALIFORNIA

19 UNITED STATES OF AMERICA,          )
                                      )   C 07-6045(SC)
20                 Plaintiff,         )
                                      )   IN ADMIRALTY
21        vs.                         )
                                      )   CONSENT DECREE
22                                    )
                                      )
23 M/V COSCO BUSAN, LR/IMO Ship No.   )
24 9231743, her engines, apparel, electronics, tackle, )
   boats, appurtenances, etc., *in rem*, REGAL STONE )
25 LIMITED, FLEET MANAGEMENT LTD., AND )
   JOHN COTA, in *personam*,          )
26                                    )
                                      )
27 _____Defendants. )
          (And Certain Related Actions)
28

*United States of America vs. M/V Cosco Busan – Civil Action No. C 07-6045(SC) –*
*Consent Decree*

1    KAMALA D. HARRIS, STATE BAR NO. 146672
     Attorney General of California
2    ROBERT W. BYRNE, STATE BAR NO. 213155
     Supervising Deputy Attorney General
3    CHRISTIANA TIEDEMANN, STATE BAR NO. 105299
     Supervising Deputy Attorney General
4    455 Golden Gate Avenue, Suite 1100
     San Francisco, California  94102
5    Telephone:  415-703-5860 (Byrne)
6    Telephone:  510-622-2218 (Tiedemann)
7    Email:  robert.byrne@doj.ca.gov
            chris.tiedemann@doj.ca.gov
8

9    Attorneys for Plaintiffs, People of the State of California *ex rel*. Department of Fish and Game,
     Regional Water Quality Control Board, San Francisco Bay Region, and California State Lands
10   Commission

11   DENNIS J. HERRERA, STATE BAR NO. 139669
     City Attorney
12   THERESE M. STEWART, STATE BAR NO. 104930
     Chief Deputy City Attorney
13   DONALD P. MARGOLIS, STATE BAR NO. 116588
     THOMAS S. LAKRITZ, STATE BAR NO. 161234
14   Deputy City Attorneys
     City Hall, Room 234
15   1 Dr. Carlton B. Goodlett Place
     San Francisco, California  94102-4682
16   Telephone:  415-554-6547
     Facsimile:  415-554-4747
17   Email:  tom.lakritz@sfgov.org
18

19   Attorneys for Plaintiff, City and County of San Francisco

20   K. SCOTT DICKEY, STATE BAR NO. 184251
     Chief Deputy City Attorney
21   RICHMOND CITY ATTORNEY'S OFFICE
     450 Civic Center Plaza, Third Floor
22   Richmond, California 94804
     Telephone:  (510) 620-6509
23   Facsimile:  (510) 620-6518
     Email: scott_dickey@ci.richmond.ca.us
24

25

26

27

28

*United States of America vs. M/V Cosco Busan – Civil Action No. C 07-6045(SC) –*
*Consent Decree*

JOSEPH A. WALSH II, STATE BAR NO. 143694
JOHN COX, STATE BAR NO. 197687
FRANCES L. KEELER, STATE BAR NO. 150685
Keesal, Young & Logan, PC
450 Pacific Avenue
San Francisco, California  94133
Telephone:  415-398-6000
Facsimile:  415-981-0136
Email:  joe.walsh@kyl.com
        john.cox@kyl.com
        frances.keeler@kyl.com

Attorneys for Defendants, Regal Stone Limited, Fleet Management Ltd. and
M/V COSCO BUSAN


WALTER G. COPPENRATH, JR.
COPPENRATH JONES LLP
400 Oceangate, Suite 400
Long Beach, California  90802
Telephone: 562-216-2948
Facsimile: 562-252-1136
Email:  waltla@aol.com

Attorneys for Defendant, John J. Cota

1
2

**TABLE OF CONTENTS**

3    I.      PARTIES ................................................................................................. 2

4    II.     INTRODUCTION ................................................................................... 2

5    III.    JURISDICTION AND VENUE ............................................................. 6

6    IV.     APPLICABILITY.................................................................................... 6

7
8    V.      DEFINITIONS......................................................................................... 7

9    VI.     SETTLEMENT PAYMENT ................................................................. 10

10   VII.    DISTRIBUTION OF SETTLEMENT PAYMENT AND OTHER PAYMENTS........ 10

11   VIII.   TRUSTEES' MANAGEMENT AND APPLICABILITY OF
12
              JOINT NRD FUNDS ............................................................................. 20
13

14   IX.     TRUSTEES' MANAGEMENT OF RECREATIONAL USE FUNDS NOT

15              ATTRIBUTABLE TO PORTIONS OF THE NATIONAL PARK SERVICE OR

16              MUNICIPAL PLAINTIFFS .............................................................. 21

17   X.      STIPULATED PENALTIES ................................................................. 22

18   XI.     ACCEPTANCE OF RESPONSIBILITY OF RESPONSIBLE PARTIES
19
              UNDER OPA .......................................................................................... 24
20

21   XII.    EFFECT OF SETTLEMENT ................................................................. 24

22   XIII.   COSTS ..................................................................................................... 28

23   XIV.    NOTICES.................................................................................................. 29
24
25   XV.     EFFECTIVE DATE ................................................................................ 32

26   XVI.    RETENTION OF JURISDICTION ...................................................... 32

27   XVII.   MODIFICATION .................................................................................... 32

28   XVIII.  TERMINATION...................................................................................... 32

*United States of America vs. M/V Cosco Busan – Civil Action No. C 07-6045(SC) –*
*Consent Decree*
*i*

XIX.    PUBLIC PARTICIPATION ........................................................................................ 33

XX.     SIGNATORIES/SERVICE........................................................................................ 33

XXI.    INTEGRATION ........................................................................................................ 34

XXII.   FINAL JUDGMENT ................................................................................................ 35

## I.   **PARTIES**

This Consent Decree is made and entered into by and among the following parties (hereinafter referred to collectively as "the Parties" and individually as "Party"):

A.    Plaintiff United States of America on behalf of:  the Department of the Interior ("DOI") (including the U.S. Fish and Wildlife Service, the National Park Service, and the Bureau of Land Management); the Department of Commerce (including the National Oceanic and Atmospheric Administration ("NOAA")); and the Department of Homeland Security (including the United States Coast Guard ("USCG"), the National Pollution Funds Center ("NPFC"), and the Oil Spill Liability Trust Fund ("OSLTF"));

B.    Plaintiff People of the State of California, *Ex Relatione* the California Department of Fish and Game ("CDFG"), the California Regional Water Quality Control Board, San Francisco Bay Region ("RWQCB"), and the California State Lands Commission ("CSLC") (collectively herein "State Agencies");

C.    Plaintiff the City and County of San Francisco ("CCSF"); and City of Richmond ("Municipal Plaintiffs");

D.    Defendants Regal Stone Limited and Fleet Management Ltd., *in personam* ("Settling Defendants"); and

E.    Defendants M/V COSCO BUSAN, *in rem*, and John J. Cota, *in personam* ("Other Defendants").

## II.   **INTRODUCTION**

A.    On or about November 7, 2007, the M/V COSCO BUSAN, a vessel owned by Defendant Regal Stone Limited and managed by Technical Manager and Defendant Fleet Management Ltd., allided with the San Francisco/Oakland Bay Bridge, puncturing a fuel tank

*United States of America vs. M/V Cosco Busan – Civil Action No. C 07-6045(SC) – Consent Decree*

2

resulting in the discharge of approximately 53,000 gallons of bunker fuel oil into the San

Francisco Bay and the Pacific Ocean and onto adjoining shorelines (the "Incident").  As a result

of the Incident, the United States, the State Agencies, Municipal Plaintiffs and other

governmental entities including the East Bay Regional Park District ("EBRPD") responded and

incurred Removal Costs and other damages.

       B.     Oil from the Incident caused injuries to Natural Resources, including birds, fish,

and their habitats, and also had an impact upon recreational uses of Natural Resources and other

public resources.  The Trustees for the Natural Resources injured by the Incident include DOI,

NOAA, CDFG, and CSLC.  DOI and NOAA are designated Trustees pursuant to subpart G of

the National Oil and Hazardous Substances Pollution Contingency Plan ("NCP")(40 C.F.R.

§§ 300.600, *et seq.*) and Executive Order 12580 (3 C.F.R., 1987 Comp. p. 193, 52 Fed. Reg.

2923 (January 23, 1987) as amended by Executive Order 12777 (56 Fed. Reg. 54757 (October

19, 1991)).  Additionally, DOI and NOAA have authority under the Park System Resources

Protection Act ("PSRPA"), 16 U.S.C. §§ 19jj - 19jj-4, the National Marine Sanctuaries Act

("NMSA"), 16 U.S.C. §§ 1431-1445b, the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C.

§§ 2701-2761, and maritime law, insofar as they may apply, and for response costs and damages

for injuries to park system and/or marine sanctuary resources and Natural Resources under the

trusteeship of the United States.  CDFG is a designated Trustee pursuant to Section 1006 (b)(3)

OPA, 33 U.S.C. § 2706, and subpart G of the NCP and the Governor's Designation of State

Natural Resource Trustees under the Comprehensive Environmental Response, Compensation

and Liability Act of 1980, OPA, and California Health and Safety Code § 25352(c), dated

October 5, 2007.  Additionally, CDFG has Natural Resource Trustee authority pursuant to

California Fish and Game Code §§ 711.7 and 1802, and the Lempert-Keene-Seastrand Oil Spill

Prevention and Response Act (Government Code §§ 8670.1, *et seq.*).  CSLC has certain Natural

Resource Trustee authority pursuant to California Public Resources Code §§ 6216 and 6301.

The Trustees have jurisdiction over the natural resources impacted by the Incident and have legal

standing to recover Damages for all injuries to natural resources, including loss of use of such

natural resources on behalf of the public.  Municipal Plaintiffs assert legal standing to recover for

loss of use and enjoyment of natural resources, public beaches, and other public resources and

facilities within and subject to their respective jurisdictions under the Lempert-Keene-Seastrand

Oil Spill Prevention and Response Act (Government Code §§ 8670.1, *et seq.*).

C.      After the Incident, DOI, NOAA, CDFG, and CSLC as Trustees for Natural

Resources injured by the Incident (hereinafter, the "Trustees") and the Settling Defendants

entered into a cooperative Natural Resource Damage Assessment process, pursuant to which the

Trustees and the Settling Defendants jointly and independently planned and conducted a number

of injury assessment activities.  These activities included gathering and analyzing data and other

information that the Trustees used to determine and quantify the resource injuries and damages.

As a result of this process and other activities, the Trustees found that the Incident affected

mudflats, salt marsh, sandy beaches, rocky intertidal habitat; eelgrass, and herring; and resulted

in lost recreation.  The Trustees also determined that the Incident killed birds, including

Marbeled Murrelets.  The Settling Defendants contest some of the Trustees' findings and

determinations.  By entering this Consent Decree, the Defendants do not admit or agree that all

of the Trustees' findings and determinations are accurate.

D.      On March 14, 2008, the United States filed an amended verified complaint under

provisions of the NMSA, 16 U.S.C. §§ 1431, *et seq.*, OPA, 33 U.S.C. §§ 2701, *et seq.*, the

PSRPA, 16 U.S.C. § 19jj, *et seq.*, and the Clean Water Act ("CWA"), 33 U.S.C. § 1321(b)(7),

against Defendants M/V COSCO BUSAN, *in rem;* John J. Cota, *in personam;* and the Settling Defendants.

E.      On January 7, 2009, the State Agencies filed a civil complaint in the Superior Court of the State of California in and for the County of San Francisco against, *inter alia,* Settling Defendants.  The complaint includes causes of action for Natural Resource damages and civil liabilities brought under California Government Code §§ 8670.53, 8670.56.5, subdivision (h), 8670.66, subdivision (a)(3), and 8670.66, subdivision (b); California Fish and Game Code §§ 2014, 5650, 5650.1, and 12016; OPA, *supra,* §§ 1002 and 1006; California Water Code § 13350; California Public Resources Code, § 6224.1; California Civil Code, §§ 3479, 3484, and 3480; and common law theories of negligence.  On April 3, 2009, Settling Defendants removed the action to federal court (CV09-01469) which was then related to this action**.**

F.      On December 10, 2007, CCSF filed a civil complaint in San Francisco County Superior Court against, *inter alia,* Settling Defendants and Other Defendants.  In that action, which the City of Richmond joined as a plaintiff in the first amended complaint, and which was later transferred to the Monterey County Superior Court, Municipal Plaintiffs seek, among other things, damages and injunctive relief under the Lempert-Keene-Seastrand Oil Spill Prevention and Response Act, Government Code §§ 8670.1, *et seq.*; and under common law theories of negligence, nuisance, trespass, unjust enrichment; and unfair business practices.  Concurrently with the lodging of this Consent Decree, the Municipal Plaintiffs will file an action in this Court asserting claims similar to those that they assert in state court.

G.      Settling Defendants Regal Stone Limited and Fleet Management Ltd. filed complaints and third party actions against certain third-parties, seeking contribution from them. The third-parties were Dr. Charles Calza; Dr. Alan Smoot; Dr. Eugene Belogorsky; the North Bay Sleep Medicine Institute, Inc.; Patty Tucker; Longs Drug Stores California, LLC; Longs

Drug Stores, LLC; Longs Drug Stores Corporation; CVS Caremark Corporation; Louie Chester; the San Francisco Bar Pilots; the San Francisco Bar Pilots Benevolent Association; Peter McIsaac and Russell Nyborg.

H.     The Parties agree, and the Court, by entering this Consent Decree, finds that this Consent Decree has been negotiated by the Parties in good faith, that it is intended to avoid litigation among the Parties and that it is fair, reasonable, and in the public interest.

NOW THEREFORE, with the Consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED AND DECREED as follows:

### III.     JURISDICTION AND VENUE

1.     This Court has jurisdiction over the subject matter of this action pursuant to, *inter alia*, 28 U.S.C. §§ 1331, 1345, 1355 & 1367; OPA, 33 U.S.C. §§ 2702(a), (b)(1)(A) & (b)(2)(A), 2706, 2717(b); NMSA, 16 U.S.C. §§ 1437(d), 1443(c); PSRPA, 16 U.S.C. § 19jj-2(a), and the CWA, 33 U.S.C. § 1321(b)(7)(E).  Venue is proper in this Court pursuant to, *inter alia,* 28 U.S.C. §§ 1391(b), (c) and 1395(a), 33 U.S.C. § 2717(b) and 16 U.S.C. § 1540(a)(1), because Settling Defendants did business in, and the Incident occurred in, this judicial district.  The Court has personal jurisdiction over Settling Defendants and the Other Defendants for this particular action, and each Party does not contest the Court's jurisdiction and does not contest the propriety of venue in this judicial district for the purposes of this Consent Decree.

### IV.     APPLICABILITY

2.     The obligations of this Consent Decree apply to and are binding upon the Plaintiffs, and each of them, and upon Settling Defendants and Other Defendants, and each of them, and any of Plaintiffs' and/or Settling Defendants' and Other Defendants', successors, assigns, insurers or other entities or persons otherwise bound by law.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## V.   DEFINITIONS

3.      Terms used in this Consent Decree that are defined in OPA or in regulations promulgated pursuant to OPA shall have the meanings assigned to them in OPA or in such regulations, unless otherwise provided in this Consent Decree.  Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a.      "Complaint" or "Complaints" shall mean one or more of the civil complaints filed in this action or in Municipal Plaintiffs' action by the Plaintiffs.

b.      "Entry of the Consent Decree" or "Entry" shall be the date upon which this Consent Decree is entered by the Court or motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

c.      "Incident" shall mean the occurrence described in Section II A. (Introduction) of this Consent Decree, said occurrence including the allision of M/V COSCO BUSAN with the Bay Bridge including, but not limited to, the discharge of oil into navigable waters and onto adjoining shorelines.

d.      "Interest" shall accrue at the most recent interest rate determined pursuant to 28 U.S.C. § 1961.  Interest shall begin accruing on the Settlement Payment on July 1, 2010.  Interest does not accrue however with respect to One Hundred Forty Three Thousand and Thirty Three dollar ($143,033) which represents an allocation for the National Park Service to remove oil

*United States of America vs. M/V Cosco Busan – Civil Action No. C 07-6045(SC) – Consent Decree*

7

from three (3) historic vessels located at San Francisco Maritime National Historic Park.

e.    "Natural Resource" and "Natural Resources" shall mean land, fish, wildlife, biota, air water, ground water, drinking water supplies, and other such resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States (including "park system resources" as defined at 16 U.S.C. § 19jj(d) and marine "sanctuary resources" as defined at 16 U.S.C. § 1432(8)) and/or the State of California, and shall also mean the services provided by such resources to other resources or to humans.

f.    "Natural Resource Damage Assessment" shall mean the process of collecting, compiling, and analyzing information, statistics, or data through prescribed methodologies to determine damages for injuries to Natural Resources.

g.    "Natural Resource Trustees" or "Trustees" shall mean those federal and state agencies or officials designated or authorized pursuant to the CWA, OPA, and/or applicable state law to act as Trustees for the Natural Resources belonging to, managed by, controlled by, or appertaining to the United States or the State of California.  Specifically, as used in this Consent Decree, the Trustees are DOI, NOAA, CDFG, and CSLC.

h.    "Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral.

*United States of America vs. M/V Cosco Busan – Civil Action No. C 07-6045(SC) – Consent Decree*

8

i.      "Plaintiffs" shall mean the parties designated in IA through IC, above including the United States, the State Agencies, and Municipal Plaintiffs.

j.      "Removal Costs" and "Damages" shall have the meanings ascribed to them pursuant to §§ 1001(5), 1001(31) and 1002(b) of OPA, 33 U.S.C. §§ 2701(5), 2701(31) and 2702(b), 16 U.S.C. § 1432 of NMSA, 16 U.S.C. § 19jj of PSRPA, and Government Code § 8670.56.5(h).

k.      "Restore" or "Restoration" shall mean any action or combination of actions to restore, rehabilitate, replace or acquire the equivalent of any Natural Resource and services, including recreational opportunities that were injured, lost, or destroyed as a result of the Incident.

l.      "Section" shall mean a portion of this Consent Decree identified by a roman numeral.

m.      "Settlement Payment" shall mean the sum total of the payments cited in Section VII (Distribution of Settlement Payment and Other Payments) together with accrued Interest as of the day of payment.  Interest accrued on the Settlement Payment shall be applied proportionately to the payments described in Paragraphs 5 – 15 of this Consent Decree. Settlement Payment shall not include "New Costs."

n.      "State Agencies" shall mean CDFG, RWQCB, and CSLC.  The State Agencies do not include any entity or political subdivision of the State of California other than those agencies herein designated "the State Agencies."

o.    "State Trustees" shall mean CDFG and CSLC in their capacities as natural resource trustees to claim natural resource damages ("NRD"), including assessment costs on behalf of the People of the State of California.

p.    "Third Party Defendants" shall mean Dr. Charles Calza; Dr. Alan Smoot, Dr. Eugene Belogorsky; the North Bay Sleep Medicine Institute, Inc.; Patty Tucker; Longs Drug Stores California, LLC; Longs Drug Stores, LLC; Longs Drug Stores Corporation; CVS Caremark Corporation; Louie Chester; the San Francisco Bar Pilots; the San Francisco Bar Pilots Benevolent Association; Peter McIsaac and Russell Nyborg.

q.    "United States" shall mean the United States of America, including its departments, agencies, and instrumentalities and includes DOI, NOAA, USCG, NPFC, and OSLTF.

## VI.    SETTLEMENT PAYMENT

4.    Within fifteen (15) business days after the Effective Date, Settling Defendants shall pay the Settlement Payment, pursuant to Section VII (Distribution of Settlement Payment and Other Payments).  Settling Defendants shall simultaneously send written notice of payment and a copy of any transmittal documentation to the Parties in accordance with Section XIV (Notices) of this Consent Decree.

## VII.    DISTRIBUTION OF SETTLEMENT PAYMENT AND OTHER PAYMENTS

5.    The sum of $23,389,033.00 (twenty-three million three hundred eighty-nine thousand thirty-three dollars) together with a proportionate share of the Interest accrued on the Settlement Payment shall be paid to DOI.  Such payment shall be used by the Trustees for the purposes set forth in Section VIII (Trustees' Management and Applicability of Joint NRD Funds).  Settling Defendants shall make such payment by Electronic Funds Transfer ("EFT") to

the United States Department of Justice in accordance with instructions that the Financial

Litigation Unit of the U.S. Attorney's Office for the Northern District of California shall provide

to Settling Defendants following Entry of this Consent Decree by this Court.  At the time of

payment, Settling Defendants shall simultaneously send written notice of payment and a copy of

any transmittal documentation to the Parties in accordance with Section XIV (Notices) of this

Consent Decree and to:

> Department of the Interior
> Natural Resource Damage Assessment and Restoration Program
> Attention:  Restoration Fund Manager
> 1849 "C" Street, N.W. Mail Stop 4449
> Washington, D.C.  20240

The EFT and transmittal documentation shall reflect that the payment is being made to the

Department of the Interior Natural Resources Damage Assessment and Restoration Fund,

Account Number 0520 ("CB OIL SPILL NRD Account").  DOI will maintain these funds as a

segregated account within the CB OIL SPILL NRD Account.

      6.      The sum of $7,260,000.00 (seven million two hundred sixty thousand dollars)

together with a proportionate share of the Interest accrued on the Settlement Payment shall be

paid to the National Fish and Wildlife Foundation ("NFWF"), on behalf of the State Trustees for

deposit into the San Francisco Bay Shoreline Parks and Recreational Use Account established by

NFWF.  Payment shall be made by trust check, certified check, or money order payable to the

National Fish and Wildlife Foundation.  At the time of payment, Settling Defendants shall

simultaneously send written notice of payment and a copy of any transmittal documentation to

the Parties in accordance with Section XIV (Notices) of this Consent Decree.  The check or

money order shall be sent by certified mail to:

The California Department of Fish and Game
Office of Spill Prevention and Response
Attn:  Katherine Verrue-Slater, Staff Counsel III
1700 "K" Street, Suite 250
Sacramento, California  95811

The check shall reference the CB OIL SPILL and reflect that it is a payment to the San Francisco Bay Shoreline Parks and Recreational Use Account.  The San Francisco Bay Shoreline Parks and Recreational Use Account shall be managed in accordance with Attachment A (Memorandum of Understanding with NFWF) and shall be used by the Trustees for the purposes set forth in Section VIII (Trustee's Management and Applicability of Joint NRD Funds).

7.      The sum of $1,125,000.00 (one million one hundred twenty-five thousand dollars) together with a proportionate share of the Interest accrued on the Settlement Payment shall be paid to CCSF for deposit into the Cosco Busan Recreational Use Account established by CCSF. Payment is to be made by check, certified check, or money order payable to City and County of San Francisco - City Attorney's Office, and sent by certified mail to:

Thomas Lakritz
Deputy City Attorney
Office of San Francisco City Attorney
City Hall, Room 234
 Dr. Carlton B. Goodlett Place
San Francisco, California  94102-4682

At the time of payment, Settling Defendants shall simultaneously send written notice of payment and a copy of any transmittal documentation to the Parties in accordance with Section XIV (Notices) of this Consent Decree.  Payments made pursuant to this Paragraph shall be used to implement appropriate restoration projects, in accordance with applicable law, that will be located within the geographic boundaries of CCSF.  The Trustees and CCSF will work cooperatively to identify such appropriate restoration projects.

8.      The sum of $669,000.00 (six hundred sixty-nine thousand dollars) together with a proportionate share of the Interest accrued on the Settlement Payment shall be paid to City of Richmond for deposit into the Cosco Busan Recreational Use Account established by City of Richmond.  Payment is to be made by check, certified check, or money order payable to City of Richmond - City Attorney's Office, and sent by certified mail to:

> K. Scott Dickey
> Chief Deputy City Attorney
> Richmond City Attorney's Office
> 450 Civic Center Plaza, Third Floor
> Richmond, California  94804

At the time of payment, Settling Defendants shall simultaneously send written notice of payment and a copy of any transmittal documentation to the Parties in accordance with Section XIV (Notices) of this Consent Decree.  Payments made pursuant to this Paragraph shall be used to implement appropriate restoration projects, in accordance with applicable law, that will be located within the geographic boundaries of the City of Richmond.  The Trustees and City of Richmond will work cooperatively to identify such appropriate restoration projects.

9.      The sum of $129,682.60 (One hundred twenty-nine thousand six hundred eighty-two dollars and sixty cents) together with a proportionate share of the Interest accrued on the Settlement Payment shall be paid to DOI, Natural Resource Damage Assessment and Restoration Fund, Account Number 0520 CB NRD Account, for reimbursement of its unpaid Natural Resource Damage Assessment costs through December 31, 2010, associated with the Incident. Payment shall be made by EFT to the United States Department of Justice in accordance with instructions that the Financial Litigation Unit of the U.S. Attorney's Office for the Northern District of California shall provide to Settling Defendants.  At the time of payment, Settling

1  Defendants shall simultaneously send written notice of payment and a copy of any transmittal

2  documentation to the Parties in accordance with Section XIV (Notices) of this Consent Decree.

3      10.    The sum of $2,855,464.15 (two million eight hundred fifty-five thousand four

4  hundred sixty-four dollars and fifteen cents) together with a proportionate share of the Interest

5  accrued on the Settlement Payment shall be paid to NOAA, Damage Assessment and Restoration

6  Revolving Fund Cosco Busan Account, for reimbursement of its unpaid Natural Resource

7  Damage Assessment costs through March 13, 2010, associated with the Incident.  Payment shall

8  be made by EFT to the United States Department of Justice in accordance with instructions that

9  the Financial Litigation Unit of the U.S. Attorney's Office for the Northern District of California

10 shall provide to Settling Defendants.  At the time of payment, Settling Defendants shall

11 simultaneously send written notice of payment and a copy of any transmittal documentation to

12 the Parties in accordance with Section XIV (Notices) of this Consent Decree.

13     11.    The sum of $4,212,511.23 (four million two hundred twelve thousand five

14 hundred eleven dollars and twenty three cents) together with a proportionate share of the Interest

15 accrued on the Settlement Payment shall be transferred via EFTs through the United States

16 Department of Justice for disbursement to the Oil Spill Liability Trust Fund ("OSLTF"),

17 Account Number FPN A08003, according to instructions to be obtained by defendants from the

18 Dept. of Justice, Torts Branch, Civil Division.  At the time of payment, Settling Defendants shall

19 simultaneously send written notice of payment and any transmittal documentation to the Parties

20 in accordance with Section XIV (Notices) of this Consent Decree.

21     12.    The sum of $2,660,290.78 (two million six hundred sixty thousand two hundred

22 ninety dollars and seventy eight cents) together with a proportionate share of the Interest accrued

23 on the Settlement Payment shall be paid to CDFG for reimbursement of unpaid response and

Natural Resource Damage Assessment costs through April 30, 2011, associated with the Incident.  Payment is to be made by trust check, certified check, or money order payable to the State of California Department of Fish and Game.  At the time of payment, Settling Defendants shall simultaneously send written notice of payment and a copy of any transmittal documentation to the Parties in accordance with Section XIV (Notices) of this Consent Decree.  The check or money order shall be sent by certified mail to:

> State of California Department of Fish and Game
> Office of Spill Prevention and Response
> Attn:  Katherine Verrue-Slater, Staff Counsel III
> 1700 "K" Street, Suite 250
> Sacramento, California  95811

The check shall reference the CB OIL SPILL and reflect that it is a payment to the Oil Spill Response Trust Fund pursuant to Government Code § 8670.47.5.

13.     The sum of $8,523.08 (eight thousand five hundred twenty three dollars and eight cents) together with a proportionate share of the Interest accrued on the Settlement Payment shall be paid to CSLC for reimbursement of unpaid response and Natural Resource Damage Assessment costs through January 6, 2011, associated with the Incident.  Payment is to be made by trust check, certified check, or money order payable to the State of California State Lands Commission.  The check or money order shall be sent by certified mail to:

> Jessica Rader, Kathryn Colson, Staff Counsel
> California State Lands Commission
> 100 Howe Avenue, Suite 100 South
> Sacramento, California  95825-8202

The check shall reference the CB OIL SPILL and reflect that it is a payment to the Oil Spill Response Trust Fund pursuant to Government Code § 8670.47.5.  At the time of payment, Settling Defendants shall simultaneously send written notice of payment and a copy of any

transmittal documentation to the Parties in accordance with Section XIV (Notices) of this Consent Decree.

14.    The total sum of $1,250,000.00 (one million two hundred fifty thousand dollars) together with a proportionate share of the Interest accrued on the Settlement Payment shall be paid to CDFG and RWQCB to resolve Settling Defendants' civil liabilities, associated with or arising out of the Incident.  At the time of payment, Settling Defendants shall simultaneously send written notice of payment and a copy of any transmittal documentation to the Parties in accordance with Section XIV (Notices) of this Consent Decree.

a.    Such payment shall be made as follows:

i.    Payment of $500,000.00 (five hundred thousand dollars) together with a proportionate share of the Interest accrued on the Settlement Payment for a RWQCB Supplemental Environmental Project for San Francisco Bay herring stock assessment, management, and research.  The payment will be made to the San Francisco Bay Herring Research Association and shall be used only for the purposes set forth in Attachment B to this Consent Decree.  A portion of these funds may be transferred to a Department of Fish and Game Mitigation and Protection Expendable Funds Account, established pursuant to the provisions of Fish and Game Code section 13014, for uses consistent with the provisions of Attachment B if the San Francisco Bay Herring Research Association and CDFG deem such transfer necessary or beneficial for implementation of the Supplement Environmental Project.

ii.    Payment of $350,000.00 (three hundred fifty thousand dollars) together with a proportionate share of the Interest accrued on the Settlement Payment to RWQCB.

iii.        Payment of $400,000.00 (four hundred thousand dollars) together with a proportionate share of the Interest accrued on the Settlement Payment to CDFG.

b.        The payments due to CDFG are to be made by trust check, certified check, or money order payable to the State of California Department of Fish and Game.  The check(s) or money order(s) shall be sent by certified mail to:

> State of California Department of Fish and Game
> Office of Spill Prevention and Response
> Attn:  Katherine Verrue-Slater, Staff Counsel III
> 1700 "K" Street, Suite 250
> Sacramento, California  95811

The check(s) shall reference the CB OIL SPILL and reflect that they are payments to the Fish and Wildlife Pollution Account or Special fund #0942 – Fish and Game Mitigation Habitat Enhancement.  CDFG shall deposit the $400,000.00 (four hundred thousand dollars) plus Interest identified in subparagraph 14.a(iii) as follows:  $200,000.00 (two hundred thousand dollars) together with half the Interest received pursuant to subparagraph 14.a(iii) into the Oil Pollution Administration Subaccount within the Fish and Wildlife Pollution Account, and $200,000.00 (two hundred thousand dollars) together with half the Interest received pursuant to subparagraph 14.a(iii) into the Oil Pollution Response and Restoration Subaccount within the Fish and Wildlife Pollution Account.

c.        The payment to the San Francisco Bay Herring Research Association is to be made by trust check, certified check, or money order payable to the San Francisco Bay Herring Research Association.  The check or money order shall be sent by certified mail to:

> The San Francisco Bay Herring Research Association
> ATTENTION: Nick Sohrakoff
> P.O. Box 246
> Wheatland, California  95692

*United States of America vs. M/V Cosco Busan – Civil Action No. C 07-6045(SC) –*
*Consent Decree*
17

The check shall reference the CB OIL SPILL and reflect that it is a payment to the San Francisco Bay Herring Research Association to fund only expenses associated with the Supplemental Environmental Project described in Attachment B to this Consent Decree.

        d.     The payment due to RWQCB is to be made by trust check, certified check, or money order payable to the State Water Resources Control Board Waste Discharge Permit Fund.  The check or money order shall be sent by certified mail to:

> California Regional Water Quality Control Board, San Francisco
> Bay Region
> Attn:  Christian Carrigan, Staff Counsel III
> 1001 I Street
> P.O. Box 100
> Sacramento, California  95812

The check shall reference the CB OIL SPILL and reflect that it is a payment to the State Water Resources Control Board Waste Discharge Permit Fund.

        15.     The sum of $915,914.65 (nine hundred fifteen thousand nine hundred fourteen dollars and sixty-five cents) together with a proportionate share of the Interest accrued on the Settlement Payment shall be paid to CCSF for unreimbursed CCSF attorneys fees and costs as of June 09, 2010.  Payment is to be made by check, certified check, or money order payable to City and County of San Francisco - City Attorney's Office, and sent by certified mail to:

> Thomas Lakritz
> Deputy City Attorney
> Office of San Francisco City Attorney
> City Hall, Room 234
>  Dr. Carlton B. Goodlett Place
> San Francisco, California  94102-4682

At the time of payment, Settling Defendants shall simultaneously send written notice of payment and a copy of any transmittal documentation to the Parties in accordance with Section XIV (Notices) of this Consent Decree.

16.     Within one hundred twenty (120) days following the date of Entry, DOI, NOAA, USCG, CDFG, CSLC, Municipal Plaintiffs, and East Bay Regional Park District ("EBRPD")[1] may submit invoices and supporting documentation to Settling Defendants for any unreimbursed Natural Resource Damage Assessment Costs, Removal Costs, response costs, or other unreimbursed appropriate costs resulting from the Incident that they have incurred through the date of Entry ("New Costs").  Settling Defendants shall pay all uncontested New Costs within sixty (60) days of the receipt of each invoice and its supporting documentation in accordance with the payment instructions described in Section VII (Distribution of Settlement Payment and Other Payments).  Payment for any New Costs owed to EBRPD is to be made certified check or money order payable to the East Bay Regional Park District.  The check or money order shall be sent by certified mail to:

> East Bay Regional Park District
> Attn:  Carol R. Victor, Assistant District Counsel
> P. O. Box 5381
> Oakland, California  94605

17.     Settling Defendants may object to payment of any New Costs if they claim that DOI, NOAA, CDFG, CSLC, Municipal Plaintiffs, or EBRPD has made an accounting error or if they allege that a cost item that is included represents a cost that is not a Natural Resource Damage Assessment cost, response cost, Removal Cost, or other appropriate cost.  Such objection shall be made in writing within sixty (60) days of receipt of the invoice and must be sent to DOI (if DOI's New Costs are being disputed), NOAA (if NOAA's New Costs are being disputed), CDFG (if CDFG's New Costs are being disputed), CSLC (if CSLC's New Costs are being disputed), Municipal Plaintiffs (if Municipal Plaintiffs' New Costs are being disputed), or

---

[1] EBRPD actively participated in certain injury assessment activities as a technical adviser to the Trustees.

*United States of America vs. M/V Cosco Busan – Civil Action No. C 07-6045(SC) –*
*Consent Decree*
*19*

EBRPD (if EBRPD's New Costs are being disputed) pursuant to Section XIV (Notices).  Any such objection shall specifically identify the contested New Costs and the basis for the objection.

18.     If Settling Defendants object to any New Costs as set forth in the preceding Paragraph such objection shall be, in the first instance, the subject of informal negotiations between, DOI, NOAA, CDFG, CSLC, Municipal Plaintiffs, or EBRPD and Settling Defendants. Such period of informal negotiations shall not extend beyond twenty (20) days after the date that written notice of an objection to New Costs is sent to either DOI, NOAA, CDFG, CSLC, Municipal Plaintiffs, or EBRPD unless otherwise agreed to in writing by the Parties.  If informal negotiations do not result in resolution of the objection, the Settling Defendants shall pay the New Costs that were the subject to the objection within thirty (30) days of the conclusion of the informal negotiations, unless the Settling Defendants exercise their right to petition the Court in accordance with this Paragraph.  The Settling Defendants may petition the Court within thirty (30) days of the end of the informal negotiation period for resolution of the objection.  Further briefing and argument on the petition will comply with the requirements of the Court.

**VIII.     TRUSTEES' MANAGEMENT AND APPLICABILITY OF JOINT NRD FUNDS**

19.     DOI shall, in accordance with law, manage and invest funds in the CB OIL SPILL NRD Account, paid per Paragraph 5, and any return on investments or interest accrued on the CB OIL SPILL NRD Account for use by the Natural Resource Trustees in connection with Restoration of Natural Resources affected by the Incident.  DOI shall not make any charge against the CB OIL SPILL NRD Account for any investment or management services provided.

20.     DOI shall hold all funds in the CB OIL SPILL NRD Account, including return on investments or accrued interest, subject to the provisions of this Consent Decree.

21.     The Natural Resource Trustees commit to the expenditure of the funds set forth in Paragraphs 5 and 6 (except for $143,033, which will be allocated to the NPS to remove oil from 3 historic vessels located at the San Francisco Maritime National Historic Park) for the design, implementation, permitting (as necessary), monitoring, and oversight of Restoration projects and for the costs of complying with the requirements of the law to conduct a Restoration planning and implementation process.  The Natural Resource Trustees will use the funds to Restore, rehabilitate, replace or acquire the equivalent of any Natural Resource and its services, including lost human use of such services, injured, lost, or destroyed as a result of the Incident and for the oversight of these Restoration projects.

22.     The allocation of funds for specific projects or categories of projects will be contained in a Restoration Plan prepared and implemented jointly by the Trustees, for which public notice, opportunity for public input, and consideration of public comment will be provided.  The Trustees jointly retain the ultimate authority and responsibility to use the funds in the CB OIL SPILL NRD Account to Restore Natural Resources in accordance with applicable law, this Consent Decree, and any memorandum or other agreement among them.

## IX.     TRUSTEES' MANAGEMENT OF RECREATIONAL USE FUNDS NOT ATTRIBUTABLE TO PORTIONS OF THE NATIONAL PARK SERVICE OR MUNICIPAL PLAINTIFFS

23.     The State Trustees shall allocate the funds in the Cosco Busan Recreational Use Account held by NFWF for projects providing human use benefits and for the oversight of these projects in accordance with a Restoration Plan prepared and implemented jointly by the Trustees, this Consent Decree, and in accordance with applicable law and any Trustee memorandum or other agreement.

## X.   STIPULATED PENALTIES

24.     If Settling Defendants fail to pay the Settlement Payment as required by Section VII (Distribution of Settlement Payment and Other Payments) of this Consent Decree, Settling Defendants shall pay to the party to whom that payment should have been made a stipulated penalty of $5,000 (five thousand dollars) for each day that any such payment is late.  In the event that there is a failure to pay more than one party, the Settling Defendants shall pay a maximum stipulated penalty of $10,000 (ten thousand dollars) for each day that any such payments are late, such sum to be divided proportionately among the parties to whom the payments are delayed.

25.     If Settling Defendants fail to pay New Costs as required by Section VII (Distribution of Settlement Payment and Other Payments) of this Consent Decree, Settling Defendants shall pay to the party to whom that payment should have been made a stipulated penalty of fifteen (15) percent of the unpaid New Costs.  In the event of a dispute, the fifteen (15) percent stipulated penalty shall accrue on the amount determined to be owed by the Settling Defendants, and shall be paid within fifteen (15) days of resolution of the dispute.

26.     Any stipulated penalties, as described above, owing to the United States shall be paid by EFT in accordance with instructions to be provided by the Financial Litigation Unit of the U.S. Attorney's Office for the Northern District of California.  Payment of stipulated penalties shall be accompanied by transmittal correspondence stating that any such payment is for late payment of amount(s) due under this Consent Decree and shall reference DOJ Number 90-5-1-1-09349, the case name, and civil action number.

27.     Any stipulated penalties, as described above, owing to the State Agencies shall be paid by trust check, certified check, or money order payable to the California Department of Fish and Game and/or the California Regional Water Quality Control Board, San Francisco Bay

Region as the case may be.  Payment of stipulated penalties shall be accompanied by transmittal correspondence stating that any such payment is for late payment of amount(s) due under this Consent Decree.  The check or money order shall be sent by certified mail to:

> As to CDFG:
> State of California Department of Fish and Game
> Office of Spill Prevention and Response
> Attn:  Katherine Verrue-Slater, Staff Counsel III
> 1700 "K" Street, Suite 250
> Sacramento, California  95811
>
> As to RWQCB:
> California Regional Water Quality Control Board, San Francisco
> Bay Region
> Attn:  Christian Carrigan, Staff Counsel III
> 1001 I Street
> P.O. Box 100
> Sacramento, California  95812

28.     Any stipulated penalties, as described above, owing to CCSF shall be paid by trust check, certified check, or money order payable to City and County of San Francisco - City Attorney's Office.  Payment of stipulated penalties shall be accompanied by transmittal correspondence stating that any such payment is for late payment of amount(s) due under this Consent Decree.  The check or money order shall be sent by certified mail to:

> Thomas Lakritz
> Deputy City Attorney
> Office of San Francisco City Attorney
> City Hall, Room 234
> Dr. Carlton B. Goodlett Place
> San Francisco, California  94102-4682

29.     Any stipulated penalties, as described above, owing to EBRPD shall be paid by trust check, certified check, or money order payable to East Bay Regional Park District. Payment of stipulated penalties shall be accompanied by transmittal correspondence stating that

any such payment is for late payment of amount(s) due under this Consent Decree.  The check or money order shall be sent by certified mail to:

> East Bay Regional Park District
> Attn: Carol R. Victor, Assistant District Counsel
> P.O. Box 5381
> Oakland, California  94605

30.     Settling Defendants shall not deduct any stipulated penalties paid under this Section X (Stipulated Penalties) in calculating their federal or state income taxes.

31.     If Settling Defendants fail to pay stipulated penalties according to the terms of this Consent Decree, Settling Defendants shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due.

## XI.     ACCEPTANCE OF RESPONSIBILITY OF RESPONSIBLE PARTIES UNDER OPA

32.     Pursuant to the requirements of Section 1017(f)(2) of OPA, 33 U.S.C. § 2717(f)(2), Settling Defendants acknowledge and stipulate, for purposes of giving effect to this Consent Decree and to satisfy the requirements of §1017(f)(2) of OPA, 33 USC § 2717(f)(2), that they are Responsible Parties for the Incident within the meaning of OPA, and within the meaning of Government Code § 8670.3(z)(2).

## XII.     EFFECT OF SETTLEMENT

33.     Expressly subject to the exception specified in Paragraph 34 below, effective upon Settling Defendants' full performance of their payment obligations required by this Consent Decree, this Consent Decree shall resolve any and all administrative and civil claims of Plaintiffs, and any of them, for Removal Costs, response costs, and for Damages for injury to, destruction of, loss of, or lost use of Natural Resources arising from the Incident, including Natural Resource Damage Assessment and Restoration costs associated with the Incident, as

provided for by Section 1002(b) of OPA, 33 U.S.C. § 2702(b), 16 U.S.C. §§ 1436-1437, 16 U.S.C. § 19jj 1(a) – 1(b), Government Code §§ 8670.53, 8670.56.5, subdivision (h), Fish and Game Code §§ 2014, 12016, Public Resources Code § 6224.1, and Civil Code §§ 3479, 3484, and 3480.  In addition, this Consent Decree shall resolve Settling Defendants' and the Other Defendants' civil liabilities pursuant to Fish and Game Code §§ 5650 and 5650.1, Government Code § 8670.66, subdivisions (a)(3) and (b), and Water Code § 13350.  Finally, this Consent Decree shall resolve Settling Defendants' and the Other Defendants' civil liabilities for damages, injunctive relief and penalties under the Lempert-Keene-Seastrand Oil Spill Prevention and Response Act; California Government Code §§ 8670.1, *et seq.*; any applicable common law theories of negligence, nuisance, trespass, unjust enrichment; and California Business and Professions Code §§ 17200, *et seq.* for unfair business practices.

34.     Notwithstanding Paragraph 33 or any other provision of this Decree, and pursuant to 33 U.S.C. § 2715(c) and the Acceptance set forth in Section XI (Acceptance of Responsibility of Responsible Parties Under OPA) above, the United States expressly reserves, and the Settling Defendants and Other Defendants expressly acknowledge, the right of the United States to institute proceedings, take to judgment thereon, and collect such judgment(s) thereon as against the Settling Defendants and the Other Defendants in this action, to seek and recover Removal Costs and/or Damages resulting from the Incident based on claims submitted to or filed against the United States, including claims against the OSLTF, after the date when this Decree is lodged with this Court, which claims indicate that there are, or may be, such removal claims and Removal Costs and/or Damages that have not been submitted to or filed with the United States, including the OSLTF, as of the date when this Decree is lodged with this Court.  Settling

Defendants and Other Defendants reserve all defenses as to substantive claims pursued in any such proceeding.

35.     Subject to the immediately following Paragraph of this Consent Decree, Settling Defendants and the Other Defendants hereby covenant not to sue and agree not to assert any claims or causes of action of any nature against the United States, the State Agencies, or Municipal Plaintiffs, under federal, state, or local law arising out of or relating to the Incident. Settling Defendants also agree to dismiss with prejudice the following actions and complaints against State of California defendants other than the State Agencies:  (1) the Sacramento County Superior Court action titled *Regal Stone Limited v. The People of the State of California*, Sacramento County Superior Court Case No. 34-2009-00035918-CU-TT-GDS; (2) the third party complaint against the State of California/Board of Pilot Commissioners filed by Regal Stone and Fleet Management in *United States v. M/V COSCO BUSAN, et al.,* U.S. Dist. Court, N. Dist Cal. Case No. C 07 6045 SC.; and (3) all claims/and causes of action against Port Agents Nyborg and McIsaac in *Regal Stone v. John J. Cota,et al.,* U.S. Dist. Court, N. Dist Cal. Case No. C 08 5098 SC.  As against the United States, any and all suits, actions, claims, administrative claims, subrogation claims, cross-claims, counterclaims, third-party complaints, and counterclaims of the Settling Defendants and the Other Defendants that were, could have been, or could in the future be filed as a result of the Incident, including any claims and causes of action asserted against the United States in *United States v. COSCO BUSAN, Regal Stone Ltd, et al.*, U.S. Dist. Court, N. Dist Cal. Case No. C 07 6045, shall be, and the same are, dismissed with prejudice.  Settling Defendants further agree to release all other claims against the State of California (including any presently unknown claims) arising from the Incident.  This release

binds all persons or entities affiliated with the M/V COSCO BUSAN, including, but not limited to, owners, operators, managers, guarantors, insurers, re-insurers, etc.

36.     This Consent Decree does not apply to, nor does it release, any claims brought by the State of California by and through the Department of Transportation, nor any counterclaims, claims for recoupment or affirmative defenses by any of the Defendants in *The People of the State of California v. Regal Stone, Ltd.*, U.S. Dist. Court, N. Dist Cal. Case No. C 08 2268 SC.

37.     The Settling Defendants expressly waive their right to file a claim pursuant to Sections 1008 and 1013 of OPA, 33 U.S.C. §§ 2708 and 2713, to recover sums claimed to have been paid or that may be paid by Settling Defendants arising from or connected with the Incident, and waive any claim that Settling Defendants are entitled to limit their liability pursuant to § 1004(a) of OPA, 33 U.S.C. § 2704(a).

38.     Notwithstanding Paragraph 35 above, nothing in this Consent Decree shall, of itself, prohibit or restrict John J. Cota from bringing an administrative proceeding against any governmental entity or agency, including the United States Coast Guard, for the sole and exclusive purpose of seeking non-monetary relief for the reinstatement, renewal or issuance of any professional mariner's license, it being expressly understood and agreed that such an administrative proceeding, if any is filed, shall be limited solely, exclusively, and without exception to non-monetary relief, any potential claims of John J. Cota for monetary relief of any kind whatsoever as against the United States and other Plaintiffs having been resolved fully, completely, and finally pursuant to this Consent Decree.

39.     Nothing in Paragraph 38 or in any other Paragraph of this Consent Decree shall in any manner be construed, expressly or impliedly, to provide to John J. Cota any greater claims or rights against any governmental entity or agency, including the United States and/or the U.S.

Coast Guard, than John J. Cota would have had in the event this Consent Decree had not been entered by the Court.  Further, in the event that John J. Cota brings an administrative proceeding pursuant to the provisions of Paragraph 38 above, nothing in Paragraph 38 or in any other Paragraph of this Consent Decree shall in any manner prejudice or limit any defenses, claims, or rights of any such governmental entity or agency, including the United States and/or the United States Coast Guard, in response to any such administrative proceeding, or an appeal therefrom.

40.     Except as provided in Paragraphs 16, 17, 18, 34, and 36 of this Consent Decree, the Plaintiffs acknowledge and agree that the payments required under this Consent Decree shall fully and completely satisfy all of their claims including but not limited to claims for damages, losses, penalties and forfeitures arising out of the Incident.  Except for claims described in Paragraph 35, Settling Defendants are fully subrogated, pursuant to 33 U.S.C. § 2715, to all rights, claims, and causes of actions of the Plaintiffs for Removal Costs, Damages or other losses resulting from or arising out of the Incident.  Plaintiffs agree that they shall not pursue any claims against the Third Party Defendants for any Removal Costs, Damages or other losses resulting from or arising out of the Incident.

41.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not a Party to this Consent Decree.

## XIII.   COSTS

42.     Plaintiffs shall be entitled to collect from Settling Defendants but not Other Defendants the costs (including reasonable attorneys' fees) incurred in any action necessary to collect any portion of the amounts due under Section VI (Settlement Payment), or any stipulated penalties due but not paid under Section X (Stipulated Penalties), or Section XII (Effect of Settlement).

XIV.   <u>NOTICES</u>

43.      Unless otherwise specified herein, whenever modifications, submissions, or

communications are required by this Consent Decree, they shall be made in writing and

addressed as follows:

<u>To the United States</u>:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
Box 7611 Ben Franklin Station
Washington, DC  20044-7611
Re: DOJ Number 90-5-1-1-09349

Bradley R. O'Brien
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
301 Howard Street, Suite 1050
San Francisco, California  94105-6607
Re: DOJ Number 90-5-1-1-09349

R. Michael Underhill
Attorney in Charge, West Coast Office
Torts Branch, Civil Division
United States Department of Justice
7th Floor Federal Building, Room 7-5395
P.O. Box 36028
450 Golden Gate Avenue
San Francisco, California  94102-3463
Re: DOJ Number 62-402

<u>To DOI</u>:

Charles McKinley
Assistant Field Solicitor
Department of the Interior
333 Bush Street, Suite 775
San Francisco, California  94104-2806

To NOAA:

Christopher J. Plaisted
Attorney-Advisor
National Oceanic and Atmospheric Administration
Office of General Counsel for Natural Resources
501 W. Ocean Blvd, Suite 4470
Long Beach, California  90802

To the State Agencies:

Robert W. Byrne
Supervising Deputy Attorney General
455 Golden Gate Avenue, Suite 1100
San Francisco, California  94102

Christiana Tiedemann
Supervising Deputy Attorney General
1515 Clay Street, 20th Floor
P.O. Box 70550
Oakland, California  94612-0550

To CSLC:

Kathryn Wiens, Staff Counsel
State Lands Commission
100 Howe Avenue, Suite 100 South
Sacramento, California 95825-8202

To CDFG:

Katherine Verrue-Slater
Staff Counsel III
Stephen Sawyer
Assistant Chief Counsel
Department of Fish and Game
Office of Spill Prevention and Response
1700 "K" Street, Suite 250
Sacramento, California  95811

To RWQCB:

Christian Carrigan
Staff Counsel III
California Regional Water Quality Control Board, SF Bay Region
1001 I Street
P.O. Box 100
Sacramento, California  95812

*United States of America vs. M/V Cosco Busan – Civil Action No. C 07-6045(SC) –*
*Consent Decree*
*30*

To CCSF:

Donald P. Margolis
Thomas S. Lakritz
Deputy City Attorneys
San Francisco City Attorney's Office
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California  94102-4682

To: CITY OF RICHMOND

K. Scott Dickey
Chief Deputy City Attorney
Richmond City Attorney's Office
450 Civic Center Plaza, Third Floor
Richmond, California 94804

To EBRPD:

East Bay Regional Park District
Attn: Carol R. Victor, Assistant District Counsel
P.O. Box 5381
Oakland, California  94605

To Settling Defendants and M/V COSCO BUSAN :

Joseph A. Walsh II
John Cox
Frances L. Keeler
Keesal, Young & Logan, PC
450 Pacific Avenue
San Francisco, California  90801

To John J. Cota:

Walter G. Coppenrath, Jr.
Coppenrath Jones LLP
400 Oceangate, Suite 400
Long Beach, California  90802

44.    Any Party may, by written notice to other Parties, change its designated notice

recipient or notice address provided above.

45.     Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XV.     EFFECTIVE DATE

46.     The Effective Date of this Consent Decree shall be the date of the Entry of this Consent Decree by the Court.

## XVI.     RETENTION OF JURISDICTION

47.     The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of effectuating or enforcing compliance with the terms of this Consent Decree.

## XVII.     MODIFICATION

48.     The terms of this Consent Decree may be modified only by a subsequent written agreement signed by all Parties.  Where the modification constitutes a material change to any term of this Consent Decree, it shall be effective only upon approval by the Court.

## XVIII.     TERMINATION

49.     This Consent Decree shall be terminated when Plaintiffs determine that Settling Defendants have satisfactorily completed performance of their obligations required by this Consent Decree.  Upon such termination, the Parties shall file with the Court an appropriate stipulation reciting that the requirements of the Consent Decree have been met.

50.     The United States acknowledges and agrees that concurrent with the filing of the stipulation with the Court seeking to terminate the Consent Decree, the Letter of Undertaking ("Letter of Undertaking" or "LOU") dated 12 December 2007 issued by the Steamship Mutual Underwriting Association (Bermuda) Limited ("Steamship Mutual") as *in rem* security for the

MV *COSCO BUSAN*, is deemed withdrawn and that the undertakings by Steamship Mutual to the United States memorialized in said LOU are extinguished and further that Steamship Mutual is released and discharged from any and all obligations promised to the United States in said LOU.  The United States will return the original Letter of Undertaking to counsel for the Settling Defendants in order that it may be physically cancelled.  In the event the original Letter of Undertaking has become lost or if its physical return is not otherwise possible, the United States will send a written letter attesting to that fact and further stating that it agrees that the Letter of Undertaking and the obligations therein are cancelled as provided for in this Paragraph. Notwithstanding this Paragraph 50 herein, it is expressly agreed, understood, and acknowledged by the Settling Defendants that the discharge of Steamship Mutual from its obligations to the United States under the said LOU shall not in any manner affect or discharge the Settling Defendants from any of their obligations to the United States under this Consent Decree, including, but not limited to, any and all obligations pursuant to Paragraph 34 above.

## XIX.    **PUBLIC PARTICIPATION**

51.     This Consent Decree shall be lodged with this Court for a period of not less than thirty (30) days to allow the opportunity for public notice and comment.  The Plaintiffs reserve the right to withdraw from or withhold their consent to this Consent Decree if the comments from the public regarding this Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate.  Settling Defendants consent to Entry of this Consent Decree without further notice.

## XX.    **SIGNATORIES/SERVICE**

52.     Each undersigned representative of Settling Defendants, Other Defendants, the CDFG, RWQCB, CSLC, Municipal Plaintiffs, together with the Assistant Attorneys General for

the Civil and the Environment and Natural Resources Divisions of the United States Department

of Justice, certifies that he or she is fully authorized to enter into the terms and conditions of this

Consent Decree and to execute and legally bind the Party or Parties he or she represents to this

document.

53.     This Consent Decree may be signed in counterparts, and its validity shall not be

challenged on that basis.

54.     Settling Defendants and Other Defendants agree not to oppose the Entry of this

Consent Decree by the Court or to challenge any provision of the Consent Decree, unless the

consent of Plaintiffs, or any of them, has been withdrawn or withheld under the circumstances

set forth in Paragraph 51, or Plaintiffs, or any of them have notified Settling Defendants in

writing that such Plaintiff no longer supports or agrees to the Entry of this Consent Decree.

## XXI.     INTEGRATION

55.     This Consent Decree constitutes the final, complete, and exclusive agreement and

understanding among the Parties with respect to the settlement embodied in the Consent Decree

and  supersedes all prior agreements and understandings, whether oral or written, concerning the

settlement embodied therein.  No other document, nor any representation, inducement,

agreement, understanding, or promise, constitutes any part of this Consent Decree or the

settlement it represents, nor shall it be used in construing the terms of this Consent Decree.

## XXII.   **FINAL JUDGMENT**

56.     Upon approval and Entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court, in accordance with Rules 54 and 58 of the Federal Rules of Civil Procedure, as among the Parties.

IT IS SO ORDERED.



Dated:_____                    _____
                                         UNITED STATES DISTRICT JUDGE

1  FOR THE UNITED STATES:

2

3

4  DATED: 9/17/11                    _Ignacia S. Moreno_
                                     IGNACIA S. MORENO
5                                    Assistant Attorney General
                                     Environment and Natural Resources Division
6                                    United States Department of Justice

7

8

9  DATED: 9/19/11                    _Bradley R. O'Brien_

                                     BRADLEY R. O'BRIEN
10                                   Senior Attorney
                                     Environmental Enforcement Section
11                                   United States Department of Justice

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*United States of America vs. M/V Cosco Busan – Civil Action No. C 07-6045(SC) –*
*Consent Decree*
*36*

1    FOR THE UNITED STATES:

2

3

4    DATED: 9/15/11

5                                    R. MICHAEL UNDERHILL
                                     Attorney in Charge
6                                    West Coast Office
                                     Torts Branch, Civil Division
7                                    United States Department of Justice

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   FOR THE CALIFORNIA DEPARTMENT OF FISH AND GAME:

2

3

4   DATED: 9/7/11

5                                   SCOTT D. SCHAEFER
                                    Administrator (Acting)
6                                   Office of Spill Prevention and Response
                                    California Department of Fish and Game
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

FOR THE REGIONAL WATER QUALITY CONTROL BOARD, SAN FRANCISCO BAY
REGION:

2

3

4

DATED: Sep. 7, 2011

5

BRUCE WOLFE
Executive Officer
California Regional Water Quality Control Board
San Francisco Bay Region

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   FOR THE CALIFORNIA STATE LANDS COMMISSION:

2

3

4   DATED:  9/6/2011

5                                          CURTIS FOSSUM
                                           Executive Officer
6                                          California State Lands Commission

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

FOR THE CITY AND COUNTY OF SAN FRANCISCO:

2

3

4

DATED: 9|8|11

5

DENNIS J. HERRERA
City Attorney

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*United States of America vs. M/V Cosco Busan – Civil Action No. C 07-6045(SC) –*
*Consent Decree*
*41*

1    FOR THE CITY OF RICHMOND:

2

3

4    DATED: September 7, 2011

5                                                K. Scott Dickey
                                                 Chief Deputy City Attorney

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FOR REGAL STONE LIMITED, FLEET MANAGEMENT LTD. AND M/V COSCO BUSAN:

DATED: _9/19/2011_

JOSEPH A. WALSH, II
KEESAL, YOUNG & LOGAN
450 Pacific Avenue
San Francisco, California   94133

Attorneys for:
REGAL STONE LIMITED
FLEET MANAGEMENT LTD.
*M/V COSCO BUSAN*

1

FOR DEFENDANT JOHN J. COTA:

2

3

4

DATED: 7. Sept 2011

_____

5

JOHN J. COTA

6

7

8

DATED: Sept 9, 2011

_____

WALTER G. COPPENRATH, JR.

9

COPPENRATH JONES LLP

Attorneys for JOHN J. COTA

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# ATTACHMENT A

**San Francisco Bay Shoreline Parks and Outdoor Recreational Use Account**
**Memorandum of Agreement**
**Among the**
**California Department of Fish and Game, the California State Lands Commission and the**
**National Fish and Wildlife Foundation**
**Relating to the Cosco Busan Settlement**

This San Francisco Bay Shoreline Parks and Outdoor Recreational Use Account Memorandum of Agreement (this "Agreement") is among the California Department of Fish and Game ("CDFG"), the California State Lands Commission ("CSLC") (collectively referred to as the "State Trustee Agencies" or "Trustee Agencies" and individually as a "Trustee Agency"), and the National Fish and Wildlife Foundation (the "Foundation") (together, the "Parties," and individually, a "Party"). The "Effective Date" of this agreement is the date of the signature of the last Party to sign.

## I. PURPOSE

The purpose of this Agreement is to establish the San Francisco Bay Parks and Outdoor Recreational Use Account (the "Account"). The purpose of the Account is to receive and manage certain monies from settling defendants in the matter of the *United States of America v M/V Cosco Busan, et al.* (the "Cosco Busan settlement"), following entry of the consent decree by the United States District Court for the Northern District of California [C 07-6045(SC)]. Such monies shall be used to fund projects that will compensate the public for loss of use and enjoyment of natural resources, parks, public beaches, and other public resources that are not under the jurisdiction of the National Park Service ("NPS"), the City and County of San Francisco ("CCSF"), or the City of Richmond ("Richmond")[1] as a result of the Cosco Busan oil spill into San Francisco Bay on November 7, 2007.

Monies in the Account will be directed to specified compensatory projects in accordance with the procedures set forth in this Agreement. The Parties agree that the types of projects for which funds in the Account will be used include, but are not limited to, public access improvements, public recreational facilities upgrades, trails enhancement, public beaches enhancement, and other activities designed to benefit public access to and use and enjoyment of natural and cultural resources in the Bay Area. The operation of the Account will be governed exclusively by the terms and conditions of this Agreement. The use of the Account will be limited by the amount of money available in the Account at any given time.

## II. AUTHORITY

A.     CDFG has been designated as a state trustee for natural resources pursuant to section 1006(b)(3) of the Oil Pollution Act[2] and has state natural resource trustee authority pursuant to Fish and Game Code sections 711.7 and 1802 and the Lempert-Keene-Seastrand Oil Spill Prevention and Response Act (Gov. Code § 8670.1, et seq.). As a designated Trustee,

---

[1]  Pursuant to the consent decree in the matter of the *United States of America v M/V Cosco Busan, et al.*, the natural resource damages for lost use and enjoyment of natural resources under the jurisdiction of CCSF and Richmond will be placed in separate accounts to be administered by CCSF and Richmond , respectively. The natural resource damages for lost use and enjoyment of natural resources under the jurisdiction of the National Park Service will be placed in a segregated account within the Department of the Interior Natural Resources Damage Assessment and Restoration Fund, along with the remaining natural resource damages, to be administered jointly by the National Park Service ("NPS"), the U.S. Fish and Wildlife Service ("USFWS"), the National Oceanic and Atmospheric Administration ("NOAA"), and the State Trustee Agencies, (collectively referred to as the "Trustees").

[2]  State trustees for California pursuant to OPA and the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") were designated pursuant to the *Governor's Designation of State Natural Resource Trustees under the Comprehensive Environmental Response, Compensation and Liability Act of 1980, the Oil Pollution Act of 1990, and California Health and Safety Code section 25352(c)* dated October 5, 2007, and subsequent delegations of State Trustee authority by the Secretary for Natural Resources and the Secretary for Environmental Protection.

CDFG is authorized to act on behalf of the public under state and/or federal law to assess and recover natural resource damages and to plan and implement actions that restore injured natural resources and compensate the public for the loss of use and enjoyment of natural resources impacted by a discharge of oil.

B.      CSLC is entering into this Agreement pursuant to Division 6 of the California Public Resources Code, including sections 6216 and 6301, as the State agency with exclusive control, jurisdiction and administrative authority over all ungranted tide and submerged lands and the reversionary and residual interest of the State as to public trust lands legislatively granted to local governments.

C.      The Foundation is a charitable non-profit corporation established in 1984 by the United State Congress under the National Fish and Wildlife Foundation Establishment Act, Title 16, United States Code section 3701, et seq. as amended (the "Establishment Act"), and is recognized as a tax exempt organization under section 501(c)(3) of the Internal Revenue Code. In the Establishment Act, the Foundation is directed to undertake activities that further the conservation and management of fish, wildlife, and plant resources for present and future generations and is authorized to accept funds from any legal source to further its mission.

### III. DEFINITIONS

1.      "Account" shall have the meaning assigned to such term in Section I of this Agreement.

2.      "Agreement" shall have the meaning assigned to such term in the Preamble to this Agreement.

3.      "Annual Fee" shall mean an annual fee equal to the lesser of: (a) three percent (3%) of the amount in the Account at the time of assessment, or (b) Fifty Seven Thousand Five Hundred dollars ($57,500 USD); provided, however, that if at any time the Annual Fee as calculated pursuant to (a) above would be less than Five Thousand dollars ($5,000 USD) then the Annual Fee will be Five Thousand dollars ($5,000 USD).

4.      "Effective Date" shall have the meaning assigned to such term in the Preamble to this Agreement.

5.      "Foundation" shall have the meaning assigned to such term in the Preamble to this Agreement.

6.      "Foundation Representative" shall mean the designated staff person for the Foundation responsible for primary communications and administration related to this Agreement.

7.      "Party" shall have the meaning assigned to such term in the Preamble to this Agreement.

8.      "Per Disbursement Fee" shall mean two percent (2%) of each amount disbursed out of the Account in accordance with the applicable Recipient Agreements, which will be assessed and collected by the Foundation from the money remaining in the Account on a one-time basis upon each disbursement of funds hereunder.

9.      "Project" shall mean a restoration or enhancement project consistent with Section I ("Purpose") of this Agreement that has been selected by the Trustee Agencies for

funding with amounts in the Account in accordance with the procedures set forth in this
Agreement.

        10.     *"Recipient"* shall mean any entity that receives monies from the Account for the
performance of a Project as set forth in a Recipient Agreement.

        11.     *"Recipient Agreement"* shall mean a contract, grant agreement, invoice, work
order, or other written agreement between the Foundation and a Recipient for the performance
of a Project, as directed by the State Trustee Agencies.

        12.     *"RFP"* shall have the meaning assigned to such term in Section IV(2)(c) of this
Agreement.

        13.     *"Trustee Agencies"* shall have the meaning assigned to such term in the
Preamble to this Agreement.

        14.     *"Trustee Agency Representative"* shall mean the designated staff person for
each of the two Trustee Agencies (or his or her alternate, acting in the place of the primary
Trustees Agency Representative) responsible for primary communications and administration
related to this Agreement.

## IV.  TRUSTEE AGENCIES RESPONSIBILTIES

        1.      Each Trustee Agency shall appoint its respective Trustee Agency Representative
and an alternate, who shall represent such Trustee Agency in carrying out its obligations under
this Agreement.  The two (2) Trustee Agency Representatives and alternates shall be the only
persons authorized to approve deposits into, or disbursements out of, the Account.  The Trustee
Agency Representatives shall select a Lead Trustee Agency Representative to transmit joint
decisions and serve as the main point of contact to the Foundation Representative.

        2.      The Trustee Agencies shall solicit or otherwise identify Projects using one or
more of the following processes:

        a.      The Trustee Agencies may jointly issue a call for proposals and select
projects from the submissions.

        b.      The Trustee Agencies may jointly select projects submitted in response to
one of the Foundation's regularly scheduled general calls for proposals through the
Foundation website.

        c.      The Trustee Agencies may jointly direct the Foundation to prepare and
issue a specialized request for proposals (each, an "RFP") and select from the
submissions.

        d.      The Trustee Agencies may jointly select projects submitted in response to
the Trustees' requests for restoration project ideas, including solicitations in the
Cosco Busan natural resource damage assessment ("NRDA") Fact Sheets posted on
CDFG's, National Oceanic and Atmospheric Association's (NOAA) and United States
Fish and Wildlife Service's (USFWS) websites.

        3.      The Trustee Agencies shall coordinate the selection of Projects to receive
funding from the Account with NPS, NOAA, and USFWS in accordance with any Trustee
memorandum or other agreement among them pertaining to the Cosco Busan settlement.  The
Trustee Agencies shall evaluate project proposals utilizing the evaluation standards set forth in

Title15, Code of Federal Regulations section 990.54 and/or the project selection criteria contained in the natural resources restoration plan for the Cosco Busan oil spill prepared by the Trustees, to the extent applicable.

     4.     After Projects have been identified and selected through the foregoing procedures, the Lead Trustee Agency Representative shall direct the Foundation in writing to enter into Recipient Agreements for the performance of selected Projects. The Lead Trustee Agency Representative or both Trustee Agency Representatives may review and approve: (a) all Recipient Agreements, including any amendments, prior to their execution, and (b) all requests from Recipients for disbursements of funds from the Account (which will be made in accordance with the terms of the applicable Recipient Agreement) prior to such disbursements being made. If the Trustee Agency Representatives direct the Foundation to make disbursements from the Account to one or more Recipients in specified amounts, the Foundation is entitled to rely upon such direction and shall make such disbursements in the amounts so specified.

     5.     The Trustee Agencies may jointly elect to use money from the Account for projects to be carried out by either of the Trustee Agencies rather than by a third-party Recipient. In such instances, the Lead Trustee Agency Representative will transmit to the Foundation Representative a project budget, a description of the applicable project, and associated payment procedures for transfer of money from the Account to the Trustee Agency as payment for performance of the relevant project. However, as set forth in Section VII, Paragraph 8 below, in no event will the Trustee Agencies use or direct money from the Account in a manner that would unlawfully augment their appropriated funding.

     6.     The Trustee Agencies may request that the Foundation participate in annual technical reviews to evaluate the success of Projects funded by the Account. In such event the Foundation shall make available such personnel and other resources as are reasonably necessary to successfully participate in such reviews.

     7.     If the Trustee Agencies jointly determine that termination or cancellation of a particular Project is warranted, the Lead Trustee Agency Representative will so inform the Foundation in writing and the Foundation shall thereafter proceed in accordance with the procedures set forth in Section VIII(2) of this Agreement.

     8.     The Trustee Agencies shall provide information to the general public, as appropriate, about the Account pursuant to any requirements the Trustees may have under the California Public Records Act or other authorities.

### V. FOUNDATION RESPONSIBILITIES

     1.     The Foundation shall appoint the Foundation Representative and an alternate, who shall represent the Foundation in carrying out its obligations under this Agreement.

     2.     The Foundation shall maintain the Account in an interest bearing or investment account at one or more financial institution(s) that is a member of the Federal Deposit Insurance Corporation. For accounting purposes, the Account shall be distinguishable from all other accounts maintained by the Foundation.

     3.     The Foundation shall invest and reinvest funds in the Account in accordance with the Foundation's then-prevailing investment policy statement on cash management. Day-to-day investment decisions will be made by the professional investment advisor or bank with which the Foundation has established an investment advisory relationship.

4.      For investment purposes only, the Foundation is authorized to commingle any or all of the assets existing in the Account with other funds held or managed by the Foundation that are subject to identical investment restrictions. The intent of this authorization is to allow the Foundation to pool funds subject to identical investment restrictions for collective management, such that all participating funds may benefit from efficiencies of scale. Any funds from the Account commingled in this manner shall at all times remain subject to the investment guidance (if any) specified by the Trustee Agencies for such funds. In addition, notwithstanding this authorization, and in accordance with Section V(2) above, funds in the Account, including return on investments or accrued interest, shall at all times be distinguishable within the Foundation's internal account system from the balance of all other accounts maintained or managed by the Foundation.

5.      The Foundation shall administer the Account consistent with Section VII below.

6.      If requested by the Trustee Agencies, the Foundation shall prepare one or more RFPs for projects to be jointly selected by the Trustee Agencies and funded by the Account.

7.      The Foundation shall enter into Recipient Agreements for Projects selected by the Trustee Agencies under Section IV above and shall pay Recipients' requests for disbursements in accordance with the procedures set forth in the respective Recipient Agreements. The Trustee Agencies may also direct the Foundation to make direct disbursements (without a governing Recipient Agreement) to Recipients for performance of appropriate projects or activities.

8.      If requested by the Trustee Agencies, the Foundation shall participate with the Trustee Agencies in annual technical reviews to evaluate the progress and results of Projects funded by the Account.

9.      If so directed by the Trustee Agencies in writing, the Foundation will undertake the measures set forth in Section VIII(2) below to terminate or cancel a Project.

## VI. PROJECT SELECTION

The Trustee Agencies plan to work with local cities, counties, districts and other public and private organizations to solicit projects for funding through a competitive grant process, until all funds are spent. It is a goal of the Trustee Agencies to select a suite of projects spanning the area of the spill outside the jurisdiction of NPS, CCSF, and Richmond that address the various types of recreational activities impacted by the spill. To that end, and to the extent feasible, funds will be approximately allocated according to the relative magnitude of the spill impacts, as follows:

- East Bay: 57%
- Marin County: 10%
- San Mateo County: 29%
  Other Areas: 4%

## VII. ACCOUNT ADMINISTRATION

1.      Within ten (10) days after the Effective Date, the Foundation shall establish the Account.

2.      Upon disbursement of funds from the Account, the Foundation shall assess and collect the Per Disbursement Fee on the disbursement amount (such Per Disbursement Fee to be collected by the Foundation from the Account itself).

3.      The Foundation shall assess and collect the Annual Fee annually during each year in which the Account is in existence. The Annual Fee shall be prorated in any year in which the Account is in existence for only part of such year. The Foundation shall collect the Annual Fee by deducting it from the balance in the Account. The Foundation's fee for conducting an RFP in accordance with Section V(6) above is separate and apart from, and shall not be credited against or deducted from, the Annual Fee. The Foundation's fee for conducting each RFP is Twenty Thousand dollars ($20,000 USD).

4.      Bank charges assessed by any financial institution for the custodial management of the Account shall be paid from amounts then on deposit in the Account itself.

5.      Unless directed otherwise by the Trustee Agencies, the Foundation shall submit Account activity reports to the two Trustee Agency Representatives semi-annually by June 15 and December 15 of each year the Account is in existence. The Foundation shall report on deposits, disbursements, fees, and investment income during each semi-annual period, with a reconciliation of the remaining unobligated balance. The reports will also include the current status of all active Recipient Agreements. Upon request, the Foundation shall provide to the two Trustee Agency Representatives copies of its audited financial statements.

7.      The Trustee Agencies shall not be entitled to direct the Foundation to enter into any Recipient Agreement under which the Recipient would receive funds from the Account to pay for lobbying activities, litigation expenses, or any illegal activities.

8.      No funds disbursed from the Account may be used by any governmental Recipient (including but not limited to the Trustee Agencies themselves) in a manner that would unlawfully augment such Recipients' appropriated budget.

## VIII. TERMINATION OF AGREEMENT

1.      This Agreement shall terminate upon the occurrence of the first of the three following events: (a) on the fifteenth (15th) anniversary of the Effective Date; (b) when all monies in the Account have been disbursed and the Account has reached a zero (0) balance; or (c) by the Foundation or the Trustee Agencies upon sixty (60) days' prior written notice to the non-terminating Party. If this Agreement is terminated pursuant to this Section, the Trustee Agencies may request a full and complete accounting of all Account activity, including deposits, disbursements, fees, and investment income, with a reconciliation of the remaining balance, and the Foundation shall provide such accounting within ninety (90) days after receipt of such request. In conjunction with such accounting, the Foundation shall submit to the Trustee Agencies for approval any final payment requests from Recipients that require the Trustee Agencies' approval.

2.      In the event of termination of this Agreement prior to all monies in the Account having been expended, the Foundation shall immediately undertake all reasonable steps to wind down the Account cooperatively with the Trustee Agencies, which steps shall include but not be limited to the following (unless the Foundation is directed otherwise by the Trustee Agencies):

a.      Direct Recipients to stop any incomplete work.

b.      Direct Recipients to place no further work orders or enter into any further contracts for materials, services, or facilities, except as necessary to complete work as determined in consultation with the Trustees Agencies.

c.      Enter into no further agreements with Recipients and terminate all pending Project agreements for work that has not yet commenced.

d.      Promptly take all other reasonable steps to minimize the additional obligation of Account funds.

e.      Deliver or make available to the Trustee Agencies all data, drawings, specifications, reports, estimates, summaries, and such other information and materials as may have been developed under any Recipient Agreement, whether completed or in progress.

f.      Disburse remaining funds in the Account according to the Trustee Agencies' written direction and in accordance with applicable law and regulation, withholding only such amount as is necessary to pay any outstanding Account obligations that remain after steps (a) through (e) above have been completed.

## IX.  CONTACT INFORMATION/COMMUNICATIONS

1.      No obligations may be incurred, and no funds disbursed, from the Account, except for the Foundation's fees pursuant to Section VII above and bank fees, without the written approval of the Trustee Agency Representatives.  All approvals, notices and reports, required or permitted under this Agreement, shall be in writing and delivered by first-class mail, overnight mail, facsimile, or electronic .pdf format.  Each party agrees to notify the other parties promptly after any change in named representative, address, telephone, or other contact information.

2.      Deposits made to the Account by check shall be mailed to the Foundation's headquarters office at: 1133 15th Street, NW, Suite 1100, Washington, D.C. 20005, to the attention of the Chief Financial Officer.  Deposits made to the Account by electronic funds transfer shall be directed to the Foundation (Taxpayer I.D. Number 52-138-4139), in accordance with wiring instructions provided by the Foundation to the payer at the time of deposit.

3.      The individuals named below shall be the Representatives of the Trustee Agencies and the Foundation for purposes of this Agreement.  Contact information for the Trustee Agency Representatives and Foundation Representative is as follows (it being agreed and acknowledged that contact information for deposits to the Account shall be as set forth in Section IX (2) above):

**If to the Foundation:**

Liz Epstein
Senior Manager, IDEA
National Fish and Wildlife Foundation
90 New Montgomery Street, Suite 1010
San Francisco, California  94105
Telephone:   (415) 243-3102
Facsimile:   (415) 778-0998
Email:         liz.epstein@nfwf.org

**Foundation Alternate:**

AJ Shelton
Manager, IDEA
National Fish and Wildlife Foundation
90 New Montgomery Street, Suite 1010
San Francisco, California  94105
Telephone:   (415) 243-3106
Facsimile:   (415) 778-0998
Email:         ashelton@nfwf.org

**If to CDFG:**

Matthew Zafonte, Ph.D.
Resource Economist
California Department of Fish and Game
Office of Spill Prevention and Response
1700 K Street, Suite 250
Sacramento, California 95811
Telephone:   (916) 323-4724
Facsimile:   (916) 324-8829
Email:       mzafonte@ospr.dfg.ca.gov

**CDFG Alternate:**

Steve Hampton, Ph.D.
Resource Economist
California Department of Fish and Game
Office of Spill Prevention and Response
1700 K Street, Suite 250
Sacramento, California 95811
Telephone:   (916) 323-4724
Facsimile:   (916) 324-8829
Email:       shampton@ospr.dfg.ca.gov

**If to CSLC:**

Jessica Radar
Staff Counsel
California State Lands Commission
100 Howe Avenue, Suite 100-South
Sacramento, California 95825-8202
Telephone:   (916) 574-1850
Facsimile:   (916) 574-1855
Email:       raderj@slc.ca.gov

**CSLC Alternate:**

Kathryn Colson
Staff Counsel
California State Lands Commission
100 Howe Avenue, Suite 100-South
Sacramento, California 95825-8202
Telephone:   (916) 574-1850
Facsimile:   (916) 574-1855
Email:       Kathryn.Colson@slc.ca.gov

4.     Any change to either the Trustee Agency Representatives or the Foundation Representatives shall be communicated in writing to the other Parties within ten (10) business days of the change.

5.     The Trustee Agency Representatives shall notify the Foundation in writing of the identity of the Lead Trustee Agency Representative within ten (10) business days of selecting the Lead Trustee Agency Representative.

## X. MISCELLANEOUS PROVISIONS

1.     *No Assignment:* The Foundation may not assign this Agreement, in whole or in part, to any individual or other legal entity without the prior written approval of the other Parties.

2.     *Amendments:* This Agreement may be amended only in writing agreed to and signed by all Parties.

3.     *No Additional Support*: In establishing the Account, the Trustee Agencies assume no obligation to provide further funding or support to the Foundation beyond the terms stated in this Agreement.

4.     *Compliance with Laws; Insurance***:** The Foundation agrees to contractually require that all Recipients comply with all applicable Federal, State, and local laws, regulations, and ordinances and secure all appropriate and necessary public or private permits and consents in carrying out Projects funded with amounts from the Account.

a.     The Foundation agrees to contractually require Recipients to obtain and maintain appropriate insurance against liability for injury to persons or property from any activities undertaken by such Recipients in carrying out Projects funded with amounts from the Account.

5.    *Publicity:* At the Trustee Agencies' request, the Foundation agrees to require Recipients to include the Trustee Agencies' names or logos in all press releases, publications, annual reports, video credits, dedications, and other public communications regarding any of the Projects funded with amounts from the Account.

6.    *Severability:* If any provision of this Agreement is held to be unlawful or invalid by any court of law with duly established jurisdiction over this Agreement, the Parties intend that the remainder of this Agreement shall remain in full force and effect notwithstanding the severance of the unlawful or invalid provision(s).

7.    *Responsibility for Conduct:* Each Party shall be responsible for the consequences of its own actions or inaction, willful misconduct, gross negligence, and/or breach of obligations in connection with this Agreement, and in connection with any work undertaken in accordance with this Agreement.

8.    *Dispute Resolution:* The Parties will cooperate in good faith to achieve the objectives of this Agreement and to avoid disputes.  The Parties will use good faith efforts to resolve disputes at the lowest organizational level and, if a dispute cannot be so resolved, the Parties will then elevate the dispute to the appropriate officials within their respective organizations.

9.    *Disclaimers:* The Foundation shall ensure that all information submitted for publication arising from any Project funded by the Account shall carry the following disclaimer:

> The views and conclusions contained in this document are those of the authors and should not be interpreted as representing the official policies or opinions of the State of California or the National Fish and Wildlife Foundation.  Any mention of trade names or commercial products herein does not constitute their endorsement by the State of California or the National Fish and Wildlife Foundation.

10.    *No Limitation on Agency Responsibilities:* Nothing contained in this Agreement is intended to limit the authority of the Trustee Agencies to fulfill their statutory or regulatory responsibilities.

11.    This Agreement shall not be the basis of any claims, rights, causes of action, challenges or appeals by any person not a Party to this Agreement.  Nothing in this Agreement shall be construed to create privity of contract between the Trustee Agencies and any third party(ies), including Recipients whose Projects are funded with amounts from the Account.

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be executed by their respective authorized representatives, intending to be bound legally.

Date: November 10, 2010        **CALIFORNIA DEPARTMENT OF FISH AND GAME**

By: _____
Stephen L. Edinger
Administrator
Office of Spill Prevention and Response

Date: November 18, 2010          **CALIFORNIA STATE LANDS COMMISSION**

By: _____
     Curtis Fossum
     Executive Officer

Date: November _12_, 2010                    **NATIONAL FISH AND WILDLIFE FOUNDATION**

By: _____
Jeff Trandahl
Executive Director

1

**ATTACHMENT B**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Attachment B

## Supplemental Environmental Project for San Francisco Bay Herring Stock Assessment, Management, and Research

### Preamble

Whereas, the State of California Department of Fish and Game (Department), The San Francisco Bay Herring Research Association, and the Regional Water Quality Control Board (RWQCB), San Francisco Bay Region have a shared interest in the health and viability of the San Francisco Bay Pacific Herring population, and desire to use this schedule to work cooperatively in conducting research on that stock of fish in the San Francisco Bay; and

Whereas, there is a need for stock assessment, research and management for a sustainable San Francisco Bay herring fishery.

Therefore, the San Francisco Bay Herring Research Association and the Department will undertake a Supplemental Environmental Project (SEP) for herring research, management, and/or herring stock assessment which shall further the following goals:

(1) Allow and encourage only those activities and uses of marine living resources that are sustainable.

(2) Recognize the importance to the economy and the culture of California of sustainable herring fisheries.

(3) Support and promote scientific research on San Francisco Bay marine ecosystems and their components to develop better information on which to base herring fishery resource management decisions.

(4) Manage herring in San Francisco Bay on the basis of the best available scientific information and other relevant information.

(5) Involve individuals from the commercial fishing industry in herring management decisions.

(6) Promote the dissemination of accurate information concerning the condition of, or management of, San Francisco Bay herring fishery by seeking out the best available information and making it available to the public through the marine resources management process.

Accordingly, the following schedule of activities outlines the specific tasks that may be considered for funding under this SEP:

Supplemental Environmental Project for Herring

Schedule of Activities

| 1. Herring Stock Assessment | A. Hydroacoustic assessments of herring schools during the 2011 spawning season and beyond. (Includes workshop/training session for DFG Biologists using Biosonic gear and hydroacoustic specialists, metholodgy validation and verification, procurement of equipment for DFG, software improvements to DFG survey platform, etc.)  B. Data analysis and preparation of report on biomass  C. S.F. Bay Herring model development by a recognized authority on population modeling     i. Compilation of existing data and formatting for model input     ii. Assessment of stock: analysis and yield projections     iii. Peer review of Stock Assessment     iv. Travel for orientation and DFG training on running of the model |
|---|---|
| 2. Herring Research in San Francisco Bay | A. Additional Herring Research:     i. Conduct research agreed to by DFG and Herring Research Association     ii. Conduct studies to fill data gaps identified by DFG and Herring Research Association     iii. DFG research vessel maintenance and repair |
| 3. Preparation and Adoption of Fisheries Management Plan (FMP) NOTE: Current funding is insufficient to accomplish this task and it will only be considered if additional funding is secured | A. Public Process     i. Public Scoping Workshops – Workshop Preparation (development of management options) and meeting facilitation     ii. CEQA Documents and FMP writing     iii. Peer review |

Supplemental Environmental Project for Herring

## Reporting

Recipients of SEP funds shall report to the RWQCB on the status of the project and the components of the schedule that the funds were spent on, including an account of any remaining funds, on June 30 of each year.